there mean that you have read the plea agreement, that you have understood it and that you have agreed to its terms and conditions?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Druyun, I am going to summarize the essential terms of your plea agreement now. Pay careful attention to my summary, because at the conclusion I will ask you whether those are the terms of your plea agreement with the government.

Under the plea agreement, you agree to waive indictment and plead guilty to a one-count information charging you with conspiracy. The maximum penalty for the offense, as reflected in the plea agreement and as I have recited earlier for you, is five years imprisonment, a fine of up to $250,000, full restitution, a special assessment of $100 which in the plea agreement you have agreed to pay prior to sentencing, and 3 years of supervised release.

And as I previously advised you, and the plea agreement also reflects, if you were to violate any of the conditions of the supervised release, you could be returned to prison for the full supervised release term.

The plea agreement goes on to state that you are pleading guilty because you are in fact guilty of the offense, that you admit the facts set forth in the statement of facts that you've signed and that are part of the plea agreement,

and that you agree that the facts that you have signed, the statement of facts, establish all the elements of the offense beyond a reasonable doubt, and you understand that the statement of facts will serve as the predicate, as the basis for the calculation of your sentencing guidelines.

The plea agreement goes on to provide that you are representing that you are fully satisfied with the advice and counsel that you have received from Mr. Dowd, and that he has rendered effective assistance to you in this case, and that you understand by pleading guilty, you'll be giving up your right to a jury trial.

And the plea agreement reflects what you will be giving up in terms of your jury trial right, and I'll review those matters with you in greater detail in a few moments.

The plea agreement goes on to provide that you understand that the Court has the authority to impose any sentence on you up to the statutory maximum, which in this instance is five years, and that you understand that your sentence has not yet been determined. That is, at the moment it is uncertain what sentence you will actually receive. Any estimate Mr. Dowd has provided to you or Mr. Wiechering or, indeed, anyone, those are merely estimates. They are not promises. They are not assurances.

Indeed, in the plea agreement the government specifically notes that it makes no promise or representation

to you concerning what sentence you will actually receive. So as I said, at the moment there is uncertainty concerning what sentence you will actually receive.

In the face of that uncertainty, you have agreed in your plea agreement to waive your right, to give up your right to appeal your sentence, a right that you would otherwise have under the Sentencing Guidelines, and you waive that right on any ground.

The plea agreement goes on to provide that you understand that any monetary penalty the Court imposes on you would be due and payable immediately.

Any schedule of payments or installment plan that the Court sets is merely a minimum means or a minimum way of collecting any monetary penalty that the Court imposes. The actual penalty will be due and payable immediately, and the government may seek to obtain a judgment or anything else to collect it immediately.

And you've agreed that if you are incarcerated that you will participate in the Inmate Financial Responsibility Program conducted by the Bureau of Prisons, whether or not the Court orders it.

The plea agreement goes on to provide that the government agrees that it will not prosecute you further in this district, the Eastern District of Virginia, for the specific conduct described in the information or the statement

of facts, or any other specific allegations which were the subject of the U.S. Attorney's Office for the Eastern District of Virginia's investigation of you.

And the government further agrees that it won't prosecute your daughter in the Eastern District of Virginia for the specific conduct described in the information or the statement of facts.

Of course, this agreement provides no immunity to anyone for any crimes that may be somehow related to, but not specifically either set out or the ones that are investigated in this matter by the U.S. Attorney's Office for the Eastern District of Virginia.

The plea agreement goes on, Ms. Druyun, to provide that you have agreed to cooperate fully and truthfully which the government and to provide the government with all information you know about any criminal activity.

In other words, you are obligating yourself to disclose to the government not just information relating to the crimes set out in the information and the statement of facts, but if you know about any criminal activity, you are obligating yourself to disclose that the government.

Now, specifically in connection with your obligation to cooperate, you have agreed to do all of the following:

First, you have agreed to testify truthfully and

completely at any grand juries, trials or other proceedings.

You have also agree to be reasonably available for any pretrial conferences or debriefings that the government may require.

You've also agreed to provide the government with any documents or other materials that may be in your care, custody or control relating in any way to the matters under investigation.

And you've also agreed to submit voluntarily to a polygraph examination, that is, a lie detector test conducted by an examiner of the government's choice.

And you've agreed that the statement of facts that you have signed and made a part of this plea agreement is limited to information necessary to support the plea, and that you'll provide additional information in the course of your cooperation.

The plea agreement also notes that you understand that simply because you are agreeing to cooperate in your plea agreement does not entitle you to violate any state, local or federal law. You have no such entitlement.

And the plea agreement also no notes that while you are obligated to cooperate with the government, the government is not obligated to seek your cooperation.

Next, the plea agreement provides that the government agrees, as the Sentencing Guidelines provide, that

if you are truthful, the truthful information you provide to the government in the course of your cooperation will not be used to enhance your guidelines range. It may be used, however, to determine where within the guideline range you should be sentenced, but it cannot be used to enhance your guidelines range or the prosecute you further.

The plea agreement also provides that if you should knowingly provide any false, misleading or incomplete information or perjurious information in the course of your cooperation, then in that event the government may seek to be released from its obligations under the plea agreement. And if it is released from its obligations, then in that event the government would be free to prosecute you for any offense of which the government has knowledge, including what's in the information.

In that event, the government would also be free to use against you all of the information you have provided to the government, including what's in the statement of facts, and you would not be able to rely on any statute, rule or constitutional provision to suppress the use of that information against you.

If there is an allegation of a breach of the agreement by either you or by the government, the Court will hold a hearing and the party alleging the breach will have th burden of proving the breach of the agreement by a

preponderance of the evidence.

The plea agreement also provides that it is not conditioned on anyone being prosecuted or convicted on the basis of the information you supply.

Now, what that means, Ms. Druyun, is if you cooperate with the government, as you are obligated to do, it isn't necessary, in order for you to satisfy that obligation to cooperate, that someone be caught and prosecuted and convicted and sentenced on the basis of what you provide. All that's necessary in order for you to make good on your obligation to cooperate is for you to provide full, complete and truthful cooperation.

The plea agreement also provides that you and the government have agreed, as the law provides, that the government reserves to itself the sole discretion on whether to seek a downward departure in your guidelines or a reduction of your sentence based on your cooperation.

Now what that means, Ms. Druyun, is this: If you cooperate with the government, again as you are required to under the plea agreement, and you provide the government with information that in your opinion, as you assess it, should be of substantial assistance to the government so as to entitle to you a motion for a downward departure in your guidelines or for a reduction of your sentence, but the government disagree with you, it does not agree with your assessment of the

information that you've provided as being of substantial assistance to the government, either because it already had the information from other sources or because it considers the information you've provided as unreliable, or for whatever reason the government disagrees that the information you've supplied is of substantial assistance and therefore declines to bring a motion for a downward departure or reduction of sentence, in that circumstance you may not compel the government to bring such a motion because that decision is within the sole discretion of the government.

The only circumstances under which you may compel the government to bring such a motion is in the event the government withholds such a motion on the basis of some unconstitutional motive or bad-faith motive such as discrimination on the basis of race, gender or religion.

The plea agreement also provides that it is the full and complete agreement between you and the government and that there aren't any other secret or side agreements relating to your plea.

Now, Ms. Druyun, are those the terms of your plea agreement with the government as you understand it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anyone made any other or different kind of promise or assurance to you of any kind whatsoever in an effort to induce you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone tried to force you or to pressure you or to coerce you in any way to plead guilty in this case?

THE DEFENDANT: No your Honor.

THE COURT: Are you pleading guilty then freely and willingly and voluntarily?

THE DEFENDANT: Yes, your Honor.

THE COURT: And are you pleading guilty because are you, in fact, guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Druyun, you'll be sentenced under the Sentencing Guidelines which have been issued for courts to follow in imposing sentences in cases of this sort. Have you and Mr. Dowd discussed how the Sentencing Guidelines might apply to your case?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that the Court will not be able to determine what guideline range applies to your case until after the Presentence Investigation Report, which I will order prepared, has been completed and you and Mr. Dowd have had a chance to review it, review it together, and then to call to the Court's attention any objections or corrections you may have to the report?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that even after the Court determines what guideline range applies to your case, that even then, under certain circumstances, the Court has the authority to impose a sentence that is either less severe or more severe than the guideline range, but never greater than the five-year statutory maximum?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that under the guidelines, Ms. Druyun, you would ordinarily have the right to appeal any sentence imposed on you, but in your plea agreement you have waived that right; you have given it up on any ground?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that if you are sentenced to a period of incarceration, you will not be paroled? There is no parole in the Federal System. It has been abolished.

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand that if the sentence you ultimately receive is more severe than the sentence you now expect, you'll still be bound by your plea and your plea agreement and you will not be able to withdraw them?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Druyun, you have an absolute

right to plead not guilty and to persist in that plea, and if you do so you have the right to a trial by jury. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, incident to that jury trial right, Ms. Druyun, you have all of the following rights:

First, you would have the right to the assistance of your counsel, Mr. Dowd, throughout all phases of the proceedings against you.

Next, you would have the right to strike ten members from a panel of prospective jurors for whatever reasons you choose, subject only to the constitutional constraint that neither you nor the government may strike any prospective juror solely for reasons of race or gender.

Next, you would have the right to see and to hear all witnesses against you and to have them cross-examined on your behalf. You may not be prosecuted on any secret evidence. All of the evidence against you, you will have an opportunity to confront and cross-examine.

Next, you would have the right on your own part to decline to testify, unless you voluntarily elected to do so.

Now, if you declined to testify, in that event the Court will instruct the jury that the jury may draw no inference from your silence. Indeed, in that event, the jury

will be instructed by the Court that the jury, in the course of its deliberations, may not even discuss the fact that you have not testified because your right to remain silent is absolute under the Constitution.

Next, you would have the right not to be found guilty by the jury unless all twelve members of the jury are unanimous in concluding that the government has proved beyond a reasonable doubt each and every element of the offense charged against you.

And finally, you would have the right to the issuance of compulsory process and subpoenas to compel the attendance of witnesses and evidence in your behalf.

Now, do you understand, Ms. Druyun, that all of those rights that I have listed are rights you would have if you persist in a plea of not guilty, as you have an absolute right to do, and insist our right to trial by jury?

THE DEFENDANT: Yes, I understand your Honor.

THE COURT: And do you understand that by pleading guilty, you are giving up all those rights and there will be no trial?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Do you also understand, Ms. Druyun, that if you persist in a plea of not guilty, as you have an absolute right to do, you can compel the government to prove beyond a reasonable doubt each and every element of the

offense charged against you in this case?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: What that means, Ms. Druyun, is this: If you persist in a plea of not guilty, as you have an absolute right to do, then in that event you could compel the government to prove beyond a reasonable doubt all of the following:

First, the government would have to prove that the offense, that is, the conspiracy that's alleged, occurred from on or about September 23rd, 2002, through on or about November 5th, 2002.

Now, the government doesn't have to prove that the conspiracy alleged occurred between precisely those two dates, but it does have to prove that the conspiracy that's alleged occurred between two dates reasonably close to those dates.

Next, the government would have to prove that the offense, or some part of the offense, some act to further the conspiracy, occurred in the Eastern District of Virginia.

The Eastern District of Virginia is a very large area. It includes the Northern Virginia area and extends down through Richmond to Tidewater. So the government would have to prove beyond a reasonable doubt that some act in furtherance of the conspiracy that is alleged occurred within the Eastern District of Virginia.

Next, the government would have to prove that a conspiracy existed involving you and at least one other person.

Now, in order to prove a conspiracy, the government does not have to show that you and one other person, or more, had some written agreement covering all the details of the agreement, or even that you had some oral agreement that covered all the details.

What the government must prove is that you and at least one other person had some sort of arrangement, could be a tacit arrangement, to accomplish the goals of the conspiracy. And the government would have to prove that you joined this conspiracy willfully, knowingly and intentionally.

That means that you didn't do this accidentally or inadvertently or innocently or mistakenly, but deliberately. Knowing what you were doing, you joined this conspiracy, and the conspiracy, the object of the conspiracy was to render advice, investigation or otherwise in a contract or other matter, in which the Boeing Company, a company you were then negotiating concerning prospective employment, that you had a financial interest in.

And the government would have to show that you or some other member of the conspiracy took at least one step toward accomplishing the goal of the conspiracy.

Do you understand, Ms. Druyun, that the

government would have to prove all of that beyond a reasonable doubt if you persist in a plea of not guilty?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: And do you understand that by pleading guilty you give up the right to compel the government to do all of that -- prove all of that beyond a reasonable doubt?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Did you do what's charged in the criminal information, Ms. Druyun?

THE DEFENDANT: Yes, your Honor.

THE COURT: Tell the Court in your own words what you did.

THE DEFENDANT: I basically sought employment with Boeing without properly signing my government conflict of interest rules, requirements, statutory requirements as well, then attempted to hide it.

THE COURT: At the time you were seeking employment with Boeing, were you employed by the U.S. Government?

THE DEFENDANT: Yes, your Honor.

And I want to say that I deeply regret my actions and I want to apologize to my family and my nation.

THE COURT: All right. I need to hear some mor facts from you, Ms. Druyun. And I'll give you an opportunity

to say something further at the end.

At the time, what was your position with the government.

THE DEFENDANT: I was the principal deputy assistant secretary for acquisition in the United States Air Force.

THE COURT: And that's an SES position?

THE DEFENDANT: Yes, your Honor.

THE COURT: And in that capacity, did you have supervisory authority over Air Force acquisition programs?

THE DEFENDANT: I had oversight responsibility, yes, your Honor.

THE COURT: And you provided advice to the Assistant Secretary of the Air Force for Acquisitions and to other officials --

THE DEFENDANT: That's correct --

THE COURT: -- in the Air Force?

THE DEFENDANT: -- your Honor. Yes.

THE COURT: And tell me again precisely what it is that you did while you were still employed by the Air Force as the principal deputy assistants secretary.

THE DEFENDANT: I had discussions with a senior Boeing employee about a potential job. I did not properly execute my conflict of interest recusal, and then I attempte to hide it.

THE COURT: You attempted to conceal that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And how did you attempt to conceal it?

THE DEFENDANT: I had follow-on discussions to sign my recusal on the 5th of November, and when Boeing -- and had an investigation back in the July time frame. I did not reveal that to them, and had been in communication with the person I had original discussions with.

THE COURT: I take it that part of your responsibility in the 2002 period was the negotiations with the Air Force regarding the lease of certain tanker aircraft from Boeing?

THE DEFENDANT: I had overall oversight responsibility for the 767 negotiations, that's correct, your Honor.

THE COURT: And this was at a time when you were discussing a job with Boeing.

THE DEFENDANT: Potential employment, yes, that's correct, your Honor.

THE COURT: And with whom were you discussing a job at Boeing?

THE DEFENDANT: Mr. Michael Sears.

THE COURT: Did this occur in or about September through November of 2002?