CERTIFICATE OF REPORTER

I, MICHAEL A. RODRIQUEZ, an Official Court Reporter for the United States District Court, in the Eastern District of Virginia, Alexandria Division, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had upon the change of plea hearing in the case of UNITED STATES OF AMERICA v. DARLEEN A. DRUYUN.

I further certify that I was authorized and did report by stenotype the proceedings in said change of plea hearing, and that the foregoing pages, numbered 1 to 52, inclusive, constitute the official transcript of said proceedings as taken from my machine shorthand notes.

IN WITNESS WHEREOF, I have hereto subscribed my name this 12th day of October, 2004.

Michael A. Rodriquez, RPR/CM/RMR
Official Court Reporter

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,
Plaintiff,

v.

DARLENE DRUYUN,
Defendant.

CRIMINAL ACTION
1:04-Crim-150

REPORTER'S TRANSCRIPT

SENTENCING HEARING

Friday, October 1, 2004

---

BEFORE: THE HONORABLE T.S. ELLIS, III
Presiding

APPEARANCES: OFFICE OF THE UNITED STATES ATTORNEY
BY: ROBERT WIECHERING, AUSA

For the Government

JOHN DOWD, ESQ.

For the Defendant

---

MICHAEL A. RODRIQUEZ, RPR/CM/RMR
Official Court Reporter
USDC, Eastern District of Virginia
Alexandria Division

INDEX


| | |
|---|---|
| PROCEEDINGS RE: SUPPLEMENTAL PLEA AGREEMENT | 3 |
| PROCEEDINGS RE: SENTENCING HEARING | 10 |
| RECAPITULATION BY THE COURT | 10 |
| OBJECTIONS/CORRECTIONS TO PRESENTENCE REPORT | 14 |
| ALLOCUTION BY THE DEFENDANT | 17 |
| ALLOCUTION ON BEHALF OF THE DEFENDANT | 18 |
| ALLOCUTION BY THE GOVERNMENT | 20 |
| IMPOSITION OF SENTENCE BY THE COURT | 23 |


(Court recessed)

---

PROCEEDINGS

(Court called to order at in USA v. Druyun)

THE CLERK: 1:04-Criminal-150, United States versus Darleen A. Druyun.

Would counsel please note your appearances.

THE COURT: All right, Mr. Wiechering, you are here for the government.

ATTORNEY WIECHERING: Yes, sir.

THE COURT: Mr. Dowd, you are here for the defendant.

ATTORNEY DOWD: Good morning, your Honor.

THE COURT: And Ms. Druyun is present in the courtroom.

THE DEFENDANT: Good morning.

THE COURT: This matter is before the Court for sentencing, but before we reach that, we have a preliminary matter. I have the supplemental plea agreement. Do you have the signed one there, Mr. Wiechering?

ATTORNEY WIECHERING: I do. Your Honor. And they are identical.

PROCEEDINGS RE: SUPPLEMENTAL PLEA AGREEMENT

THE COURT: Ms. Druyun, come to the podium, please.

THE DEFENDANT: (Complies.)

THE COURT: And the clerk may administer the oath to the defendant.

(Defendant sworn)

THE DEFENDANT: I swear on the Bible.

THE COURT: You may do so to that as well.

(Defendant sworn)

THE COURT: Good morning again, Ms. Druyun.

THE DEFENDANT: Good morning.

THE COURT: State your full name, please.

THE DEFENDANT: Darleen Ann Druyun.

THE COURT: Ms. Druyun, you previously pled guilty pursuant to a plea agreement, and you recall that, don't you?

THE DEFENDANT: Yes, I do.

THE COURT: This morning, this is a supplemental plea agreement. I want to be sure that you are submitting this knowingly and intentionally and voluntarily, and so I will ask you a series of questions so that the Court can determine whether that's the case. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You recall the first time I asked you a series of questions to determine whether your plea of guilty was knowing and voluntary, and whether you knowingly waived your right to a grand jury indictment. Do you recall that?

THE DEFENDANT: Yes, sir.

THE COURT: I have what appears to be a supplemental plea agreement and a statement, supplemental statement of facts.

I am going to have the court security officer show you these documents. I want you to look at them and then confirm to the Court that these are your supplemental plea agreement and supplemental statement of facts, and those are your signatures appearing at the end of each of those documents.

THE MARSHAL: (Complies.)

THE DEFENDANT: Yes, sir.

THE COURT: And does your signature appearing at the end -- well, are those your supplemental plea and statement of facts?

ATTORNEY DOWD: This is one, your Honor. That was the supplemental statement of facts. She is now looking at the plea agreement.

THE COURT: Thank you, Mr. Dowd.

THE DEFENDANT: Yes, sir.

THE COURT: All right. Ms. Druyun, was what you looked at your supplemental plea agreement and supplemental statement of facts?

THE DEFENDANT: Yes, sir.

THE COURT: And was that your signature appearing at the conclusion of each of those?

THE DEFENDANT: Yes, sir.

THE COURT: And does your signatures appearing there mean that you have read, understand and agree to the terms and conditions of the supplemental plea agreement and to the accuracy of the statement of facts?

THE DEFENDANT: Yes, sir.

THE COURT: Now, Ms. Druyun, I am now going to summarize the essential terms of your supplemental plea agreement, and at the conclusion of that I will ask you whether those are the terms of your supplemental plea agreement as you understand it with the government.

In the supplemental plea agreement you agree and stipulate that you breached your original plea agreement by not providing full, complete and truthful cooperation as required by that plea agreement. And you agree that the government in that circumstance would be entitled to remedies for the breach, which would include release from the plea agreement and to prosecute you for all offenses the government has knowledge of, including the original offense.

But the government is going to forego that and, instead, proceed on this supplemental plea agreement. You, in turn, have rights under the original plea agreement not to have anything that you said in the course of your proffers or cooperation used against you. That's in Paragraph 10.

And you are giving that up, and you are agreeing

that the government can use the information that's set forth in the statement of facts here to calculate your guidelines, as well as the statement of facts that you originally filed.

And you agree to waive the provisions of the proffer agreement that you entered into with the government in November of 2003, and agree that the government can use that information in this case.

Then you and the government have entered into an agreement about the calculation of your guidelines. Now, that agreement does not bind the Court. But you and the government have entered into an agreement, and that agreement, in essence, is that ultimately you will be sentenced, according to this agreement, at Offense Level 12, Category 1.

And you also agree in your supplemental plea agreement that any rights you might have to a jury trial on any of the sentencing factors, including the obstruction of justice sentencing factors, which is a agreed-upon element in your guidelines agreement with the government, you've agreed to waive any jury trial right you would have with respect to that sentencing enhancement, or any other sentencing enhancement.

Now, are those the terms of your supplemental plea agreement with the government as you understand it, Ms. Druyun?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone made any other or different kind of promise or assurance to you of any kind whatsoever to induce you to plead guilty, other than what is in your supplemental plea agreement and what was in your original plea agreement.

THE DEFENDANT: No, sir.

THE COURT: Are all of the agreements you have with respect to your plea of guilty contained in the plea agreement and the supplemental plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone tried to force you or to pressure you or to coerce you in any way to plead guilty in this case?

THE DEFENDANT: No, sir.

THE COURT: Now, do you understand clearly that these guidelines calculations are not binding on the Court, and that the Court might well reach a different conclusion?

THE DEFENDANT: Yes, sir.

THE COURT: Specifically, in the supplemental plea agreement, you and the government have agreed that there are no mitigating or aggravating circumstances not adequately accounted for in the Guidelines to warrant a departure, but the Court could reach a different conclusion.

ATTORNEY WIECHERING: Just so it's clear, your Honor --

THE DEFENDANT: Yes, sir.

ATTORNEY WIECHERING: -- the government -- I think the wording is clear that the defendant cannot move for downward departure, but we are not limited in any way.

THE COURT: But you are not moving for the upward departure.

ATTORNEY WIECHERING: We are not, that is correct. Just so the record is clear.

THE COURT: Thank you. That's an appropriate clarification.

But you understand that the Court isn't bound by that.

THE DEFENDANT: Yes, sir.

THE COURT: Do you wish in any way to change your plea?

THE DEFENDANT: No, sir.

THE COURT: Do you wish to withdraw your plea of guilty to this offense?

THE DEFENDANT: No, sir.

THE COURT: All right. The Court, in the case of United States against Darleen Druyun, finds that the defendant is fully competent and capable. I went over all of the factors earlier in the plea agreement, and so I am confident that she has the capability of waiving her rights to a jury trial, and is pleading guilty knowingly and voluntarily and,

indeed, she has done so knowingly and voluntarily, even with respect to the supplemental plea agreement.

Is there anything else that the government thinks ought to be done in that regard?

ATTORNEY WIECHERING: No, your Honor.

THE COURT: Mr. Dowd, for the defendant?

ATTORNEY DOWD: No, your Honor.

THE COURT: All right. You may be seated for a moment, Ms. Druyun.

PROCEEDINGS RE: SENTENCING HEARING

RECAPITULATION BY THE COURT

THE COURT: Now, this matter is before the Court for sentencing, this defendant having previously pled guilty to conspiracy to violate the conflict of interest regulations.

I might point out -- is the probation officer present in the courtroom? Ms. Simpson.

THE PROBATION OFFICER: Yes, your Honor.

THE COURT: I noticed this, I didn't mention it, but on page three of the presentence report, the statement is that it's a conspiracy to defraud the government.

Is that the term actually used, Mr. Wiechering?

ATTORNEY WIECHERING: No, that's not correct, your Honor.

THE COURT: All right. We ought to change that. The correct term should be conspiracy to violate the conflict

of interest regulations.

Would that be correct, Mr. Wiechering?

ATTORNEY WIECHERING: Yes, your Honor.

THE COURT: Let's change that, Ms. Simpson.

THE PROBATION OFFICER: Yes, sir.

THE COURT: In any event, what the record, as supplemented by the supplemental plea or statement of facts, reflects is that this defendant was a high-ranking Air Force procurement official -- it doesn't really matter precisely how high-ranking, but I take it to be right about the number two person in the Air Force acquisition management area -- and that she had a long career in Air Force procurement and Air Force contracting.

At the conclusion, or nearing the end of that conclusion, she, in planning for her postretirement life, entered into a negotiation with Boeing Aircraft for a position following her retirement, and she did so both through her daughter and directly in an October 14th Orlando meeting at which a Boeing executive flew down to meet with her and discuss the matter.

She did ultimately retire on November 14th or thereabouts. She met with Boeing again on November 5th. Just before that, however, she did submit a letter to the Air Force stating she intended to enter into employment discussions with Boeing and was disqualifying herself from any matters

involving Boeing.

It was about three weeks late, because she had had discussions in October and, indeed, she had had discussions, in effect, through her daughter earlier. But in any event, that's what occurred.

She took the job offer afterwards. Went to work. The Air Force later investigated it. She and the Boeing official, in the words of an e-mail, decided to hang tough. And in the story that was told, the October 14th and previous communications were not revealed.

Mr. Wiechering, let me ask you, what happened to the Boeing person?

ATTORNEY WIECHERING: That individual is still under investigation by our office, your Honor.

THE COURT: Is he still working --

ATTORNEY WIECHERING: We expect a resolution of the case in the near future.

THE COURT: Is he still working for Boeing?

ATTORNEY WIECHERING: No, sir. He has been terminated. He was terminated the same day that Ms. Druyun was.

THE COURT: All right. Like cases should be treated alike.

And then what occurred is that Ms. Druyun was charged. She pled guilty and admitted her guilt. But in two

sessions thereafter, in the course of her required cooperation, she was less than candid and I take it that that occurred -- that that came out, in part, because she was polygraphed.

ATTORNEY WIECHERING: That's correct, your Honor.

THE COURT: And then she admitted that, indeed -- her original position had been that while this had occurred, it was more or less a technical violation because the Air Force hadn't suffered. And ultimately she admitted, forthrightly, after being confronted with it following the polygraph, that indeed it had made a difference because Boeing had gotten more money for a contract than it would otherwise have gotten.

ATTORNEY WIECHERING: Prior to the polygraph, your Honor, the defendant had always maintained that she had always acted in the best interests of the United States, that while she had a conflict, it had not affected her decision-making and she had not done anything to harm the United States.

THE COURT: Well, if she had been talking about anything other than Boeing, I suspect she would have been right. This series of letters that I have read is a remarkable set of letters about a lifetime of dedication to the Air Force. But it wasn't true in this instance, in any event.

ATTORNEY WIECHERING: It was not true in the instance of a $100 billion procurement, approximately, when you look at the tanker deal and several other deals. That's correct, your Honor.

THE COURT: All right.

Now, Mr. Dowd, have you had an adequate opportunity to review the presentence report and to review it with your client?

ATTORNEY DOWD: Yes, I have, your Honor.

THE COURT: Let me ask, Ms. Druyun, have you had an adequate opportunity to review the presentence report and to review it with your counsel, Mr. Dowd?

THE DEFENDANT: Yes, sir.

THE COURT: Are you fully satisfied with the advice and counsel he has provided to you?

THE DEFENDANT: Yes, sir.

THE COURT: All right. You may be seated.

THE DEFENDANT: (Complies.)

OBJECTIONS / CORRECTIONS TO PRESENTENCE INVESTIGATION REPORT

THE COURT: Mr. Dowd, are there any objections or corrections to the presentence report?

ATTORNEY DOWD: There are none, your Honor.

THE COURT: Well, Ms. Simpson, the presentence report is going to have to be redone, and Mr. Dowd is going to have to have another opportunity, because the statement of

facts is going to have to be amended to disclose what's in the supplemental statement of facts.

THE PROBATION OFFICER: Yes, your Honor.

THE COURT: The reason for that is the Bureau of Prisons and the record doesn't contain the statement of facts; it has only the presentence report.

Now, Mr. Dowd, you submitted a remarkable set of letters to the Court, all of which I reviewed, but you did so with a cover letter that said "in camera."

Now, do you not want these to be included in the Presentence Investigation Report?

ATTORNEY DOWD: No, your Honor. We were -- that was the instruction we received, and I'm sorry if that was the case, it was not the right way to do it. But no, we would be happy to have them included in the report. But --

THE COURT: All right. I will make them a part of the record -- of the Presentence Investigation Report.

You have seen them, Mr. Wiechering?

ATTORNEY WIECHERING: I have, your Honor. I have no objection.

THE COURT: All right.

ATTORNEY DOWD: Your Honor, with respect to the additional statement of facts, could we simply add the statement of facts --

THE COURT: Yes.

ATTORNEY DOWD: -- that have been approved here to the report?

THE COURT: That's right. We can do that.

Ms. Simpson, simply add those paragraphs at the end of the statement of facts directly from the supplemental statement of facts, and just number the paragraphs A, B, C, D and E until you finish. It's not that long.

THE PROBATION OFFICER: That's fine.

THE COURT: But still you should have a copy, Mr. Dowd, and Ms. Druyun should have a copy, as well.

ATTORNEY DOWD: Certainly, your Honor. Thank you.

THE COURT: I'll make these letters a part of th presentence report.

There is another letter that the Court received, and I assume, Mr. Dowd, that you and the government have received copies of that letter. Did you receive it?

ATTORNEY DOWD: I believe I did, your Honor.

THE COURT: Let me have the court security officer show it to you, to insure that you have received it.

THE MARSHAL: (Complies.)

ATTORNEY DOWD: Yes, your Honor, and I showed it to Ms. Druyun when I received a copy of it. We have seen a copy.

THE COURT: And you have as well?

ATTORNEY WIECHERING: Yes.

THE COURT: Is there any reason to believe that the sender of this letter is not who he purports to be?

ATTORNEY DOWD: I have no idea, your Honor. I have never -- I never inquired or investigated whether it was genuine or not. I simply accepted it on its face. But I have no idea.

Do you, Bob?

ATTORNEY WIECHERING: No.

THE COURT: Any reason, Mr. Wiechering, for this letter to be made a part of the presentence report?

ATTORNEY WIECHERING: I don't believe so, your Honor.

THE COURT: All right. Then I will not make it a part of the Presentence Investigation Report.

All right, we are now at the point of allocution, there being no motions for a downward departure.

This is your opportunity, Ms. Druyun, to say anything you wish to the Court by way of extenuation, mitigation or, indeed, anything at all you wish to say. You don't have to say anything if you don't wish to.

ALLOCUTION BY THE DEFENDANT

THE DEFENDANT: Thank you, your Honor.

First, I sincerely wish to apologize to my nation, to my family and friends, and to the Court for what I

have done.

While I held the position of Air Force principal deputy assistant secretary for acquisition, I participated in matters relating to the Boeing Company while at the same time negotiating future employment with Boeing.

I understand that this was wrong and I accept full responsibility for my conduct. I also regret any damage that my conduct might have caused to this country, the Air Force or the integrity of the procurement process.

After proudly serving my country for three decades, it's with a deep feeling of shame and remorse that I recognize that my record of service has been tarnished by this serious offense.

Again, I am truly sorry for my actions and I once again want to sincerely apologize to my nation, my Air Force, my family and this Court for what I did.

THE COURT: All right. You may be seated.

THE DEFENDANT: Thank you.

THE COURT: Mr. Dowd, I will hear from you now, sir.

ALLOCUTION ON BEHALF OF THE DEFENDANT

ATTORNEY DOWD: Thank you, your Honor.

This is a -- it's a very difficult matter, your Honor --

THE COURT: I beg your pardon?

ATTORNEY DOWD: This is a very difficult matter. I want to say at the outset that Mr. Wiechering and his colleagues and his agents have treated us with the utmost fairness and consideration.

As the Court knows from its own experience, your own experience, getting to the truth of matters can sometimes be difficult, with the fear and pressure of the time. There is no denying that Darleen made a serious mistake, and there is no denying that she had difficulty coming to grips with certain matters.

But she did. She finally did. And this whole matter has placed a permanent scar on what otherwise was quite a magnificent career in the Air Force.

I want the Court to know that during the time of these proceedings, she has tried to redeem herself and contribute to society.

THE COURT: Is this her work at the --

ATTORNEY DOWD: As you know, she -- I'm sorry, your Honor?

THE COURT: This is her volunteer work?

ATTORNEY DOWD: She has done her volunteer work. She will never work in the government again, and she will never work in contracting. But on her own initiative, your Honor, she has worked here in Northern Virginia, in INNOVA, for nothing, to help people who need help with medical