No. 06-396C
(Bid Protest)
(Judge Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

LOCKHEED MARTIN AERONAUTICS CO.,

Intervenor.

# DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor,
1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney
Department of Air Force
Arlington, VA

June 30, 2006

AGREED-UPON REDACTED
COPY - MAY BE MADE PUBLIC

## TABLE OF AUTHORITIES

STATEMENT OF FACTS .......................................... 2

ARGUMENT .................................................. 10

I. The Statute Of Limitations Is Strictly Construed ... 11

II. The Claim Accrues When Plaintiff Is Aggrieved ...... 13

III. Claim Accrued When Lockheed Martin Was Awarded The Contracts ........................................ 19

IV. Accrual Suspension Rule Does Not Apply ............. 25

V. Equitable Tolling Does Not Apply To 28 U.S.C. § 2501 ......................................... 32

VI. Even If Equitable Tolling Could Apply To 28 U.S.C. § 2501, It Should Not Be Applied To L-3's Claim ... 34

CONCLUSION ................................................ 35

CASES

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) .................... 13, 17

Art Center School v. United States,
136 Ct. Cl. 218,
142 F. Supp. 916 (1956) ............................ 30

Bailey v. West,
160 F.3d 1360 (Fed. Cir. 1998) ..................... 34

Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. Of Cal., Inc.,
522 U.S. 192 (1997) ................................ 15

Braude v. United States,
218 Ct. Cl. 270,
585 F.2d 1049 (1978) ........................... 29, 31

Brice v. Sec'y of Health and Human Servs.,
240 F.3d 1367 (Fed. Cir.), cert. denied,
Brice v. Thompson, 534 U.S. 1040 (2001) ............ 32

Brighton Village Assoc. v. United States,
52 F.3d 1056 (Fed. Cir. 1995) ...................... 17

Brown Park Estates-Fairfield Dev. Co. v. United States,
127 F.3d 1449 (Fed. Cir. 1997) ..................... 13

Caguas Fed. Sav. Bank v. United States,
215 F.3d 1304 (Fed. Cir.) cert. denied,
531 U.S. 1070 (2001) ............................... 13

Catawba Indian Tribe of S.C. v. United States,
982 F.2d 1564 (Fed. Cir.), cert. denied,
509 U.S. 1177 (1993) ............................... 14

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993), cert. denied,
512 U.S. 1235 (1994) ................................ 1

Chambers v. United States,
417 F.3d 1218 (Fed. Cir. 2005) ................. 16, 17

Chase Securities Corp. v. Donaldson,
325 U.S. 304, reh. denied,
325 U.S. 896 (1945) .................................... 14

Chevron U.S.A. v. United States,
923 F.2d 830 (Fed. Cir.), cert. denied,
502 U.S. 855 (1991), cert. denied,
507 U.S. 910 (1993) .................................... 14

Computervision Corp. v. United States,
445 F.3d 1355 (Fed. Cir. 2006) .......................... 32

Crown Coat Front Co. v. United States,
386 U.S. 503 (1967) .................................... 13

Cupey Bajo Nursing Home, Inc. v. United States,
23 Cl. Ct. 406 (1991) .................................. 1

Fallini v. United States,
56 F.3d 1378 (Fed. Cir. 1995) ....................... 11, 23

Franconia Associates v. United States,
536 U.S. 129 (2002) .................................... 17

Frazer v. United States,
288 F.3d 1347 (Fed. Cir. 2002) .................. 12, 31, 32

Goodrich v. United States,
434 F.3d 1929 (Fed. Cir. 2006) .......................... 15

Graham Co. Soil & Water Conservation District v. United States,
545 U.S. 409 (2005) .................................... 23

Hair v. United States,
350 F.3d 1253 (Fed. Cir. 2003) .......................... 15

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990) ....................... 13, 16

Holloway v. United States,
60 Fed. Cl. 254 (2004), aff'd,
143 Fed. Appx. 313 (Fed. Cir. 2005) ..................... 33

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) .......................... 12

Idium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985), cert. denied,
479 U.S. 820 (1986) .......................................... 1

Irwin v. Department of Veterans Affairs,
498 U.S. 89 (1990) .............................. 12, 31, 34

Japanese War Notes Claimants Assoc. v. United States,
178 Ct. Cl. 630,
373 F.2d 356, cert. denied,
389 U.S. 971 (1968) .............................. 25, 30, 31

Kendall v. United States,
107 U.S. 123 (1883) ........................................ 11

MacLean v. United States,
67 Fed. Cl. 14 (2005) ................................ 16, 34

Maniere v. United States,
31 Fed. Cl. 410 (1994) .......................................... 1

Manufacturers Aircraft Ass'n v. United States,
77 Ct. Cl. 481 (1933), cert. denied,
291 U.S. 667 (1934) ........................................ 17

Marcinkowsky v. United States,
206 F.3d 1419 (Fed. Cir. 2000) .............................. 33

Martinez v. United States,
333 F.3d 1295 (Fed. Cir.), cert. denied,
540 U.S. 1177 (2004) ................................. passim

McNutt v. General Motors Acceptance Corp. of Ind.,
298 U.S. 178 (1936) ........................................ 13

Nager Electric Co. v. United States,
177 Ct. Cl. 234,
368 F.2d 847 (1966) .................................. passim

Navajo Freight Lines, Inc. v. United States,
176 Ct. Cl. 1265 (1966) .................................... 31

Oceanic Steamship Co. v. United States,
165 Ct. Cl. 217 (1964) ...................................... 17

Parcel 49C Limited Partnership v. United States,
31 F.3d 1147 (Fed. Cir. 1994) .......................... 25

RHI Holdings, Inc. v. United States,
142 F.3d 1459 (Fed. Cir. 1998) ......................... 33

Rawlings v. Ray,
312 U.S. 96 (1941) ..................................... 15

Reiter v. Cooper,
507 U.S. 258 (1993) ................................ 15, 24

Resource Recycling Corp. v. United States,
56 Fed. Cl. 612 (2003) ................................. 19

Reynolds v. Army and Air Force Exchange Service,
846 F.2d 746 (Fed. Cir. 1988) ........................... 1

Richmond, Fredericksburg & Potomac R.R. v. United States,
945 F.2d 765 (4th Cir. 1991) ........................... 32

Rogers v. United States,
6 Cl. Ct. 829 (1984) ................................... 19

Rotella v. Wood,
528 U.S. 549 (2000) ..................... 20, 21, 22, 23, 26

Soriano v. United States,
352 U.S. 270 (1957) ................................ 11, 12

Stone Container Corp. v. United States,
229 F.3d 1345 (Fed. Cir. 2000), cert. denied,
532 U.S. 971 (2001) .................................... 32

Thomas v. United States,
125 Ct. Cl. 76 (1953) .................................. 30

TRW Inc. v. Andrews,
534 U.S. 19 (2001) ..................................... 24

Unexcelled Chemical Corp. V. United States,
345 U.S. 59 (1953) ..................................... 15

United States v. Beggerly,
524 U.S. 38 (1998) ..................................... 37

United States v. Brockamp,
519 U.S. 347 (1997) .................................... 12

United States v. Commodities Export Co.,
972 F.2d 1266 (Fed. Cir. 1992), cert. denied,
507 U.S. 910 (1993) ................................ 14, 15

United States v. Dalm,
494 U.S. 596 (1990) .................................... 32

United States v. John C. Grimberg Co.,
702 F.2d 1362 (Fed. Cir. 1983) ......................... 24

United States v. Kubrick,
444 U.S. 111 (1979) ........................ 14, 21, 22, 23

United States v. Lindsay,
346 U.S. 568 (1954) .................................... 15

United States v. Wardwell,
172 U.S. 48 (1898) ..................................... 11

Urie v. Thompson,
337 U.S. 163 (1949) .................................... 25

Welcker v. United States,
752 F.2d 1577 (Fed. Cir.), cert. denied,
474 U.S. 826 (1985) ............................ 24, 28, 29

Wells v. United States,
420 F.3d 1343 (Fed. Cir. 2005) ......................... 32

**STATUTES and REGULATIONS**

18 U.S.C. § 208(a) ........................................ 7

18 U.S.C. § 371 ........................................... 7

18 U.S.C. § 1962(c) .................................. 20, 21

26 U.S.C. § 6511 ......................................... 32

26 U.S.C. § 6532(a)(1) .................................... 33

28 U.S.C. § 1491 .................................... 12, 13, 31

28 U.S.C. § 1491(b) .................................... 20

28 U.S.C. § 1491(b)(1) .................................... 19

28 U.S.C. § 1491(b)(2) .................................... 19

28 U.S.C. § 2501 .................................... passim

31 U.S.C. § 3551 .................................... 30

48 C.F.R. § 15.308 .................................... 10

48 C.F.R. § 15.506 .................................... 3, 26, 27

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-396C<br>(Bid Protest)<br>(Judge Williams) |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| LOCKHEED MARTIN AERONAUTICS CO., | ) | |
| Intervenor. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court dismiss plaintiff's complaint as time-barred by the six-year statute of limitations, 28 U.S.C. § 2501.[1]

[1] A motion directed toward the Court's jurisdiction is properly styled a motion to dismiss, rather that a motion for summary judgment. Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 747 (Fed. Cir. 1988); Cupey Bajo Nursing Home, Inc. v. United States, 23 Cl. Ct. 406, 411-12 (1991) (motion for summary judgment based upon lack of jurisdiction treated as a motion to dismiss). In deciding a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), the Court may consider evidentiary matters outside the pleadings. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993), cert. denied, 512 U.S. 1235 (1994); Idium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986); Maniere v. United States, 31 Fed. Cl. 410, 413-14 (1994).

STATEMENT OF FACTS

1. On August 18, 1998, the United States Department of the Air Force ("Air Force") issued solicitation number F33657-98-R-0006 ("RFP"), for the Engineering and Manufacturing Development ("EMD") and Contractor Operated Supply Support ("COSS") phases of the C-5 Avionics Modernization Program ("AMP"). Compl. ¶ 2.[2] Raytheon E-Systems, Inc. ("Raytheon") and Lockheed Martin Aeronautical Systems, Inc. ("Lockheed Martin") were the only two contractors to submit proposals under the RFP. Compl. ¶ 3. The plaintiff, L-3 Communications Integrated Systems, L.P. ("L-3") is the successor in interest to Raytheon. Compl., Jurisdiction ¶.

2. On January 22, 1999, the Air Force awarded contract nos. F33657-98-C-0006 and F33657-98-C-0007 ("the contracts") under the RFP to Lockheed Martin. Compl. ¶ 5. By letter dated that same day, January 22, 1999, the Air Force advised Raytheon that the contracts for the C-5 AMP were awarded to Lockheed Martin, and that Raytheon could request a debriefing to learn the significant factors that affected the Air Force contract award decision. App. 1-2. Mrs. Darleen Druyun, the Principal Deputy Assistant Secretary of the Air Force for Acquisition, and senior service executive, was the agency source selection official, who selected Lockheed Martin for the award of the contracts. Compl. ¶¶ 6, 7.

---

[2] "Compl." refers to plaintiff's complaint filed May 16, 2006. "App." refers to the Joint Appendix filed by defendant. Pages 1-138 of the Joint Appendix were filed publicly. Pages 139-278 were filed under seal.

3. By letter dated January 25, 1999, Raytheon, in accordance with 48 C.F.R. § 15.506, requested the Air Force provide a debriefing of the C-5 AMP source selection, including the ratings for Lockheed Martin, the source selection decision document ("SSDD"), and the narratives for Lockheed Martin presented to the source selection authority during the decision briefing. App. 278.

4. On January 28, 1999, the Air Force provided a debriefing to Raytheon at its plant location. App. 275 (AF Memo for Record dated Feb. 4, 1999). The written materials provided to Raytheon at the debriefing consisted of the following: (1) copies of the Debriefing charts; (2) Mrs. Druyun's SSDD dated January 21, 1999; and (3) undated Proposal Analaysis Report ("PAR") prepared by the Air Force Source Selection Advisory Council ("SSAC"). App. 139-249; <u>see also</u> App. 275 (AF Memo for Record dated Feb. 4, 1999).

5. The debriefing charts given to Raytheon reflected the weaknesses and strengths that the Air Force evaluators gave to the two offerors, and demonstrate, in pertinent part, that Raytheon was advised of the following:

(a) [redacted]

[redacted]," App. 198; and

(b) [redacted]." App. 209.

6. Mrs. Druyun's unredacted SSDD that was shared with and given to Raytheon at the debriefing reflected, in pertinent part, the following:

[redacted]

. . .

[redacted]

[redacted]

[redacted]

App. 145, 147-48.

7. The PAR that was shared with and provided to Raytheon at the debriefing was "a report from the Source Selection Evaluation Team" to Mrs. Druyun that "reflect[ed] an integrated analysis of each offeror's proposal and the resulting government evaluation of these proposals." App. 139. The PAR gave a "graphic comparison of the evaluation factors for a side-by-side contrast of offerors." App. 139-42. The PAR also detailed the Source Selection Advisory Council's "comparative analysis" of the proposals by Lockheed Martin and Raytheon on the technical,

management, and cost evaluation factors. App. 142-43.

8. The Air Force Memorandum for Record for the debriefing conducted on January 28, 1999, reflects that Raytheon was advised, in part, of the following pertinent matters, and that Raytheon raised some of the following "issues/concerns:"

> . . . [redacted] . . . .
>
> . . .5(b) [redacted] . . . .
>
> . . .5(c) [redacted] . . . .
>
> 5(e). [redacted].
>
> . . .5(j) [redacted].
>
> . . .5(l) [redacted]
>
> . . .5(o) [redacted]

App. 276-77.

9. Some of the handwritten notes taken by Raytheon officials from the January 28, 1999, debriefing reflect, in part, the following:

"... [redacted] App. 251, 255 (p. 1 of Mr. Story notes);

"... [redacted]." App. 251, 255 (p. 1 of Mr. Story notes);

"SSA made decision. SSET did not." App. 263, 268 (p. 1 of Mr. Harp notes);

"... [redacted]." App. 262, 267 (p. 1 of Mr. Harp notes);

"... [redacted]." App.263, 268 (p. 2 of Mr. Harp notes); and

"... They verified that the SSA did change color & risk ratings." App. 265, 270 (p. 4 of Mr. Harp notes).

10. Mrs. Druyun retired from Federal civil service employment with the Air Force in November 2002. Compl. ¶ 6; App. 13.

11. On April 20, 2004, Mrs. Druyun entered a guilty plea to her participation in a criminal conspiracy, 18 U.S.C. § 371. App. 36-37, 72. Mrs. Druyun's guilty plea admitted that she had knowingly conspired with other persons to commit an offense against the United States by knowingly, intentionally, and willfully participate as a Government employee in a contract in which, to her knowledge, the Boeing Co., a company with whom she negotiated prospective future employment, had a financial interest, in violation of 18 U.S.C. §§ 208(a) and 216(a)(2).

App. 36-37, 72. The conspiracy existed from about September 23, 2002 through about November 5, 2002, and involved prospective employment discussions that took place between Mrs. Druyun, a Boeing Co. senior executive, and others, while Mrs. Druyun met with other Government officials and participated personally and substantially in discussions concerning the terms and condition of the KC 767A tanker lease from the Boeing Co. App. 15.

12. On October 1, 2004, a Supplemental Statement of Facts was filed in the criminal proceedings for Mrs. Druyun wherein she admitted to corruptly favor Boeing Co. in certain negotiations because of her employment negotiations and other favors provided to her by Boeing. The Government acquisitions with Boeing where Mrs. Druyun took actions that harmed the United States due to the "loss of her objectivity," included the following: the lease agreement for 100 Boeing KC767A tanker aircraft, NATO Airborne Early Warning and Control Program, C-130 AMP, and C-17 negotiations over contract clause H22. App. 109-113.

13. In November 2004, the Under Secretary of Defense for Acquisition, Technology, and Logistics, commissioned a study to review acquisition actions taken by Mrs. Druyun. Compl. ¶ 9; App. 117. As a result of that study, eight actions, including the two C-5 AMP contract awards to Lockheed Martin, were referred for review to the Department of Defense Inspector General ("DoD IG"). Compl. ¶ 9; App. 117.

14. On February 28, 2006, the DoD IG released report no. D-

2006-058, entitled "Source Selection Procedures for the C-5 Avionics Modernization Program." App. 114. The DoD IG report "identified two actions that 'appeared irregular and may not have been conducted in the best interest of the Government.' These actions were (1) the reassignment of the Source Selection Authority (SSA) responsibilities and (2) the proposal rating changes made by the Principal Deputy [Mrs. Druyun] in support of her source selection decision." App. 119-20.

15. The DoD IG report indicated the following specific irregularities with the award of the C-5 AMP contracts to Lockheed Martin:

(a) Air Force personnel did not adequately document the decision process in accordance with the Federal Acquisition Regulation ("FAR") Part 15 and Air Force FARS Appendix AA. Compl. ¶¶ 12, 17; App. 124.

(b) Inadequate support for the management, technical, and cost data evaluation ratings presented by the Air Force Advisory Council in its Proposal Analysis Report ("PAR"), such that the ratings could not be traced back to detailed analysis, reports, or meeting minutes, and the DoD IG was unable to validate the contract awards to Lockheed Martin. Compl. ¶ 16; App. 124.

(c) No support for delegation of source selection duties to Mrs. Druyun. Compl. ¶ 18; App. 124.

(d) A proposal for a training system upgrade by Lockheed Martin was noted by Mrs. Druyun in her source selection decision as "significant modification," but this modification was not previously identified by the program office as an objective of the C-5 AMP. Compl. ¶ 25; App. 124-25.

(e) Mrs. Druyun ignored performance/capability and risk proposal ratings presented by the Air Force Advisory Council, without sufficient justification for her decision. Mrs. Druyun changed ratings in the area of avionics quality/integration, software development, and

system management to favor Lockheed Martin without justification in her source selection decision. Also, Mrs. Druyun introduced new strengths for Lockheed Martin, and cited Raytheon for a weakness while other documents showed that Lockheed Martin had this same weakness. Compl. ¶¶ 22, 23; App. 125.

(f) The Air Force failed to provide adequate oversight of the source selection process. Compl. ¶ 26; App. 125.

16. On May 16, 2006, L-3 filed this action, seeking money damages for its bid and proposal preparation costs for the C-5 AMP in the amount of $2,583,000, and such other relief in the form of bid protest costs. Compl. ¶¶ 39, 40. On June 22, 2006, L-3 certified that "$1,514,944 [of its alleged bid preparation and proposal costs] have not [already] been recouped through overhead rates on cost-reimbursement and flexibly-priced contracts." L-3's complaint cites the DoD IG report dated February 28, 2006, and alleges that the Air Force award of the C-5 AMP contracts to Lockheed Martin violated 48 C.F.R. § 15.308 and other procurement regulations, compromised the integrity of the source selection, was arbitrary and capricious, in bad faith, lacked a reasonable basis, and breached the implied contract to treat proposals fairly and honestly. Compl. ¶¶ 33-38.

ARGUMENT

L-3's claim is barred by the Tucker Act's six-year statute of limitations, 28 U.S.C. § 2501, which states, in pertinent part, the following: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim

first accrues. . . ." As further explained herein, L-3's claim for bid preparation costs accrued on January 22, 1999 when the two contract were awarded to its competitor Lockheed Martin and when its predecessor in interest, Raytheon, was advised that it was the unsuccessful offeror for the C-5 AMP. In the alternative, the six-year statute of limitations runs from January 28, 1999, when Raytheon received a debriefing from the Air Force on the source selection evaluation process. Since L-3's complaint was filed on May 16, 2006, more than seven years after Raytheon was advised that it was the unsuccessful offeror and provided with the debriefing, L-3's complaint is time-barred by the six-year statute of limitations. 28 U.S.C. § 2501.

I. <u>The Statute Of Limitations Is Strictly Construed</u>

It has been settled since 1883 that, in creating the Court of Claims, Congress "gave the Government's consent to be sued therein only in certain classes of claims and that no others might be asserted against it, including 'claims which are declared barred if not asserted within the time limited by the statute.'" <u>Soriano v. United States</u>, 352 U.S. 270, 272 (1957), <u>citing</u> <u>Kendall v. United States</u>, 107 U.S. 123 (1883); <u>accord</u> <u>United States v. Wardwell</u>, 172 U.S. 48, 52 (1898)(statute of limitations is a jurisdictional limitation on the ability of the Court of Claims to hear the case). Also, Congress vested jurisdiction in the Court of Claims only as to those claims that meet the requirement of being filed "within six years after such

claim first accrues," unless the claimant is under a legal disability. Soriano, 352 U.S. at 272. Further, the Supreme Court held the claim to be jurisdictionally barred, saying that "Congress was entitled to assume that the limitation period it prescribed meant just that period and no more." Id. at 276.

This limitation still applies; Congress requires that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.

Because Congress set the six-year time limitation, section 2501 is an integral part of and condition upon the "government's waiver of sovereign immunity and, as such, must be strictly construed." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988); accord Irwin v. Department of Veterans Affairs, 498 U.S. 89, 94 (1990). Because it is an express limitation upon the waiver of sovereign immunity set forth in the Tucker Act, 28 U.S.C. § 1491, the statute of limitations is jurisdictional in nature; it can not be waived by a court or the parties. Frazer v. United States, 288 F.3d 1347, 1349 (Fed. Cir. 2002)("Section 2501 constitutes a jurisdictional limit on the authority of the Court of Federal Claims" and affirming the trial court's dismissal of plaintiffs' "complaint for lack of subject matter jurisdiction because they failed to file the complaint within the six-year statute of limitations");

Caguas Fed. Sav. Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir.) ("[i]n the Court of Federal Claims, the statute of limitations is jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)"), cert. denied, 531 U.S. 1070 (2001); Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1454 (Fed. Cir. 1997) ("we have stated that section 2501 is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity..."); Hart v. United States, 910 F.2d 815, 818 (Fed. Cir. 1990).

"The burden of establishing jurisdiction, including jurisdictional timeliness, must be carried by the" plaintiff. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998)(affirming trial court's dismissal of case on jurisdictional grounds due to plaintiff's failure to file within the statute of limitations), citing McNutt v. General Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936).

II. The Claim Accrues When Plaintiff Is Aggrieved

The words "cause of action first accrued" in a statute are to be "interpreted in light of the general purpose of the statute and of its other provisions and with due regard for those practical ends which are to be served by any limitation in time within which action must be brought." Crown Coat Front Co. v. United States, 386 U.S. 503, 517 (1967). Statute of limitations

bar stale claims, protect defendants from the disadvantages of lost records and witnesses, poor memories, and the like, and provide finality to disputes. United States v. Kubrick, 444 U.S. 111, 117 (1979); Chase Securities Corp. v. Donaldson, 325 U.S. 304, reh. denied, 325 U.S. 896 (1945).

A cause of action under the Tucker Act against the United States

> accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue for his money."

Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir.)(en banc), cert. denied, 540 U.S. 1177 (2004), quoting Nager Electric Co. v. United States, 177 Ct. Cl. 234, 368 F.2d 847, 851 (1966). Accord Catawba Indian Tribe of S.C. v. United States, 982 F.2d 1564, 1570 (Fed. Cir.), cert. denied, 509 U.S. 1177 (1993). Thus, "a cause of action accrues when all events necessary to state a claim have occurred." United States v. Commodities Export Co., 972 F.2d 1266, 1270 (Fed. Cir. 1992), cert. denied, 507 U.S. 910 (1993). Accord, Chevron U.S.A. v. United States, 923 F.2d 830, 834 (Fed. Cir.), cert. denied, 502 U.S. 855 (1991), cert. denied, 507 U.S. 910 (1993)).

Thus, the "proper focus for statute of limitations purposes is upon the time of the [defendant's] acts, not upon the time at which the consequences of the acts became most painful." Fallini v. United States, 56 F.3d 1378, 1383 (Fed. Cir. 1995), quoted in

Goodrich v. United States, 434 F.3d 1329, 1333 (Fed. Cir. 2006). See Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 65 (1953)(a cause of action generally accrues where there is a breach of a duty owed the plaintiff. It is the breach of duty, not the discovery, that is generally controlling.").

The Federal Circuit has applied this overarching principle and fixed bright-line tests for accrual of particular causes of action depending upon the time when "the plaintiff has a complete and present cause of action." Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. Of Cal., Inc., 522 U.S. 192, 201 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941)). "[U]ntil the plaintiff can file suit and obtain relief, a limitations period ordinarily does not commence." Bay Area Laundry, 522 U.S. at 201. For example, in Hair v. United States, 350 F.3d 1253 (Fed. Cir. 2003), the court explained:

> The basic rule is that the clock of a statute of limitations begins to run from the date the plaintiff's cause of action "accrues"; that is the term typically found in the statutes. See, e.g., 28 U.S.C. § 2501; 1 Corman, supra, § 7.4.1. The clock stops on the date that the plaintiff files his complaint in a court of proper jurisdiction. A cause of action "accrues" when the plaintiff has a complete and present cause of action. 1 Corman, supra, § 6.1. "The earliest opportunity for a complete and present cause of action is the moment when the plaintiff has suffered a legally recognizable harm at the hands of the defendant, such as the time of contract breach or commission of a tortious wrong." Id.

Id. at 1260. "In common parlance a right accrues when it comes into existence." Commodities Export Co., 972 F.2d at 1271 (quoting United States v. Lindsay, 346 U.S. 568, 569 (1954)). The normal meaning of "accrued" is that an action accrues "on the date a right to sue came into existence." Lindsay, 346 U.S. at 569; see also Reiter v. Cooper, 507 U.S. 258, 267 (1993) (declining to countenance the "odd result" that a Federal cause of action and the statute of limitations arise at different times "absen[t] . . . any such indication in the statute").

For example, for improper discharge cases, the Federal Circuit established a bright-line test that the plaintiff's claim accrues on the date of discharge. Martinez, 333 F.3d at 1313 ("The cause of action in Mr. Martinez's Tucker Act suit was for denial of money; that cause of action therefore accrued when he was separated from active duty and his monetary injury began"). Accord MacLean v. United States, 67 Fed. Cl. 14, 18 (2005) (cause of action for military back pay accrued upon date of separation from active duty).

Similarly, in military survivor benefit cases, the Federal Circuit has established a bright-line test that a cause of action accrues when a military member dies. Hart, 910 F.2d at 818 ("As the statute specifically states, the annuity became due and payable to the plaintiff the day after her husband's death. Therefore, on the day after Sergeant Hart's death, all events

fixing the government's liability to his widow had occurred.").[3]

Further, in contract cases, a claim for failure to pay money "first accrues on the date when payment becomes due and is wrongfully withheld in breach of contract." Oceanic Steamship Co. v. United States, 165 Ct. Cl. 217, 225 (1964). Thus, in the case of a breach of a contract, a cause of action generally accrues when the breach occurs. Alder Terrace, 161 F.3d at 1377; Brighton Village Assoc. v. United States, 52 F.3d 1056, 1060 (Fed. Cir. 1995); Manufacturers Aircraft Ass'n v. United States, 77 Ct. Cl. 481, 523 (1933), cert. denied, 291 U.S. 667 (1934).

Similarly, in Franconia Associates v. United States, 536 U.S. 129, 141 (2002), the Supreme Court interpreted accrual in 28 U.S.C. § 2501 applied the bright-line rule that a "cause of action for breach of contract accrues, and the statute of limitations begins to run, at the time of the breach." There, the petitioners had a contractual right to prepay their mortgages any time over the life of the loans, thereby gaining release from Federal restrictions on the use of their property. The Supreme

[3] Sometimes a plaintiff is required to pursue administrative action before bringing a lawsuit. For example, in disability retirement cases, a claim for disability retirement pay generally does not accrue until the appropriate military board finally denies such a claim or refuses to hear it. Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005). "Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability." Id. at 1224. In such cases, a board proceeding is "mandatory," because the court could not acquire jurisdiction until after a military board evaluates a service member's entitlement to a disability retirement in the first instance. Id. at 1225.

Court held that the point at which 28 U.S.C. § 2501 began to run depended upon when the petitioner tendered prepayment and the Government then dishonored its obligation to accept the tender and release its control over use of the property securing the loan, irregardless of an earlier anticipatory repudiation by the Government. Id. at 142. This was so because the failure of the Government "to perform at the time indicated for performance in the contract establishes an immediate breach." Id. at 142-43. Further, when the Government repudiates a future contractual obligation through, for example, issuance of legislation, "such a repudiation may ripen into a breach prior to the time of performance only if the promisee 'elects to treat it as such'" and brings suit. Id. at 143. The Supreme Court emphasized that its ruling "ensures that suit must be brought within a fixed period after the date of injury - in this case, no later than six years after the Government's refusal to accept prepayment in accord with the terms of the promissory notes." Id. at 147 n.10 (emphasis added).

In sum, accrual in 28 U.S.C. § 2501 is interpreted so as to provide a bright-line test that a cause of action accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue for his money." Martinez, 333 F.3d at

1303. At that point, the plaintiff has been injured and has a present right to sue for relief.

III. Claim Accrued When Lockheed Martin Was Awarded The Contracts

Here, all events that were needed to fix the Government's alleged liability occurred when Raytheon was not selected for the C-5 AMP, the contracts were awarded to Lockheed Martin, and Raytheon was advised that it was the unsuccessful offeror, all on January 22, 1999. At that time, Raytheon's claim for bid preparation costs accrued, and it could have filed suit against the United States. See Resource Recycling Corp. v. United States, 56 Fed. Cl. 612, 618 (2003); Rogers v. United States, 6 Cl. Ct. 829, 832-33 (1984).

The Tucker Act, which vests this Court with jurisdiction to entertain a claim for bid preparation costs, states the following:

> The Unites [sic] States Court of Federal Claims . . . shall have jurisdiction to render judgment on a action by an interested party objecting to solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award of a contract or any alleged violation of statute or regulation in connection with a proposed procurement. . . the United States Court of Federal Claims . . . shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).[4] No other statute affords relief to a

---

[4] 28 U.S.C. § 1491(b)(2) affords relief in bid protests, to "any relief that the court considers proper, including

disappointed bidder in the United States Court of Federal Claims. The Tucker Act's bid protest jurisdiction clearly states that the Court may entertain a claim by an interested person objecting to a solicitation for proposals, a proposed award of a contract, or any alleged violation of a procurement statute or regulation.

In January 1999, Raytheon was an interested person because it was the only other offeror for the C-5 AMP, and it was an aggrieved person when the contract awards were made to Lockheed Martin, and Raytheon was so-advised by the Air Force on January 22, 1999. On that date, L-3's claim, as successor in interest to Raytheon, accrued for purposes of 28 U.S.C. § 1491(b), because it had the right to file a cause of action objecting immediately to the award of the contracts to Lockheed Martin. Thus, the date for award of the contracts and notice to the unsuccessful offeror is the bright-line date of accrual of L-3's cause of action challenging the award of the contracts. On that date, all the events had occurred that were necessary to enable the protester to bring suit. Martinez, 333 F.3d at 1303.

This bright-line rule for accrual of an action protesting the award of a contract also is consistent with the Supreme Court's holding that even where a discovery of the injury accrual rule is applied, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella v.

---

declaratory and injunctive relief except that the monetary relief shall be limited to bid preparation and proposal costs."

Wood, 528 U.S. 549, 555 (2000).

In Rotella, the petitioner was aware of his injury at the latest in 1986, but was not aware of the other element of his claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), i.e., "a pattern of racketeering activity," 18 U.S.C. § 1962(c), before the running of the four-year limitations period. Rotella contended that the limitations period did not begin to run until the plaintiff discovers (or should have discovered) both the injury and the "pattern of racketeering activity." Id.

The Supreme Court left "open the possibility of a straight injury occurrence rule," but rejected Rotella's argument that the limitations period did not begin to run until the plaintiff discovered or should have discovered the pattern of racketeering activity. Id. at 1080, n.2. The Court emphasized that, even in medical malpractice cases, "where the cry for a discovery rule is loudest, we have been emphatic that the justification for a discovery rule does not extend beyond the injury." Id. at 555. The Court quoted from United States v. Kubrick, 444 U.S. 111 (1979), emphasizing that a limitations period begins to run and a cause of action accrues where a plaintiff has the critical facts that "he has been hurt and who has inflicted the injury":

> We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should

> receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

Kubrick, 444 U.S. at 122. Accordingly, the Supreme Court stated that the plaintiff need not have discovered negligence before the "statute starts running." Rotella, 528 U.S. at 556, citing Kubrick, 444 U.S. at 122. The Supreme Court also held that the fact that a RICO plaintiff had to make considerable effort before he can determine whether a pattern of racketeering is demonstrable did not make his circumstances any different. Rotella, 528 U.S. at 556.

The Supreme Court also noted that an "injury-focused accrual rule" was consistent with Congress's purpose of encouraging prompt litigation so as to achieve the "public benefit" of civil RICO "sooner." Id. at 558. In contrast, the triggering of a limitations period when the plaintiff learned or should have discovered a pattern of racketeering "would bar repose, prove a godsend to stale claims, and doom any hope of certainty in identifying potential liability." Id. at 559. It would, the Court held, "disserve the congressional objective of a civil

enforcement scheme. . ., aimed at rewarding the swift who undertake litigation in the public good." Id.

The Supreme Court's rationale in Rotella applies in interpreting accrual for purposes of 28 U.S.C. § 2501. Thus, even if a discovery rule applies in interpreting section 2501, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella, 528 U.S. at 555. Thus, a cause of action accrues once the plaintiff knows "he has been hurt" and that the Government "inflicted the injury." Id. at 555, quoting Kubrick, 444 U.S. at 122. A plaintiff armed with those essential facts is on notice to investigate and pursue its action. "A plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." Fallini, 56 F.3d at 1380.

In January 1999, Raytheon knew both its injury and who had inflicted that injury, i.e., the Government had awarded the disputed contracts to Lockheed Martin. Raytheon's claim was "complete and subject to suit at that time" and the statute of limitations started to run. Rotella, 528 U.S. at 559.

Under L-3's apparent theory, the limitations period would have started to run only in February 2006, when L-3 learned of the IG report, dated February 28, 2006. Also, under L-3's apparent theory, its cause of action was ripe and Raytheon was entitled to bring suit in January 1999, but the limitation's

clock did not begin to run until years later. As the Supreme Court stated, a statute of limitation normally will not be interpreted to allow such an aberration. Reiter, 507 U.S. at 267 ("While it is theoretically possible for a statute to create a cause of action that accrues at one time for purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute."); accord Graham Co. Soil & Water Conservation District v. United States, 545 U.S. 409, 125 S.Ct. 2444, 2451 (2005); TRW Inc. v. Andrews, 534 U.S. 19, 37 (2001)(Scalia, J., concurring) ("Absent other indication, a statute of limitations begins to run at the time the plaintiff has the right to apply to the court for relief").

L-3's notion of a delayed triggering of the statute of limitations also is contrary to Congress's intent that the bid protest procedure encourage prompt litigation so as to achieve its public benefits and the award of bid protest costs reward only those litigants who promptly bring such actions. S. Rep. No. 275, 97th Cong. 1st Sess. 23 (1981), reprinted in 1982 U.S.C.C.A.N. 11, 33 (1982)("in the vast majority of circumstances, the Government must be permitted to exercise its right to conduct business with those suppliers it selects and to do so in an expeditious manner"). Also see United States v. John

C. Grimberg Co., 702 F.2d 1362, 1372 (Fed. Cir. 1983)(the Court's equitable powers "should be exercised in a way which best limits judicial interference in contract procurement"); Parcel 49C Limited Partnership v. United States, 31 F.3d 1147, 1153 (Fed. Cir. 1994).

IV. The Accrual Suspension Rule Does Not Apply

The statute of limitations may be suspended "when an accrual date has been ascertained, but plaintiff does not know of his claim." Japanese War Notes Claimants Assoc. v. United States, 178 Ct. Cl. 630, 373 F.2d 356, 358-59, cert. denied, 389 U.S. 971 (1968). The accrual suspension rule is

> strictly and narrowly applied: "Plaintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date."

Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir.), cert. denied, 474 U.S. 826 (1985)(quoting Japanese War Notes Claimants Assoc., 373 F.2d at 359). See also Martinez, 333 F.3d at 1319.

Here, the United States neither concealed its acts so that Raytheon was unaware of its injury, nor was the injury "inherently unknowable" upon the accrual date - when the Air Force awarded the contracts to Lockheed Martin on January 22, 1999. Rather, Raytheon knew on January 22, 1999, that it had lost the award of the C-5 AMP contracts to Lockheed Martin, and its injury was not "inherently unknowable." App. 1-2.

Indeed, the principle case wherein a plaintiff's injury was held to be inherently unknowable is Urie v. Thompson, 337 U.S. 163 (1949), where a railroad worker was exposed for 30 years to air containing silica dust, culminating in silicosis which developed after his retirement. No specific point in time was "the date of injury inasmuch as the injurious consequences of the exposure [were] the product of a period of time." Id. at 170. The Supreme Court held that the plaintiff's claim did not accrue until the injury manifests itself and therefore was not barred by the statute of limitations in the Federal Employers' Liability Act ("FELA"). The Supreme Court thus adopted a discovery rule, under which the cause of action accrues on the date the worker first knew or should have known of his injury. Id. at 170. Unlike Urie, there are no special circumstances warranting application of a discovery here as Raytheon plainly was aware of its injury in January 1999. Further, even where a discovery accrual rule is applied, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella, 528 U.S. at 555.

Nor did the Air Force conceal the facts surrounding the award of the contract to Lockheed Martin. In accordance with 48 C.F.R. § 15.506, the Air Force gave a complete debriefing on the source selection process to Raytheon on January 28, 1999. At the debriefing, Raytheon was given extensive slides explaining the

evaluations given to each offeror, the source selection decision document, and the PAR. App. 139-249. A plain reading of the documents provided by the Air Force to Raytheon at the debriefing gave Raytheon full notice of the following events that are now complained about by L-3:

(a) Certain evaluated "weaknesses/risks" that the SSET gave Lockheed Martin were not considered as weaknesses by Mrs. Druyun; App. 145, 147-48, 198, 209. For example, [redacted]. Id. Also, [redacted]. Id.

(b) Mrs. Druyun "[redacted]. . ." App. 145 (SSDD).

(c) Mrs. Druyun concluded that Raytheon's rating was "[redacted]

[redacted]." App. 147 (SSDD).

Moreover, notes taken at the January 28, 1999 debriefing by Raytheon officials and the February 4, 1999 Air Force Memorandum for the Record confirm that Raytheon was told and fully appreciated that Mrs. Druyun, the "SSA did change color & risk ratings," and that she "could override SSET findings to present SSDD/PAR." App. 265, 270, 277 (AF Memorandum for Record, and Mr. Harp notes). Accordingly, Raytheon had information no later than January 28, 1999, addressing why it was not selected for the award of the C-5 AMP contracts, how Mrs. Druyun overrode and changed for both Lockheed Martin and Raytheon certain evaluations that had been given by the SSET, and how Mrs. Druyun based, at least part of, her source selection decision upon her alleged "personal knowledge."

In sum, there was nothing "inherently unknowable" about the injury allegedly suffered by Raytheon, and there was no act upon the part of the United States that covered-up or concealed the injury now complained about by Raytheon. Welcker, 752 F.2d at 1580.

Moreover, the DoD IG report dated February 28, 2006 about the C-5 AMP changes nothing to stay or suspend the accrual of L-3's claim. First, the alleged irregularities with the source selection process noted by the DoD IG are some of the same events

that were fully described by the Air Force to Raytheon at its debriefing. Compare, DoD IG report that Mrs. Druyun ignored ratings by Air Force advisory counsel and that she changed evaluations without justification, App. 124-25, with the debriefing slides given to Raytheon, Raytheon notes from the debriefing, and SSDD that fully advised Raytheon that Mrs. Druyun changed the evaluations based, in part, upon her own alleged "personal knowledge" and without any other support. App. 145, 147-48, 198, 209, 265, 270, 276-77.

Second, none of the other alleged irregularities found by the DoD IG are in the nature of events that reflect concealment upon the part of the United States or were inherently unknowable to Raytheon or L-3. For example, the alleged irregularity that the delegation to Mrs. Druyun of source selection duties was not supported is simply an irregularity that inadequate official documentation existed for Mrs. Druyun's designation as SSA. See, App. 124. This is also true for the alleged irregularities that the Air Force did not adequately document the acquisition decision process, and that there was purportedly inadequate support for the evaluation ratings given by the Air Force officials in the PAR, such that the DoD IG could not now validate the award decision. App. 124.

The other DoD IG finding that the Air Force failed to provide adequate oversight of the source selection process is a

basic finding or criticism of the Air Force that the agency failed to adequately supervise the acquisition, so that the acquisition may have been "unnecessarily vulnerable to manipulation" and "may not have been conducted in the best interest of the United States." App. 117, 122. Overall, the DoD IG reported its findings and recommendations so that steps or "controls over the process will provide the insight needed to reduce the likelihood of manipulation." App. 117.

Again, none of the findings by the DoD IG are acts or events that were concealed by the United States, or were "inherently unknowable" to Raytheon or L-3, so that the accrual of its claim was not suspended. Weckler, 752 F.2d at 1581 (claimant all along knew the real reason for his dismissal and believed the FBI had lied, so that the later release of official personnel file under the Privacy Act was inconsequential); Braude v. United States, 218 Ct. Cl. 270, 585 F.2d 1049 (1978)(later release of official documents under the Privacy Act was immaterial).

Even if the DoD IG report itself is viewed as indicating additional new evidence of irregularities in the C-5 AMP acquisition, the law finds that "ignorance of rights which should be known is not enough" to suspend accrual of a claim. Japanese War Notes Claimants Assoc., 178 Ct. Cl. at 634, 373 F.2d at 359, citing Art Center School v. United States, 136 Ct. Cl. 218, 227, 142 F. Supp. 916, 921 (1956); Thomas v. United States, 125 Ct.

Cl. 76, 80 (1953); Navajo Freight Lines, Inc. v. United States, 176 Ct. Cl. 1265 (1966).

Once Raytheon was "on inquiry that it has a potential claim, the statute can start to run." Japanese War Notes Claimants Assoc., 178 Ct. Cl. at 634, 373 F.2d at 359 (Court noted that "modern philosophy of pleading" reduced pleading requirements, and left to discovery "the opportunity to flesh out claims....").

In January 1999, Raytheon knew that it was the unsuccessful offeror for the C-5 AMP, and received an extensive debriefing that included access to and copies of the SSDD and PAR and numerous debriefing slides explaining the source selection evaluation. Raytheon then had available to it the bid protest procedures before the United States Comptroller General afforded by the Competition in Contracting Act, 31 U.S.C. §§ 3551-3556, and the bid protest jurisdiction of this Court and the United States District Courts afforded by the Tucker Act, 28 U.S.C. § 1491(b)(1).[5] Rather than pursue its injury, Raytheon did nothing, meaning its claim is now barred by the six-year statute of limitations. Braude, 218 Ct. Cl. at 278, 585 F.2d at 1054 ("just as plaintiff used the Privacy Act in 1974 . . ., she could have filed her suit here and availed herself of the broad discovery powers . . . within the time allowed by the statute of limitations").

---

[5] The bid protest jurisdiction of the United States District Courts sunset on January 1, 2001.

Clearly, Raytheon was aggrieved on January 22, 1999, and nothing has occurred that suspended the statute of limitations from running no later than January 28, 1999, when Raytheon received its debriefing on the source selection process.

V. Equitable Tolling Does Not Apply To 28 U.S.C. § 2501

The Federal Circuit has never held that this Court's statute of limitations, 28 U.S.C. § 2501, can be equitably tolled. Wells v. United States, 420 F.3d 1343, 1347 (Fed. Cir. 2005); Martinez, 333 F.3d at 1318; Frazer, 288 F.3d at 1352-53. The Supreme Court has held that a rebuttable presumption exists that a statute of limitations applicable to suits against the United States can be equitably tolled. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990); see also Frazer, 288 F.3d at 1352. That presumption is rebutted, however, if "the claims at issue are dissimilar to claims against private parties or . . . there is good reason to believe Congress did not want the equitable tolling doctrine to apply." Frazer, 288 F.3d at 1352 (citing United States v. Brockamp, 519 U.S. 347, 350 (1997)); see also United States v. Dalm, 494 U.S. 596, 608-10 (1990); Stone Container Corp. v. United States, 229 F.3d 1345, 1352-53 (Fed. Cir. 2000), cert. denied, 532 U.S. 971 (2001); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 769 (4th Cir. 1991).

With respect to 28 U.S.C. § 2501, congressional intent is

clear: equitable tolling is unavailable. By its terms, 28 U.S.C. § 2501 refers to "every claim" asserted in the Court of Federal Claims, except when the statute expressly so provides. 28 U.S.C. § 2501 (emphasis added). Moreover, the statute sets a separate three year limitations period for persons under a disability or beyond the seas when the claim accrues, as well as two other exceptions to the general rule. 28 U.S.C. § 2501. Because section 2501 "sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling,'" the court lacks authority to toll section 2501's limitations period. Brockamp, 519 U.S. at 351-52; see also Computervision Corp. v. United States, 445 F.3d 1355 (Fed. Cir. 2006)(tax statute of limitations, 26 U.S.C. § 6511, is not susceptible to equitable tolling); Brice v. Sec'y of Health and Human Servs., 240 F.3d 1367, 1373 (Fed. Cir.) ("When an Act includes specific exceptions to a limitations period, we are not inclined to create other exceptions not specified by Congress."), cert. denied, Brice v. Thompson, 534 U.S. 1040 (2001); Marcinkowsky v. United States, 206 F.3d 1419, 1421-22 (Fed. Cir. 2000) (no equitable tolling applied to a tax statute of limitations, 26 U.S.C. § 6532(a)(1)); RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1462 (Fed. Cir. 1998) (prescription of a method for extending the limitations period in the statute "strongly implies that there are no other exceptions to the

statutory period"). Cf. Bailey v. West, 160 F.3d 1360, 1365-66 (Fed. Cir. 1998) (finding equitable tolling in part because the statute did "not provide its own exceptions to the general rule" and because the limitations period was triggered by a fixed "mailing date" rather than when knowledge of a claim existed).

All of these factors clearly demonstrate Congress's intent to exempt 28 U.S.C. § 2501 from the possibility of equitable tolling. At least one judge on this Court has agreed that the application of equitable tolling to section 2501 is "perhaps doubtful." Holloway v. United States, 60 Fed. Cl. 254, 260, n. 12 (2004), aff'd, 143 Fed. Appx. 313 (Fed. Cir. 2005).[6]

## VI. Even If Equitable Tolling Could Apply To 28 U.S.C. § 2501, It Should Not Be Applied To L-3's Claim

While the Federal Circuit has declined to decide whether 28 U.S.C. § 2501 is subject to equitable tolling, equitable tolling does not apply in this case because L-3 "has not made a sufficient factual showing to invoke equitable tolling." Martinez, 333 F.3d at 1318. The Supreme Court has made clear that equitable tolling against the Federal government is a narrow doctrine, allowable, if at all, only where (1) "the claimant has actively pursued his judicial remedies by filing a defective

[6] The Federal Circuit's affirmance of Holloway came in an unpublished opinion, and thus may not be cited as precedent before that court and does not bind this Court. Fed. Cir. R. 47.6. Nevertheless, its analysis, casting doubt upon equitable tolling's application to section 2501, may prove helpful to this Court. See 143 Fed. Appx. at 315.

pleading during the statutory period," or (2) "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin, 498 U.S. at 458.

Neither factor applies here. L-3 does not claim to have filed a defective pleading during the statutory period. L-3 also does not claim to have been induced or tricked by the Government's misconduct into allowing the filing deadline to pass.

Moreover, Raytheon received an Air Force debriefing on January 28, 1999 of the source selection process, was afforded access to the agency source selection decision and evaluation results, and declined to timely pursue its injury. See discussion above pp. 3-7, 26-29. Also see MacLean, 67 Fed. Cl. at 17 (Court refused to apply equitable tolling because plaintiff's receipt of "sounder support" did not warrant application of equitable tolling).

## CONCLUSION

For these reasons, plaintiff's claim for bid preparation costs is barred by the six-year statute of limitations, and should be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney
Department of Air Force
Arlington, VA

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor, 1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

June 30, 2006

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 30th day of June 2006, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

s/Domenique Kirchner