AGREED-UPON COPY FOR RELEASE
MAY BE MADE PUBLIC

No. 06-396C
(Bid Protest)
(Judge Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

LOCKHEED MARTIN AERONAUTICS CO.,

Intervenor.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor, 1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney
Department of Air Force
Arlington, VA

August 10, 2006

TABLE OF CONTENTS

ARGUMENT .......... 2

I. Plaintiff Possesses The Burden Of Proof Of Demonstrating That Its Cause Of Action "Is Filed Within Six Years After Such Claim First Accrues" .......... 2

II. L-3's Claim Accrued When The Contracts Were Awarded To Lockheed Martin .......... 7

III. Equitable Tolling Does Not Apply Here To Toll The Six-Year Statute Of Limitations .......... 14

IV. The Accrual Of L-3's Claim Was Not Suspended .......... 18

CONCLUSION .......... 20

## TABLE OF AUTHORITIES

### CASES


Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) .................................................. 6

Applegate v. United States,
25 F.3d 1579 (Fed. Cir. 1994) .................................................. 10

Ariadne Financial Services Pty., Ltd v. United States,
133 F.3d 874 (Fed. Cir. 1998) .................................................. 6, 7

Bailey v. West,
160 F.3d 1360 (Fed. Cir. 1998) .................................................. 16

Barrett v. Principi,
363 F.3d 1316 (Fed. Cir. 2004) .................................................. 17, 18

Brice v. Sec'y of Health and Human Servs.,
240 F.3d 1367 (Fed. Cir.), cert. denied,
534 U.S. 1040 (2001) .................................................. 15

Catawba Indian Tribe of S.C. v. United States,
982 F.2d 1564 (Fed. Cir.), cert. denied,
509 U.S. 1177 (1993) .................................................. 8

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir.), cert. denied,
512 U.S. 1235 (1994) .................................................. 3, 4

Chevron U.S.A. v. United States,
923 F.2d 830 (Fed. Cir.), cert. denied,
502 U.S. 855 (1991), cert. denied,
507 U.S. 910 (1993) .................................................. 8

Computervision Corp. v. United States,
445 F.3d 1355 (Fed. Cir. 2006) .................................................. 15

Day v. McDonough,
126 S.Ct. 1675 (2006) .................................................. 6

Fallini v. United States,
56 F.3d 1378 (Fed. Cir. 1995) .................................................. 8, 9

Franconia Associates v. United States,
536 U.S. 129 (2002) .......... 7, 10

Frazer v. United States,
288 F.3d 1347 (Fed. Cir. 2002) .......... 6, 14, 15

Goodrich v. United States,
434 F.3d 1329 (Fed. Cir. 2006) .......... 3, 8

Grass Valley Terrace v. United States,
69 Fed. Cl. 341 (2005) .......... 5, 7

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) .......... 6

Idium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir.), cert. denied,
479 U.S. 820 (1986) .......... 3

Irwin v. Dep't of Veterans Affairs,
498 U.S. 89 (1990) .......... 15, 16, 18

Japanese War Notes Claimants Assoc. v. United States,
178 Ct. Cl. 63,
373 F.2d at 356, cert. denied,
389 U.S. 971 (1968) .......... 19, 20

John R. Sand & Gravel Co. v. United States,
2006 WL 2267100 (Fed. Cir. Aug 9, 2006) .......... 3, 6

Kendall v. United States,
107 U.S. 123 (1883) .......... 6

MacLean v. United States,
67 Fed. Cl. 14 (2005) .......... 4, 18

MacLean v. United States,
2006 WL 1897047 (Fed. Cir. July 12, 2006) .......... passim

Martinez v. United States,
333 F.3d 1295 (Fed. Cir.), cert. denied,
540 U.S. 1177 (2004) .......... passim

Moyer v. United States,
190 F.3d 1314 (Fed. Cir. 1999) ........ 4

Mulholland v. United States,
175 Ct. Cl. 832,
361 F.2d 237 (1966) ........ 3

Nager Electric Co. v. United States,
177 Ct. Cl. 234,
368 F.2d 847 (1966) ........ 8

Northwest Louisiana Fish & Game Preserve Comm'n v. United States,
446 F.3d 1285 (Fed. Cir. 2006) ........ 9, 10

Planning Research Corp. v. United States,
4 Cl. Ct. 283 (1983) ........ 13

Pratt v. United States,
50 Fed. Cl. 469 (2001) ........ 9, 10

Reynolds v. Army and Air Force Exchange Service,
846 F.2d 746 (Fed. Cir. 1988) ........ 3

Rotella v. Wood,
528 U.S. 549 (2000) ........ 8, 9, 10

Scheur v. Rhodes,
416 U.S. 232 (1974) ........ 4

Soriano v. United States,
352 U.S. 270 (1957) ........ 6

Stone Container Corp. v. United States,
229 F.3d 1345 (Fed. Cir. 2000) ........ 20

United States v. Cocoa Berkau, Inc.,
990 F.2d 610 (Fed. Cir. 1993) ........ 20

United States v.Brockamp,
519 U.S. 347 (1997) ........ 15

United States v. Commodities Export Co.,
972 F.2d 1266 (Fed. Cir. 1992), cert. denied,
507 U.S. 910 (1993) ........ 8

United States v. Dalm,
494 U.S. 596 (1990) ........ 15

United States v. Dickinson,
331 U.S. 745 (1947) ........ 10

United States v. John C. Grimberg Co.,
702 F.2d 1362 (Fed. Cir. 1983) ........ 18

United States v. Kubrick,
444 U.S. 111 (1979) ........ 9

United States v. Wardwell,
172 U.S. 48 (1898) ........ 6

Welcker v. United States,
752 F.2d 1577 (Fed. Cir.), cert. denied,
474 U.S. 826 (1985) ........ 19

Wells v. United States,
420 F.3d 1343 (Fed. Cir. 2005) ........ 14

## STATUTES

5 U.S.C. § 706, L-3 ........ 14

26 U.S.C. § 6511 ........ 15

28 U.S.C. § 1491 ........ 7

28 U.S.C. § 1491(b)(1) ........ 8, 10, 11

28 U.S.C. § 2244(d)(1)(A) ........ 6

28 U.S.C. § 2501 ........ passim

28 U.S.C. § 2508 ........ 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-396C |
| | ) | (Bid Protest) |
| THE UNITED STATES, | ) | (Judge Williams) |
| Defendant, | ) | |
| and | ) | |
| LOCKHEED MARTIN AERONAUTICS COMPANY, | ) | |
| Intervenor. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S AND INTERVENOR'S MOTIONS TO DISMISS

In our moving brief, the United States demonstrated that plaintiff's claim was barred by the six-year statute of limitations, 28 U.S.C. § 2501. We demonstrated that plaintiff's claim accrued on January 22, 1999, when its predecessor in interest, Raytheon E-Systems, Inc. ("Raytheon"), was advised by the Department of the Air Force ("Air Force") that it had awarded the C-5 Avionics Modernization Program ("AMP") contracts to Lockheed Martin Aeronautical Systems, Inc. ("Lockheed Martin"); or, at the latest, that the plaintiff's claim accrued on January 28, 1999, when Raytheon received a complete debriefing from the Air Force that included an extensive number of charts with detailed evaluation information, the Source Selection Decision Document ("SSDD"), and the Proposal Analysis Report ("PAR"). We also demonstrated how the accrual of the plaintiff's claim was not suspended, and how equitable tolling could not apply to 28 U.S.C. § 2501, and, further, even if it did apply, the facts of this case are insufficient to toll

the application of the six-year statute of limitations of 28 U.S.C. § 2501.

L-3 Communications Integrated Systems, L.P., ("L-3"), contends that (1) the United States has the burden of proof because our motion is allegedly a motion to dismiss for failure to state a claim - not a motion to dismiss for lack of jurisdiction, (2) L-3's claim did not accrue until it discovered Mrs. Druyun's alleged bias which resulted in her manipulating the evaluations to favor Lockheed Martin, (3) the six-year statute of limitations should be tolled because L-3 was "induced to believe that the Government acted properly in the evaluation process," and (4) the accrual of its claim was suspended because "[i]t could not have known when the contract was awarded to Lockheed Martin that Darleen Druyun manipulated that process." Pl. Br. 11, 13.

L-3 is incorrect because its claim accrued on January 22, 1999, when it became aggrieved as the Air Force awarded the C-5 AMP contracts to Lockheed Martin. Moreover, the accrual of the claim was not suspended because the Air Force's debriefing on January 28, 1999, gave Raytheon ample knowledge of how the Air Force made its contract award decision, including how Mrs. Druyun had changed, or allegedly "manipulated," the evaluations to support her award decision to Lockheed Martin. Likewise, equitable tolling does not apply to 28 U.S.C. § 2501, and, even if equitable tolling could apply, the Air Force debriefing to Raytheon gave it ample knowledge and keen insight into the Air Force's evaluation process and contract award decision-making process that L-3 now contends was "manipulated," so that the six-year statute of limitations was not tolled.

## ARGUMENT

### I. Plaintiff Possesses The Burden Of Proof Of Demonstrating That Its Cause Of Action "Is Filed Within Six Years After Such Claim First Accrues"

As noted in footnote 1 on page 1 of our motion, a motion directed towards the plaintiff's

failure to meet the six-year statute of limitations of 28 U.S.C. § 2501 is properly brought as a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). John R. Sand & Gravel Co. v. United States, 2006 WL 2267100 (Fed. Cir. Aug. 9, 2006); Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 747 (Fed. Cir. 1988). For example, in Mulholland v. United States, 175 Ct. Cl. 832, 361 F.2d 237 (1966), the Court of Claims dismissed a contractor's claim because it was barred by the six-year statute of limitations, 28 U.S.C. § 2501. The Government had filed a counterclaim against the contractor pursuant to 28 U.S.C. § 2508. The Court of Claims held:

> the successful invocation by the defendant of the statute of limitations against the plaintiff's claim requires the court to dismiss the defendant's counterclaim along with the plaintiff's petition.

Id. at 244-45. The Court of Claims further ruled that "where the United States has asserted in this court a counterclaim against a plaintiff and the plaintiff's claim is rejected because of a lack of jurisdiction, the counterclaim must be dismissed along with the plaintiff's petition, without regard to the merits of the counterclaim." Id. at 245. Thus, section 2501 is clearly a jurisdictional requirement. Id.

In deciding a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), the Court may consider evidentiary matters outside the pleadings. Goodrich v. United States, 434 F.3d 1329, 1332 n.3 (Fed. Cir. 2006); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir.), cert. denied, 512 U.S. 1235 (1994); Idium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir.), cert. denied, 479 U.S. 820 (1986).

Pursuant to a Rule 12(b)(1) motion challenge to the Court's subject matter jurisdiction, the trial court may consider all relevant evidence necessary to resolve any disputes regarding the truth of the jurisdictional facts alleged in the complaint. Goodrich, 434 F.3d at 1332 n.3

(deciding jurisdictional issue of whether claim was filed within six years of its accrual date based in part upon the content of an Environmental Impact Statement); Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) (trial court properly considered evidence to determine alleged involuntariness of dismissal from military service).

This principle was fully explained in Cedars-Sinai Med. Ctr., where the Federal Circuit ruled that

> [i]f a Rule 12(b)(1) motion simply challenges the court's subject matter jurisdiction based upon the sufficiency of the pleading's allegations — that is, the movant presents a 'facial' attack on the pleading -- then those allegations are taken as true and construed in the light most favorable to the complainant.

11 F.3d at 1583, citing Scheur v. Rhodes, 416 U.S. 232, 236 (1974)(case dismissed upon facial attack on the complaint, without consideration of any extrinsic evidence). However, the Federal Circuit also ruled that, if the Rule 12(b)(1) motion challenges the factual basis for the court's jurisdiction, controverted jurisdictional allegations are in dispute and subject to fact-finding. 11 F.3d at 1584. Under these circumstances, the non-moving party (or plaintiff) still has the burden to demonstrate the facts that establish its allegations that the court possesses jurisdiction. Id.

Accordingly, L-3 is in error in suggesting that our motion to dismiss for lack of jurisdiction should be treated as a motion to dismiss for failure to state a claim under Rule 12(b)(6) and, therefore, the United States bears the burden of proof. See, Pl. Br. 4-5. As this Court found in MacLean v. United States, 67 Fed. Cl. 14, 17-18 (2005), the six-year statute of limitations provided in 28 U.S.C. § 2501 is a jurisdictional requirement for the waiver of the Government's sovereign immunity, the statute must be strictly construed, and "the plaintiff bears the burden of proof of establishing jurisdiction by a preponderance of the evidence."

Indeed, L-3 fails to even mention the Federal Circuit's recent affirmance of this Court's

decision. MacLean v. United States, 2006 WL 1897047 (Fed. Cir. July 12, 2006). There, the Federal Circuit affirmed both this Court's dismissal of plaintiff's suit for lack of jurisdiction because it was barred by the statute of limitation, and this Court's rationale for the decision. The Federal Circuit held that the plaintiff service member's claim accrued upon the date that he was discharged and his pay and allowances ended. The Federal Circuit also held that the running of the statute of limitations was not tolled by the service member's filing of proceedings in the military courts. The six-year statute of limitations had already run before the service member filed such proceedings, and "tolling cannot be applied retroactively to extend a limitations period that has already expired before the tolling event occurs." 2006 WL 1897047 at *2.

In MacLean, the Federal Circuit also rejected the service member's contention that the statute of limitations should be equitably tolled because the Government had concealed essential evidence from him, including evidence supporting the contention that his commanding officer was personally biased against him. The Federal Circuit adopted and quoted this Court's rationale that MacLean "was fully aware of the injury he had suffered at the time he was separated from active duty," and "[t]he fact that he had sounder support for his claim at that point, [in 2002, after receiving documentary evidence of his success in his complaint of wrongs] however, is not a sufficient basis to establish equitable tolling." 2006 WL 1897047 at *5.

In the face of clear Federal Circuit law, L-3 instead relies upon the decision in Grass Valley Terrace v. United States, 69 Fed. Cl. 341, 345-47 (2005). There, Chief Judge Damich stated that a motion to dismiss a claim filed beyond the six-year accrual date of 28 U.S.C. § 2501 does not raise a jurisdictional question, but instead "the issue of whether Plaintiffs have filed their claims outside of the limitations period is an issue to be tested by a motion to dismiss for failure to state a claim" and the Government bears the burden of proof. Id. That decision is

contrary to clear precedent and in error.

As we established in our moving brief, Def. Br. 11-13, it has been settled since 1883 that, in creating the Court of Claims, Congress "gave the Government's consent to be sued therein only in certain classes of claims and that no others might be asserted against it, including 'claims which are declared barred if not asserted within the time limited by the statute.'" Soriano v. United States, 352 U.S. 270, 272 (1957), citing Kendall v. United States, 107 U.S. 123 (1883); accord United States v. Wardwell, 172 U.S. 48, 52 (1898). This limitation still applies; Congress requires that "every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. E.g., Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)(section 2501 is an integral part of and condition upon the "government's waiver of sovereign immunity and, as such, must be strictly construed"); Frazer v. United States, 288 F.3d 1347, 1349 (Fed. Cir. 2002) ("Section 2501 constitutes a jurisdictional limit on the authority of the Court of Federal Claims" and affirming the trial court's dismissal of plaintiffs' "complaint for lack of subject matter jurisdiction because they failed to file the complaint within the six-year statute of limitations").[1]

Clearly, "the burden of establishing jurisdiction, including jurisdictional timeliness, must be carried by the" plaintiff. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998). Nothing in Ariadne Financial Services Pty., Ltd v. United States, 133 F.3d 874, 878 (Fed. Cir. 1998), as suggested by L-3, Pl. Br. 4, and relied, in part, upon in Grass Valley Terrace, 69 Fed. Cl. at 347,

[1] L-3's citation to Day v. McDonough, 126 S.Ct. 1675, 1681 (2006), is inapposite because the Court was not interpreting 28 U.S.C. § 2501, but 28 U.S.C. § 2244(d)(1)(A) and d(2), provisions of the Antiterrorism and Effective Death Penalty Act of 1996, and how it applied to the district court's authority to dismiss as untimely a state prisoner's petition for a writ of habeas corpus. John R. Sand & Gravel Co., 2006 WL 2267100 at *8.

supports the notion that the United States carries the burden of proof on a motion to dismiss for lack of jurisdiction because the plaintiff's claim is time-barred by 28 U.S.C. § 2501. Indeed, in Ariadne Financial Services, 133 F.3d at 878, the Federal Circuit clearly stated that "Ariadne's untimeliness can, however, bar its eligibility to invoke that jurisdiction" of the Court of Federal Claims. Accordingly, L-3 bears the burden of proof to establish facts that would demonstrate that its claim is not time-barred by 28 U.S.C. § 2501.

II. L-3's Claim Accrued When The Contracts Were Awarded To Lockheed Martin

L-3 suggests that its claim "grounded in Darleen Druyun's manipulation of the procurement process" did not accrue until it discovered on October 1, 2004, "at the earliest," that Mrs. Druyun had "improperly manipulated the procurement process to play favorites." Pl. Br. 6. At other times, L-3 suggests that its cause of action did not accrue until February 28, 2006, when the Department of Defense Inspector General ("DoD IG") released its report on the source selection procedures for the C-5 AMP program. Pl. Br. 8 ("discovery of the tainted C-5 AMP procurement directly resulted from the Inspector General's investigation"). Both views of L-3 are incorrect because L-3's bid protest action accrued in accordance with a "bright-line" rule, i.e., "within a fixed period after the date of injury," Franconia Associates v. United States, 536 U.S. 129, 141 (2002), and the date of injury was when Raytheon was aggrieved and learned on January 22, 1999 that it had lost the C-5 AMP contract awards to Lockheed Martin.

As we demonstrated in our moving brief, Def. Br. 14-18, a cause of action under the Tucker Act, 28 U.S.C. § 1491,

> accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue for money."

Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir.)(en banc), cert. denied, 540 U.S. 1177

(2004), quoting Nager Electric Co. v. United States, 177 Ct. Cl. 234, 368 F.2d 847, 851 (1966). Accord Catawba Indian Tribe of S.C. v. United States, 982 F.2d 1564, 1570 (Fed. Cir.), cert. denied, 509 U.S. 1177 (1993).

L-3 mistakenly posits that "[i]t is far too simplistic to argue that L-3's injury was the award of the C-5 AMP contract to Lockheed," Pl. Br. 7, and asserts that its claim did not accrue until it learned from the "startling confession in October 2004" by Mrs. Druyun, and the DoD IG report dated February 28, 2006, that it had been injured and targeted as a disappointed bidder by the taint of Mrs. Druyun's manipulation of evaluations. Pl. Br. 8.

The defect in L-3's argument is that the Tucker Act fixes the accrual date in a bid protest action upon the date of the contract award because, upon that date, all the events have occurred that were necessary to enable the protestor to bring suit. 28 U.S.C. § 1491(b)(1). Martinez, 333 F.3d at 1303. Thus, "a cause of action accrues when all events necessary to state a claim have occurred." United States v. Commodities Export Co., 972 F.2d 1266, 1270 (Fed. Cir. 1992), cert. denied, 507 U.S. 910 (1993); accord, Chevron U.S.A. v. United States, 923 F.2d 830, 834 (Fed. Cir.), cert. denied, 502 U.S. 855 (1991), cert. denied, 507 U.S. 910 (1993). The accrual date is determined by focusing upon "the time of the defendant's acts, not upon the time at which the consequences of the acts become most painful." Goodrich, 434 F.3d at 1333, quoting Fallini v. United States, 56 F.3d 1378, 1383 (Fed. Cir. 1995).

Further, as we demonstrated in our moving brief, Def. Br. 20-23, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella v. Wood, 528 U.S. 549, 555 (2000) (RICO civil action accrued when injury was discovered, or should have been discovered, and not upon discovery of both the injury and the pattern of racketeering activity). Just as in Rotella, Raytheon knew on January 22, 1999, that it had been injured when it learned that the Air Force had

awarded the C-5 AMP contracts to Lockheed Martin, and the later "startling confession" of Mrs. Druyun in October 2004 and the report of the DoD IG in February 2006 do not trigger the accrual of L-3's claim.

Further, L-3 is in error in contending that, under Rotella, 528 U.S. at 555, L-3 first discovered its injury as a result of Mrs. "Druyun's October 2004 confessions" and the DoD IG's report on the C-5 AMP procurement. Pl. Br. 8. In that case, the Supreme Court explicitly held that the limitations period began to run and a cause of action accrued when a plaintiff has the critical facts that "he has been hurt and who has inflicted the injury" and that the plaintiff need not have discovered negligence before "the statute starts running." Rotella, 528 U.S. at 556, citing United States v. Kubrick, 444 U.S. 111, 122 (1979). Thus, even if a discovery rule applies in interpreting section 2501, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." Rotella, 528 U.S. at 555. "A plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." Fallini, 56 F.3d at 1380. For example, a plaintiff need not have to possess information that a decision maker is biased, or allegedly biased, in order for its bid protest action to accrue. Similarly, a plaintiff need not possess information that a decision maker acted in bad faith in the procurement at issue in order for its cause of action to accrue.

The two cases cited by L-3, Northwest Louisiana Fish & Game Preserve Comm'n v. United States, 446 F.3d 1285, 1290 (Fed. Cir. 2006), and Pratt v. United States, 50 Fed. Cl. 469, 476-77 (2001), are inapposite. Pl. Br. 8. Northwest Louisiana Fish & Game involved a takings claim where the Federal Circuit found that the harm of aquatic growth manifested itself only gradually after 1994, and the overgrowth of hydrilla only "stabilized" in 1997, so that the accrual date of the taking was later than December 1994 in "unique cases involving Fifth Amendment takings by continuous physical processes." 446 F.3d at 1291-92, citing Applegate v. United States, 25 F.3d 1579, 1582

(Fed. Cir. 1994), and United States v. Dickinson, 331 U.S. 745, 749 (1947).

In Pratt, Judge Miller found that a claim accrued in a breach of contract suit for the Internal Revenue Service's ("IRS") conveyance of real property with defective title only when the "IRS allowed its allegedly negligent conduct to be known to [the] plaintiff," and it was only through the later production of documents by the IRS that the plaintiff learned that it was injured because the IRS had improperly levied and seized the real property that it had conveyed to the plaintiff. Notably, a title search or other due diligence by the plaintiff would not have revealed the plaintiff's injury of defective title at the time the property was conveyed by the Government to the plaintiff. Pratt, 50 Fed. Cl. at 477. In any event, the decision is contrary to the Supreme Court's subsequent holding in Franconia Associates, 536 U.S. at 141, that a "cause of action for breach of contract accrues, and the statute of limitations begins to run, at the time of the breach." Pratt is also contrary to the Supreme Court's ruling in Rotella, 528 U.S. at 556, that the plaintiff need not have discovered negligence before "the statute starts running."

Here, L-3 was aggrieved and knew of its injury when the contract awards that Raytheon had sought were made to Lockheed Martin on January 22, 1999, or at the latest on January 28, 1999, when Raytheon received its debriefing about the contract awards. A cause of action for a bid protest under the Tucker Act accrues when the contract is awarded to a competitor and the disappointed bidder learns of the contract award. At that time, all events have occurred that are necessary to enable the plaintiff to bring suit. 28 U.S.C. 1491(b)(1). Martinez, 333 F.3d at 1303.

L-3's comments that Air Force officials were "stunned" and surprised that Mrs. Druyun "manipulated" the award process for certain contracts, Pl. Br. 5-6, and that Mrs. Druyun was cited by the DoD IG for purportedly improperly favoring Lockheed Martin in the restructuring of the F-16 flight mission training simulator contract are irrelevant. Pl. Br. 6-7. Those alleged facts neither

trigger nor prevent the triggering of the accrual of a bid protest action by a disappointed bidder under 28 U.S.C. § 1491.

The L-3 contention that it could not have filed its 2006 bid protest in 1999 because it did not know in 1999 about the "manipulations" of evaluations by Mrs. Druyun is unsupported. Pl. Br. 9-10. Raytheon knew the factors to be used to evaluate the proposals as they were set forth in Section M of the request for proposals (RFP). App. 285-91, 294, 296. Raytheon was afforded a full, detailed debriefing by the Air Force on January 28, 1999, that fully appraised it that Mrs. Druyun had changed ratings for the offerors, App. 276-77, 270, and that "[redacted]." App. 251, 255. Raytheon also received Mrs. Druyun's unredacted SSDD that advised how she evaluated the Raytheon proposed schedule to [redacted], [redacted]. App. 145, 147-48. Raytheon's own notes and the comments it made at the debriefing indicate that it knew Mrs. Druyun had changed evaluations for questionable reasons, and, as such, the evaluations had been "manipulated" by her to support her award decision. App. 255 ("[redacted]"), 276-77 ("[redacted]."). L-3's brief conveniently ignores all of these matters that were brought to Raytheon's attention in January 1999.

In attempting to support its theory that L-3 could not have filed its 2006 bid protest in 1999 because it did not know then about the "manipulations" of evaluations by Mrs. Druyun, L-3 makes the assertion, without any citations, that "the C-5 AMP debriefing, SSDD and PAR given to L-3 ... did not inform L-3 that in her SSDD Druyun had ... increased certain of Lockheed's ratings above those

assigned in the PAR to Lockheed's proposal." Pl. Br. 3. There is no support for this contention.

As noted, the evaluation factors were detailed in the RFP. App. 285-91, 294, 296. The PAR stated that Lockheed's ratings for the Mission Capability factor were as follows: C.1 Avionics Quality/Integration subfactor, [redacted] proposal risk; C.2 Software Development subfactor, [redacted] proposal risk; C.4 Supportability subfactor, [redacted] proposal risk; and C.5 System Engineering/Program Management subfactor, [redacted] proposal risk. App. 140. For the C.3 Schedule Assessment subfactor, the SSET evaluated the estimated completion date for 100% AMP installation [redacted] for Lockheed Martin and [redacted] for Raytheon. App. 141.

In contrast, Mrs. Druyun's ratings for Lockheed for the Mission Capability factor, as stated in her SSDD, were as follows: C.1 Avionics Quality/Integration subfactor, [redacted] proposal risk; C.2 Software Development subfactor, [redacted] proposal risk; C.3 Schedule Assessment subfactor, a rating of [redacted] proposal risk; C.4 Supportability subfactor, [redacted] proposal risk; and C.5 System Engineering/Program Management subfactor, [redacted] proposal risk. App. 147-48, 175, 181.

The debriefing explicitly stated that [redacted]." App. 198. She changed the rating for this subfactor to [redacted] proposal risk from the PAR's rating of [redacted] proposal risk. For the System Engineering/Program Management subfactor, [redacted]

[redacted]" App. 209. She changed the rating for this subfactor to [redacted] proposal risk from the PAR's rating of [redacted] proposal risk. App. 147-48, 175, 181. Thus, it was plainly apparent from the debriefing that [redacted].

Moreover, as we noted in our moving brief, there is really nothing new in the DoD IG report dated February 28, 2006. Def. Br. 28–30. The alleged irregularities with the source selection process noted by the DoD IG are some of the same events that were fully described by the Air Force to Raytheon at its debriefing. Compare, DoD IG report that Mrs. Druyun ignored ratings by Air Force advisory counsel and that she changed evaluations without justification, App. 124-25, with the debriefing slides given to Raytheon, Raytheon notes from the debriefing, and SSDD that fully advised Raytheon that [redacted]. App. 145, 147-48, 198, 209, 265, 270, 276-77.

L-3 also contends that our argument is grounded in the false assumption that had L-3 filed a bid protest in January 1999 based on the knowledge it had then, it would have obtained the administrative record and been able to make the identical claims it makes in 2006. Pl. Br. 10. L-3's argument is without merit and, indeed, contrary to the rules of this Court. RCFC Appendix C, ¶ 21, provides that the Government will identify and provide the administrative record in a protest case and emphasizes that early production of relevant core documents may expedite final resolution of the case. The contrary statement in Planning Research Corp. v. United States, 4 Cl. Ct. 283 (1983), is incorrect.

Further, L-3 could have raised the same alleged irregularities in the procurement process in

1999. If L-3 wished to assert that any of the Air Force's assessments of its strengths and weaknesses, or of Lockheed Martin's strengths and weaknesses, were without a reasonable basis, and therefore arbitrary and capricious or an abuse of discretion in violation of 5 U.S.C. § 706, L-3 had six-years, or until January 2005, to file its lawsuit. Even under L-3's interpretation of the statute of limitations, L-3 is barred from contending that the various ratings made by Mrs. Druyun were arbitrary, capricious, or an abuse of discretion, because L-3 had full information about all of the ratings in January 1999.

L-3's allegation of bias or manipulation by Mrs. Druyun does not change its circumstances. L-3 asserts that the award decision is arbitrary, capricious, or an abuse of discretion because Mrs. Druyun was allegedly biased and manipulated the process by changing ratings without justification, attributing weaknesses to Raytheon without justification, and attributing strengths to Lockheed without justification. Pl. Compl. ¶ 27. As noted, the time for making such assertions has past. For all of these reasons, Raytheon was aggrieved, and its claim for bid preparation costs accrued on a "bright-line" basis on January 22, 1999, or at the latest on January 28, 1999, when Raytheon learned at a debriefing the reasons for the Air Force's contract awards to Lockheed Martin.

III. Equitable Tolling Does Not Apply Here To Toll The Six-Year Statute of Limitations

L-3 contends that the principle of equitable tolling should apply in this case to toll the six-year statute of limitations. L-3 believes that equitable tolling is appropriate because the acquisition process was allegedly manipulated by Mrs. Druyun, which was "unbeknownst even to the Air Force." Pl. Br. 11.

As we stated in our moving brief, the Federal Circuit has never held that 28 U.S.C. § 2501 can be equitably tolled. MacLean, 2006 WL 1897047 at *5; Wells v. United States, 420 F.3d 1343, 1347 (Fed. Cir. 2005); Martinez, 333 F.3d at 1318; Frazer, 288 F.3d at 1352-53. The Supreme Court has held that a rebuttable presumption exists that a statute of limitations applicable to suits against the

United States can be equitably tolled. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990); see also Frazer, 288 F.3d at 1352. That presumption is rebutted, however, if "the claims at issue are dissimilar to claims against private parties or ... there is good reason to believe Congress did not want the equitable tolling doctrine to apply." Frazer, 288 F.3d at 1352 (citing United States v. Brockamp, 519 U.S. 347, 350 (1997)); see also United States v. Dalm, 494 U.S. 596, 608-10 (1990).

With respect to 28 U.S.C. § 2501, the congressional intent is clear: equitable tolling is unavailable. At the outset, we note that a bid protest is very dissimilar from any cause of action that exists between private parties, indicating that equitable tolling should not exist for this particular claim. Also, somewhat similar to Brockamp, where the Supreme Court found that the sheer number of tax claims counseled against equitable tolling, Brockamp, 519 U.S. at 352-53, the very large number of Government contract awards again indicates that Congress did not intend equitable tolling to apply to this Court's six-year statute of limitations.

Further, by its terms, 28 U.S.C. § 2501 refers to "every claim" asserted in the Court of Federal Claims, except when the statute expressly so provides. 28 U.S.C. § 2501 (emphasis added). The statute sets a separate three-year limitations period for persons under a disability or beyond the seas when the claim accrues, as well as two other exceptions to the general rule. 28 U.S.C. § 2501. Because section 2501 "sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling,'" the court lacks authority to toll section 2501's limitations period. Brockamp, 519 U.S. at 351-52; see also Computervision Corp. v. United States, 445 F.3d 1355 (Fed. Cir. 2006)(tax statute of limitations, 26 U.S.C. § 6511, is not susceptible to equitable tolling); Brice v. Sec'y of Health and Human Servs., 240 F.3d 1367, 1373 (Fed. Cir.) ("When an Act includes specific exceptions to a limitations period, we are not inclined to create other exceptions not specified by Congress."), cert. denied, 534 U.S. 1040 (2001).

Even if the Court were to find that 28 U.S.C. § 2501 can be tolled, equitable tolling is not appropriate in this case. The Supreme Court has made clear that equitable tolling against the Federal government is a narrow doctrine, allowable, if at all, only where (1) "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or (2) "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin, 498 U.S. at 458.

Neither applies here. L-3 did not file a defective pleading during the statutory period. L-3 does not claim, and has not provided any evidence demonstrating, that the Government's misconduct induced or tricked it into allowing the filing deadline to pass. Instead, L-3, citing Bailey v. West, 160 F.3d 1360 (Fed. Cir. 1998), contends that the statute of limitations may be equitably tolled even in the absence of Government misconduct, and that the Air Force allegedly induced L-3 to believe that the Government acted properly in the evaluation process when Ms. Druyun was allegedly manipulating that process. Pl. Br. 11. There is no evidentiary support for L-3's bald assertion that the Air Force induced L-3 not to bring an action. At the debriefing, the Air Force provided extensive information about the procurement process, including detailing the various changes that Mrs. Druyun made and her rationales for those changes. App. 140, 145, 147-48, 175, 181, 198, 251, 255, 265, 270, 276-77. L-3 does not claim, or attempt to demonstrate, that any of the statements made by the Air Force at the debriefing were false.

Further, in MacLean, the Federal Circuit emphasized that, even if equitable tolling could apply to actions governed by 28 U.S.C. § 2501, it could not be applied where the plaintiff had failed to exercise reasonable diligence in discovering its claim. There, the Federal Circuit held that the condition that a plaintiff demonstrate "reasonable diligence on his part in discovering his claim" would restrict an equitable tolling claim, assuming that equitable tolling is available under 28 U.S.C.

§ 2501. 2006 WL 1897047 at *5.

L-3 did not exercise such reasonable diligence in bringing its action given its extensive knowledge as a result of the debriefing, including knowledge of the changes that were made by Mrs. Druyun in the evaluation process, [redacted]. App. 140, 145, 147-48, 175, 181, 198, 251, 255, 265, 270, 276-77. L-3 also knew or should have known that Mrs. Druyun pled guilty to a charge of participation in a criminal conspiracy in April 2004. App. 109-13. On October 1, 2004, before the six-year statute of limitations upon L-3's bid protest action had yet to expire, Mrs. Druyun made her various admissions of "loss of her objectivity," although none of them implicated the C-5 AMP contract awards. App. 109-113. Still, L-3, knowing all of Mrs. Druyun's actions and extensive involvement in the C-5 AMP procurement, did nothing to bring its bid protest lawsuit. Indeed, after Mrs. Druyun's October 2004 admissions, L-3 brought a bid protest action on November 10, 2004, before the GAO, challenging Mrs. Druyun's alleged bias in the C-130 AMP contract awards. Lockheed Martin Aeronautics Co., L-3 Communications Integrated Systems, BAE Integrated Defense Solutions, B-295401.1 (Feb. 24, 2005). Had L-3 similarly filed a complaint challenging the C-5 AMP contract awards in April 2004 or in October 2004, it would have been within the six-year statute of limitations period, which expired in January 2005.

In November 2004, the Government commissioned a study to review acquisition actions taken by Mrs. Druyun. Compl. ¶ 9; App. 117. Still, L-3 did not file a complaint challenging the award of the C-5 AMP contracts. Even if equitable tolling could apply to actions governed by 28 U.S.C. § 2501, it could not be properly applied in the factual circumstances of this case.

Also, in Barrett v. Principi, 363 F.3d 1316, 1320 (Fed. Cir. 2004), a case cited by L-3 (Pl. Br. 12), the Federal Circuit found that a 120-day limitation period for certain claims for veterans benefits

"with special beneficence from a grateful sovereign" was so short that it would be "ironic and inhumane to rigidly enforce" the applicable limitation period against a veteran with mental illness. Here, the time to file suit under the Tucker Act is relatively long (six years), the Government will experience prejudice as a result of the over six-year delay in bringing bid protests, and the Tucker Act does not reflect an "entire scheme [] imbued with special beneficence from a grateful sovereign." Id. See United States v. John C. Grimberg Co., 702 F.2d 1362, 1372 (Fed. Cir. 1983)(the court's equitable powers "should be exercised in a way which best limits judicial interference in contract procurement").

L-3's main contention that six-year limitation should be tolled because Mrs. Druyun "had excessive control over acquisition actions and duped even the United States" plainly fails to meet the tests by the Supreme Court. Irwin, 498 U.S. at 458 (tolling is appropriate if (1) "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or (2) "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."). The Air Force debriefing on January 28, 1999 gave Raytheon insight into the agency's source selection process that identified the control Mrs. Druyun exercised as the source selection authority, the extensive evaluation decisions she made, and how she changed or "manipulated" evaluations without support. See, Def. Statement of Facts Nos. 5, 6, 8, 9, all of which plaintiff has not disputed. The February 28, 2006 DoD IG report and its findings about the irregularities in the acquisition are insufficient to now equitably toll the statute of limitations, when L-3 could have pursued its bid protest claim in a timely manner. Martinez, 333 F.3d at 1318-19. As this court and the Federal Circuit held in MacLean, 67 Fed. Cl. at 17, aff'd, 2006 WL 1897047 at *5, equitable tolling may not be applied because of the plaintiff's receipt of "sounder support" than he previously had to support his cause of action.

Accordingly, the statute of limitations is not subject to equitable tolling, and, in any event, L-3 has failed to prove the existence of facts that would warrant the application of that doctrine.

IV. The Accrual Of L-3's Claim Was Not Suspended

Lastly, for similar reasons, L-3's contention that the accrual of its claim was suspended because of Mrs. Druyun's "manipulation of the procurement process" is wrong. Pl. Br. 13. The accrual suspension rule is

> strictly and narrowly applied: "Plaintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date."

Welcker v. United States, 752 F.2d 1577, 1580 (Fed. Cir.), cert. denied, 474 U.S. 826 (1985)(quoting Japanese War Notes Claimants Assoc.v. United States, 178 Ct. Cl. 63, 373 F.2d 356, 359, cert. denied, 389 U.S. 971(1968)). See also Martinez, 333 F.3d at 1319.

L-3 makes only a conclusory assertion that Mrs. Druyun manipulated the process and L-3 could not have known of her alleged "prejudice" or bias. Pl. Br. 13. As we have established, the United States neither concealed its acts so that Raytheon was unaware of its injury, nor was the injury "inherently unknowable" upon the accrual date - when the Air Force awarded the contracts to Lockheed Martin. The Air Force did not conceal facts surrounding the award of the contract to Lockheed Martin, but rather afforded it a complete debriefing upon the source selection process. Consequently, Raytheon had information no later than January 28, 1999, how Mrs. Druyun overrode certain evaluations, [redacted]. App. 140, 145, 147-48, 175, 181, 198, 251, 255, 265, 270, 276-77. There was nothing "inherently unknowable" about the injury allegedly suffered by Raytheon, and there was no act upon the part of the United States that covered-up or concealed the alleged injury. Welcker, 752 F.2d at 1580.

Even if the DoD IG report itself is viewed as indicating additional new evidence of irregularities in the C-5 AMP acquisition, the law finds that "ignorance of rights which should be known is not enough" to suspend accrual of a claim. Japanese War Notes Claimants Assoc., 178 Ct. Cl. at 634, 373 F.2d at 359.

Further, in MacLean, the Federal Circuit explained that the notion of a suspension of the running of the statute of limitations potentially applies only to those particular actions that occur after the accrual date but prior to the running of the statute, such as the bringing of other legal proceedings. 2006 WL 1897047 at *2, citing Stone Container Corp. v. United States, 229 F.3d 1345, 1352-55 (Fed. Cir. 2000); United States v. Cocoa Berkau, Inc., 990 F.2d 610, 615-16 (Fed. Cir. 1993). Here, L-3 did not bring any other legal proceeding after its accrual date of January 1999, but before the running of the statute in January 2005.

Thus, once Raytheon was "on inquiry that it has a potential claim, the statute can start to run." Japanese War Notes Claimants Assoc., 178 Ct. Cl. at 634, 373 F.2d at 359 (court noted that "modern philosophy of pleading" reduced pleading requirements, and left to discovery "the opportunity to flesh out claims...."). Here, the statute of limitations has clearly run, and nothing suspended the running of the statute of limitations upon L-3's bid protest action.

## CONCLUSION

For these reasons and the reasons stated in our moving brief and that of the intervenor, L-3's claim is barred by the six-year statute of limitations, and should be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney
Department of Air Force
Arlington, VA

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor, 1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0290
Attorneys for Defendant

August 10, 2006