# EXHIBIT A

February 28, 2006

# Acquisition Management

## Source Selection Procedures for the C-5 Avionics Modernization Program
(D-2006-058)

Department of Defense
Office of Inspector General

Constitution of the United States

A Regular Statement of Account of the Receipts and Expenditures of all public Money shall be published from time to time.

Article I, Section 9

**Additional Copies**

To obtain additional copies of this report, visit the Web site of the Department of Defense Inspector General at http://www.dodig.mil/audit/reports or contact the Secondary Reports Distribution Unit, Audit Followup and Technical Support at (703) 604-8937 (DSN 664-8937) or fax (703) 604-8932.

**Suggestions for Future Audits**

To suggest ideas for or to request future audits, contact Audit Followup and Technical Support at (703) 604-8940 (DSN 664-8940) or fax (703) 604-8932. Ideas and requests can also be mailed to:

ODIG-AUD (ATTN: AFTS Audit Suggestions)
Department of Defense Inspector General
400 Army Navy Drive (Room 801)
Arlington, VA 22202-4704

DEPARTMENT OF DEFENSE
hotline
**To report fraud, waste, mismanagement, and abuse of authority.**
Send written complaints to: Defense Hotline, The Pentagon, Washington, DC 20301-1900
Phone: 800.424.9098 e-mail: hotline@dodig.osd.mil www.dodig.mil/hotline

**Acronyms**

| | |
|---|---|
| AFFARS | Air Force Federal Acquisition Regulation Supplement |
| AMP | Avionics Modernization Program |
| FAR | Federal Acquisition Regulation |
| SSA | Source Selection Authority |
| USD (AT&L) | Under Secretary of Defense (Acquisition, Technology, and Logistics) |

INSPECTOR GENERAL
DEPARTMENT OF DEFENSE
400 ARMY NAVY DRIVE
ARLINGTON, VIRGINIA 22202-4704

February 28, 2006

MEMORANDUM FOR ASSISTANT SECRETARY OF THE AIR FORCE (FINANCIAL MANAGEMENT AND COMPTROLLER)
ASSISTANT SECRETARY OF THE AIR FORCE (ACQUISITION)

SUBJECT: Report on the Source Selection Procedures for the C-5 Avionics Modernization Program (Report No. D-2006-058)

We are providing this report for your information and use. We considered management comments on a draft of this report in preparing the final report.

Comments on the draft of this report conformed to the requirements of DoD Directive 7650.3 and left no unresolved issues. Therefore, no additional comments are required.

We appreciate the courtesies extended to the staff. Questions should be directed to Mr. Douglas P. Neville at (703) 428-1061 (DSN 328-1061) or Ms. Amy L. Mathews at (703) 428-1094 (DSN 328-1094). See Appendix D for the report distribution. The team members are listed inside the back cover.

By direction of the Deputy Inspector General for Auditing:

Paul J. Granetto
Assistant Inspector General
Defense Financial Auditing
Service

**Department of Defense Office of Inspector General**

**Report No. D-2006-058** **February 28, 2006**
(Project No. D2005-D000FP-0174.000)

# Source Selection Procedures for the C-5 Avionics Modernization Program

## Executive Summary

**Who Should Read This Report and Why?** Civilians and uniformed officers who are involved in the Air Force acquisition decision-making process should read this report because it identifies issues related to the source selection procedures used by the Air Force in the acquisition of the C-5 Avionics Modernization Program.

**Background.** In November 2004, the Acting Under Secretary of Defense (Acquisition, Technology, and Logistics) commissioned a study to review acquisition-related actions taken by the former Principal Deputy Assistant Secretary of the Air Force for Acquisition and Management (Principal Deputy). As a result of that study, the Acting Under Secretary of Defense (Acquisition, Technology, and Logistics) identified eight actions for further investigation and requested that the Department of Defense Inspector General review them. This audit focuses on one of these actions relating to the award of the C-5 Avionics Modernization Program contract to Lockheed Martin Aeronautical Systems on January 22, 1999.

**Results.** Air Force personnel did not adequately document the decision process used to award the C-5 Avionics Modernization Program contract to Lockheed Martin Aeronautical Systems. Specifically, the Source Selection Advisory Council and the Source Selection Authority did not document their rationale for the initial selection evaluation results and subsequent changes to those results, and the Air Force did not provide the oversight needed to ensure the decisions were documented. As a result, the C-5 Avionics Modernization Program solicitation and contract award were unnecessarily vulnerable to manipulation. Identifying the source selection process as a high risk area and establishing a review process that tests the effectiveness of the controls over the process will provide the oversight needed to reduce the likelihood of manipulation. We also reviewed the managers' internal control program as it related to the source selection oversight process. (See the Finding section for details.)

**Management Comments.** The Military Deputy, Office of the Assistant Secretary of the Air Force (Acquisition) concurred with the recommendations; therefore, no further comments are required. See the Finding section of the report for a discussion of management comments and the Management Comments section of the report for a complete text of the comments.

# Table of Contents

**Executive Summary** i

**Background** 1

**Objectives** 2

**Managers' Internal Control Program** 2

**Findings**

Controls Over the Source Selection Process 4

**Appendixes**

A. Scope and Methodology 11
B. The Druyun Study 13
C. Information on Positions, Duties, and Responsibilities 14
D. Report Distribution 16

**Management Comments**

Assistant Secretary of the Air Force (Acquisition) 19

## Background

The C-5 Galaxy is one of the largest aircraft in the world. It carries oversized cargo for the Air Mobility Command. A C-5 with a cargo load of 270,000 pounds can fly 2,150 nautical miles, offload, and fly to a second base 500 nautical miles from the original destination, all without aerial refueling.

In 1998, the Air Mobility Command began an aggressive program to modernize the C-5. The C-5 Avionics Modernization Program (AMP) is comprised of two aspects: the All-Weather Flight Control System and Global Air Traffic Management compliance. The objective of the C-5 AMP is to replace the existing flight and engine instrument system and the flight control system with integrated, state-of-the-art, cost-effective, highly reliable and capable systems. Additionally, the C-5 AMP will address emerging Civil Aviation Authority requirements for communication, navigation, and surveillance for operation in the global air traffic management environment.

**Darleen Druyun.** Darleen Druyun was the Principal Deputy Assistant Secretary of the Air Force for Acquisition and Management from 1993 until her retirement in November 2002. In that position she supervised, directed, and oversaw the management of Air Force acquisition programs. Moreover, Druyun was the source selection authority for the C-5 AMP. On April 20, 2004, Druyun entered a plea of guilty for conspiring to violate section 208 (a), title 18, United States Code. Druyun admitted that she may have allowed personal interests to affect her judgment on acquisition decisions she made. On October 1, 2004, Druyun was sentenced in United States District Court to nine months in prison to be followed by seven months of community confinement. She was also ordered to serve 150 hours of community service and fined $5,000.

**DoD Initiatives.** In November 2004, the Acting Under Secretary of Defense (Acquisition, Technology, and Logistics) (USD [AT&L]) commissioned a study on Air Force acquisition actions involving Druyun (hereafter referred to as the Principal Deputy). The Acting USD (AT&L) designated the Deputy Director of the Defense Contract Management Agency to lead the study. The review focused on 407 acquisition actions as potentially having the Principal Deputy's involvement. The results of the review were documented in a February 2005 report titled "The Druyun Study," which identified eight actions for further investigation. The study team recommended that the Acting USD (AT&L) consider these actions for referral to the appropriate authorities for additional scrutiny. (See Appendix B for additional information on the study.) In a memorandum dated February 11, 2005, the Acting USD (AT&L) requested that the Department of Defense Inspector General review the eight actions identified in the study. This audit focuses on one of the identified actions related to the C-5 AMP, specifically, the award of contract F33657-98-C-0006/0007 to Lockheed Martin Aeronautical Systems on January 22, 1999.

**The Druyun Study.** The C-5 AMP portion of the study identified two actions that "appeared irregular and may not have been conducted in the best interest of

the Government." These actions included the reassignment of the Source Selection Authority (SSA) responsibilities and the proposal rating changes made by the Principal Deputy in support of her source selection decision.

**Source Selection Authority.** On January 25, 1998, the Assistant Secretary of the Air Force (Acquisition) delegated the Commander of the Aeronautical System Center as the SSA for the C-5 AMP. However, in February 1998, the Assistant Secretary of the Air Force (Acquisition) was promoted and the Principal Deputy assumed his source selection responsibilities which she retained throughout the C-5 AMP source selection process. (See Appendix C for information on the positions, duties, and responsibilities of these key acquisition executives.) On March 26, 1998, following the departure of the Assistant Secretary of the Air Force (Acquisition), the Principal Deputy issued a memorandum that rescinded the C-5 AMP SSA delegated to the Commander of the Aeronautical System Center and, instead, named herself SSA for the C-5 AMP.

**Proposal Ratings.** This irregularity pertained to the ratings given to the proposals of potential contractors for the C-5 AMP. On November 17, 1998, the Source Selection Advisory Council (Advisory Council) briefed the Principal Deputy on the C-5 AMP proposals. Instead of using the ratings presented by the Advisory Council in her Source Selection Decision Document, the Principal Deputy revised the ratings in favor of Lockheed Martin Aeronautical Systems' proposal.

## Objectives

Our announced audit objective was to determine whether the C-5 AMP was procured in accordance with the Federal Acquisition Regulation (FAR) and Defense Federal Acquisition Regulation Supplement. However, because the Air Force Federal Acquisition Regulation Supplement (AFFARS) included requirements in addition to the Defense Federal Acquisition Regulation Supplement, we evaluated the source selection against the FAR and AFFARS. Specifically, we assessed whether evaluation factors used for awarding the C-5 AMP contract were properly applied in accordance with the FAR and AFFARS. We also reviewed the managers' internal control program as it related to the overall objective. See Appendix A for a discussion of the scope and methodology.

## Managers' Internal Control Program

DoD Directive 5010.38, "Management Control (MC) Program," August 26, 1996, and DoD Instruction 5010.40, "Management Control (MC) Program Procedures,"

August 28, 1996, require DoD organizations to implement a comprehensive system of management controls that provides reasonable assurance that programs are operating as intended and to evaluate the adequacy of the controls.

**Scope of the Review of the Management Control Program.** We reviewed the adequacy of the source selection management controls related to the C-5 AMP contract award. We reviewed management's self-evaluation applicable to those controls.

**Adequacy of Management Controls.** We identified material management control weaknesses for the source selection process as defined by DoD Instruction 5010.40. Specifically, the Air Force did not have management controls in place to ensure that source selection decisions were adequately documented and justified. The recommendations, if implemented, will correct the identified weaknesses and could improve the Air Force source selection procedures for awarding contracts. A copy of this report will be provided to the senior official responsible for management controls in the Office of the Under Secretary of Defense (Acquisition, Technology, and Logistics).

# Controls Over the Source Selection Process

Air Force personnel did not adequately document the decision process used to award the C-5 AMP contract to Lockheed Martin Aeronautical Systems. Specifically, the Advisory Council and the Source Selection Authority (Principal Deputy) did not document their rationale for the initial selection evaluation results and subsequent changes to those results. This condition occurred because Air Force acquisition executives did not recognize the source selection process as a high risk area and, subsequently, did not validate the effectiveness of the internal controls over the source selection process. As a result, the C-5 AMP solicitation and contract award were unnecessarily vulnerable to manipulation.

## Source Selection Criteria

**Federal Acquisition Regulation.** FAR Part 15, "Contracting by Negotiation," October 10, 1997, states:

> [P]roposal evaluation is an assessment of the proposal and the offeror's ability to perform the prospective contract successfully. An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation. Evaluations may be conducted using any rating method or combination of methods, including color or adjectival ratings, numerical weights, and ordinal rankings. The relative strengths, deficiencies, significant weaknesses, and risks supporting proposal evaluation shall be documented in the contract file.

In addition, FAR Part 15, states:

> [T]he SSA's decision shall be based on a comparative assessment of proposals against all source selection criteria in the solicitation. While the SSA may use reports and analyses prepared by others, the source selection decision shall represent the SSA's independent judgment. The source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs. Although the rationale for the selection decision must be documented, that documentation need not quantify the tradeoffs that led to the decision.

**Office of Management and Budget.** Office of Management and Budget Circular A-123, "Management's Accountability and Control," June 21, 1995,* states that agencies and individual Federal managers must take systematic and proactive measures to develop and implement appropriate, cost-effective

* Effective throughout the C-5 AMP solicitation and contract award; the revised Circular A-123, "Management's Responsibility for Internal Control," became effective in FY 2006 and contains the same requirement.

management controls for results-oriented management; assess the adequacy of management controls in Federal programs and operations; identify needed improvements; take corresponding corrective action; and report annually on management controls.

**Air Force Federal Acquisition Regulation Supplement.** The Air Force Source Selection Integrated Product Team selected the C-5 AMP as a test candidate to follow new Air Force source selection policy and procedures. These policies and procedures were outlined in the Draft AFFARS Part 5315.6, "Source Selection Policy," July 31, 1997. Draft AFFARS Part 5315.6 stated:

> In using the best value approach, the Government seeks to award to an offeror who gives us the greatest confidence that they will best meet our requirements. This may result in an award being made to a higher rated, higher priced offeror where the decision is consistent with the evaluation factors and the SSA reasonably determines that the technical superiority and/or overall business approach of the higher priced offeror outweighs the cost difference.

Because participants in the test case raised concerns, the Air Force did not implement this version of AFFARS Part 5315.6.

AFFARS Appendix AA, "Formal Source Selection for Major Acquisitions," May 1996, requires that supporting reports and documents provide an audit trail from the highest to the lowest elements of an evaluation. In addition, Appendix AA states:

- The SSA must be presented with sufficient indepth information on each of the competing offerors and their proposals to permit a reasoned and rational selection decision.

- Members of the Advisory Council and Source Selection Evaluation Board from all disciplines must work together to ensure that the SSA is presented an accurate, integrated assessment of each offeror's proposal. Each member must be given access to the full range of evaluation tools available, including the advice of personnel in other disciplines who serve as source selection advisors.

- The SSA is responsible for the proper and efficient conduct of the entire source selection process. The SSA has full responsibility and authority, subject to law and applicable regulations, to select a source for award and approve the award of the contract. The SSA must also record the decision process and the supporting rationale in the Source Selection Decision Document.

- The basis for source selection and award of a contract must be limited to criteria or considerations that are stated in the solicitation. Air Force source selection awards are based on an integrated assessment of each offeror's cost, specific criteria, assessment criteria, proposal risk, performance risk, and general considerations.

## Source Selection Decision Environment

Air Force personnel did not adequately document the decision process used to award the C-5 AMP contract in accordance with the requirements of FAR Part 15 and AFFARS Appendix AA. Source selection records revealed inadequate support for the proposal ratings presented by the Advisory Council in their Proposal Analysis Report. Furthermore, we did not find support for the Principal Deputy's delegation of the source selection responsibilities, the proposal performance/capability and risk ratings presented by the Advisory Council, and other proposal evaluation results, including perceived strengths and weaknesses of the competing contractors. Also, the Source Selection Decision Document included a training system upgrade as a "significant modification" that the program office did not previously identify as one of the C-5 AMP objectives, but did support the Principal Deputy's source selection decision. While Air Force personnel presented several scenarios to rationalize the decisions made, they could not provide documentation to support that those scenarios actually took place during the source selection process.

**Support for Advisory Council Ratings.** Air Force personnel could not provide adequate documentation to support the management, technical, and cost data contained in the Advisory Council's Proposal Analysis Report. Although the Proposal Analysis Report included the results of an integrated analysis of the offerors' proposals, we were unable to validate the evaluation results by tracing them back to detailed analysis, reports, or meeting minutes. Without a clear auditable trail to support the Advisory Council's evaluation, we could not validate whether the decision to award the C-5 AMP contract to Lockheed Martin Aeronautical Systems was justified. AFFARS Appendix AA requires that supporting reports and documents provide an audit trail from the highest to the lowest elements of an evaluation. The lack of documentation for the Advisory Council's evaluation calls into question the validity of the information they provided to the SSA.

**Changes in Delegation of the Source Selection Authority.** Air Force personnel could not provide support for the Principal Deputy's decision to rescind the Assistant Secretary of the Air Force's original SSA delegation and instead delegate the position to herself. Upon the departure of the Assistant Secretary of the Air Force (Acquisition), the Acting Secretary of the Air Force expanded the responsibilities of the Principal Deputy to include her designation as the SSA for all agency-level procurement actions, but not command-level (such as the C-5 AMP source selection). Air Force personnel involved in the C-5 AMP provided the following rationale for the change in the SSA delegation: the C-5 AMP designation as a test case for new source selection procedures, requirements expansion and cost growth, and a possible request from warfighter representatives for additional oversight. However, Air Force personnel could not provide documentation to support any of these rationales.

**Changes to Proposal Ratings Presented by the Advisory Council**. AFFARS Appendix AA requires that the SSA include the supporting rationale in the Source Selection Decision Document. The Principal Deputy disregarded performance/capability and risk proposal ratings presented by the Advisory

Council without documenting why she made the changes, other than to cite her personal experience. Specifically, the Principal Deputy changed ratings in the areas of avionics quality/integration, software development, and system engineering/program management in favor of Lockheed Martin Aeronautical Systems without providing justification for these changes in the C-5 AMP Source Selection Decision Document. C-5 AMP personnel explained that the proposal rating changes may have occurred because the Principal Deputy requested additional information from the Advisory Council that led to different ratings, or the Principal Deputy may have had conversations with the Advisory Council that led to a collective decision to change the ratings. Again, the documentation did not validate these scenarios.

**Changes to Contractors' Perceived Strengths and Weaknesses.** The Principal Deputy disregarded evaluated strengths and weaknesses presented by the Advisory Council without sufficient justification for her rationale. In the Source Selection Decision Document, the Principal Deputy identified weaknesses for the unsuccessful offeror although other documentation showed that the weaknesses had been resolved. The Principal Deputy also introduced new strengths for Lockheed Martin Aeronautical Systems. Further, the Principal Deputy exclusively cited the unsuccessful offeror for a weakness while other documentation showed Lockheed Martin Aeronautical Systems shared this weakness. The only justification Air Force personnel could provide regarding changes to the proposal results reported in the Source Selection Decision Document was that the Principal Deputy relied on her personal experience. Air Force personnel could not provide an explanation for the reasoning behind the changes to the proposal results. Again, the meeting minutes were not recorded or documented.

**Increase in the Significance of the Training System Upgrades.** The C-5 AMP is comprised of an upgrade to autopilot capabilities and avionics to achieve Global Air Traffic Management compliance. In the Source Selection Decision Document, the Principal Deputy introduced a third upgrade to the aircrew and maintenance training system that further tailored the source selection decision in favor of the Lockheed Martin Aeronautical Systems' proposal. The Principal Deputy did not document why she elevated the upgrades to the aircrew and maintenance training devices to become a significant enhancement for the C-5 AMP.

## Source Selection Oversight

Air Force acquisition executives did not recognize the source selection process as a high risk area and, therefore, did not validate the effectiveness of the internal controls over the source selection process. As a result, the C-5 AMP solicitation and the contract award were unnecessarily vulnerable to manipulation.

**Management Control Validation.** The Air Force did not provide adequate oversight over the C-5 AMP source selection process. Specifically, no assessment or evaluation was conducted for the C-5 AMP source selection process. According to the Office of Management and Budget Circular A-123, agencies and Federal managers must take systematic and proactive measures to

assess the adequacy of management controls in Federal programs and operations. The source selection process was not reviewed as part of the Air Force management control program, which includes self-assessments and evaluations on five assessable units. If the Air Force viewed the source selection process as a high risk area, it would warrant inclusion in an assessable unit that is reviewed periodically. Air Force personnel stated that a self-assessment is conducted every year; however, records did not indicate that the Air Force conducted an evaluation or self-assessment during the C-5 AMP source selection process.

## Other Factors Affecting Internal Controls

In addition to the management controls shortcoming described in this report, we identified other external factors relating to congressionally mandated acquisition reform, changing contracting environment, and turnover of Air Force officials, which may have added to the vulnerability of the C-5 AMP solicitation and contract award process.

**Congressionally Mandated Acquisition Reform.** Increased budgetary constraints and a public mandate for improved performance at every level of the government created the need for the Government's procurement process to undergo reform. The major objectives of the acquisition reform were to empower government officials to make sound business decisions and to increase the efficiency and effectiveness of the acquisition process at a reduced cost to the taxpayer. As a result, the Federal Acquisition Streamlining Act of 1994 revised and streamlined the acquisition laws of the Federal Government in an effort to enhance the flexibility, agility, and timeliness in the acquisition process. To meet the mandated acquisition reform requirement, the Air Force drafted a new regulation designed to streamline the acquisition process, and it selected the C-5 AMP to participate in a test case to evaluate the new requirements. However, the Air Force later determined that the new draft regulation was ineffective in meeting the needs of the organization; therefore, they did not enact this regulation. Moreover, the C-5 AMP source selection was completed before the draft regulation they were following was deemed ineffective.

**Changing Contracting Environment.** External influences also had an impact on the contracting environment during the time of the contract award for the C-5 AMP. Rapid changes in the contracting environment occurred largely because of the growing power of the Internet, electronic commerce, Federal supply schedules, DoD-wide electronic malls (E-Malls), and other technological advances. The Air Force recognized the changes and the effect on the contracting environment, and it adopted strategies and policies to cope with the changing environment. One strategy adopted by the C-5 AMP Program Office was early involvement of prospective contractors in requirements development by sharing and coordinating information. This increased the interaction between contractor and Air Force personnel. However, the increased interaction left the requirements development process open to undue influence by contractor personnel and could lead to requirements that favor one contractor over another in the source selection process.

**Turnover of Air Force Officials.** During the solicitation period of the C-5 AMP, the Assistant Secretary of the Air Force (Acquisition) left his position which remained vacant throughout the C-5 AMP contract award process. Also, during the C-5 AMP solicitation timeframe, the Principal Deputy Assistant Secretary of the Air Force (Acquisition) retired. Additional turnovers occurred in both the SSA and Advisory Council Chair positions during the solicitation process.

## Conclusion

Air Force personnel did not provide support for their decisions and bypassed risk reduction efforts normally in place in the source selection process. The documentation reviewed was insufficient to provide an audit trail for the decisions made. Improvements are needed to ensure that the source selection records are adequate and decisions are properly justified. The lack of controls over the source selection process left the C-5 AMP solicitation and contract award unnecessarily vulnerable.

## Corrective Actions Taken by the Air Force

Prior to our audit, the Air Force addressed some of the issues presented in this report through new policies and procedures. Following the conviction of the former Principal Deputy (Druyun), the Acting USD (AT&L) initiated activities to further review areas related to the Principal Deputy's actions. One activity involved establishing a Defense Science Board Task Force to review management oversight in acquisition organizations. Based on the Task Force recommendations, the Air Force updated the AFFARS to address areas related to source selection. The revisions include requirements that address the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs. Further, the updated AFFARS states that the source selection decision document must clearly explain the decision and document the reasoning used by the SSA to reach the decision.

In addition, on June 6, 2005, the Acting Secretary of the Air Force and Under Secretary of the Air Force, Chief of Staff, issued a memorandum that outlines the guidelines for communication throughout the source selection process. These guidelines include maintaining thorough records of interactions with potential offerors and providing meeting minutes, including attendees, discussion items, and briefing charts to the contracting officer for inclusion in the contract file.

## Management Comments on the Finding and Audit Response

**Management Comments.** The Military Deputy, Office of the Assistant Secretary of the Air Force (Acquisition) agreed that improvements in documentation can always be made, but noted that source selection participants took every precaution to ensure the integrity of the source selection. The Military Deputy also stated the Air Force believes that the actual award decision was reasonably documented to justify the selection.

**Audit Response.** We acknowledge that the source selection participants took precautions to ensure the integrity of the source selection; however, the documentation reviewed was insufficient to provide the audit trail necessary for auditors to recreate the decision-making process used in the C-5 AMP source selection.

## Recommendations and Management Comments

**We recommend that the Assistant Secretary of the Air Force (Acquisition):**

1. **Identify the source selection process as a high risk area vulnerable to manipulation.**

**Management Comments.** The Military Deputy, Office of the Assistant Secretary of the Air Force (Acquisition) concurred with the recommendation and agreed to identify the source selection process as a high risk area though the Air Force's implementation of DoD Directive 5010.38.

2. **Establish a systematic review process that tests the effectiveness of controls over the source selection process.**

**Management Comments.** The Military Deputy, Office of the Assistant Secretary of the Air Force (Acquisition) concurred with the recommendation and plans to implement the recommendation by:

- requesting that the office responsible for the C-5 AMP program identify and incorporate the source selection process within the Management Control Procurement Reporting Category of their Management Control Program,

- addressing source selection as a special interest item during Unit Compliance Inspections,

- adding the source selection process as an assessable unit to their Major Command and Direct Reporting Unit management control plans, and

- implementing changes made to the Air Force contract clearance procedures that require additional reviews including an independent approval process with mandatory legal participation.

# Appendix A. Scope and Methodology

**Review of Source Selection Documents.** We reviewed the procedures and documentation used to support the Air Force decision to award the C-5 AMP contract to Lockheed Martin Aeronautical Systems. The evaluation was performed at Wright-Patterson Air Force Base, Dayton, Ohio. The documentation we reviewed included briefing charts, source selection plans, acquisition plans, meeting minutes, contractor data, and other relevant source selection information. The dates of the documentation reviewed ranged from June 1997 through January 1999, the month the Source Selection Decision Document was issued. We reviewed these documents to determine compliance with the FAR and AFFARS. Further, we interviewed personnel at Wright-Patterson Air Force Base; the Office of the Assistant Secretary of the Air Force (Acquisition) Headquarters, Washington, D.C.; and the Office of the Under Secretary of Defense (Acquisition, Technology, and Logistics).

We performed this audit from April 2005 through October 2005 in accordance with generally accepted government auditing standards. Our scope was limited by the number of key personnel available for interview because many of the personnel involved in the source selection process for the C-5 AMP no longer worked for the Department of Defense. Additionally, the personnel that were interviewed had a difficult time remembering certain facts because the source selection was over 7 years ago and no documentation was retained to support their recollections. Therefore, we determined that pursuing interviews with retired or private sector personnel would not be advantageous because we had no documentation to corroborate their recollections.

**C-5 Reliability Enhancement Re-Engining Program Files.** We additionally conducted a limited review of the source selection documentation and contracting files for the C-5 Reliability Enhancement Re-Engining Program. Specifically, we reviewed the January 3, 2000, justification and approval of the sole source contract award to Lockheed Martin Aeronautical Systems to determine whether it was performed in accordance with the FAR. Further, we reviewed the contracts and contract modifications for the C-5 AMP and C-5 Reliability Enhancement Re-Engining Program to determine whether tasks shifted between the contracts. This contracting information was dated from January 1999 through August 2005. We determined that the C-5 Re-Engining Program justification and approval for sole source selection was appropriate and there was no evidence that tasks were being shifted between the two contracts.

**Use of Computer-Processed Data.** We did not use computer processed data to perform this audit.

**Use of Technical Assistance.** We did not use technical assistance to perform this audit.

**Government Accountability Office High-Risk Area.** The Government Accountability Office has identified several high-risk areas in DoD. This report provides coverage of the DoD Contract Management high-risk area.

## Prior Coverage

No prior coverage has been conducted on the C-5 AMP during the last 5 years.

# Appendix B. The Druyun Study

In November 2004, the Acting USD (AT&L) chartered a study team to conduct a review of the acquisition actions involving the Principal Deputy. The study team included contracts and technical personnel, attorneys, and auditors from the Department of the Navy, Department of the Army, Defense Contract Audit Agency, General Services Administration, and Defense Contract Management Agency. The study team reviewed specific actions executed during the tenure of the Principal Deputy.

The objective of the study was to determine whether the Principal Deputy's decisions were consistent with Department of Defense standards of integrity and sound business practices. The study team reviewed 407 acquisition actions as potentially having the Principal Deputy's involvement. The study team identified the following acquisition actions for review: source selection decisions, acquisition strategy panel decisions, revisions to acquisition strategy reports during or after acquisition strategy panel approvals, award fee determinations, equitable adjustments, actions involving contested payments to contractors, contract restructures, contract extensions, and contract litigations. The study team identified eight contracts that they recommended to the Acting USD (AT&L) for further investigation. One of the identified contracts related to the C-5 AMP.

The study summarizes its findings related to the C-5 AMP by stating that the review raised concerns because of the level of interest and influence the Principal Deputy had over the source selection. Specifically, the study states that the Principal Deputy withdrew the SSA delegation assigned by her superior to become the SSA herself without sufficient justification, and during the source selection she adjusted the Advisory Council's ratings to better support the higher cost proposal presented by Lockheed Martin Aeronautical Systems. The Principal Deputy justified the change in ratings in the Source Selection Decision Document by disagreeing with the assessment presented by the Advisory Council. Therefore, the study team recommended the Acting USD (AT&L) forward the C-5 AMP source selection for further review. On February 11, 2005, following the completion of the study, the Acting USD (AT&L) issued a memorandum requesting the Department of Defense Inspector General assist in the review of the contracts identified in the study.

# Appendix C. Information on Positions, Duties, and Responsibilities




**Secretary of the Air Force.** The Secretary of the Air Force, pursuant to section 8013, title 10, United State Code, is responsible for and has the authority necessary to conduct all affairs of the Department of the Air Force. In the absence of the Assistant Secretary of the Air Force (Acquisition), the Secretary of the Air Force retains the authorities and duties of the Air Force Acquisition Executive, Senior Procurement Executive, and the Head of the Contracting Activity for Air Force acquisition programs.*

**Assistant Secretary of the Air Force (Acquisition).** The Assistant Secretary of the Air Force (Acquisition) is responsible for the overall supervision of the Air Force acquisition system. The Assistant Secretary serves as the Air Force Acquisition and Procurement Executive and as a member of the Air Force Council. As the Acquisition Executive, the Assistant Secretary works directly with the Defense Acquisition Executive. The Office of the Assistant Secretary ensures that the Air Force Chief of Staff receives the support required for acquisition matters. The general responsibilities of the Assistant Secretary include direction, guidance, and supervision over all matters pertaining to the formulation, review, approval, and execution of plans, policies, programs, and budgets.

* In the March 17, 1998, memorandum, "Further Assignment of Responsibilities in the Absence of an Assistant Secretary for Acquisition," from the Acting Secretary of the Air Force.

**Principal Deputy Assistant Secretary of the Air Force for Acquisition (Principal Deputy [Acquisition]).** The Principal Deputy (Acquisition) is responsible for science, technology, and engineering; special programs; and program integration. In the absence of the Assistant Secretary of the Air Force (Acquisition), the Secretary of the Air Force assigned the Principal Deputy (Acquisition) primary responsibility for the day-to-day operation of the Office of the Assistant Secretary of the Air Force (Acquisition) and the authorities and duties of the Chief Information Officer for the Air Force. The Mission Area Directors, Designated Acquisition Commanders, and Functional Area Managers reported to the Principal Deputy (Acquisition). In addition, the Principal Deputy (Acquisition) assumed responsibility for budget, funding, and resource matters and represented the Office of the Assistant Secretary of the Air Force Acquisition on the Air Force Council.

**Principal Deputy Assistant Secretary of the Air Force for Acquisition and Management (Principal Deputy as used throughout the report).** The Principal Deputy is the chairperson for all Acquisition Strategy Panels, all Acquisition Portfolio Reviews of Program Executive Officer programs, the Air Force Acquisition Professional Development Council, the Air Force Contract Adjustment Board, the Civilian Appraisal Quality Review Committee, and the Independent Research and Development Council. In the absence of the Assistant Secretary of the Air Force (Acquisition), the Secretary of the Air Force assigned the Principal Deputy the responsibility for the oversight and execution of Program Executive Officer programs. The Program Executive Officers, Deputy Assistant Secretary for Contracting, and Director of Depot Maintenance report to the Principal Deputy. The Principal Deputy also served as the Source Selection Authority for all major acquisition programs during the Assistant Secretary of the Air Force (Acquisition) absence.

# Appendix D. Report Distribution

## Office of the Secretary of Defense

Under Secretary of Defense for Acquisition, Technology, and Logistics
Under Secretary of Defense (Comptroller)/Chief Financial Officer
  Deputy Chief Financial Officer
  Deputy Comptroller (Program/Budget)
Director, Program Analysis and Evaluation

## Department of the Navy

Naval Inspector General
Auditor General, Department of the Navy

## Department of the Air Force

Assistant Secretary of the Air Force (Financial Management and Comptroller)
Auditor General, Department of the Air Force

## Combatant Command

Inspector General, U.S. Joint Forces Command

## Other Defense Organizations

Director, Defense Contract Audit Agency
Director, Defense Contract Management Agency
Director, Defense Finance and Accounting Service
Director, Defense Intelligence Agency
Director, Defense Logistics Agency
Director, National Security Agency
President, Defense Systems Management College

## Non-Defense Federal Organization

Office of Management and Budget

## Congressional Committees and Subcommittees, Chairman and Ranking Minority Member

Senate Committee on Appropriations
Senate Subcommittee on Defense, Committee on Appropriations
Senate Committee on Armed Services
Senate Committee on Homeland Security and Governmental Affairs
House Committee on Appropriations
House Subcommittee on Defense, Committee on Appropriations
House Committee on Armed Services
House Committee on Government Reform
House Subcommittee on Government Efficiency and Financial Management, Committee on Government Reform
House Subcommittee on National Security, Emerging Threats, and International Relations, Committee on Government Reform
House Subcommittee on Technology, Information Policy, Intergovernmental Relations, and the Census, Committee on Government Reform

# Assistant Secretary of the Air Force (Acquisition) Comments

**DEPARTMENT OF THE AIR FORCE**
WASHINGTON DC

3 FEB 2006

OFFICE OF THE ASSISTANT SECRETARY

MEMORANDUM FOR DEPARTMENT OF DEFENSE INSPECTOR GENERAL
ATTN: DEPUTY INSPECTOR GENERAL FOR AUDITING

FROM: SAF/AQ

SUBJECT: Draft Audit Report, Dated 21 Dec 05, Project No. D2005-D000FP-0174 Source Selection Procedures for the C-5 Avionics Modernization Program (AMP)

Thank you for the time and effort your team invested in examining the C-5 AMP source selection procedures. I also appreciate your team's willingness to meet with my staff to discuss the draft report. Our comments are as follows:

a. Finding - We agree that improvements in documentation can always be made. It must be noted, however, that the source selection participants, to include the contracting officer, took every precaution to ensure the integrity of this source selection. Multiple reviews by legal counsel and procurement review personnel were conducted throughout the source selection. We believe the actual award decision was reasonably documented to justify the selection.

b. Recommendation 1. - Concur. We agree to identify the source selection process as a high-risk area through the Air Force's implementation of DODD 5010.38.

c. Recommendation 2. - Concur. Our approach to implement this recommendation is as follows:

(1) The Air Force has an existing Management Control Program, which implements DoD Directive 5010.38. The AF Instruction that governs our implementation is AFI 65-201, Management Control. The Air Force office responsible for this program is SAF/FMPI. SAF/AQC will request SAF/FMPI to specifically identify and incorporate the source selection process within the Management Control Procurement Reporting Category.

(2) SAF/AQ will request SAF/IGI identify source selection as an area to be addressed during Unit Compliance Inspections as a Special Interest Item during Air Force Inspector General Audits conducted in accordance with AFI 90-201.

(3) SAF/AQC will direct MAJCOM/DRUs senior contracting officials to add the source selection process as an assessable unit to their MAJCOM/DRUs management control plans. This means all self-inspections and compliance inspections conducted will include a review of source selection actions.

(4) Changes were made to the Air Force contract clearance procedures as part of the 10 Aug 05 revised source selection procedures issued by SAF/AQ. Specifically, we instituted an independent contract clearance approval process with mandatory legal participation. This also implemented an additional review process that is conducted at least one level above the contracting officer.

The SAF/AQ staff stands ready to assist in any way to ensure all concerns are addressed prior to the final report publication. My point of contact is Lt Col Julian Thrash, julian.thrash@pentagon.af.mil, 703-588-7075.

DONALD J. HOFFMAN, Lt Gen, USAF
Military Deputy, Office of the Assistant Secretary
of the Air Force (Acquisition)

# Team Members

The Department of Defense Office of the Deputy Inspector General for Auditing, Defense Financial Auditing Service prepared this report. Personnel of the Department of Defense Office of Inspector General who contributed to the report are listed below.

Paul J. Granetto
Douglas P. Neville
Amy L. Mathews
Lashonda M. Thompson
Michael T. Burger
Lamar Anderson
Michael T. Hepler
Karen M. Borrero
Erin S. Hart