# In The United States Court of Federal Claims

BID PROTEST
No. 06-396C
(Judge Williams)

**L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**LOCKHEED MARTIN AERONAUTICS COMPANY,**

**Intervenor.**

## MOTION OF L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P. TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND BRIEF IN SUPPORT

L-3 Communications Integrated Systems L.P. ("L-3") files this Motion to Supplement the Administrative Record and Brief in Support and would show the Court as follows:

## BACKGROUND CONCERNING THE RECORD IN THIS MATTER

1. On January 4, 2008, Defendant produced the Administrative Record to Plaintiff and filed the Declaration of Vicki A. Fry containing an index of the record with the Court.

2. On February 20, 2008, Defendant filed the Declaration of Vicki A. Fry with four exhibits, each describing items pertaining to the C-5 AMP procurement not included in the Administrative Record. ("Exhibits 1-4," Attachment A hereto) Exhibits 1-4 were provided in response to this Court's order of November 27, 2007, ordering the Government to describe "those additional documents pertaining to the C-5 AMP procurement which will not be included

in the Administrative Record, including but not limited to, documents described in the Druyun Study and Department of Defense Inspector General investigation and Report."

3. Exhibit 1 purports to be an index to the working papers and support documents for the Department of Defense Inspector General Report ("DoD IG report"). Exhibit 2 purports to be an index to the documents and materials on the C-5 AMP from the Druyun Study. Exhibit 3 purports to be an index of documents from the Office of the Deputy Assistant Secretary of the Air Force for Acquisitions (Contracting) that relate to the DoD IG report about the C-5 AMP. Exhibit 4 purports to be an index of documents about the Druyun Study or the DoD IG report from offices at the Department of Defense.

4. In large part, items indexed on Exhibits 1-4 that were not produced as part of the Administrative Record were created after the award of the C-5 AMP contracts to Lockheed in January 1999. The Druyun Study was conducted from December 2004 to February 2005. The Inspector General's report was issued on February 28, 2006.

5. The documents described in Exhibits 1-4 that relate to the Druyun Study and the Inspector General's investigation and report are directly relevant to L-3's claims in this suit that Darleen Druyun improperly assumed the duties of the Source Selection Authority and manipulated the source selection process of the C-5 AMP procurement by adjusting ratings to better support Lockheed Martin's higher cost proposal. Indeed, both the Druyun Study and the DoDIG's report observed these irregularities: (1) reassignment of the SSA responsibilities by Druyun from the original SSA to Druyun herself and (2) proposal rating changes to better support the selection of Lockheed's higher cost proposal.

6. L-3 seeks production of the items not part of the Administrative Record listed on Exhibits 1-4 to supplement the record and, to the extent not indexed, the following items from

the Druyun Study: Anomaly Summaries, Team Reports, Situation Reports, and worksheets, all referenced in the summary document previously produced by the Government in response to the Court's order of December 21, 2006.

**ARGUMENT AND AUTHORITIES**

The Inspector General's investigation and subsequent report sparked by the Druyun Study ground L-3's claims in this bid protest. The items enumerated on Exhibits 1-4, largely created after the award of the contracts in January 1999, are central to L-3's case and should be produced to supplement the Administrative Record. Indeed, this Court has already ordered the Government to "produce the 'Druyun Study' or documents memorializing the study.'" Transcript of October 10, 2006 hearing at page 68, lines 18-25, and Order of December 21, 2006.

This Court observed in *Pikes Peak Family Housing, LLC v. United States*, 40 Fed. Cl. 673 (1998) that "[w]ell reasoned, recent decisions of the Court of Federal Claims uniformly conclude that, upon a finding that the administrative record in a bid protest case is incomplete or inadequate, it lies within the court's discretion to order that said record be appropriately supplemented." *Id*. at 676, citing *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 350 (1997)(Cubic II);[1] *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 154-56 (1997);[2] *GraphicData, LLC v. United States*, 37 Fed. Cl. 771, 779-80 (1997);[3] *Aero Corp., S.A. v. United*

[1]"[T]his court has adopted a flexible approach both in putting together the evidence that will be considered and in discovery, balancing the limited nature of the courts review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry."

[2]"Allowing the agency to retroactively delineate the scope of review may preclude the 'substantial inquiry' and 'thorough, probing, in-depth review' the court must perform to determine whether the agency's action was arbitrary and capricious."

[3]"[A] judge confronted with a bid protest case should not view the administrative record as an immutable boundary that defines the scope of the case."

*States*, 38 Fed. Cl. 408, 411 (1997);[4] *Day & Zimmermann Servs. v. United States*, 38 Fed. Cl. 591, 597 n.6 (1997);[5] *Delbert Wheeler Const., Inc. v. United States*, 39 Fed. Cl. 239, 246-47(1997).[6]

This Court noted in *Pikes Peak* that, while it is generally true that at first blush the focal point for judicial review should be the administrative record already in existence, not some new record made initially by the reviewing court, this threshold constraint on judicial review is rooted in 28 U.S.C. § 1491(b)(4), which adopts the somewhat deferential standard of review prescribed by the Administrative Procedure Act. And, as this Court observed:

> There is. . . a critical difference between the contemporaneous record compiled by an agency in the course of a formal adjudication or rulemaking proceedings under the APA, and the administrative record hospitably assembled by the agency for purposes of bid protest litigation. . . . [I]n the context of a bid protest, it is the defendant-agency that must, ex parte and in contemplation of litigation, "exercise some judgment in furnishing the court with the relevant documents." (citations omitted) **Effective judicial review of an agency's exercise of discretion is irreconcilably at odds with the notion that the reviewing court's inquiry must be confined to an administrative record that is likewise the product of the agency's sole discretion.**

40 Fed. Cl. at 676-77 (emphasis added). To preserve meaningful judicial review in bid protest cases, the Court appropriately allows supplementation of the record in these instances:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

---

[4]Court allowed deposition of Darleen Druyun to explain the structure of the record.
[5]"[A]dministrative record extensively supplemented with testimony at trial on the merits."
[6]Discovery allowed to permit plaintiff to explore alleged irregularities in procurement.

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989). In this case, factors 1, 4 and 5 apply. The Inspector General's report makes it clear that the agency action in this case is not adequately explained by the Administrative Record;[7] this is a case that involves the complexities of multiple investigations into Druyun's actions; and this is a case where post-award inquiries produced evidence not only questioning but concluding that Druyun's behavior was improper.

Further, in addition to L-3's claims of breach of implied contract and regulatory violations, L-3 asserts that in manipulating the procurement by unjustifiably appointing herself SSA and changing ratings to favor Lockheed to justify the selection of its higher cost proposal, Druyun acted in bad faith. This Court noted in *Four Points by Sheraton v. United States*, 63 Fed. Cl. 341 (2005), that in order to obtain discovery on bad faith a plaintiff must: (1) make a threshold showing of either a motivation for the Government employee to have acted in bad faith or of conduct that is hard to explain absent bad faith, and (2) persuade the Court that discovery could lead to evidence which would provide the level of proof sufficient to overcome the presumption of regularity and good faith. *Id*. at 344. That threshold showing in number 1 is made through the Inspector General's report that determined that the Air Force could not provide compelling evidence to justify Druyun's bias in favor of Lockheed. DoDIG's report at 6-7. *Cf. International Resource Recovery v. United States*, 61 Fed. Cl. 38 (2004). Druyun's motivation to act in bad faith, or to have engaged in actions hard to explain absent bad faith, are further supported by the following allegations in L-3's First Amended Complaint:

> 11. Also in 1999, Druyun concluded the largest public-private partnership in Air Force history. The partnership, worth $10.1 billion, was between Lockheed Martin and the Air Force's Oklahoma City depot for engine repair work. Branstetter, *Darleen Druyun: An Evolving Case Study in Corruption, Power, and Procurement*, 34 Pub. Cont. L. J. 443, 451 (2005).

---

[7] Indeed, the items L-3 seeks will make it possible to target the irregularities in the 190 thousand-page Administrative Record.

12. Also in 1999, Druyun emerged as the Pentagon's top advocate of the F/A-22, manufactured by Lockheed. Renae Merle, *Long Fall for Pentagon Procurement Star*, Washington Post, November 14, 2004.

13. Then in 2001 Druyun made history by supervising the award of the largest contract ever let by the Department of Defense---a $200 billion deal in which Lockheed Martin won the contract over Boeing to produce the F-35 Joint Strike Fighter Aircraft. Branstetter, *Darleen Druyun: An Evolving Case Study in Corruption, Power, and Procurement*, 34 Pub. Cont. L. J. 443, 451 (2005).

14. In August 2002 Druyun entered into employment discussions with Lockheed that resulted in a "handshake agreement" to join the ranks of Lockheed. She had apparently been focused on Lockheed as her future employer for some time. Branstetter, *Darleen Druyun: An Evolving Case Study in Corruption, Power, and Procurement*, 34 Pub. Cont. L. J. 443, 454 (2005).

15. Druyun later reneged on her agreement with Lockheed and accepted a position with Boeing after it had employed her daughter and son-in-law.

16. On April 20, 2004, Druyun entered a plea of guilty for conspiring to violate 18 U.S.C. § 209(a). She pled guilty to allowing personal interests to affect acquisition decisions. She was sentenced to prison on October 1, 2004.

17. . . . She acknowledged that, as a result of her loss of objectivity in acquisition actions, she took actions that harmed the United States.

. . .

34. Darleen Druyun rescinded the properly authorized appointment of the Commander of the Aeronautical System Center and made a unilateral and unjustified appointment of herself as SSA. She then proceeded to change ratings to favor Lockheed Martin to justify the selection of its higher cost proposal. By manipulating the procurement in this fashion, Druyun acted in bad faith. Both the appointment, not authorized by the Secretary of the Air Force, and the motivation for changing the ratings were concealed from L-3. L-3 was the victim of a manipulated source selection process directed by an unauthorized SSA.

35. By these actions, effectively predetermining Lockheed Martin as the awardee, the Air Force acted in bad faith.

These allegations, coupled with the Inspector General's report, challenge the presumption of regularity and good faith. The information L-3 seeks from the Druyun Study and the Inspector

General's investigation and report would further fuel that attack. Discovery under these circumstances to supplement the record is justified.

## CONCLUSION

L-3 respectfully requests that the Court order the Government to supplement the record by producing those additional documents pertaining to the C-5 AMP procurement that have not been included in the Administrative Record including, but not limited to, the items indexed on Exhibits 1-4 of the Declaration of Vicki A. Fry filed February 20, 2008, and the Anomaly Summaries, Team Reports, Situation Reports, and worksheets referenced in the summary document previously produced by the Government in response to the Court's order of December 21, 2006.

Respectfully submitted,

Dated: February 27, 2008

s/ Paul W. Searles

Paul W. Searles
HAYNES AND BOONE, LLP
901 Main Street
3100 Bank of America Plaza
Dallas, Texas 75202
Telephone: (214) 651-5197
Telecopier: (214) 200-0705

**ATTORNEYS FOR L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P.**

Of Counsel:

Sharon N. Freytag
HAYNES AND BOONE, LLP
901 Main Street
3100 Bank of America Plaza
Dallas, Texas 75202
Telephone: (214) 651-5586
Telecopier: (214) 200-0450

Attachment