No. 06-396C
(Judge Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

LOCKHEED MARTIN AERONAUTICS COMPANY,

Intervenor.

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L St. N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney
Department of Air Force
Arlington, VA

March 31, 2008

# TABLE OF CONTENTS

I. Standard Of Review For Contract Award Decisions ........................................... 2

II. Criteria For Supplementation Of The Administrative Record ............................. 5

III. Supplementation Of The Administrative Record Is Not Required To Determine Whether Druyun Improperly Designated Herself As The SSA For The C-5 AMP ..................................................................................... 13

IV. Supplementation Of The Administrative Record Is Not Required To Determine Whether Druyun Changed The Ratings Because Of An Improper Motive ......................................................................................... 17

V. L-3 Has Not Presented Evidence Satisfying The Esch Factors For Supplementation ............................................................................................ 20

## TABLE OF AUTHORITIES

### CASES

A&D Fire Prot., Inc. v. United States,
72 Fed. Cl. 126 (2006) .......... 2

American Mining Congress v. Thomas,
772 F.2d 617 (10th Cir. 1985), cert. denied,
476 U.S. 1158 (1986) .......... 12, 21, 22

ARINC Engineering Services, LLC v. United States,
77 Fed. Cl. 196 (2007) .......... 12

Advanced Data Concepts, Inc. v. United States,
216 F.3d 1054 (Fed. Cir. 2000) .......... 5

Aero Corp. v. United States,
38 Fed. Cl. 408 (1997) .......... 9

Bacon v. Department of Housing & Urban Development,
757 F.2d 265 (Fed. Cir. 1985) .......... 10

Bannum, Inc. v. United States,
404 F.3d 1346 (Fed. Cir. 2005) .......... 2, 3, 5

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) .......... 4

Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,
419 U.S. 281 (1974) .......... 4

Bromley Contracting Co. v. United States,
15 Cl. Ct. 100 (1988) .......... 5

CRC Marine Servs., Inc. v. United States,
41 Fed. Cl. 66 (1998) .......... 4

Califano v. Sanders,
430 U.S. 99 (1977) .......... 4

Camp v. Pitts,
411 U.S. 138 (1973) .......... 6, 7, 8

Campbell v. United States,
2 Cl. Ct. 247 (1983) .................... 5

Chicago, B. & Q. Ry. Co. v. Babcock,
204 U.S. 585 (1907) .................... 10

Cincom Systems, Inc. v. United States,
37 Fed. Cl. 663 (1997) .................... 4

Citizens to Preserve Overton Park, Inc. v. Volpe,
401 U.S. 402 (1971) .................... passim

City of Wheeling v. United States,
20 Cl. Ct. 659 (1990) .................... 10

Community for Creative Non-Violence v. Lujan,
908 F.2d 992 (D.C. Cir. 1990) .................... 11

Cubic Applications, Inc. v. United States,
37 Fed. Cl. 339 (1997) .................... 9

Environmental Defense Fund v. Costle,
657 F.2d 275 (D.C. Cir. 1981) .................... 7

Esch v. Yeutter,
876 F.2d 976 (D.C. Cir. 1989) .................... passim

Fayerweather v. Ritch,
195 U.S. 276 (1904) .................... 10

Florida Power & Light v. Lorion,
470 U.S. 729 (1985) .................... 6

Four Points by Sheraton v. United States,
63 Fed. Cl. 341 (2005) .................... 19

Frazier, III v. United States,
79 Fed. Cl. 148 (2007) .................... 21

Galen Med. Assocs., Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004) .................... 5, 17

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) .................... passim

International Resource Recovery, Inc. v. United States,
59 Fed. Cl. 537 (2004) ........ 8

Kentron Hawaii, Ltd. v. Warner,
480 F.2d 1166 (D.C. Cir. 1973) ........ 13

L-3 Communications Integrated Systems, L.P. v. United States,
79 Fed. Cl. 453 (2007) ........ 1, 17, 18

Latecoere Int'l., Inc. v. U.S. Dept of Navy,
19 F.3d 1342 (11th Cir. 1994) ........ 13

M.W. Kellogg Co. v. United States,
10 Cl. Ct. 17 (1986) ........ 4

Marsh v. Oregon Natural Resources Counsel,
490 U.S. 360 (1989) ........ 6

Microdyne Outsourcing v. United States,
72 Fed. Cl. 230 (2006) ........ 21

Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.,
463 U.S. 29 (1983) ........ 7

Murakami v. United States,
46 Fed. Cl. 731 (2000) ........ 12, 21, 22

Murakami v. United States,
398 F.3d 1342 (Fed. Cir. 2005) ........ 12

Orion Int'l Technologies v. United States,
60 Fed. Cl. 338 (2004) ........ 8

Planning Research Corp. v. United States,
4 Cl. Ct. 283 (1983) ........ 10

Pollgreen v. Morris,
770 F.2d 1536 (11th Cir. 1985) ........ 7

Saratoga Development Corp. v. United States,
21 F.3d 445 (D.C. Cir. 1994) ........ 11, 13

Sarasota Measurements & Controls, Inc., B-252406, July 15, 1994,
94-2 CPD ¶ 32 ........ 17

Serco Inc. v. United States,
2008 WL 623803 (Fed. Cl., March 3, 2008) ........ 12

Sierra Club v. Costle,
657 F.2d 298 (D.C. Cir. 1981) ........ 8

Speedy Food Service Inc., B-258537, May 2, 1995,
95-2 CPD ¶ 111 ........ 17

Standard Manufacturing Co., Inc. v. United States,
7 Cl. Ct. 13 (1984) ........ 9

Stapp Towing, Inc. v. United States,
34 Fed. Cl. 300 (1995) ........ 9

Statistica, Inc. v. Christopher,
102 F.3d 1577 (Fed. Cir. 1996) ........ 5

Tech Sys., Inc. v. United States,
50 Fed. Cl. 216 (2001) ........ 3

United Int'l Investigative Services, Inc. v. United States,
41 Fed. Cl. 312 (1998) ........ 8

United States v. Morgan,
304 U.S. 1 (1938) ........ 9, 10

United States v. Morgan,
313 U.S. 409 (1941) ........ 9, 10, 11

Western Electric Co., Inc. v. Piezo Technology, Inc.,
860 F.2d 428 (Fed. Cir. 1988) ........ 10

Wit Assoc., Inc. v. United States,
62 Fed. Cl. 657 (2004) ........ 4

**STATUTES**

5 U.S.C. § 706 ........ 3, 5, 6

28 U.S.C. § 1491(b)(1) ........ 3

28 U.S.C. § 1491(b) (2004) ........ 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P., | ) |
| Plaintiff, | ) |
| v. | ) No. 06-396C |
| | ) (Judge Williams) |
| THE UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| LOCKHEED MARTIN AERONAUTICS COMPANY, | ) |
| Intervenor. | ) |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

L-3 Communications Integrated Systems, L.P. (L-3) requests that the Court allow it to supplement the administrative record in this post-award bid protest of the Air Force's January 1999 award of two contracts to Lockheed Martin Aeronautics Company (Lockheed Martin) to modernize the C-5 Galaxy aircraft (C-5 AMP). L-3 Communications Integrated Systems, L.P. v. United States, 79 Fed. Cl. 453 (2007) (L-3). Specifically, L-3 requests that the administrative record be supplemented with (1) over 13 inches of documents from the Defense Contract Management Agency (DCMA) related to the February 2005 Druyun Study, (2) workpapers and supporting documents for the February 28, 2006 Department of Defense Inspector General (DoD IG) Report on the source selection procedures for the C-5 AMP, (3) Air Force documents relating to the DoD IG report, and (4) DoD documents relating to the Druyun Study or the DoD IG report. These documents were identified in the February 20, 2008 declaration of Air Force Contracting Officer Vicki A. Fry and attached indices of documents, which together "describ[e] those

additional documents pertaining to the C-5 AMP procurement which will not be included in the Administrative Record, including but not limited to, documents described in the Druyun Study and Department of Defense Inspector General investigation and Report." See Order dated November 27, 2007. L-3 also requests "anomaly summaries, team reports, situation reports and worksheets" referenced in the Druyun Study, which was produced by the Government in response to the Court's order dated December 21, 2006, to the extent that such documents are not already included in the indices of documents already filed by the Government.

Also, although L-3 does not request that the Court supplement the administrative record with (1) the February 28, 2006 DoD IG report on the C-5 AMP, and (2) the February 2005 Druyun Study, we assume that is also L-3's position. In opposing L-3's motion, we also oppose supplementation of the administrative record with those two documents.

L-3's asserted basis for requesting such supplementation of the administrative record is essentially that the administrative record allegedly is inadequate to permit the Court to decide whether Darleen Druyun, the Source Selection Authority (SSA), (1) violated Air Force regulations and improperly assumed her duties as the SAA, and (2) manipulated the source selection process of the C-5 AMP procurement by adjusting ratings to better support Lockheed Martin's higher cost proposal and did so because she was biased in favor of Lockheed Martin. Pl. Mot. 2.

I. Standard Of Review For Contract Award Decisions

Under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), the Court determines whether, given all the disputed and undisputed facts, a party has met its burden of proof based upon the evidence in the administrative record. A&D Fire Prot., Inc. v. United

States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). The standards applicable to a motion for judgment upon the administrative record differ from those applied in the context of a Rule 56 motion for summary judgment. Bannum, 404 F.2d att 1355-56. Unlike a Rule 56 motion, "proceeding under RCFC [52.1] merely restricts the evidence to the agency record . . . . " Bannum, 404 F.3d at 1356; Tech Sys., Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (explaining basis for summary judgment on the administrative record). "Thus, the central inquiry on a motion for summary judgment - whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment - has no bearing on a review of the administrative record . . . ." Tech Sys., 50 Fed. Cl. at 222; accord Bannum, 404 F.3d at 1356 (holding that RCFC [52.1] requires a different standard of review without the burden-shifting and presumptions required pursuant to RCFC 56).

The Tucker Act, as amended by the Administrative Disputes Resolution Act ("ADRA"), 28 U.S.C. § 1491(b) (2004), confers jurisdiction upon this court

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). The Court applies a standard of review adopted from the Administrative Procedure Act ("APA"), codified at 5 U.S.C. § 706. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). This standard of review provides that a reviewing court shall set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." 5 U.S.C. § 706(2)(A); Impresa, 238 F.3d

at 1332 n.5. As the Court has explained, "[b]y its very definition, this standard recognizes the possibility of a zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which 'consider[s] the relevant factors' and is 'within the bounds of reasoned decisionmaking.'" Wit Assoc., Inc. v. United States, 62 Fed. Cl. 657, 660 (2004) (citations omitted).

In determining whether an agency's action was arbitrary or capricious, the scope of the Court's review is very limited. Cincom Systems, Inc. v. United States, 37 Fed. Cl. 663, 671 (1997). An agency's decision is entitled to a "presumption of regularity," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971) (Overton Park), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977), and the Court may not substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions. CRC Marine Servs., Inc. v. United States, 41 Fed. Cl. 66, 83 (1998); Cincom, 37 Fed. Cl. at 672; see also M.W. Kellogg Co. v. United States, 10 Cl. Ct. 17, 23 (1986) (holding that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations"). "This deference is particularly great when a negotiated procurement is involved and is greater still when the procurement is a 'best value' procurement." Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320 (2000) (citations omitted). As long as a rational basis is articulated and relevant factors are considered, the agency's action must be upheld. Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974). Thus, the disappointed bidder "bears a heavy burden" and the procurement officer is "entitled to exercise discretion upon a broad range of issues confronting [her]." Impressa, 238 F.3d at 1332 (citations omitted). This burden "is not met by reliance on [the] pleadings alone, or

by conclusory allegations and generalities." Bromley Contracting Co. v. United States, 15 Cl. Ct. 100, 105 (1988); see also Campbell v. United States, 2 Cl. Ct. 247, 249 (1983).

Trial court review of procurement decisions is a two-step process. Bannum, 404 F.3d at 1351. "First, the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract." Id. "Second, . . . if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct." Id.; Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000). In short, the protestor "must show that there was a 'substantial chance it would have received [a] contract award but for that error.'" Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1331 (Fed. Cir. 2004) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).

In those bid protests where plaintiffs allege bad faith, bias or favoritism on the part of agency decision makers, they bear an especially heavy burden. In order to overcome the presumption of good faith and administrative regularity, the protestor must present "almost irrefragable proof" which amounts to "clear and convincing evidence, and the necessary irrefragable proof has been equated with evidence of "some specific intent to injure the plaintiff." Galen Med. Assocs., Inc., 369 F.3d at 1330, 1334 (change in ratings of proposals was not evidence of bad faith).

II. Criteria For Supplementation Of The Administrative Record

The APA scope of review and the criteria for going outside of the administrative record both are established in Supreme Court decisions. The APA standard of review is "a narrow one."

Overton Park, 401 U.S. at 416; Marsh v. Oregon Natural Resources Counsel, 490 U.S. 360, 378 (1989). The reviewing court "must consider whether the decision was based on a consideration of the relevant facts and whether there has been a clear error of judgment," and the court is not to substitute its judgment for that of the agency. Id. Further, minor errors or irregularities, i.e., harmless error, committed in the procurement process are not sufficient grounds to warrant judicial intrusion to upset a procurement decision. 5 U.S.C. § 706(2) (court must take into account rule of prejudicial error).

APA review of agency action is not de novo, but is limited to review of the administrative record. Florida Power & Light v. Lorion, 470 U.S. 729, 743 (1985); Camp v. Pitts, 411 U.S. 138, 142 (1973); Overton Park, 401 U.S. at 420. Where agency action has been challenged as arbitrary, capricious, an abuse of discretion, or otherwise contrary to law:

> [T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.

Camp, 411 U.S. at 142. Supreme Court decisions establish that the administrative record consists of the materials and files that were before the agency at the time the decision was made, not materials adduced through discovery by opponents of the agency's action or de novo proceedings in the trial court. Florida Power & Light, 470 U.S. at 743; Camp, 411 U.S. at 142; Overton Park, 401 U.S. at 420. As the Supreme Court stated, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." Florida Power & Light, 470 U.S. at 743. Stated otherwise, the scope of review under the arbitrary and capricious standard is narrow and a court

is not to "substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983).

The only exceptions to this principle apply in the unusual case in which a court determines that the administrative record presented by the agency does not provide an adequate basis for judicial review. Camp, 411 U.S. at 143; Overton Park, 401 U.S. at 420. However, in such a case, "the remedy . . . [is] to obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary," Camp, 411 U.S. at 142-43, or else to remand to the agency for amplification. Florida Power & Light, 470 U.S. at 744; Overton Park, 401 U.S. at 420. The purpose of this narrow exception is to amplify the record - not to provide extra-record evidence, for to do so would invite the Court to substitute its judgment for that of the agency. Pollgreen v. Morris, 770 F.2d 1536, 1545 (11th Cir. 1985) (it was error to consider extra-record evidence on the merits in review of agency action); Environmental Defense Fund v. Costle, 657 F.2d 275, 285-86 n. 37 (D.C. Cir. 1981) (petitioner's affidavits from non-Government experts "addressing the propriety and merits of agency decision" are irrelevant and inadmissible). As the United States Court of Appeals for the Federal Circuit held in Impresa, when the administrative record is not adequate to resolve a factual matter, “remand to the agency is the preferred course and [] testimony will be ordered only in ‘rare circumstances.’” 238 F.3d at 1338 (quoting Florida Power & Light, 470 U.S. at 744).

Thus, a court first must find either that there is no written explanation of the agency's action or find that the administrative record is inadequate to explain the agency's action, and, second, the court must attempt to secure the necessary explanations through the agency itself,

either through "post hoc" findings if they adequately explain the basis for the decision, Overton Park, 401 U.S. at 420-21, or through affidavits of appropriate officials. Camp, 411 U.S. at 143; Sierra Club v. Costle, 657 F.2d 298, 390 n.45 (D.C. Cir. 1981) (no interrogatories permitted).

In Impresa, 238 F.3d at 1339, the Federal Circuit in reviewing the administrative record first found that there was no contemporaneous document that stated the contracting officer's reasons for his determination that a contractor was responsible, and then determined that the plaintiff would be permitted to take a deposition of the contracting officer "confined strictly to placing on the record the basis for the contracting officer's responsibility determination," without probing his reasons. The Federal Circuit also held that an agency is entitled to a presumption of regularity in compiling the administrative record, and that, "in determining whether to require an explanation, the agency decision is entitled to a presumption of regularity." Id. at 1338. There, the Federal Circuit emphasized that the litigant seeking discovery to supplement the administrative record "necessarily bears a heavy burden" because he must rebut the presumption of administrative regularity "by record evidence suggesting that the agency decision is arbitrary and capricious" before the Court may require supplementation of an administrative record. Id.

This Court also has recognized the limited APA scope of review and the related restrictions upon the permissible factual supplementation of the administrative record or discovery in bid protest cases. Orion Int'l Technologies v. United States, 60 Fed. Cl. 338, 345-47 (2004) (allowing only limited interrogatories of awardee personnel and former employee of plaintiff who became an agency employee); International Resource Recovery, Inc. v. United States, 59 Fed. Cl. 537, 539 (2004) (allowing deposition of contracting officer limited to issue of agency's alleged past practice of allowing incumbent contractors to forego submitting

mobilization plans, which past practice was not explained in administrative record); United Int'l Investigative Services, Inc. v. United States, 41 Fed. Cl. 312, 318 (1998) (allowing two depositions upon only limited issues); Aero Corp. v. United States, 38 Fed. Cl. 408, 412 (1997) (protester could not inquire into mental processes of Government employees, but could depose officials to explain structure of record and clarify one point not discussed in the record); Cubic Applications, Inc. v. United States, 37 Fed. Cl. 339, 342 (1997) (allowing deposition of contracting officer on one issue; denying all other depositions); Stapp Towing, Inc. v. United States, 34 Fed. Cl. 300, 307-08 (1995) (review limited to the administrative record; plaintiff's affidavits were not helpful); Standard Manufacturing Co., Inc. v. United States, 7 Cl. Ct. 13, 15 (1984) (review limited to the administrative record; bid protester may not depose the deciding official).

Further, probing the mind of the decision maker is clearly impermissible. Impresa, 238 F.3d at 1339 (plaintiff is not permitted to probe "into the contracting officer's mental process, that is, the thought process by which he made his decision") (citing United States v. Morgan, 313 U.S. 409, 422 (1941)); Aero Corp., 38 Fed. Cl. at 413 (in bid protest, probing mental processes of decision maker was not permissible; denying request to depose leader of the SSEB and leader of the technical team as to the grounds for their determinations re proposal); Standard Manufacturing Co., 7 Cl. Ct. at 15-16 (refusing to allow a bid protester to quiz an administrative official concerning his reasons for making a determination).

The restriction upon probing of minds of the decision makers is based upon Supreme Court decisions. In United States v. Morgan, 304 U.S. 1 (1938), an order of the Secretary of Agriculture setting rates at the Kansas City Stockyards was challenged, and plaintiffs were

permitted by the district court to take the Secretary's deposition and question him at trial. The Supreme Court stated: "we agree with the Government's contention that it was not the function of the court to probe the mental processes of the Secretary in reaching his conclusions." Id. at 18. When the case returned to the Supreme Court, even stronger language was used:

> Just as a judge cannot be subjected to such a scrutiny, compare Fayerweather v. Ritch, 195 U.S. 276, 306-307, 25 S.Ct. 58, 49 L.Ed. 193, so the integrity of the administrative process must be equally respected. See Chicago, B. & Q. Ry. Co. v. Babcock, 204 U.S. 585, 593, 27 S.Ct. 326, 327, 51 L.Ed. 636. It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other.

United States v. Morgan, 313 U.S. 409, 422 (1941). The Supreme Court held that "the short of the business is that the Secretary should never have been subjected to this examination." Id. Accord, City of Wheeling v. United States, 20 Cl. Ct. 659, 668 (1990); Planning Research Corp. v. United States, 4 Cl. Ct. 283, 297 (1983) ("plaintiff has yet to make a showing sufficient to overcome the Overton Park strictures and allow it to probe the mental processes of the evaluators").

The Morgan rule also was followed in Western Electric Co., Inc. v. Piezo Technology, Inc., 860 F.2d 428, 431 (Fed. Cir. 1988), where the court of appeals held that a patent examiner may not be subject to deposition, citing Bacon v. Department of Housing & Urban Development, 757 F.2d 265, 269-70 (Fed. Cir. 1985) (court and MSPB could not look behind HUD's stated purpose for a reduction-in-force).

L-3 asserts that the criteria for determining whether to allow supplementation of the administrative record are the eight factors set forth in Esch v. Yeutter, 876 F.2d 976 (D.C. Cir. 1989), as follows:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence with it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action show whether the decision was correct or not: (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Esch, 876 F.2d at 991.

However, since Esch, the United States Court of Appeals for the D. C. Circuit has clarified and narrowed its view of the proper criteria for allowing supplementing of the administrative record. In Saratoga Development Corp. v. United States, 21 F.3d 445 (D.C. Cir. 1994), the court of appeals held that the administrative record gave the reviewing court ample information to review, and that the disappointed bidder was not entitled to discovery with respect to the mental processes of decision makers. The court of appeals ruled that "discovery is proper in only two circumstances: when it 'provides the only possibility for effective judicial review and . . . there have been no contemporaneous administrative findings' (so that without discovery the administrative record is inadequate for review), and when 'there has been a strong showing of bad faith or improper behavior' (so that without discovery the administrative record cannot be trusted)." Id. at 458, citing Community for Creative Non-Violence v. Lujan, 908 F.2d 992, 997

(D.C. Cir. 1990); Overton Park, 401 U.S. at 420; see also United States v. Morgan, 313 US. 409 (1941).

Although the question is not free from controversy here, it has been emphasized that the eight factor test of Esch is inappropriate for determining whether an administrative record should be supplemented. Serco Inc. v. United States, 2008 WL 623803 (Fed. Cl., March 3, 2008) ("As this court has explained elsewhere, Esch v. Yeutter, 876 F.2d 976 (D.C. Cir. 1989) - often cited as authority for 'supplementing' the administrative record - is heavily in tension with these Supreme Court precedents and relies upon authorities (principally a law review article) that do not support its liberal view of supplementation."); ARINC Engineering Services, LLC v. United States, 77 Fed. Cl. 196, 200-01 (2007) (a failure to exercise restraint in examining information that was not available to the agency "risks converting arbitrary and capricious review into a subtle form of de novo review"). In Murakami v. United States, 46 Fed. Cl. 731 (2000), the Court also noted that Esch "involved the procedural validity of the agency action, rather than the merits of the substantive decision reached." Id. at 735 n.3 (citing Esch, 876 F.2d at 991). Thus, to the extent Esch allowed any supplementation of an administrative record it did so only in order to determine whether there was a procedural violation, and the Esch court did not allow factual supplementation to review the agency's determination of the merits of competing proposals. Further, as the Murakami court emphasized, it is essential that any exceptions allowing supplementation of the administrative record "must be extremely limited." Murakami, 46 Fed. Cl. at 735 (quoting American Mining Congress v. Thomas, 772 F.2d 617, 626 (10th Cir. 1985), cert. denied, 476 U.S. 1158 (1986)). Especially where the trial court is engaged in a review of the merits of the agency's decision, "the admission of additional evidence not considered by the

agency below and its consideration by the court [could likely] convert the 'arbitrary and capricious' standard into effectively de novo review." Murakami, 46 Fed. Cl. at 735. See also Murakami v. United States, 398 F.3d 1342, 1355 (Fed. Cir. 2005) (sustaining refusal of supplementation of administrative record).

Further, the United States Court of Appeals for the Federal Circuit has relied upon the D.C. Circuit's statements of the proper standard for APA review in Saratorga and has never adopted the Esch criteria as the test for determining whether to allow supplementation of an administrative record. Thus, in Impresa, 238 F.3d at 1333, the Federal Circuit emphasized that under APA standards that are to be applied here "a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." As the Federal Circuit ruled,

> the test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," id., and the "disappointed bidder bears a heavy burden of showing that the award decision had no rational basis.'" Saratoga Dev. Cor. v. United States, 21 F.3d 445, 456 (D.C. Cir. 1994). When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." Kentron, 480 F.2d at 1169; Latecoere, 19 F.3d at 1356.

Impresa, 238 F.3d at 1333. As noted above, the Federal Circuit held that an agency is entitled to a presumption of regularity in compiling the administrative record, and that, "in determining whether to require an explanation, the agency decision is entitled to a presumption of regularity." Id. at 1338. The Federal Circuit emphasized that the litigant seeking to supplement the administrative record "necessarily bears a heavy burden" because he must rebut the presumption

of administrative regularity "by record evidence suggesting that the agency decision is arbitrary and capricious" before the Court may require supplementation of an administrative record. Id. Counsel's statements or allegations in a complaint are not sufficient; a protestor must present "record evidence" establishing hard facts rebutting the presumption. Id.

III. Supplementation Of The Administrative Record Is Not Required To Determine Whether Druyun Improperly Designated Herself As The SSA For The C-5 AMP

L-3's contention that Mrs. Druyun improperly delegated the SSA duties and responsibilities for the C-5 AMP to herself is a pure legal contention, the resolution of which requires no factual supplementation of the administrative record. First, L-3 has no right to a decision by any particular agency official and, thus, L-3 fails to state a cause of action entitling it to relief in contending that Mrs. Druyun's delegation memorandum, dated March 26, 1998 (App. 320), was somehow improper. Maxell Labs., Inc., B-249102, 92-2 CPD ¶ 286 at 5 (1992) ("evaluator qualifications are within the contracting agency's sound discretion and we will not object to the agency's use of particular evaluators").

Second, even if this Court possessed the authority to review Mrs. Druyun's decision to delegate authority to herself in her delegation memorandum, dated March 26, 1998 (App. 320)[1/], there still would be no merit in L-3's contentions. L-3 relies upon the following statements in the February 2006 DoD IG report in contending that Mrs. Druyun improperly designated herself as the SSA for the C-5 AMP procurement:

> Air Force personnel could not provide support for the Principal Deputy's decision to rescind the Assistant Secretary of the Air

[1/] "App.__" refers to the appendix to the March 27, 2007 Defendant's Supplemental Brief and Motion To Dismiss Plaintiff's Amended Complaint. Excerpts from that appendix are attached to this brief.

> Force's original SSA delegation and instead delegate the position to herself. Upon the departure of the Assistant Secretary of the Air Force (Acquisition), the Acting Secretary of the Air Force expanded the responsibilities of the Principal Deputy to include her designation as the SSA for all agency-level procurement actions, but not command-level (such as the C-5 AMP source selection). Air Force personnel involved in the C-5 AMP provided the following rationale for the change in the SSA delegation: the C-5 AMP designation as a test case for new source selection procedures, requirements expansion and cost growth, and a possible request from warfighter representatives for additional oversight. However, Air Force personnel could not provide documentation to support any of these rationales.

DoD IG Report at 6. In its report, the DoD IG acknowledged that F. Whitten Peters, the Acting Secretary of the Air Force, had expanded the responsibilities of the Principal Deputy (Mrs. Druyun) to include her designation as the SSA for all agency-level procurement actions, but the DoD IG erroneously believed that the C-5 AMP procurement was a command-level procurement. Id.

By memorandum dated March 26, 1998, Mrs. Druyun assigned to herself the duties and responsibilities of the SSA for the C-5 AMP procurement. App. 320. Whether Mrs. Druyun violated Air Force regulations or otherwise acted improperly in assigning herself the duties and responsibilities of the SSA depends upon the facts and documents contained in the administrative record and the interpretation of regulations. The proper interpretation of Air Force regulations is a matter within the discretion of the Air Force, and the agency's interpretation of its own regulations is entitled to this Court's deference. Factual supplementation of the record is not required to resolve this legal issue.

Air Force regulations distinguish between headquarters-level and command-level acquisitions based upon their dollar value. Pursuant to the Air Force Federal Acquisition

Regulation Supplement ("AFFARS"), Appendix AA-105(a) dated July 31, 1996, entitled "Source Selection Authority," the "ASAF(A) [Assistant Secretary of the Air Force (Acquisition)] [was] the SSA for those contract actions where the application of this appendix is mandatory under AA-101." App. 299 (page 7 of AFFARS Appendix AA). AFFARS Appendix AA-101 made the appendix applicable to all competitive negotiated procurements for "contract actions estimated at $500 million or more." App. 297.

The DoD IG's criticism of Mrs. Druyun's March 26, 1998 memorandum was unfounded, because the C-5 AMP was not "a command-level acquisition"; instead, it was an Air Force headquarters-level acquisition pursuant to AFFARS AA-101 and AA-105, because it was estimated to exceed $500 million. App. 335. Pursuant to Air Force regulations, all procurements greater than $500 million were headquarters-level procurements. App. 297-99. Accordingly, Mrs. Druyun did not violate any Air Force regulations in assigning the duties and responsibilities of the SSA for the C-5 AMP to herself.

Mrs. Druyun's March 26, 1998 memorandum also was consistent with Mr. Peters's "Further Assignment of Responsibilities in the Absence of an Assistant Secretary for Acquisition" memorandum, dated March 17, 1998 (App. 318-19), because the C-5 AMP procurement action was estimated at more than $500 million. As noted, Air Force regulations directed that procurements greater than $500 million be decided at the level of the Assistant Secretary of the Air Force (Acquisition). App. 297-99. On March 17, 1998, Mr. Peters had duly appointed Mrs. Druyun to serve as the SSA for all procurements that required an SSA at the Assistant Secretary of the Air Force (Acquisition) level. App. 318. Because the C-5 AMP was estimated to exceed $500 million, Mrs. Druyun acted within the scope of the delegation of

authority memorandum, dated March 17, 1998, from the Acting Secretary of the Air Force, and consistently with AFFARS AA-101 and AA-105 by serving as the SSA for the C-5 AMP. App. 297-99. By the Acting Secretary of the Air Force's delegation memorandum, dated March 17, 1998, Mrs. Druyun had the authority to "act as the Source Selection Authority (SSA) for all procurement actions that require an SSA at the SAF/AQ level." App. 318 (emphasis added). Because the C-5 AMP was estimated to exceed $500 million, the acquisition was a Air Force headquarters-level acquisition pursuant to AFFARS AA-101 and AA-105. App. 318.

In sum, Mrs. Druyun did not violate any regulations in assigning to herself the duties and responsibilities of an SSA for the C-5 AMP. There also is not any basis for factual supplementation of the administrative record to enable the Court to resolve this question.

IV. Supplementation Of The Administrative Record Is Not Required To Determine Whether Druyun Changed The Ratings Because Of An Improper Motive

L-3 also contends that the SSA acted with an improper motive in changing the ratings for Raytheon and Lockheed Martin in her source selection decision document (SSDD) from those that had been made by the Advisory Council in the PAR report. There is nothing improper on its face about an SSA changing the ratings in a procurement. L-3, 79 Fed. Cl. at 462; Galen Med. Assoc., 369 F.3d at 1337 (changing ratings was not evidence of bad faith). This Court stated:

> The SSA's changing of SSAC's scoring is permissible. The FAR requires the SSA to exercise independent judgment and permits the SSA to test and disagree with the evaluators' conclusions. As GAO has explained:
>
> > Source selection officials are not bound by the recommendations of lower-level evaluators, and as a general rule, we will not object to the higher level officials judgment, absent unreasonable or improper action, even when the official disagrees with an assessment made by a working-level evaluation

> board or individuals who normally may be expected to have the technical expertise required for such evaluations.
>
> Speedy Food Service Inc., B-258537, May 2, 1995, 95-2 CPD ¶ 111 (citing Sarasota Measurements & Controls, Inc., B-252406, July 15, 1994, 94-2 CPD ¶ 32).

L-3, 79 Fed. Cl. at 462.

L-3 contends that Mrs. Druyun, in deciding in favor of Lockheed Martin in her SSDD in January 1999, was motivated by bad faith and bias in favor of Lockheed Martin, and, because of such motivations, she changed the offerors' ratings in order to better support the proposal of Lockheed Martin. As this Court recognized, L-3 has accused Mrs. Druyun of "fraud or quasi-criminal wrongdoing" in the C-5 AMP procurement, and must present "clear and convincing evidence" to support its allegations. L-3, 79 Fed. Cl. at 464. As the Court stated, "the allegation that Druyun manipulated the C-5 AMP procurement to ensure Lockheed Martin would win because she wanted to curry favor with that company in the hope of securing employment there, rises to the level of quasi-criminal conduct." Id.

Essentially, L-3 accuses Mrs. Druyun's SSDD of being a sham - a fraud upon the offerors, the Court, the Air Force, and the American public - and asserts that the Court may not premise its decision upon that official document together with the official administrative record in reviewing the award of the C-5 AMP contracts, but instead the Court must create a new record - consisting of thousands of other documents that were not before the agency at the time of the award decision - and presumably make new factual findings. L-3's argument should be rejected because it falls far short of providing the "clear and convincing evidence" required before the Court may treat an official SSDD as a sham. L-3, 79 Fed. Cl. at 464.

In this respect, L-3 contends that the record should be supplemented as it requested because it has made allegations of bad faith and favoritism of Lockheed Martin in the C-5 AMP procurement on the part of Mrs. Druyun. Pl. Mot. 5. However, L-3's ascription of evil motives to Mrs. Druyun in her decision in the C-5 AMP procurement is not based upon any hard record evidence relating to the C-5 AMP procurement. Statements of counsel or allegations of a complaint are insufficient. Absent some hard record evidence of bias or favoritism for Lockheed Martin tied to this procurement, the Air Force is entitled to the presumption of regularity and good faith, and L-3 is not entitled to factual supplementation of the administrative record.

Specifically, L-3 claims that Mrs. Druyun's favoritism of Lockheed Martin is shown by (1) in 1999, Mrs. Druyun's concluding the partnership, worth $10.1 billion, between Lockheed Martin and the Air Force's Oklahoma City depot for engine repair work; (2) in 1999, Mrs. Druyun's being the top advocate of the F/A-22, manufactured by Lockheed; (3) in 2001, Mrs. Druyun's supervising the award of the contract to produce the F-35 Joint Strike Fighter Aircraft to Lockheed Martin; and (4) Druyun's entering into employment discussions with Lockheed in August 2002 that resulted in a 'handshake agreement' to join Lockheed. Pl. Mot. 5. These allegations all rely upon events that are claimed to have occurred after the January 1999 award of the C-5 AMP contracts. None of the allegations demonstrate any favoritism of Mrs. Druyun for Lockheed Martin. There also is no record evidence that Mrs. Druyun's actions in these other matters were in violation of any law or regulation, or that they were based upon favoritism or bias in favor of Lockheed Martin. L-3 plainly has not rebutted the presumption of regularity and has not met its "heavy burden" for obtaining supplementation of the administrative record because of the alleged bad faith of the agency decision maker. Impresa, 238 F.3d at 1388.

L-3's reliance upon Four Points by Sheraton v. United States, 63 Fed. Cl. 341 (2005) as a basis for discovery and supplementation of the administrative record is misplaced. There, the Court also recognized that agency decision makers are entitled to a presumption of regularity, and as noted above, L-3 has failed to present record evidence of hard facts rebutting that presumption. See Impresa, 238 F.3d at 1333, 1338 (the agency is entitled to a presumption of regularity and good faith, and a plaintiff "necessarily bears a heavy burden" because he must rebut the presumption of administrative regularity and good faith "by record evidence suggesting that the agency decision is arbitrary and capricious" before the Court may require supplementation).

V. L-3 Has Not Presented Evidence Satisfying The Esch Factors For Supplementation

As discussed above at pages 11-13, the eight Esch factors are not the proper test for determining whether to allow supplementation of the administrative record. However, L-3's request for supplementation of the administrative record also should be denied because it has not presented record evidence demonstrating that supplementation of the administrative record, as discussed in Esch, is required in order for the Court to decide this case. L-3 relies upon Esch factors 1, 4, and 5. Pl. Mot. 5. L-3's arguments are without merit.

L-3 contends that the agency action allegedly is not adequately explained in the administrative record (Esch factor one). L-3 asserts that the DoD IG report makes it clear that the agency action in this case is not adequately explained in the administrative record. To the contrary, Mrs. Druyun's reasons for changing the ratings presented to her by the Advisory Council are set forth in her SSDD. The DoD IG's conclusion that Mrs. Druyun did not document her rationale for subsequent changes to the evaluation results is contradicted by that official

document which is part of the administrative record. As the DoD IG acknowledged, Mrs. Druyun's rationale for changing the ratings presented by the Advisory Council was "to cite her personal experience." IG Report at 7. Id. The fact that the DoD IG may not have been satisfied with Mrs. Druyun's stated reasons for making such changes does not mean that those were not her actual reasons or that the administrative record itself is inadequate for purposes of judicial review. The record contains the SSDD, as well as the report of the Advisory Council, and the post-award briefing documents. L-3 does not explain how this approximately 190,000-page administrative record is allegedly incomplete, and does not even identify any alleged irregularities in the record. Further, even if the Court, upon a review of the administrative record, were to find that the record is inadequate to resolve some factual point, the proper course of action would be to remand to the agency for a further explanation, not to supplement with thousands of other documents that were never before the agency for review.

L-3 contends that this case is so complex that a court needs more evidence to enable it to understand the issues clearly (Esch factor four). L-3 contends that this case is complex because there have been "multiple investigations into Druyun's actions." Pl. Mot. 5. There is no merit in this argument. "[T]he complexity exception under Esch is generally confined to cases involving scientific, economic or otherwise obscure or specialized topics of the sort that might ordinarily require explanation by expert witness." Murakami, 46 Fed. Cl. at 736. That is not the case here where L-3 contends that Mrs. Druyun allegedly changed the ratings because she was motivated by a bias and favoritism for Lockheed Martin. No specialized knowledge or technical expertise is required for this Court to determine issues of basis or favoritism, and the Court repeatedly has addressed and decided such issues in bid protest cases. E.g., Frazier, III v. United States, 79 Fed.

Cl. 148 (2007); Microdyne Outsourcing v. United States, 72 Fed. Cl. 230, 235 (2006). The Court is well able to decide allegations of bias and favoritism on the part of agency decision makers without the assistance of any views of expert witnesses or others upon technical topics. Moreover, the Court also is able to determine issues of basis or favoritism without reliance upon the views of the DoD IG, whose report is not properly a part of the administrative record. The DoD IG report, as well as the Druyun Study, were never before the agency prior to its award decision. If the Court were to rely upon such documents, or other documents related to them, to review the award decision and the SSDD, it would convert the narrow review permitted by the APA into an impermissible de novo review of the merits of the agency's procurement decision. Murakami, 46 Fed. Cl. at 736.

L-3 also contends that evidence arising after the agency action shows whether the decision was correct or not (Esch factor five). In this respect, L-3 contends that "post-award inquiries have produced evidence not only questioning but concluding that Druyun's behavior was improper." Pl. Mot. 5. L-3 is in error and misreads the DoD IG report. The DoD IG report did not conclude that Mrs. Druyun's decision that Lockheed Martin's proposals for the C-5 AMP presented the best value for the Air Force was in error, and L-3 has provided no hard record evidence that Mrs. Druyun's action of changing ratings based upon her personal experience was improper. Indeed, L-3 has not cited any case law for its apparent assertion that it was improper for the SSA to consider her personal experience. Further, the Esch factor five "has infrequently been applied and is of dubious extraction." Murakami, 46 Fed. Cl. at 736. "The few published decisions that apply this exception appear to involve situations in which evidence was produced to show the projections or predictions upon which an agency action was based either proved

accurate or inaccurate." Id. However, an agency decision is to be judged based upon the pertinent facts that were known, or at least reasonably knowable, by the agency at the time of its decision. As the Murakami Court emphasized, the trial court's admission of new evidence which was not before the agency at the time of its decision has the likelihood of converting a limited review of the agency's decision into an impermissible de novo review. Id.

Moreover, it is not appropriate for a reviewing Court to decide whether the agency's decision was correct. Rather, the Court should "examine the agency's evaluation to ensure that it was reasonable and consistent with the evaluation criteria and applicable statutes and regulations, since the relative merit of competing proposals is primarily a matter of administrative discretion." Galen Med. Assocs., 369 F.3d at 1330 (citation omitted). If the agency's decision is within the zone of reasonableness, it should be sustained. ARINC Engineering Services, 77 Fed. Cl. at 200 (citing Baltimore Gas & Elec. Co., 462 U.S. 87, 105 (1983)). "The focus is on the reasonableness of the agency's result, rather than its correctness." Id.

Finally, the Court should deny L-3's request to supplement the record with "anomaly summaries, team reports, situation reports and worksheets" referred to by the Druyun Study, to the extent that such documents are not already included in the indices of documents filed by the Government. As set forth in the attached declaration of Jacqueline M. Noble, Director, Congressional and Public Affairs, DCMA, the indices she produced identify each and every DCMA document that referred to the C-5 AMP procurement. Accordingly, there is no basis for L-3's additional request for supplementation of the administrative record with other documents not referring to the C-5 AMP procurement.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney
Department of Air Force
Arlington, VA

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L St. N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

March 31, 2008