Paragraph Title Page

**This page is blank.**

APPENDIX AA—FORMAL SOURCE SELECTION FOR MAJOR ACQUISITIONS

# PART 1 - GENERAL INFORMATION

## AA-100 Scope.

This appendix establishes policy, assigns responsibilities, and prescribes implementing procedures for soliciting and evaluating offerors' proposals for major acquisitions conducted by Air Force contracting activities. This appendix implements Federal Acquisition Regulation (FAR) Subpart 15.6, Source Selection, and fulfills the responsibilities of the Air Force agency head for source selection contained in FAR 15.604 (a) and FAR 15.612 (b).

## AA-101 Applicability.

(a) This appendix applies to the following competitive negotiated procurements:

(1) Within Major Programs, to:

(i) Production contract actions estimated at $500 million or more; and

(ii) Research, Development, Test, and Evaluation (RDT&E) contract actions estimated at $300 million or more;

(2) Selected Program contract actions estimated at $500 million or more;

(3) Other Program contract actions estimated at $500 million or more;

(4) Communications and Computer Acquisition contract actions that are not integral to a weapon system and are designated as a Major Automated Information System (MAIS) or any Communications and Computer contract actions estimated at $100 million or more; and

(5) Other Contracting contract actions estimated at $500 million or more.

NOTE:

(1) Dollar amounts represent the estimated value of the source selection for the instant acquisition. (The dollar values are total values. See 5301.9006-4.)

(2) Whenever the Assistant Secretary of the Air Force (Acquisition) (ASAF(A)) is the Source Selection Authority (SSA), the procedures of this appendix shall be followed.

(3) These procedures may be used for acquisitions below the stated dollar thresholds at the SSA's discretion.

A 297

(b) Lower level procedures implementing this appendix are authorized.

# AA-102 Objective of the major source selection process.

The objective of the major source selection process is to select the source whose proposal has the highest degree of credibility and whose performance can be expected to best meet the Government's requirements at an affordable cost (price). The process must provide an impartial and equitable evaluation of the competitors' response to the solicitation, as well as performance and proposal risk assessments. The process should be accomplished with minimum complexity and maximum efficiency and effectiveness. The source selection decision must be compatible with program requirements and the stipulated evaluation criteria.

# AA-103 Definitions.

"Acquisition Plan (AP)" means a comprehensive plan for fulfilling agency needs in a timely manner and at a reasonable cost (price). The acquisition plan contains the overall strategy for managing the acquisition. (See FAR Part 7.)

"Acquisition Strategy Panel (ASP)" means a group of functional experts who serve in an advisory capacity by reviewing and recommending acquisition strategies for a specific product or service.

"Advisors" means Government or non-Government personnel, designated by the SSA or the chairperson of the Source Selection Advisory Council (SSAC), who provide advice to the SSA, SSAC, or Source Selection Evaluation Board (SSEB).

"Assessment Criteria" means evaluation criteria which are used by evaluators in performing the technical evaluation by relating certain aspects of an offeror's proposal to specific evaluation criteria.

"Best and Final Offer (BAFO)" means a final proposal submission by all offerors in the competitive range submitted at a common cut-off date at the request of the contracting officer after conclusion of discussions. (See FAR 15.611.)

"Best Value" means the most advantageous offer, price and other factors considered, providing the best mix of utility, technical quality, business aspects, risks, and price for a given application.

"Clarification" means data, generally of an administrative nature, provided to resolve inadequate proposal content or contradictory statements in the proposal.

"Contract Definitization Team" means a group of Government personnel within the Source Selection Evaluation Board (SSEB) who are responsible for evaluating cost (price) proposals and negotiating the contract(s).

"Deficiency" means, for the purpose of source selection actions, any part of an offeror's proposal which, when compared to a pertinent standard, fails to meet the Government's minimum level of compliance.

"Essential Characteristics or Baseline Requirements" means qualitative/quantitative determinations that establish the minimum level of acceptability for each requirement or effort in the statement of objectives, statement of work, or performance work statement.

(l) The cognizant Defense Contract Audit Agency (DCAA) and Defense Contract Management Command (DCMC) personnel should be invited to take part, as appropriate, in reviewing the solicitation and assisting in contract negotiation.

(m) The techniques in this appendix shall not be used when award will be made to the Lowest Cost (Price)-Technically Acceptable offeror because that acquisition method does not include an integrated assessment (see 5315.605-90).

# AA-105 Source Selection Authority (SSA).

(a) Unless otherwise directed by the Secretary of Defense or the Secretary of the Air Force, ASAF(A) is the SSA for those contract actions where the application of this appendix is mandatory under AA-101 (a). Additionally, the ASAF(A) may serve as SSA for any other acquisition deemed appropriate.

(b) The ASAF(A) will normally retain SSA for Major, Selected, and Other Programs contract actions meeting the thresholds under AA-101 (a)(1), (2) and (3). The authority for selecting a source for individual contract actions falling below the thresholds established under AA-101 (a)(1), (2) and (3) is delegated by ASAF(A) to the applicable Program Executive Officer (PEO) or Designated Acquisition Commander (DAC) with the authority to redelegate. Redelegation can be made on either a case-by-case basis or by blanket delegation and shall be in writing. It is Air Force policy to avoid any appearance of a conflict of interest on all source selections. In support of this policy, the PEO/DAC, in consultation with the AFMC commander or vice commander, shall select a suitable neutral party as SSA when the "normal" SSA would create the appearance of a conflict.

(c) For Communications and Computer Acquisitions designated as Selected Programs, SSA is delegated to the PEO unless otherwise directed by the ASAF(A). For those Communications and Computer Acquisitions designated as a Major Automated Information System (MAIS) or with an estimated value of $100 million or more and not assigned to a PEO, ASAF(A) has delegated SSA to the Principal Deputy Assistant Secretary of the Air Force (Acquisition & Management) (PDASAF(A&M)), with the authority to redelegate.

(d) The ASAF(A) will normally retain SSA for Other Contracting contract actions meeting the thresholds under AA-101 (a)(5). The authority for selecting a source for individual contract actions falling below the thresholds established under AA-101 (a)(5) is delegated to MAJCOM commanders with the authority to redelegate. Redelegation can be made on either a case-by-case basis or by blanket delegation and shall be in writing.

(e) When the ASAF(A) authority has been delegated on Major, Selected, or Other Programs or Communications and Computer Acquisitions assigned to a PEO or DAC, the SSA will inform ASAF(A) of significant events in the source selection. For all source selections meeting the thresholds of this appendix, the SSA will personally notify ASAF(A) before the announcement of the award, unless other instructions are provided.

# AA-106 Organization.

Formal source selection contemplates creation of a separate source selection organization and management chain of command (SSA, SSAC, and SSEB) for each acquisition. The organization must be structured to ensure continuity and to provide for active, ongoing involvement of appropriate contracting, technical, logistics, legal, cost, and other functional staff management expertise. The PRAG

# DEPARTMENT OF THE AIR FORCE
WASHINGTON DC 20330-1060

Office of the Assistant Secretary

25 January 1998

MEMORANDUM FOR ASC/CC

Ken

FROM: SAF/AQ
1060 Air Force Pentagon
Washington DC 20330-1060

SUBJECT: Delegation of Source Selection Authority for C-5 Avionics Modernization Program (AMP)

I hereby delegate Source Selection Authority to ASC/CC for the $662M ACAT III C-5 AMP. This delegation will best support both the aggressive acquisition schedule and included source selection streamlining trial (see attachment) during the program oversight transition period from SA-ALC to WR-ALC.

Please ensure that SAF/AQ is briefed on the decision of the Source Selection Authority prior to releasing any such information outside of the source selection organization.

ARTHUR L. MONEY
Assistant Secretary of the Air Force
(Acquisition)

Attachment:
SA-ALC/CC Ltr.

cc:
SA-ALC/CC
WR-ALC/CC

SECRETARY OF THE AIR FORCE
WASHINGTON

February 23, 1998

MEMORANDUM FOR LT GEN MUELLNER
MRS DRUYUN
DISTRIBUTION C

SUBJECT: Assignment of Responsibilities in the Absence of an Assistant Secretary for Acquisition

It is with regret that I announce the departure of Art Money, effective as of February 20, 1998, who is leaving the Air Force to become the Senior Civilian Official in the Office of the Assistant Secretary of Defense for Command, Control, Communications, and Intelligence. Until further notice, the responsibilities of the Assistant Secretary of the Air Force, Acquisition, will be divided as follows:

I will assume the authorities and duties of the Air Force Acquisition Executive (SAE), Senior Procurement Executive (SPE) and Head of Contracting Activity (HCA) for Air Force acquisition programs. Lt Gen George Muellner, Principal Deputy Assistant Secretary of the Air Force, Acquisition, and Mrs. Darleen Druyun, Principal Deputy (Acquisition and Management), will report directly to me. Lt Gen Muellner will assume the duties of Air Force Chief Information Officer (CIO), and will be supported by AF/SC as Deputy CIO. Lt Gen Muellner and Mrs. Druyun should refer to me those acquisition matters that by law or regulation must be acted upon by the SAE, SPE, or HCA, or by an Assistant Secretary or a Presidential Appointee confirmed by the Senate.

I have asked Lt Gen Muellner and Mrs. Druyun to support each other and to act for each other when one is absent or unavailable, and I will rely upon their combined judgment in executing the authorities I have assumed under this memorandum. I have also asked that they jointly work new acquisition management policy initiatives, including acquisition reform. I am grateful to each of them for their willingness to undertake these expanded responsibilities, and hope that each of you will give them your full support.

F. Whitten Peters
Acting Secretary of the Air Force

scats - 03132

SECRETARY OF THE AIR FORCE
WASHINGTON

March 17, 1998

MEMORANDUM FOR LT GEN MUELLNER
MRS DRUYUN
DISTRIBUTION C

SUBJECT: Further Assignment of Responsibilities in the Absence of an Assistant Secretary for Acquisition

This memorandum supersedes my memorandum on this same subject of 23 February 1998.

I will retain the authorities and duties of the Air Force Acquisition Executive (SAE), Senior Procurement Executive (SPE) and Head of Contracting Activity (HCA) for Air Force acquisition programs, except as delegated below. Lt Gen George Muellner, Principal Deputy Assistant Secretary of the Air Force, Acquisition, and Mrs. Darleen Druyun, Principal Deputy (Acquisition and Management), will report directly to me.

Lt Gen Muellner will assume primary responsibility for the day-to-day operation of the Office of the Assistant Secretary, Acquisition and will assume the authorities and duties of the Chief Information Officer for the Air Force. He will be responsible for budget, funding, and resource matters, and will represent SAF/AQ on the Air Force Council. The Mission Area Directors and Designated Acquisition Commanders will report to him. He will also be responsible for science, technology and engineering; special programs; and program integration, and will execute all other duties performed by the SAF/AQ except to the extent I have retained such duties or such duties are delegated to Mrs. Druyun by this Memorandum. The functional area managers for matters for which Lt Gen Muellner has responsibility will report to him. AF/SC will continue to function as the Deputy CIO.

Mrs. Druyun will assume responsibility for oversight and execution of Program Executive Officer (PEO) programs. The PEOs and Deputy Assistant Secretary for Contracting will report to her. She will continue to chair all Acquisition Strategy Panels and will chair all Acquisition Portfolio Reviews of PEO programs; she will also act as the Source Selection Authority (SSA) for all procurement actions that require an SSA at the SAF/AQ level. Mrs. Druyun



Scato - 04808

will have primary responsibility for all matters relating to public-private competitions at Air Force depots, and the Director of Depot Maintenance (AQD) will report to her. She will retain her duties as Chair of the Air Force Acquisition Professional Development Council, the Air Force Contract Adjustment Board, the Civilian Appraisal Quality Review Committee, and the Independent Research and Development Council.

Lt Gen Muellner and Mrs. Druyun should refer to me those acquisition matters that by law or regulation must be acted upon by the SAE, the SPE, the HCA or an Assistant Secretary or by a Presidential Appointee confirmed by the Senate.

Lt Gen Muellner and Mrs. Druyun will jointly work new acquisition management policy initiatives, including acquisition reform.

I am grateful to each of them for their willingness to undertake these expanded responsibilities, and hope that each of you will give them your full support.

F. Whitten Peters
Acting Secretary of the Air Force

**DEPARTMENT OF THE AIR FORCE**
**WASHINGTON DC**

**OFFICE OF ASSISTANT SECRETARY**

26 MAR 1998

MEMORANDUM FOR ASC/CC
SA-ALC/CC

FROM: SAF/AQ
1060 Air Force Pentagon
Washington DC 20330-1060

SUBJECT: Source Selection Authority for the C-5 Avionics Modernization Program

This is to inform you that I will perform the duties of the Source Selection Authority for the C-5 Avionics Modernization Program (AMP). Therefore, the previous delegation of that Source Selection Authority to ASC/CC made in a SAF/AQ Memo dated 25 January 1998 is rescinded. Additionally, I am designating SA-ALC/CC as the Source Selection Advisory Council (SSAC) Chairperson for the C-5 AMP.

DARLEEN A. DRUYUN
Principal Deputy Assistant Secretary
(Acquisition and Management)

cc:
ASC/GR
SA-ALC/LA

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br><br>and<br><br>LOCKHEED MARTIN AERONAUTICS COMPANY,<br><br>Intervener. | ) | Case No. 06-396C<br>(Judge Williams) |

DECLARATION

I, JACQUELINE M. NOBLE, hereby declare the following:

1. I am the Director, Congressional and Public Affairs, YC-301-3 (GS-15), for the Defense Contract Management Agency (DCMA). I have been with DCMA since August 2007. I currently manage the congressional, public affairs, Freedom of Information Act, and Privacy Act programs for DCMA. From January 1998 to August 2007, I served as the Command Affairs Officer at the Defense Distribution Center (DDC), Defense Logistics Agency, responsible for the congressional, command complaint, public affairs, and community relations programs. I also served as the DDC Chief of Staff for over three months. I have been a supervisor/manager for over fifteen years, of which ten have been in the congressional and public affairs functions. I have a bachelors degree in business and a masters degree in public personnel management.

2. On January 22, 2008, I began to review documents maintained by DCMA on the Druyun Study at the request of the Department of Justice (DOJ). Specifically, I was asked to review all the maintained documents and prepare an index of those documents, including, but not limited to anomaly summaries, team reports, and situation reports that reference or relate to the C-5 Avionics Modernization Program (C-5 AMP) procurement.

3. I spent approximately 40 hours reviewing documents, printing and marking the documents, and preparing the index. Please note I was not employed by DCMA or the US Air Force during the conduct of the Druyun Study. I did not know the study participants. Also, please note that I personally conducted the review and did not delegate any of the review to subordinates.

4. Prior to my arrival at DCMA, the Druyun Study documents had been stored on twenty-one CDs. To facilitate my review, the DCMA Information Technology staff transferred the documents stored on the CDs to a single, secure external hard drive.

5. To conduct the search, I employed several tactics. There were twenty-two electronic folders on the secure external hard drive (twenty-one folders containing documents and one additional folder containing the executable programs to operate the drive). Within each of the twenty-one folders containing Druyun Study documents, there were many subfolders.

6. I reviewed each folder and subfolder individually, conducting keyword searches for "C-5", "C5", "C 5", "AMP", "Avionics", "Avionics Modernization Program", "C-5 AMP", "C5 AMP", and "C 5 AMP".

7. With respect to the first three folders and their subfolders, I opened each file, read and matched back to the original keyword searches. I noted match discrepancies on certain .tif files indicating that the key word searches were not effective. Therefore, I opened each .tif file and read them for C-5 references.

8. The .pdf word search feature appeared unable to search handwritten documents saved as .pdf files. However, it was able to pick the titles which clearly identified the C-5 AMP documents. Also, the handwritten notes appeared to have been typed and saved in other saved files. The .pdf word search function did identify them in that form.

9. Once I completed the initial review, I noted that several files could not be opened on the secure external hard drive. I saved those files to another hard drive and was able to open each and reviewed them individually. In doing so, I located documents that apparently related solely to C-5 AMP. I printed the documents, marked them, and noted them in my index. In several instances, I found identical files (same title, file size, creation date/time group). In those instances, I only printed one copy. However, I did print multiple copies where it appeared that the duplicative documents had been created and/or stored on different days and/or times.

10. I noted each document that referenced C-5 AMP in the index, along with a brief description. I provided the index to DOJ on January 25, 2008. Shortly afterward, DOJ requested that I provide paper copies of the documents I identified in my index. I printed each document that I had identified in my index, compiled them in the order I had identified them in the index, and forwarded them in a package to DOJ.

11. The package of documents measured approximately thirteen inches high. This comprises only a small percentage of the Druyun Study documents maintained by DCMA. However, it must be noted that the members of Druyun Study group reviewed many Air Force procurements and, as such, the majority of the documents reviewed by the study group do not relate to C-5 AMP.

I hereby declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON March 28, 2008

Jacqueline M. Noble
JACQUELINE M. NOBLE
Director
Congressional and Public Affairs
Defense Contract Management Agency