**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES, | ) | |
| | ) | No. 06-396 C |
| Defendant, | ) | (Judge Williams) |
| and | ) | |
| LOCKHEED MARTIN AERONAUTICS COMPANY, | ) | |
| Intervenor. | ) | |

**INTERVENOR LOCKHEED MARTIN'S OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Pursuant to the Court's order dated March 3, 2008, intervenor, Lockheed Martin Aeronautics Company ("Lockheed Martin"), respectfully submits this opposition to the motion by plaintiff, L-3 Communications Integrated Systems L.P. ("L-3"), to supplement the Administrative Record. L-3 cannot satisfy this Court's or the Federal Circuit's requirements for supplementation of an administrative record in bid protest cases, and accordingly, plaintiff's motion should be denied.

## BACKGROUND

In January 1999, the Air Force awarded Contract Nos. F33657-98-C-0006 and F33657-98-C-0007 related to the Avionics Modernization Program for the C-5 Galaxy aircraft ("C-5 AMP") to Lockheed Martin. L-3 did not protest the Air Force's

decision at the time of award, but filed this bid protest in May 2006, following the release by the Department of Defense ("DoD") Inspector General of a report analyzing the actions of the C-5 AMP Source Selection Authority ("SSA"). Defendant and intervenor sought to dismiss the bid protest action on several grounds, and after briefing and a hearing, the Court denied those motions. November 16, 2007 Opinion ("Opinion").

The Court then ordered that an Administrative Record documenting the Agency's award decision be compiled and produced. The Air Force complied, providing to the plaintiff and intervenor five CDs of materials.

L-3 asks the Court to order supplementation of the Administrative Record with a substantial volume of additional materials that were not included by the Air Force. As plaintiff recognizes, the materials it seeks were ***not*** prepared by procurement officials to document the Agency's procurement analysis and award decision—but "were created" years "after the award of the C-5 AMP contracts to Lockheed [Martin] in January 1999." L-3 Mot. 2. Specifically, the documents L-3 contends should be added to the Administrative Record were created ***after*** Ms. Druyun's 2004 guilty plea for conspiring to violate 18 U.S.C. § 208(a) with respect to ***other*** procurement decisions (*see* Opinion at 8), when Government employees conducted after-the-fact analyses of numerous procurements as the Agency attempted to correct perceived organizational and management issues.

DoD's investigations resulted in an over-arching report, *i.e.*, the Druyun Study, and several reports by the DoD Inspector General regarding specific

procurement decisions in which Ms. Druyun had been involved. Those reports have been publicly disclosed. In its motion, L-3 seeks to supplement the bid protest Administrative Record in this case with five types of documents related to the DoD report and Inspector General investigations:

(1) "working papers and support documents for the [DoD] Inspector General Report";

(2) additional "documents and materials on the C-5 AMP from the Druyun Study";

(3) "documents from the Office of the Deputy Assistant Secretary of the Air Force for Acquisitions (Contracting) that relate to the DoD IG report about the C-5 AMP";

(4) "documents about the Druyun Study or the DoD IG report from offices at the Department of Defense"; and

(5) "to the extent not indexed, . . . Anomaly Summaries, Team Reports, Situation Reports, and worksheets" from the preparation of the Druyun Study.

L-3 Mot. 2-3.

## ARGUMENT

At most, a party to a bid protest action may obtain supplementation of an Administrative Record when it shows that details of the procurement process are not explained in the contemporaneous record compiled by the Agency. Because bid protest lawsuits are record review cases, there is no need for broader discovery—and no basis for the Court to authorize broad discovery or supplementation of the administrative record.

L-3 seeks relief that is very different from an ordinary motion to supplement an administrative record in a bid protest. Instead of seeking to correct purported

gaps, L-3 seeks to free-ride on defendant's previous efforts to analyze the system in which Ms. Druyun was able to act improperly years ***after*** the award of the C-5 AMP contract. Neither the precedent on which L-3 relies nor the fact that this protest is purportedly "unique" permits the Court to deviate from the rule that administrative records in bid protest actions can be supplemented only in limited circumstances.

### A. No Precedent Supports Broad Supplementation Sought By L-3

This Court considers post-award bid protests of Government procurement decisions under the Tucker Act. 28 U.S.C. § 1491(b)(1). That statute incorporates the standards set forth in the Administrative Procedures Act, 28 U.S.C. § 1491(b)(4), by which agency decisions are set aside only when such actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333-34 (Fed. Cir. 2001).

The highly deferential standard applicable to record review cases, such as bid protests, comes hand-in-glove with limitations on the scope of materials to be analyzed by the Court. As this Court has explained, bid protest review focuses on "the administrative record ***already in existence***, not some new record made initially in the reviewing court." *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343 (2004) (emphasis added; internal citation omitted); *see Camp v. Pitts,* 411 U.S. 138, 142 (1973) (per curiam). "Already in existence" means the documents created contemporaneously with the Agency's analysis of the proposals. Any exceptions to this rule "against extra-record evidence . . . must be extremely limited . . . lest the

admission of evidence not considered by the agency below and its consideration by the court convert the arbitrary and capricious standard into effectively *de novo* review." *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000) (internal citation omitted); *see ARINC Eng'g Servs., LLC v. United States*, 77 Fed. Cl. 196, 200-01 (2007).

L-3's motion to supplement the Administrative Record ignores the limited nature of bid protest review and seeks discovery of a type of information to which a party may be entitled in a *de novo* proceeding, *i.e.*, purportedly non-privileged analyses of an event (which is the subject of the litigation) that was performed by a party ***after*** the event occurred but before the lawsuit was filed. L-3 hopes to make prosecuting this action easier by using the Government's already-conducted analysis "to target the irregularities in the 190 thousand-page Administrative Record." L-3 Mot. 5 n.7. But no bid protest decision of which Lockheed Martin is aware—and none of the precedents cited by L-3—permits supplementation of an administrative record to allow plaintiff's counsel to free-ride on analyses of DoD's procurement system that were performed years after the award decision at issue being disputed. Accordingly, the Druyun Study and the Inspector General's report (on which L-3's protest is based) should not be considered as part of the Administrative Record, and plaintiff's attempt to add additional materials related to those reports to the Record should be denied.

**B. The Exceptions To The General Rule Precluding Supplementation Of The Administrative Record On Which L-3 Relies Do Not Support Its Cause**

In its motion, L-3 relies on several precedents to contend that supplementation of administrative records may be freely ordered within the Court's broad discretion. L-3 Mot. 3. But, as this Court has explained, one of the cases on which L-3 principally relies cannot be interpreted as a license to expansively permit supplementation of administrative records in bid protests. To the contrary, *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989); *see* L-3 Mot. 4-5, provides only narrow exceptions to the rule against extra-record evidence—and only when a party has shown a necessity, not mere convenience. *See Murakami*, 46 Fed. Cl. at 735. Simply put, a proponent of supplementation is not entitled to extra-record evidence just because it wants it; the proponent must make a showing of necessity. *See Orion*, 60 Fed. Cl. at 343.

L-3's reliance on three (of the eight) exceptions to the general rule described in *Esch v. Yeutter* is misplaced.

*First*, L-3 has failed to demonstrate that the "agency action is not adequately explained in the record before the court." L-3 Mot. 4-5. In its motion, L-3 completely fails to explain *how* the 190,000-page Administrative Record is purportedly incomplete. Nor does L-3 attempt to identify the "irregularities" that purportedly exist in the record. L-3 Mot. 5 n.7. This failure is even more glaring because, in one of the cases on which L-3 relies (and quotes extensively), *Peak Family Housing, LLC v. United States*, this Court allowed supplementation

because the protester identified specific inconsistencies between the process described in the Source Selection Plan and the actual process used by the agency in awarding the contract at issue. 40 Fed. Cl. 673, 678 (1998). No such showing has been made by L-3. And L-3's attempt to rely on a characterization from the Inspector General's report regarding the set of documents reviewed by that office (*see* L-3 Mot. 5) does not begin to satisfy plaintiff's affirmative obligation to point to problems with the Administrative Record produced in this lawsuit that purportedly demonstrate the need for supplementation.

*Second*, L-3 cannot avail itself of the *Esch v. Yeutter* exception that the complexity of a matter requires the Court to obtain more evidence so that it can understand the issues. The "complexity" exception "is generally confined to cases involving scientific, economic or otherwise obscure or specialized topics of the sort that might ordinarily require explanation by expert witness." *Murakami*, 46 Fed. Cl. at 736. Although the Administrative Record at issue in this case is large, L-3's unsupported allegations of bias by Ms. Druyun in favor of Lockheed Martin are not the type of "complex" issues that might require expert assistance.

*Third*, L-3 mistakenly argues that the supplementation of the Administrative Record should be permitted under the fifth *Esch* exception, under which supplementation may be appropriate when evidence arising after the agency action shows whether the decision was correct. As this Court has noted, "[t]he few published decisions that apply this exception appear to involve situations in which evidence was produced to show the projections or predictions upon which an agency

action was based either proved accurate or inaccurate." *Murakami*, 46 Fed. Cl. at 736 n.6. L-3 has not alleged that predictions or projections relied on by the Air Force to award the contract were somehow inaccurate.

Ultimately, L-3 contends that the award of this contract to Lockheed Martin can be explained only through the bias of the SSA. Putting aside the fact that the only support for any assertion of bias by Ms.Druyun related to Boeing and concerned procurements that occurred ***years after*** the C-5 AMP award, the question in this protest one "of whether, not why," for which the Administrative Record suffices. *Orion*, 60 Fed. Cl. at 346. L-3's assertion that the Air Force's articulated reasons for its decision demonstrate arbitrariness (L-3 Mot. 5-6) may constitute a basis for a motion for summary judgment, but it does not show that discovery is necessary to explain the Agency's decision. *Beta Analytics Int'l, Inc. v. United States*, 61 Fed. Cl. 223, 225 (2004).

### C. L-3 Cannot Overcome The Presumption Of Regularity And Justify Supplementation Of The Administrative Record Based On Mischaracterizations Of The Inspector General's Report

L-3 relies on this Court's decision in *Four Points by Sheraton v. United States*, 63 Fed. Cl. 341 (2005), to contend that its allegations of "bad faith" justify discovery and supplementation of the Administrative Record. But the *Four Points* decision makes clear that agency decision-makers are entitled to a presumption of regularity, and L-3 has not made the required showing to upset that presumption, or to obtain discovery. *Id.*

Before the Court will supplement an administrative record in a bid protest action with evidence of alleged bad faith, the proponent of supplementation must: "(1) make a threshold showing of either a motivation for the Government employee to have acted in bad faith or of conduct that is hard to explain absent bad faith, *and* (2) persuade the Court that discovery could lead to evidence which would provide the level of proof sufficient to overcome the presumption of regularity and good faith." *Four Points*, 63 Fed. Cl. at 344. Such a showing requires that the proponent raise "serious questions as to the rationality of the contracting officer's [decision]," *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1323 n.2 (Fed. Cir. 2003) (internal citation omitted), and requires "more than innuendo or suspicion to entitle it to a discovery seeking such evidence [of bias or bad faith]," *Orion*, 60 Fed. Cl. at 344.

L-3 argues that the "threshold showing in number 1 [from the *Four Points* opinion] is made through the Inspector General's report that determined that the Air Force could not provide compelling evidence to justify [Ms.] Druyun's bias in favor of Lockheed" Martin. L-3 Mot. 5. But the Inspector General did not find any bias in favor of Lockheed Martin or any "conduct that is hard to explain absent bad faith" (*id.*); instead, he found only garden-variety bid protest issues related to a lack of adequate documentation to support ratings changes and Ms. Druyun's appointment as SSA. L-3's editorial comments grossly mischaracterize the Inspector General's findings, are not supported, and do not justify discovery under the *Four Points* rationale.

Moreover, L-3's assertion that Ms. Druyun *must* have been biased in favor of Lockheed Martin and its attempt to support that assertion with a series of second-hand sources does not support supplementation of the Administrative Record. The statements on which L-3 relies were culled from law review and newspaper articles related to other contract awards; they do not provide record evidence sufficient to overcome the presumption of regularity with respect to *this* procurement decision.

**CONCLUSION**

For the reasons set forth above, Lockheed Martin respectfully requests that the Court deny L-3's motion to supplement the Administrative Record of this bid protest.

Respectfully submitted,

s/ Marcia G. Madsen

MARCIA G. MADSEN
MAYER BROWN LLP
1909 K Street, NW
Washington, D.C. 20006
(202) 263-3000
(202) 263-3300 Facsimile

Of Counsel:
LUKE LEVASSEUR
MELISSA BAKER
MAYER BROWN LLP
Washington, D.C. 20006
*Counsel for Intervenor, Lockheed Martin Aeronautics Company*
March 31, 2008