AGREED-UPON COPY FOR RELEASE
MAY BE MADE PUBLIC

No. 06-396C
(Bid Protest)
(Judge Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

LOCKHEED MARTIN AERONAUTICS CO.,

Intervenor.

# DEFENDANT'S MOTION TO DISMISS

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor
1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney
Department of Air Force
Arlington, VA

April 25, 2008

## TABLE OF CONTENTS

STATEMENT OF FACTS ........ 1

ARGUMENT ........ 5

I. The Court Lacks Jurisdiction Under Section 1491(a)(1) ........ 5

II. L-3's Action Is Barred By The Anti-Assignment Acts ........ 11

A. The Anti-Assignment Acts ........ 11

B. The Legislative History Of Anti-Assignment Acts ........ 14

C. Scope And Application Of The Anti-Assignment Acts ........ 16

D. There Was No Transfer Of Rights By Operation Of Law ........ 23

III. Raytheon's Sale Of Assets Did Not Exempt Its Transfer Of Claims Against The Government From The Anti-Assignment Acts ........ 25

IV. L-3 Is Not An "Interested Party" Under 28 U.S.C. § 1491(b) ........ 26

V. The ADRA Of 1996 Did Not Repeal The Anti-Assignment Acts ........ 30

VI. There Are No Other Reasons Why L-3's Complaint Should Not Be Dismissed ........ 31

CONCLUSION ........ 34

## TABLE OF AUTHORITIES

### CASES


Alfa Laval Separation, Inc. v. United States,
175 F.3d 1365 (Fed. Cir. 1999) .......... 28

Am. Fed'n of Gov't Employees v. United States,
258 F.3d 1294 (Fed. Cir. 2001) .......... 23

Applied Companies v. United States,
144 F.3d 1470 (Fed. Cir. 1998) .......... 16

Atlas Hotels, Inc. v. United States,
140 F.3d 1245 (9th Cir. 1998) .......... 23, 30

Avtel Services, Ins. v. United States,
501 F.3d 1259 (Fed. Cir. 2007) .......... 22

B.K. Instrument, Inc. v. United States,
715 F.2d 713 (2d Cir. 1983) .......... 7

Benjamin v. United States,
162 Ct. Cl. 47,
318 F.2d 728 (1963) .......... 17, 22

Bittmore Forest Broad. FM, Inc. v. United States,
60 Fed. Cl. 322 (2008) .......... 10

Blasband v. Rales,
971 F.2d 1034 (3d Cir. 1992) .......... 25

Block v. United States,
66 Fed. Cl. 68 (2005) .......... 6

Bokat v. Getty Oil Co.,
262 A.2d 246 (Del. 1970) .......... 25

Cadwalder v. United States,
45 F.3d 297 (9th Cir. 1995) .......... 21

California-American Water Co. v. Dept. of Air Force,
2006 WL 1686139 (E.D. Cal. 2006) .......... 19, 22, 25

California v. United States,
271 F.3d 1377 (Fed. Cir. 2001) .................................................................... 30, 31

Cathedral Candle Co. v. U.S. Intern. Trade Com'n,
400 F.3d 1352 (Fed .................................................................................. 30, 31

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993), cert. denied,
512 U.S. 1235 (1994) ........................................................................................ 1

Central Bank v. United States,
345 U.S. 639 (1953) ........................................................................................ 16

Centers v. United States,
71 Fed. Cl. 529 (2006), aff'd,
224 Fed. Appx. (Fed. Cir. 2007) ...................................................................... 13

Chapman Law Firm Co. v. Greenleaf Const. Co., Inc.,
990 F.3d 934 (Fed. Cir. 2007) .......................................................................... 21

Cherry Cotton Mills, Inc. v. United States,
327 U.S. 536 (1946) ........................................................................................ 22

Choctaw Manufacturing Co. v. United States,
761 F.2d 609 (11th Cir. 1985) ........................................................................... 6

Colonial Navigation Company v. United States,
149 Ct. Cl. 242,
181 F. Supp. 237 (1960) .................................................................................. 14

Condec Corp. v. United States,
177 Ct. Cl. 958,
369 F.2d 753 (1966) ........................................................................................ 32

Connecticut National Bank v. Germain,
503 U.S. 249 (1992) ........................................................................................ 30

Cook County, Ill. v. United States ex rel. Chandler,
538 U.S. 119 (2003) ........................................................................................ 30

County of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation,
502 U.S. 251 (1992) ........................................................................................ 30

Cupey Bajo Nursing Home, Inc. v. United States,
23 Cl. Ct. 406 (1991) ........ 1

Curtis v. United States,
63 Fed. Cl. 172 (2004) ........ 13

Deascanis v. Brosius-Eliason Co.,
533 A.2d 1254,
1987 WL 4628 (1987) ........ 24

Deco Industries, Inc. v. United States,
203 Ct. Cl. 566,
492 F.2d 1200 (1974) ........ 7

Delmarva Power & Light Co. v. United States,
79 Fed. Cl. 205 (2007) ........ 11, 12, 13, 15

Dep't of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) ........ 5

Diebold v. United States,
947 F.2d 787 (6th Cir. 1992) ........ 6

Eagle Design & Management, Inc. v. United States,
63 Fed. Cl. 1006 (2004) ........ 27, 29

Electronic Systems U.S.A., Inc., B219754,
Jan 5, 1985, 85-2 CPD § ¶ 274 (1985) ........ 27

Emerald Coast Finest Produce Co., Inc. v. United States,
79 Fed. Cl. 466 (2007) ........ 22

Emery World-wide Airlines, Inv. v. United States,
264 F.3d 1071 (Fed. Cir. 2001) ........ 6, 10

Erwin v. United States,
97 U.S. 392 (1878) ........ 18

Excavation Constr., Inc. v. United States,
204 Ct. Cl. 299,
494 F.2d 1289 (1974) ........ 8

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir.), cert. denied,
464 U.S. 826 (1983) ........ 5

Fireman's Fund Ins. Co. v. England,
313 F.3d 1344 (Fed. Cir. 2002) .......... 11, 13

First Nat'l City Bank v. United States,
212 Ct. Cl. 357,
548 F.2d 928 (1977) .......... 16

Frantz Equipment & Co. v. United States,
122 Ct. Cl. 622,
105 F. Supp. 490 (1952) .......... 22

Galen Medical Ass., Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004) .......... 10

General Casualty Co. v. Second Nat'l Bank,
178 F.2d 679 (5th Cir. 1949) .......... 16

G. L. Christian Ass. v. United States,
160 Ct. Cl. 1,
312 F.2d 418 (1963) .......... 12

Goodwill Industrial Services Corp. v. Committee for Purchase from People Who Are Blind Or Severely Disabled,
378 F. Supp.2d 1290 (D. Colo. 2005) .......... 10

Great American Ins. Co. v. United States,
203 Ct. Cl. 592,
492 F.2d 821 (1974) .......... 16

Hayes Int'l Corp. v. McLucas,
509 F.2d 247 (5th Cir.), cert. denied,
423 U.S. 864 (1975) .......... 7

Heit v. Tenneco. Inc.,
319 F. Supp. 884 (D. Del. 1970) .......... 25

Heyer Products Co. v. United States,
135 Ct. Cl. 63,
140 F. Supp. 409 (1956) .......... 7, 8

Holland v. United States,
62 Fed. Cl. 395 (2004) .......... 13

Idium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985), cert. denied,
479 U.S. 820 (1986) ........ 1

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) ........ 6, 8, 9, 10, 24

Information Systems & Networks Corp v. U.S. Department of Health and Human Services,
970 F. Supp 1 (D. D.C. 1997) ........ 28

Ins. Co. of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) ........ 5

Johnson Controls World Services v. United States,
44 Fed. Cl. 334 (1999) ........ 19

Kawa v. United States,
77 Fed. Cl. 294 (2007) ........ 13

Keco Industries, Inc. v. United States,
192 Ct. Cl. 773,
428 F.2d 1233 (1970) ........ 7

Keetoowah Band v. United States,
78 Fed. Cl. 303 (2007) ........ 22

Kingan & Co. v. United States,
71 Ct. Cl. 19,
44 F.2d 447 (1930) ........ 20

Kingsbury v. United States,
215 Ct. Cl. 136,
563 F.2d 1019 (1977) ........ 14

L-3 Communications Sys. L.P. v. United States,
79 Fed. Cl. 453 (2007) ........ 10

Lawyers Title Ins. Corp. v. Cae-link Corp.,
878 F. Supp. 767 (D. Md. 1994) ........ 24

Levitt v. Bouvier,
287 A.2d 672 (Del. 1972) ........ 25

Lewis v. Anderson,
477 A.2d 1040 (Del. 1984) ........ 25

Lexis-Nesix, B-260023,
1995 WL 341842 .......... 27

Library of Congress v. Shaw,
478 U.S. 310 (1986) .......... 5

Lion Raisins, Inc. v. United States,
52 Fed. Cl. 115 (2002) .......... 6

Lyons Security Services, Inc. v. United States,
38 Fed. Cl. 783 (1997) .......... 33

Maffia v. United States,
143 Ct. Cl. 198,
163 F. Supp. 859 (1958) .......... 13

Maniere v. United States,
31 Fed. Cl. 410 (1994) .......... 1

Martin J. Simko Constr., Inc. v. United States,
852 F.2d 540 (Fed. Cir. 1988) .......... 22

MCI Telecomm. Corp v. United States,
878 F.2 362 (Fed. Cir. 1989) .......... 29

MCI Telecommunications Corp., B-239932,
70 Comp. Gen. 20, 90-2 CPD ¶ 280 .......... 27

Merdzinski v. Modderman,
Mich. Sup. Ct.,
263 Mich. 173,
248 N.W. 586 (1933) .......... 20

Microrim, Inc., B225525.2
Jan 14, 1987, 87-2 CPD ¶ 58 .......... 27

Mil-Tech Systems Corp. v. United States,
6 Cl. Ct. 26 (1984) .......... 32, 33

Monchamp Corp. v. United States,
19 Cl. Ct. 797 (1990) .......... 8, 10, 12

Morton v. Mancari,
417 U.S. 535 (1974) .......... 30

Myers Investigative & Sec. Services, Inc. v. United States,
275 F.3d 1366 (Fed. Cir. 2002) ........................................ 24, 26

National Bank of Commerce of Seattle v. Downie,
218 U.S. 345 (1910) ........................................ 17, 19

National Forge Co. v. United States,
779 F.2d 665 (Fed. Cir. 1985) ........................................ 7

NGC Investment and Development and JDL Constr. v. United States,
33 Fed. Cl. 459 (1995) ........................................ 12

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
458 U.S. 50 (1982) ........................................ 21

Novell, Inc. v. United States,
109 F. Supp.2d 22 (D.D.C. 2000) ........................................ 10

Owen Equip. & Erection Co. v. Kroger,
437 U.S. 365 (1978) ........................................ 5

Phillips Petroleum Co. v. U.S. Steel Corp.,
566 F. Supp. 1093 (D. Del.), aff'd,
727 F.2d 1120 (Fed. Cir. 1983)(Table) ........................................ 25

Phoenix Eng'g, Inc. v. MK Ferguson of Oak Ridge Co.,
966 F.2d 1513 (6th Cir.1992) ........................................ 28

Pioneer Nat. Title Ins. Co. v. Child, Inc.,
401 A.2d 68 (Del. 1979) ........................................ 24

PPG Industries, Inc., B-272126,
June 24, 1996, 96-1 CPD ¶ 285 ........................................ 27

Price v. Forrest,
173 U.S. 410 (1899) ........................................ 17, 19

Refining Associates v. United States,
124 Ct. Cl. 115,
109 F. Supp. 259 (1953) ........................................ 32

Rex Service Corp. v. United States,
448 F.3d 1305 (Fed. Cir. 2006) ........................................ 23, 29

Reynolds v. Army and Air Force Exchange Service,
846 F.2d 746 (Fed. Cir. 1988) .......... 1

Rice Services, Ltd. v. United States,
405 F.3d 1017 (Fed. Cir. 2005) .......... 21

Saint John Marine Co. v. United States,
92 Fed. 3d 39 (2nd Cir. 1996) .......... 31

Scanwell Laboratories, Inc. v. Shaffer,
424 F.2d 859 (D.C. Cir. 1970) .......... 6, 8, 9

Scott v. United States,
78 Fed. Cl. 151 (2007) .......... 29

Seaboard v. Air Line Ry. v. United States,
256 U.S. 655 (1921) .......... 18

Shannon v. United States,
342 U.S. 288 (1952) .......... 20, 21

Shelleman v. United States,
9 Cl. Ct. 452 (1986) .......... 5

Stearns Co., Ltd. v. United States,
34 Fed. Cl. 264 (1995) .......... 20

Texaco Refining and Marketing, Inc. v. Delaware River Basin Com'n,
824 F. Supp. 500 (D. Del. 1993), aff'd,
30 F.3d 1488 (3d Cir. 1994) .......... 24

Thompson v. Commissioner,
205 F.2d 73 (3d Cir. 1953) .......... 20

United Pacific Ins. Co,. v. Roche,
380 F.3d 1352 (Fed. Cir. 2004) .......... 12

United States v. Aetna Casualty & Surety Co.,
338 U.S. 366 (1949) .......... 16, 18, 19

United States v. Batchelder,
442 U.S. 114 (1979) .......... 30

United States v. Borden Co.,
308 U.S. 188 (1939) ........ 30

United States v. Dow,
357 U.S. 17 (1958) ........ 20, 21

United States v. Gillis,
95 U.S. 407 (1877) ........ passim

United States v. Int'l Business Machines,
892 F.2d 1006 (Fed. Cir. 1990) ........ 28

United States v. John C. Grimberg, Inc.,
702 F.2d 1362 (Fed. Cir. 1983) ........ 7, 8, 10

United States v. Testan,
424 U.S. 392 (1976) ........ 5

U.S. West Communications Services v. United States,
940 F.2d 622 (Fed. Cir. 1991) ........ 28

Westinghouse Electric Co. v. United States,
56 Fed. Cl. 564 (2003), aff'd,
97 Fed. Appx. 931 (Fed. Cir. 2004)(Table) ........ 12, 18, 19, 25

## STATUTES

28 U.S.C. § 1491(a)(1) ........ passim

28 U.S.C. § 1491(b)(1) ........ 23

31 U.S.C. § 203 ........ 14, 18

31 U.S.C. § 3551 ........ 23, 24

31 U.S.C. § 3551(2) ........ 23, 24, 25

31 U.S.C. §3727 ........ 6, 11, 12, 13, 14, 22, 25, 26

31 U.S.C. §3727(a)(1) ........ 13, 22, 28

40 U.S.C. § 759(f)(1) ........ 24

41 U.S.C. §15 ........ passim

4 C.F.R. § 21.0(a) ........ 24

48 C.F.R. § 14.404-2(l) ........ 27

Pub. L. No. 98-369 ........ 24

Pub. L. No. 104-320, ?, 110 ........ 9

February 26, 1853 (10 Stat. 170)
("An act to prevent frauds upon the treasury of the United States") ........ 16

Assignment of Claims Act of 1940, 54 Stat. 1029-30 (1940) ........ 14

Pub. L. No. 79-404, 60 Stat. 237 (1946) ........ 6

Pub.L. No. 97-258, 96 Stat. 877 (1982) ........ 14

Pub. L. No. 104-320, 110 Stat. 3870 (1996) ........ 5, 9

Pub.L. No. 97-164, 97 Cong. 2d Sess., 110 Stat. 3870 (1982) ........ 8

Pub. L. No. 104-320, 110 Stat. 3874-75 ........ 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-396C |
| | ) | (Bid Protest) |
| THE UNITED STATES, | ) | (Judge Williams) |
| Defendant, | ) | |
| and | ) | |
| LOCKHEED MARTIN AERONAUTICS CO., | ) | |
| Intervenor. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court dismiss the amended complaint of L-3 Communications Integrated Systems, L.P. (L-3).[1]

STATEMENT OF FACTS

1. On August 18, 1998, the United States Department of the Air Force ("Air Force") issued solicitation number F33657-98-R-0006 ("RFP"), for the Engineering and Manufacturing Development ("EMD") and Contractor Operated Supply Support ("COSS") phases of the C-5

[1] A motion directed toward the Court's jurisdiction is properly styled a motion to dismiss, rather that a motion for summary judgment. Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 747 (Fed. Cir. 1988); Cupey Bajo Nursing Home, Inc. v. United States, 23 Cl. Ct. 406, 411-12 (1991) (motion for summary judgment based upon lack of jurisdiction treated as a motion to dismiss). In deciding a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), the Court may consider evidentiary matters outside the pleadings. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993), cert. denied, 512 U.S. 1235 (1994); Idium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986); Maniere v. United States, 31 Fed. Cl. 410, 413-14 (1994).

Avionics Modernization Program ("AMP"). Compl. ¶ 2.[2] Raytheon E-Systems, Inc. ("Raytheon") and Lockheed Martin Aeronautical Systems, Inc. ("Lockheed Martin") were the only two contractors to submit proposals under the RFP. Compl. ¶ 3.

2. On January 22, 1999, the Air Force awarded contract nos. F33657-98-C-0006 and F33657-98-C-0007 ("the contracts") under the RFP to Lockheed Martin. Compl. ¶ 5.

3. L-3 Communications Corp., formed in April 1997, is a wholly owned subsidiary of L-3 Communications Holdings, Inc., headquartered in New York, New York. L-3 Communications Corp.'s major business areas include aerospace and defense, secure communications systems, training systems, microwave components, avionics and ocean systems, telemetry, instrumentation, and space and wireless products.

4. As explained below, L-3 Communications Corp. acquired Integrated Systems, formerly known as Raytheon Company, Aircraft Integration Systems, on March 8, 2002. An Asset Purchase Agreement, dated January 11, 2002, was executed among Raytheon Company and Raytheon Australia Pty Ltd. and L-3 Communications Corp. (the "Agreement"). A5-148. The Agreement identifies Raytheon Company and Raytheon Australia Pty Ltd. individually and collectively as the Seller(s) (the "Sellers"), and L-3 Communications Corp. as the Buyer (the "Buyer"). A16.

5. The Agreement defines the "AIS Business" (the "AIS Business") as follows:

> the "<u>AIS Business</u>" means those operations of Raytheon or any of its Subsidiaries that are conducted as of the Closing Date through its Aircraft Integration Systems business unit principally at facilities located in Greenville, Texas, Waco, Texas, Lexington, Kentucky and Avalon, Australia (but expressly excluding any

---

[2] "Compl." refers to plaintiff's amended complaint filed February 9, 2007. "A__" refers to the Appendix filed with this motion.

> business or operations similar or identical to the type performed by Raytheon or its Subsidiaries at facilities other than those named above which are managed by personnel other than AIS management, including, but not limited to, the business and operations of the type performed at Raytheon's Wichita, Kansas, McKinney, Texas, Garland, Texas, El Segundo, California, Goleta, California, Fort Wayne, Indiana, Indianapolis, Indiana, and Falls Church, Virginia facilities.

A16. The Agreement provides that the Buyer desires to purchase from the Sellers, and the Sellers desire to sell to the Buyer, the assets of the Sellers "relating exclusively or primarily to the AIS Business (other than assets excluded pursuant hereto), subject to the assumption of related liabilities, upon the terms and subject to the conditions set forth herein." A16.

6. Article 1 of the Agreement provided for a transfer of assets at the Closing as follows:

> (a) Transfer of Assets. On the basis of the representations, warranties, covenants and agreements and subject to the satisfaction or waiver of the conditions set forth in the Agreement, at the Closing (as defined in Section 1.3(a)), each Seller shall sell, convey, and assign and transfer to the Buyer, and Buyer shall purchase and acquire from such Seller, all of such Seller's right, title and interest in and to the assets, properties and rights of such Seller, of every kind, nature, character and description (accrued, contingent or otherwise), tangible and intangible, real, personal or mixed, wherever located, existing as of the Closing which are utilized exclusively or primarily in the AIS Business (the Acquired Assets), including, without limitation, the following assets, properties and rights, in each case to the extent the assets or properties are owned or the rights are held by a Seller as of the Closing and exclusively or primarily utilized in or relating to the AIS Business:
>
> * * * *
>
> > (xiv) all actions, claims, causes of action, rights of recovery, choses in action, rights of setoff of any kind, and all rights under and pursuant to all indemnities, warranties, representations and guarantees arising before, on or after the Closing relating exclusively or primarily to the AIS Business, any Acquired Assets or any Assumed Liabilities....

A17-20. The Agreement provides that it shall be governed by Delaware law. A143.

7. By letter agreement, dated March 8, 2002, the Sellers and the Buyer amended the Asset Purchase Agreement, dated January 11, 2002, but did not modify the provisions of Article 1, quoted above in paragraph 6. A152-59. The letter agreement provides: "Except as amended as provided above, the Agreement remains in full force and effect and binding on the Parties in accordance with its terms." A156.

8. At the Closing, a Bill of Sale, dated March 8, 2002, was executed and delivered by Raytheon Company to the Buyer. A149-51.

9. The AIS Business purchased by L-3 Communication Corp. was later renamed L-3 Communications Integrated Systems, L.P. (L-3). According to its disclosure statement, L-3 is "a segment or business unit reporting directly to a home office." A160-61. L-3 reports to the L-3 Integrated Systems Home Office, an intermediate home office of L-3 Communications Corp. Id.

10. On May 16, 2006, L-3 filed this action, seeking money damages in the amount of $2,583,000, and such other relief in the form of bid protest costs. Compl. ¶¶ 39, 40. On June 22, 2006, L-3 certified that "Raytheon E-Systems, Inc. incurred bid preparation and proposal costs in pursuit of the C-5 AMP Program in the amount of $2,564,397, of which $1,514,944 have not [already] been recouped through overhead rates on cost-reimbursement and flexibly-priced contracts." A1-2.

11. On February 9, 2007, L-3 filed its first amended complaint. On March 8, 2007, L-3 filed a notice of errata and stated that it "seeks recoupment of $1,514,944 of the total $2,564,397 of bid and proposal costs incurred in pursuit of the C-5 AMP Program." A3.

## ARGUMENT

"It is a fundamental precept that federal courts are courts of limited jurisdiction." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Indeed, "the [Court of Federal Claims] is a court of exceedingly limited statutory jurisdiction." Shelleman v. United States, 9 Cl. Ct. 452, 455 (1986).

The Court of Federal Claims' jurisdiction to entertain a suit and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). Moreover, the scope of any waiver of sovereign immunity must be "unequivocally expressed" in the statutory text - it cannot be implied, and is "strictly construed" in favor of the United States. Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999); accord Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); Testan, 424 U.S. at 399; Ins. Co. of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir. 2001). As the United States Court of Appeals for the Federal Circuit stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983).

L-3 asserts that this Court possesses jurisdiction encompassing its amended complaint pursuant to both 28 U.S.C. §§ 1491(a)(1) and 1491(b). Compl. at 1. We address each contention in turn.

### I. The Court Lacks Jurisdiction Under Section 1491(a)(1)

As we demonstrate below, this Court does not possess jurisdiction of L-3's complaint for several reasons. First, in the Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, 110 Stat. 3870 (1996) (A231-236), Congress replaced and superseded the implied-

contract bid protest jurisdiction of this Court with the new grant of bid protest jurisdiction now found in 28 U.S.C. § 1491(b) (A257-58). Block v. United States, 66 Fed. Cl. 68, 76 (2005) ("the implied-in-fact contract to fairly consider bids no longer survives as a basis for recovery in actions challenging consideration of a bid or proposal"); Lion Raisins, Inc. v. United States, 52 Fed. Cl. 115, 120 (2002).[3] Second, even assuming that Congress in the ADRA of 1996 did not repeal the bid protest jurisdiction of this Court based upon implied-contract, this Court is without jurisdiction of L-3's complaint for another reason, i.e., the Court's jurisdiction pre-ADRA was limited to pre-award bid protests, and L-3 did not file its action prior to award. Third, irrespective of whether jurisdiction is premised upon section 1491(a)(1) or section 1491(b), L-3's action is barred by the Anti-Assignment Acts, 31 U.S.C. § 3727 and 41 U.S. § 15. A259-66.

After Congress enacted the Administrative Procedure Act (APA), Pub. L. No. 79-404, 60 Stat. 237 (1946), Federal courts began to recognize standing and jurisdiction in disappointed bidder cases, thus allowing disappointed bidders to complain of arbitrary action by Government agencies in the context of procurement statutes. The lead case, Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), allowed the disappointed bidder to challenge the Government's award of a contract and considered whether the agency had violated procurement regulations. See also Diebold v. United States, 947 F.2d 787, 802-04 (6th Cir. 1992); Choctaw Manufacturing Co. v. United States, 761 F.2d 609 (11th Cir. 1985) (reviewing bidder's challenge

---

[3] To date, the Court of Appeals for the Federal Circuit has declined to decide whether the ADRA of 1996 superseded the implied contract basis of bid protest jurisdiction. Emery World-wide Airlines, Inv. v. United States, 264 F.3d 1071, 1082 n.9 (Fed. Cir. 2001) (stating "we decline to address whether implied contract theory survives the ADRA"); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.2d 1324, 1332 n.6 (Fed. Cir. 2001) (stating "[a]lthough it has been argued that the implied contract theory survives the 1996 amendment, we need not decide this issue").

to award under Small Business set aside); B.K. Instrument, Inc. v. United States, 715 F.2d 713 (2d Cir. 1983); Hayes Int'l Corp. v. McLucas, 509 F.2d 247 (5th Cir.) (reviewing whether award of contract violated DoD procurement regulations), cert. denied, 423 U.S. 864 (1975).

In contrast, in the Court of Claims, a disappointed bidder's standing to challenge the award of a Government contract was based upon an implied-in-fact contract, arising upon the submission of a responsive proposal, that the Government would consider the responsive proposal honestly and fairly.[4] See, e.g., National Forge Co. v. United States, 779 F.2d 665, 667 (Fed. Cir. 1985); United States v. John C. Grimberg, Inc., 702 F.2d 1362, 1367-68 (Fed. Cir. 1983) (en banc); Keco Industries, Inc. v. United States, 192 Ct. Cl. 773, 784, 428 F.2d 1233, 1237 (1970) (Keco I); Heyer Products Co. v. United States, 135 Ct. Cl. 63, 69, 140 F. Supp. 409, 413 (1956). Further, an unsuccessful bidder could "recover only those costs incurred in preparing its technical proposals or bids." Keco I, 192 Ct. Cl. at 785, 428 F.2d at 1240; accord

[4] The Act of February 24, 1855, which established the Court of Claims, provided that the "court shall hear and determine all claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, which may be suggested to it by a petition filed therein; and also all claims which may be referred to said court by either house of Congress." 10 Stat. 612-14 (1855) (A162-64). That act provided that the Court of Claims would report to Congress its opinions in the cases before it. Id.

The Act of March 3, 1863, which established the Court of Claims as a court authorized to render final judgments, provided that all petitions and private bills presented to Congress for the "satisfaction of private claims against the Government, founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, shall, unless otherwise ordered by resolution of the house in which the same are present or introduced, be transmitted by the secretary of the Senate or the clerk of the House of Representatives, with all the accompanying documents" to the Court of Claims. A165-66. These provision are predecessors of section 1491(a)(1), which provides that the Court of Federal Claims "shall have jurisdiction to render judgement upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

Deco Industries, Inc. v. United States, 203 Ct. Cl. 566, 573, 492 F.2d 1200, 1203 (1974) (an unsuccessful bidder's right to compensation is limited to "the expense of undertaking the bidding process"); Excavation Constr., Inc. v. United States, 204 Ct. Cl. 299, 301, 494 F.2d 1289, 1290 (1974); Heyer Products Co., 135 Ct. Cl. at 69, 140 F. Supp. at 412.

In 1982, Congress enacted the Federal Courts Improvement Act, Pub. L. No. 97-164, 97 Cong. 2d Sess., 96 Stat. 25 (1982) (A176-97), including a provision which changed the Court of Claims to the United States Claims Court, and gave this Court new powers. That provision amended section 1491 of title 28, United States Code, as follows:

> (a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . .
>
> * * * *
>
> (3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

96 Stat. 39-40; A190-91. Thus, pursuant to that statute, Congress gave this Court the authority to grant declaratory judgments and equitable relief in pre-award bid protest actions. Id. However, in granting the Claims Court these broader powers, Congress did not intend to displace the power of Federal district courts to hear complaints of unlawful agency action brought under the APA; Congress cited Scanwell Laboratories Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), as an example of the actions it did not intend to displace. S. Rep. No. 97-275, 1982 U.S.C.C.A.N. 32-33; A219-20.

Soon after the 1982 act, the United States Court of Appeals for the Federal Circuit limited the bid protest jurisdiction of this Court to "pre-award" cases, that is, cases brought before the

contract is awarded. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001); United States v. John C. Grimberg Co., 702 F.2d 1362, 1368 (Fed. Cir. 1983); Monchamp Corp. v. United States, 19 Cl. Ct. 797, 799 (1990). "Therefore, if the contract had already been awarded, a bid protest suit could only be brought in the district court." Impresa, 238 F.3d at 1332.

In the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, 94th Cong. 2d Sess., 110 Stat. 3870 (1996) (A231-36), Congress again substantively altered this Court's jurisdiction in the bid protest area. Congress adopted a broader scope of review for all bid protest actions, i.e., the arbitrary and capricious standard set forth in the APA. 28 U.S.C. § 1491(b)(4); Impresa, 238 F.3d at 1332 ("Under the ADRA, all bid protest actions under the APA are now reviewed under the standards applied in the Scanwell line of cases"). Congress deleted the former provisions of 28 U.S.C. § 1491(a)(3). Pub. L. No. 104-320, sec. 12(a), 110 Stat. 3874; A235. As specified above, those provisions had given this Court declaratory and injunctive powers in conjunction with the Court's implied-contract bid protest jurisdiction. Congress replaced that former grant of jurisdiction with the following provisions:

> (b)(1) Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.
>
> (2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

> (3) In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.
>
> (4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

Pub. L. No. 104-320, sec. 12, 110 Stat. 3874-75; A235-36.

In simultaneously deleting the jurisdiction granted in the former section 1491(a)(3) and adopting the new section 1491(b), Congress replaced and superceded this Court's bid protest jurisdiction premised upon an implied-contract in 28 U.S.C. § 1491(a). Post-ADRA, bid protests actions in this Court proceed under the jurisdiction granted in 28 U.S.C. § 1491(b). The new statutory basis of bid protest jurisdiction did not eliminate a protestor's ability to challenge arbitrary and capricious conduct, including alleged bad faith, L-3 Communications Sys. L.P. v. United States, 79 Fed. Cl. 453, 461 (2007); such allegations are encompassed in the APA scope of review provision made applicable in 28 U.S.C. § 1491(b)(4). E.g., Galen Medical Ass., Inc. v. United States, 369 F.3d 1324, 1330, 1335-36 (Fed. Cir. 2004) (denying protest where disappointed bidder failed to demonstrate bias). See also Bittmore Forest Broad. FM, Inc. v. United States, 60 Fed. Cl. 322, 334 (2008).[5]

---

[5] The ADRA of 1996 also included a sunset provision, which provided that "[t]he jurisdiction of the district courts of the United States over the actions described in section 1491(b)(1) . . . shall terminate on January 1, 2001, unless extended by Congress." Pub.L. No. 104-320, § 12(d), 110 Stat. 3875 (A236); 28 U.S.C. § 1491(b), Historical and Statutory Notes, "Sunset Provisions." See Emery World-wide Airlines, Inc. v. United States, 264 F.3d 1071, 1079-80 (Fed. Cir. 2001); Goodwill Industrial Services Corp. v. Committee for Purchase from People Who Are Blind Or Severely Disabled, 378 F. Supp.2d 1290, 1295 (D. Colo. 2005)(dismissing bid protest for lack of jurisdiction); Novell, Inc. v. United States, 109 F. Supp.2d 22, 24-25 (D.D.C. 2000).

Even assuming that, despite Congress' enactment of the ADRA in 1996, there remains jurisdiction in the Court of Federal Claims encompassing bid protest actions based upon an implied-contract pursuant to 28 U.S.C. § 1491(a), such jurisdiction would be restricted to pre-award bid protests only. Impresa, 238 F.3d at 1332; John C. Grimberg Co., 702 F.2d at 1368; Monchamp Corp., 19 Cl. Ct. at 799. L-3's action is not a pre-award bid protest. Therefore, this Court does not possess jurisdiction pursuant to 28 U.S.C. § 1491(a), to consider the post-award bid protest action brought by L-3. Id.

II. L-3's Action Is Barred By The Anti-Assignment Acts

Ultimately, the issue whether L-3 asserts jurisdiction based upon either section 1491(a)(1) or section 1491(b) of title 28 of the United States Code is not determinative. L-3's cause of action is barred by the Anti-Assignment Acts, 31 U.S. § 3727 and 41 U.S. § 15.

A. The Anti-Assignment Acts

Two anti-assignment statutes restrict the manner in which private entities may voluntarily assign contracts with and claims against the Government. Often referred to collectively as the "Assignment of Claims Act" or the "Anti-Assignment Acts," these enactments are at 41 U.S.C. § 15 and 31 U.S.C. § 3727. Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1349 (Fed. Cir. 2002); Delmarva Power & Light Co. v. United States, 79 Fed. Cl. 205, 214 (2007).

The first statute, known individually as "The Assignment of Contracts Act," provides in relevant part:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned.

41 U.S.C. § 15(a); A262-66. "This provision is designed to prevent fraud and multiple claims

against the Government and to ensure that the Government is dealing with an entity that has the legal right to perform, and against whom the United States has recourse." NGC Investment and Development, Inc. and JDL Constr. v. United States, 33 Fed. Cl. 459, 463 (1995). "The Government has the right to contract with whom it wishes and to know with whom it is contracting." Id. The Assignment of Contracts Act serves to restrict generally the assignment of any interest in a contract with the United States to any other party, with certain exceptions in 41 U.S.C. § 15(b), pertaining to the assignment of monies due under a contract with the United States to "a bank, trust company, or other financing institution." Delmarva, 79 Fed. Cl. at 214 (citing 41 U.S.C. § 15(b)). See Fireman's Fund Ins. Co., 313 F.3d at 1349-51 (contractor's assignment of all of their rights under Government contracts violated the prohibition in 41 U.S.C. § 15, and their assignment of claims was invalid under 31 U.S.C. § 3727(a)(1)(b)); an insurance company is not a "financing institution"); United Pacific Ins. Co. v. Roche, 380 F.3d 1352, 1357 (Fed. Cir. 2004) (contractor's assignment to surety in indemnity agreement of all claims arising under its Government contract violated 41 U.S.C. § 15).

Pursuant to 41 U.S.C. § 15, not only is any purported assignment of a contract with the United States typically invalid, but it causes the annulment of the contract in regard to the sovereign. Delmarva, 79 Fed. Cl. at 214; Westinghouse Electric Co. v. United States, 56 Fed. Cl. 564, 569 (2003) (transfer by prior owner to current owner of contractual right to seek cleanup costs was void under 41 U.S.C. § 15, because the transfer occurred without Government consent), aff'd, 97 Fed. Appx. 931 (Fed. Cir. 2004) (Table); NGC Investment and Development, Inc. and JDL Constr., 33 Fed. Cl. at 463 (contractor's assignment of Government contract rendered the contract null and void; neither assignor nor assignee can recover against the Government). However, despite the bar of 41 U.S.C. § 15, the Government, if it chooses to do

so, may recognize a private party's assignment of a Government contract. G.L. Christian & Associates v. United States, 160 Ct. Cl. 1, 312 F.2d 418, 423 (1963) (finding Government waived provisions of 41 U.S.C. § 15); Maffia v. United States, 143 Ct. Cl. 198, 163 F. Supp. 859, 862 (1958) (Government may waive the provisions of 41 U.S.C. § 15); Kawa v. United States, 77 Fed. Cl. 294, 305 (2007) (same); Monchamp Corp., 19 Cl. Ct. at 801 (same).

The second statute, known individually as "The Assignment of Claims Act," 31 U.S.C. § 3727, applies more generally to "claims" against the United States. Delmarva, 79 Fed. Cl. at 214. The relevant portion of this statute restricts the assignment of claims against the United States outside of the following established procedure:

> An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

31 U.S.C. § 3727(b); A259-61.

Under 31 U.S.C. § 3727, assignments of claims against the Government are void unless they comply with the enumerated restrictions. Delmarva, 79 Fed. Cl. at 215. By its terms, claims not yet pursued in court to final judgment are precluded from assignment. Id.; E.g., Centers v. United States, 71 Fed. Cl. 529 (2006) (mortgage lender's assignment to former president and sole shareholder of claims against Government violated 31 U.S.C. § 3727(a)(1)), aff'd, 224 Fed. Appx. (Fed. Cir. 2007); Curtis v. United States, 63 Fed. Cl. 172, 177-78, 180 (2004) (dissolution of a corporation does not effect a transfer of title to corporate assets; transfer of corporation's assets, including claim against the Government, to its sole shareholder is invalid under 31 U.S.C.

§ 3727(a)(1)); Holland v. United States, 62 Fed. Cl. 395, 400-01 (2004) (assuming that a Letter Agreement assigned claims against the Government to plaintiffs, such an assignment violated 31 U.S.C. § 3727(a)(1)); Kingsbury v. United States, 215 Ct. Cl. 136, 563 F.2d 1019, 1024 (1977) (transfer of claim to plaintiff was void pursuant to then 31 U.S.C. § 203).

An assignments of claims found to violate the Assignment of Claims Act, 31 U.S.C. § 3727(a)(1), does not forfeit the claim. Colonial Navigation Company v. United States, 149 Ct. Cl. 242, 245, 181 F. Supp. 237, 240 (1960); see Fireman's Fund Ins. Co., 313 F.3d at 1349.

Both 41 U.S.C. § 15 and 31 U.S.C. § 3727 preclude generally the assignment of legal rights against the Government to third parties. Delmarva, 79 Fed. Cl. at 215.

B. The Legislative History Of Anti-Assignment Acts

The predecessor of the Assignment of Contracts Act, 41 U.S.C. § 15, was section 3737 of the Revised Statutes of the United States, which provided as follows:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States.

R.S. § 3737; A268.

The Assignment of Claims Act, 31 U.S.C. § 3727, was formerly codified at 31 U.S.C. § 203. A276. In 1982, title 31 of the United States Code was substantially reorganized. Pub. L. No. 97-258, 96 Stat. 877 (1982). This statute was recodified at 31 U.S.C. § 3727 without substantive change. Cases adjudicated before 1982 generally refer to 31 U.S.C. § 203. The predecessor of 31 U.S.C. § 203 was section 3477 of the Revised Statutes of the United States, which provided as follows:

> All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due and the issuing of a warrant for the payment thereof. Such transfers, assignments and powers of attorney must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment or warrant of attorney to the person acknowledging the same.

R.S. § 3477; A267.

In 1940, both R.S. 3477 and R.S. 3737 were amended to exempt assignments of proceeds of a Government contract to "a bank, trust company, or other financing institution, including any Federal lending agency." Assignment of Claims Act of 1940, 54 Stat. 1029-30 (1940). A269-70. These exemptions are codified at 41 U.S.C. § 15(b) and 31 U.S.C. § 3727(c). As indicated in the legislative history, these exemptions were intended to enable the assignment of an interest in moneys due under a Federal contract to a financing institution in return for valuable consideration, such as loans, enabling the contractor to finance the contract work. The Senate Report stated that, under the pre-existing law,

> banks and other lending agencies which might otherwise be willing to extend credit to finance the performance of contracts with the Government are unable to rely upon assignments of amounts payable under such contracts as security, because they [could not rely on assignments of the proceeds of these contracts as collateral].

S. Rep. No. 2136, 76th Cong., 3d Sess. (1940); see also H.R. Rep. No. 2925, 76th Cong., 3d

Sess. (1940) (same) (A272-74); 86 Cong. Rec. 12560 (Sept. 24, 1940) (statement of Rep. Wolcott) (Act intended to correct "prohibition in existing law against the pledging of Government contracts as security for loans by banks") (A275). General Casualty Co. v. Second Nat'l Bank, 178 F.2d 679, 680 (5th Cir. 1949).

In 1951, the statutes were amended to give financing institutions who obtained assignments of contract proceeds freedom from liability "to make restitution, refund, or repayment to the United States" of amounts "received under the assignment." Pub. L. No. 30, 82d Cong., 1st Sess., 65 Stat. 41 (1951) (A277), now 31 U.S.C. § 3727(e) and 41 U.S.C. § 15(d). "The clause that prevents setoffs from being taken against payments to an assignee is an additional incentive to assure lenders that proceeds from government contracts may be used as a reliable source of collateral." Applied Companies v. United States, 144 F.3d 1470, 1476 (Fed. Cir. 1998) (Government contractor's assignment of amounts owed under settlement agreement to bank did not bar Government's setoff under Assignment of Claims Act). See Central Bank v. United States, 345 U.S. 639, 643 (1953); First Nat'l City Bank v. United States, 212 Ct. Cl. 357, 548 F.2d 928, 934-45 (1977); Great American Ins. Co. v. United States, 203 Ct. Cl. 592, 492 F.2d 821, 826-27 (1974).

C. Scope And Application Of The Anti-Assignment Acts

The Supreme Court has held that the primary purpose of these Anti-Assignment statutes "'was undoubtedly to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the Government.'" Delmarva, 79 Fed. Cl. at 215 (quoting United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 373 (1949)). Additionally, the statutes were intended:

> (1) to insure that the United States may avoid involvement in any litigation as to the existence or extent of subrogation or other assignment of such claims; and (2) to insure that the suits and any judgments against the United States will be in the names of the original claimants so that the United States will be able to avail itself of its statutory rights in respect of venue, and of counterclaim and offset on account of any cross-claims it may have against the original claimants.

Id.

The harms which the Anti-Assignment Acts were intended to alleviate are evident in Benjamin v. United States, 162 Ct. Cl. 47, 318 F.2d 728 (1963). There, plaintiff made the highest bid for a surplus cruiser and the Navy accepted its bid. After bid opening, the Navy was presented with (1) a letter, dated the day the bids were opened, from plaintiff to a third party, Union Minerals, notifying it that the plaintiff appeared to be the high and successful bidder for the cruiser and that plaintiff thereby sells, assigns and transfers all of its right, title and interest in the said sale contract and vessel to Union Minerals, (2) a letter from Union Minerals to the Navy, informing it of their purchase of the vessel from plaintiff, and (3) a letter from plaintiff to Union Minerals stating that pursuant to the parties' contract, you are to deliver your certified check to the United States, which has been tendered against delivery of the cruiser to you, and confirming that all right, title and interest in the cruiser vests in Union Minerals as and when its payment is made to the Navy. The Navy received payment from Union Minerals and tendered it the vessel. Thereafter, plaintiff sued the Government contending that the documents on their face did not reflect the reality of the transaction between plaintiff and Union Minerals, which was merely to finance the sale of the vessel, with plaintiff remaining as the vessel's owner, and that the Navy was obligated to transfer the cruiser to plaintiff. The Court of Claims denied the Government's motion for summary judgment and held that disputed facts warranted a trial.

Contrary to the Anti-Assignment Acts' purposes, in Benjamin, the Government became engrossed in litigation between plaintiff and a third-party assignee concerning the extent and scope of their assignment and the parties' relative obligations under that private contract. The Court of Claims became the forum for interpretation of that private assignment contract, contrary to the Anti-Assignment Acts' purpose of avoiding Government involvement in such litigation. Aetna Casualty & Surety Co., 328 U.S. at 373.

Since 1877, it has been established that claims against the United States may not be assigned so as to enable the assignee to bring suit in his own name in the Court of Claims, or its successor court, the Court of Federal Claims. United States v. Gillis, 95 U.S. 407 (1877). In Gillis, the issue was the validity of a voluntary transfer of a claim under the abandoned and captured property act of March 12, 1863, for the proceeds of certain cotton seized by the United States. The suit was brought by the transferee in the Court of Claims, which found in his favor. The Supreme Court reversed, holding that the transferee could not maintain the action.

The Supreme Court held that the act of February 26, 1853 (10 Stat. 170) ("An act to prevent frauds upon the treasury of the United States"), from which section 3477 of the Revised Statutes (A267) was taken, "is of universal application, and covers all claims against the United States in every tribunal in which they may be asserted." Id. at 416; accord United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 379 (1949); National Bank of Commerce of Seattle v. Downie, 218 U.S. 345, 352 (1910); Price v. Forrest, 173 U.S. 410, 420 (1899). The Supreme Court noted that the seventh section of the statute provides that "the provisions of this act" "shall apply and extend to all claims against the United States, whether allowed by special acts of Congress or arising under general laws or treaties, or in any other manner whatever." Gillis, 95 U.S. at 413. The Supreme Court held:

> No language could be broader or more emphatic than these enactments. The words embrace every claim against the United States, however arising, of whatever nature it may be, and wherever and whenever presented.

Id. at 413.

In Gillis, the Supreme Court also rejected the contention that the act of 1855, establishing the Court of Claims (A162-64), repealed by implication the Anti-Assignment Acts. The Supreme Court held that the act of 1855, creating the Court of Claims, "did not work a repeal of any provisions of the act of 1853," which also later was re-enacted in the Revised Statutes of the United States (A267-68). Id. at 415. The Court explained:

> The rule is that an ancient statute will be impliedly repealed by a later one only when the later is couched in negative terms or when the matter is so clearly repugnant that it necessarily implies a negative. Where both acts are affirmative, and the substance such that both may stand together, both are held to be in force.

Id. at 416.

Although the Supreme Court has recognized limited exemptions from the Anti-Assignment Acts, those exemptions do not detract from the general applicability of these statutes. In Gillis, the Supreme Court acknowledged that transfers of rights may occur by operation of law, without any act of parties, or involuntary assignments, compelled by law, which might allow an action to be brought by the transferee. Id. at 416. Subsequent cases held that transfers by operation of law are not barred by the Anti-Assignment Acts. In Erwin v. United States, 97 U.S. 392 (1878), an assignee in bankruptcy sued the United States on a claim of the bankrupt, and the Supreme Court held that the suit could be maintained in the Court of Claims. In Seaboard v. Air Line Ry. v. United States, 256 U.S. 655 (1921), the Supreme Court held that a company suing to recover monies payable to a railroad company, to whose rights it had succeeded through a merger

or consolidation, could bring its action in the Court of Claims. Such a transfer of rights by operation of law was outside the scope of section 3477 of the Revised Statutes. See Johnson Controls World Services v. United States, 44 Fed. Cl. 334 (1999) (wholly owned subsidiary created incident to corporate reorganization after parent signed Government contract was a transferee by operation of law outside of the proscriptions of 41 U.S.C. § 15); Stearns Co., Ltd. v. United States, 34 Fed. Cl. 264, 270-71 (1995) (transfer of taking claim during reorganization of corporation as partnership was exempt from 31 U.S.C. § 3727, since equitable ownership of the claim at all times remained in the same persons in the same proportion after the company reorganized as partnership); Kingan & Co. v. United States, 71 Ct. Cl. 19, 44 F.2d 447, 451-52 (1930) (transfer of claim for overpayment of taxes from a British corporation to a domestic one did not change the beneficial ownership of the claim since same stockholders were in control, with stockholdings in the same proportion, after the transfer, and transfer was exempt from then 31 U.S.C. § 203); Thompson v. Commissioner, 205 F.2d 73 (3d Cir. 1953) (dissolution of a corporation and formation of a partnership was a change in business structure exempt from 41 U.S.C. § 15). And, in Aetna Casualty & Surety Co., 338 U.S. at 374, 376, 380, the Supreme Court, in holding that a surety could maintain an action against the United States under the Torts Claims Act in its own name, stated that the Anti-Assignment Act (as then set forth in R.S. 3477 (A267)) did not cover "assignments by operation of law" and that "subordination claims" were exempt from R.S. 3477.

Despite recognition of these exceptions to the Anti-Assignment Acts, the voluntary assignment of claims against the Government, including bid protest claims, remains barred by the Anti-Assignment Acts. In Shannon v. United States, 342 U.S. 288 (1952), an assignee brought suit on a claim for property damages. The Supreme Court held that the Anti-Assignment Act,

R.S. § 3477 (A267), barred the assignee from asserting its claim against the United States. Accord, United States v. Dow, 357 U.S. 17, 20 (1958) (assignee's claim was barred by then 31 U.S.C. § 203 (A276)); Cadwalder v. United States, 45 F.3d 297, 300-01 (9th Cir. 1995) (FTCA claim for property damage could not be assigned to subsequent purchaser of property). And, in Westinghouse Elec. Co., 56 Fed. Cl. at 570, this Court held that a sale of assets involves a voluntary transaction that falls within the scope of the Anti-Assignment Act.

That is the situation in L-3's case also. L-3's right of action is derived from a sale of assets, i.e., the Asset Purchase Agreement, which included an assignment of claims from the Sellers to the Buyer, L-3 Communications Corp. In that agreement, the parties agreed that "all actions, claims, causes of action, rights of recovery, choses in action . . . arising before, on or after the Closing relating exclusively or primarily to the AIS Business were conveyed to the Buyer." L-3 contends that this transfer of rights, in the Asset Purchase Agreement, entitles it to bring this action. This assignment of rights, including implicitly a right to bring a bid protest action against the Government, is barred by the Anti-Assignment Acts, specifically, 31 U.S.C. § 3727. Shannon, 342 U.S. at 291; Dow, 357 U.S. at 20; Cadwalder, 45 F.3d at 300-01; Westinghouse Elec. Co., 56 Fed. Cl. at 570.

Giving effect to an assignment of a bid protest claim against the United States where that claim is transferred in a sale of assets defeats the purposes of the Assignment of Claims Act, 31 U.S.C. § 3727. The Assignment of Claims Act protects the Government from multiple claims and having to respond to suits brought by third party-assignees of claims against the Government. If assignees of bid protest claims resulting from an asset sale were allowed to sue the Government, the Court would have to address the interpretation of third-party contracts, such as Asset Purchase Agreements, in the absence of one of the signatories, the offeror, and the

Government might have to face a subsequent lawsuit by the assignor of the claim. The Government could potentially become involved in litigation construing the terms and nature of the assignment agreement, as was the case in Benjamin v. United States, 162 Ct. Cl. 47, 318 F.2d 728 (1963). It matters not whether in this case the transfer of claims in the Asset Purchase Agreement appears clear on its face. That was the case in Benjamin also. The Assignment of Claims Act was intended to protect the Government from the risk of having to participate in such litigation. In addition, this Court's limited jurisdiction does not extend to adjudication of disputes between private parties, e.g., between an assignor of a claim and its assignee, and the Court is limited to adjudicating "public rights." Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 67 (1982); Keetoowah Band v. United States, 78 Fed. Cl. 303, 307 (2007) (declining to decide third party's contention that plaintiff was not the successor-in-interest to the original Cherokee Tribe). The Assignment of Claims Act also preserves the Government's ability to assert a counterclaim or set-off against the assignor. Martin J. Simko Constr., Inc. v. United States, 852 F.2d 540, 542 (Fed. Cir. 1988) ("The Claims Court has jurisdiction under 28 U.S.C. §§ 1503 and 2508 to consider counterclaims raised by the government.") (citing Cherry Cotton Mills, Inc. v. United States, 327 U.S. 536, 539 (1946)); Frantz Equipment Co. v. United States, 122 Ct. Cl. 622, 105 F. Supp. 490, 494 (1952).[6]

In sum, the voluntary assignment of claims to L-3 in the Asset Purchase Agreement is void and null as against the Government, pursuant to the Assignment of Claims Act, 31 U.S.C.

---

[6] We note that a disappointed bidder's sale of assets may render it unable to perform the contract for which it bid and moot its bid protest action. Avtel Services, Ins. v. United States, 501 F.3d 1259 (Fed. Cir. 2007). Also, the Court has held that a disappointed bidder who sold its assets no longer could proceed with its suit. Emerald Coast Finest Produce Co., Inc. v. United States, 79 Fed. Cl. 466, 474 (2007) ("Emerald Coast relinquished its rights to this lawsuit when it sold its assets to Adams Brothers.").

§ 3727. The Assignment of Claims Act "covers all claims against the United States in every tribunal in which they may be asserted." Gillis, 95 U.S. at 413, 416. Accord, Aetna Casualty & Surety Co., 338 U.S. at 379; National Bank of Commerce of Seattle, 218 U.S. at 352; Price, 173 U.S. at 420. Therefore, L-3's action is barred by statute. Further, when a plaintiff is seeking to recover from the United States on a claim assigned to it, to the extent that the claim is voided by the Assignment of Claims Act, the complaint is subject to dismissal for lack of standing. Westinghouse Elec. Co., 56 Fed. Cl. at 568-69; Atlas Hotels, Inc. v. United States, 140 F.3d 1245, 1247 (9th Cir. 1998); California-American Water Co. v. Dept. of Air Force, 2006 WL 1686139 at *6 (E.D. Cal. 2006).

D. There Was No Transfer Of Rights By Operation Of Law

The Asset Purchase Agreement provides that it is governed by Delaware law. The manner in which L-3 acquired the bid protest claim that it attempts to raise in this Court was not a transfer by "operation of law" exempt from the Anti-Assignment Acts. As the Supreme Court of Delaware has explained, "operation of law"

> is a generic term or phrase commonly used to express the manner in which rights (and/or liabilities) attach to a person by the mere application to the particular transaction of the established rules of law without the act or cooperation of that person. Black's Law Dictionary (4 ed).
>
> A somewhat more practical statement of its meaning appears in 67 C.J.S. at page 877:
> "Operation of Law. The obligation of law, its practical working and effect. It is a term applied to indicate the manner in which a party acquires rights without any act of his own. In its usual signification, 'operation of law' is generally applicable to matters involving title and refers to situations in which rights, and sometimes liabilities, are created without action by the parties."
>
> In "practical working and effect," the term indicates the manner in which a person acquires rights without any act of his own.

> Merdzinski v. Modderman, Mich. Sup. Ct., 263 Mich. 173, 248 N.W. 586 (1933). And the "operation" or impact of the law upon the particular transaction, without more, is to be contrasted with events caused by the voluntary action of the parties. In the latter case, the result is not caused by operation of law.

Pioneer Nat. Title Ins. Co. v. Child, Inc., 401 A.2d 68, 70-71 (Del. 1979) (transactions which effected the transfer of title were voluntary and, thus, title did not pass by operation of law); accord Lawyers Title Ins. Corp. v. Cae-link Corp., 878 F. Supp. 767, 769-70 (D. Md. 1994). L-3 did not obtain the cause of action it raises in this suit through operation of law. Id.

Pursuant to Delaware corporate law, transfers by operation of law are set forth in 8 Del C. § 259(a). Specifically, Delaware law provides:

> When any merger or consolidation shall become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged . . . shall cease and the constituent corporations shall become a new corporation, or be merged into 1 of such corporations . . . possessing all the rights, privileges, powers and franchises as well of a public as of a private nature, and being subject to all the restrictions, disabilities and duties of each of such corporations so merged or consolidated; and all and singular, the rights, privileges, powers and franchises of each of said corporations, and all property, real, personal and mixed, and all debts due to any of said constituent corporations on whatever account, as well for stock subscriptions as all other things in action or belonging to each of such corporations shall be vested in the corporation surviving or resulting from such merger or consolidation . . . .

8 Del C. § 259(a).

Assignments by operation of law include a merger or consolidation. See, e.g., Deascanis v. Brosius-Eliason Co., 533 A.2d 1254, 1987 WL 4628 (1987) (guarantee was transferable by operation of law under 8 Del. C. § 259). Under Delaware law, the right to a pending cause of action is an asset of a merged corporation which passes to the corporation surviving the merger

by operation of law. Texaco Refining and Marketing, Inc. v. Delaware River Basin Com'n, 824 F. Supp. 500, 507-08 (D. Del. 1993) (a statutory merger results in a combination of two corporations, with the surviving corporation attaining the property, rights, and privileges of the absorbed corporation, as well as retaining its own property, rights and privileges), aff'd, 30 F.3d 1488 (3d Cir. 1994); Blasband v. Rales, 971 F.2d 1034, 1043 (3d Cir. 1992); Lewis v. Anderson, 477 A.2d 1040, 1044-45 (Del. 1984)(new corporation had exclusive control including disposition of all choses in action and pending claims passed by reason of merger to it); Phillips Petroleum Co. v. U.S. Steel Corp., 566 F. Supp. 1093 (D. Del.), aff'd, 727 F.2d 1120 (Fed. Cir. 1983) (Table); Levitt v. Bouvier, 287 A.2d 672, 673 (Del. 1972); Heit v. Tenneco. Inc., 319 F. Supp. 884, 887 (D. Del. 1970) (all assets of the merged corporation, including any causes of action pass by operation of law to the surviving company); Bokat v. Getty Oil Co., 262 A.2d 246, 249 (Del. 1970) (cause of action was asset of acquired corporation which passed on merger to successor corporation, under 8 Del. C. § 259).

In sum, L-3 did not obtain the bid-protest cause of action that it attempts to raise in this suit by operation of law, including Delaware law. L-3 voluntarily acquired the cause of action in the Asset Purchase Agreement.

III. Raytheon's Sale Of Assets Did Not Exempt Its Transfer Of Claims Against The Government From The Anti-Assignment Acts

We assume that L-3 will contend that Raytheon's sale, and L-3 Communications Corp.'s purchase, of substantial assets in the Asset Purchase Agreement exempts its transfer of a bid protest claim against the Government from the provisions of the Anti-Assignment Acts. There is no merit in such a contention.

In California-American Water Co. v. Department of Air Force, 2006 WL 1686139 (E.D. Cal. 2006), California-American Water Co. (Cal-Am), a utility, purchased a drinking water supply well from Citizens Utilities Company of California (CUCC) and received an assignment of CUCC's claims against third parties. Id. at *2. The court held that Cal-Am's claims against the United States for all costs that CUCC incurred were barred by the Assignment of Claims Act, 31 U.S.C. § 3727, and dismissed those claims for lack of jurisdiction. Id. at **6, 7. The court held that "failure to comply with the Assignment of Claim Act renders the assignment null and void so far as the United States is concerned." Id. at *8 (quoting In re Freeman, 489 F.2d 431, 433 (9th Cir. 1973). The same is true here.

Accordingly, Raytheon's sale, and L-3's purchase, in the Asset Purchase Agreement of substantial assets does not exempt the assignment of a bid protest cause of action against the United States from the Assignment of Claims Act, 31 U.S.C. § 3727.

IV. L-3 Is Not An "Interested Party" Under 28 U.S.C. § 1491(b)

As noted, the ADRA of 1996 established jurisdiction in the Court of Federal Claims encompassing both pre-award and post-award bid protests by amending the Tucker Act as set forth in 28 U.S.C. § 1491(b). Specifically, the Court possesses:

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1)(emphasis added). Thus, in order to possess standing to pursue a bid protest under section 1491(b)(1), a plaintiff must first establish that it is an "interested party." Id.

The 1996 amendment to the Tucker Act did not define the term "interested party." In

amending the act, Congress "did not adopt the APA's liberal standing standards." Myers Investigative & Sec. Services, Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002). Rather, the Federal Circuit held that the term "interested party" in 28 U.S.C. § 1491(b)(1) is to be construed in accordance with the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551-56, which applies to bid protests filed with the GAO. Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (citing 31 U.S.C. § 3551(2)(A) (A290)). The Federal Circuit held that, in bid protests pursuant to Tucker Act, "we . . . construe the term 'interested party' in section 1491(b)(1) in accordance with the [requirements of the] CICA and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id.; accord Rex Service Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006).[7] For example, in Eagle Design & Management, Inc. v. United States, 63 Fed. Cl.

---

[7] In the Deficit Reduction Act of 1984, Pub. L. No. 98-369, Subtitle D, sec. 2741, 98 Stat. 1199 (1984) (A295-299), Congress enacted the definition of the term "interested party" for bid protests heard by the Comptroller General. In the GAO statute, 31 U.S.C. §§ 3551-56, Congress defines "interested party" as follows:

> The term "interested party" with respect to a contract or a solicitation or other request for offers described in paragraph (1) means an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by a failure to award the contract.

31 U.S.C. § 3551(2)(A). A290. An identical definition of an "interested party" is contained in the GAO Bid Protest Regulations at 4 C.F.R. § 21.0(a). See, e.g., PPG Industries, Inc., B-272126, June 24, 1996, 96-1 CPD ¶ 285 (protester that would likely participate in a procurement as a subcontractor is not an "interested party"); Bullock Int'l, B-265982, 96-1 CPD ¶ 5, 1995 WL 760918 (Dec. 26, 1995); Lexis-Nexis, B-260023, May 22, 1995, 1995 WL 341842 (protester was not an "interested party" for purposes of challenging the agency's approach where it did not show that it was economically affected by the specifications that it challenged); MCI Telecommunications Corp., B-239932, Oct. 10, 1990, 70 Comp. Gen. 20, 90-2 CPD ¶ 280 (contractor contending that procuring service under existing contract was an improper

106, 108 (2004), this Court held that a subcontractor of an offeror was not an "interested party" within the meaning of section 1491(b)(1), since it was not an "actual" offeror and did not claim that it would have become a "prospective" offeror were the Court to correct the alleged error in the procurement.

Direct economic interest is deemed to be affected only where the protestor establishes that it had a "substantial chance" of securing the award absent a prejudicial defect in the process. Myers, 275 F.3d at 1369-70. "Substantial chance" means that the protestor was in the "zone of active consideration." Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999). Thus, protestors who did not submit proposals, withdrew from the procurement, or finished lower than second after evaluation do not have standing to protest the procurement. Impresa, 238 F.3d at 1334. See also United States v. Int'l Business Machines, 892 F.2d 1006, (Fed. Cir. 1990) (disappointed bidder was not an "interested party" with standing to protest within the meaning of the Brooks Act, 40 U.S.C. § 759(f)(1), where its bid ranked fourth-lowest); U.S.West Communications Servs. v. United States, 940 F.2d 622, 627-28 (Fed. Cir. 1991) (subcontractor was not "interested party" within meaning of Brooks Act, 40 U.S.C. § 759(f)(1)); Phoenix Eng'g, Inc. v. MK-Ferguson of Oak Ridge, Co., 966 F.2d 1513, 1526 (6th Cir. 1992) ("Potential subcontractors are not interested parties for the purpose of an action under CICA."); Information Systems & Networks Corp. v. U.S. Department of Health and Human Services, 970 F. Supp. 1, 7-8 (D.D.C. 1997) (subcontractor was not "interested party" for

---

sole-source procurement was an "interested party" since it was a prospective offeror); Microrim, Inc., B-225525.2, Jan. 14, 1987, 87-2 CPD ¶ 58 (prospective subcontractor was not an "interested party" since it is not a prospective offeror); Electronic Systems U.S.A., Inc., B-219754, Sept. 5, 1985, 85-2 CPD ¶ 274 (1985) (manufacturer which supplies equipment to potential bidders is not an "interested party."

purposes of action under CICA).

The definition of "interested party" in 28 U.S.C. § 1491(b) does not encompass the purchaser of a bidder's assets, including its potential causes of action against the Government. Such a purchaser of assets, like L-3, is not an "interested party" because it was not an "actual" bidder or offeror within the meaning of section 1491(b), since it did not submit an offer in response to the Government's solicitation. Rex Service Corp., 448 F.3d at 1307 ("Rex did not bid, and therefore, it is not an 'actual bidder'"); Scott v. United States, 78 Fed. Cl. 151, 157 (2007); Eagle Design & Management, Inc., 63 Fed. Cl. at 108. Indeed, L-3 did not exist at the time of the solicitation in 1998, although L-3 Communications Corp. was in existence at that time.

In addition, a purchaser of assets, like L-3, is not a "prospective" bidder or offeror within the meaning of section 1491(b), because in MCI Telecomm. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989), the Court of Appeals for the Federal Circuit held that "in order to be eligible to protest, one who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." Further, "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." Id. Accord, Rex Service Corp., 448 F.3d at 1307-08 ("because Rex could have bid, but chose not to, it cannot be considered a prospective bidder"); Scott, 78 Fed. Cl. at 157 ("Plaintiff, therefore, does not qualify as a prospective bidder, as he did not submit an offer prior to the closing date of the Solicitation."); Eagle Design & Management, Inc., 63 Fed. Cl. at 108. Here, L-3 did not exist at the time of the solicitation, although L-3 Communications Corp., the entity to which L-3 ultimately reports, was in existence. L-3 did not submit a bid prior to the closing date, and L-3 Communications Corp. declined to submit a bid prior to the closing date. Neither is a

"prospective" bidder.

Further, as we demonstrate below, the ADRA of 1996 does not constitute a repeal by implication of the Assignment of Claims Act. Therefore, a bidder's transfer of a bid protest claim is barred as against the Government by the Assignment of Claims Act, 31 U.S.C. § 3727. California-American Water Co. v. Department of Air Force, 2006 WL 1686139 (E.D. Cal. 2006). Consequently, the buyer of such a chose in action is barred from raising it in the Court of Federal Claims, and is without standing to bring such an action. Id. at *6; Westinghouse Elec. Co., 56 Fed. Cl. at 568-69; Atlas Hotels, Inc., 140 F.3d at 1247.

V. The ADRA of 1996 Did Not Repeal The Anti-Assignment Acts

It is well-established that repeals of statutes by implication are not favored. Cook County, Ill. v. United States ex rel. Chandler, 538 U.S. 119, 132 (2003). That two statutes produce differing results when applied to the same factual situation does not justify a repeal by implication. United States v. Batchelder, 442 U.S. 114, 122 (1979). Instead, the "legislative intent to repeal must be manifest in the positive repugnancy between the provisions of two statutes." California v. United States, 271 F.3d 1377, 1382 (Fed. Cir. 2001) (quoting United States v. Borden Co., 308 U.S. 188, 199 (1939)) (internal quotations omitted). Positive repugnancy "means that the two statutes are incapable of co-existence." California, 271 F.3d at 1382.

Absent positive repugnancy, "courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Cathedral Candle Co. v. U.S. Intern. Trade Com'n, 400 F.3d 1352, 1368 (Fed. Cir. 2005) (quoting Morton v. Mancari, 417 U.S. 535, 551 (1974)). Accord, County of Yakima v.

Confederated Tribes & Bands of the Yakima Indian Nation, 502 U.S. 251, 255-56 (1992). Redundancies across statutes "are not unusual events in drafting," and, again, where two laws are not repugnant, "a court must give effect to both." Connecticut National Bank v. Germain, 503 U.S. 249, 253 (1992).

Indeed, the Supreme Court has held that the Anti-Assignments Act and the provisions that established the Court of Claims are not repugnant and that the later provisions did not work a repeal by implication of the Anti-Assignment Acts. United States v. Gillis, 95 U.S. 407 (1877). In Gillis, the Supreme Court emphasized the general applicability of the Anti-Assignment Acts. Id. at 413, 416. The Court held that, although transfers of rights may occur by operation of law, without any action of the parties, or by involuntary assignments, compelled by law, the voluntary transfer of claims cannot be maintained as against the Government. Accordingly, Gillis's action in the Court of Claims was dismissed. Id. There was no implied repeal of the Assignment of Claims Act. Id.; accord Saint John Marine Co. v. United States, 92 F.3d 39, 46 (2d Cir. 1996) (Suits in Admiralty Act does not repeal the Anti-Assignment Act, 31 U.S.C. § 3727, in respect to maritime claims against the Government).

The Court should reach the same conclusion in this case. The substance of both the ADRA of 1996 and the Assignment of Claims Act, 31 U.S.C. § 3727, may stand together, and there is no positive repugnancy between them. There is no clearly expressed congressional intent that 31 U.S.C. § 3727 not apply to the claims of bid protestors. Cathedral Candle Co., 400 F.3d at 1368; California, 271 F.3d at 1382. The transferee of a bid protest claim cannot bring such an action against the Government. Therefore, the Court should give effect to the Assignment of Claims Act in the bid protest context, and dismiss L-3's complaint. Id.

VI. There Are No Other Reasons Why L-3's Complaint Should Not Be Dismissed

We note that in the context of sealed bid procurements, the Federal Acquisition Regulation (FAR) explicitly recognizes the applicability of the Anti-Assignment Acts. In a sealed bid procurement, bids are fixed as of the time of bid opening and may not thereafter be withdrawn or amended until they are rejected or expire by their own terms.[8] Condec Corp. v. United States, 177 Ct. Cl. 958, 369 F.2d 753, 756 (1966); Refining Associates v. United States, 124 Ct. Cl. 115, 109 F. Supp. 259 (1953) (bidder's attempted revocation of its bids after opening of bids was ineffective). In a sealed bid procurement, the bidder who transfers assets and his transferee are subject to the prohibitions contained in the Anti-Assignment Acts and also as set forth in the FAR, which provides as follows:

> After submitting a bid, if all of a bidder's assets or that part related to the bid are transferred during the period between the bid opening and the award, the transferee may not be able to take over the bid. Accordingly, the contracting officer shall reject the bid unless the transfer is effected by merger, operation of law, or other means not barred by 41 U.S.C. 15 or 31 U.S.C. 3727.

48 C.F.R. § 14.404-2(l)(formerly section 14.404-2(k)).[9]

Prior to the adoption of 48 C.F.R. § 14.404-2(l) in 1983 (then FAR 14.404-2(k)), this Court considered whether the low bidder in a sealed procurement could transfer its bid. In Mil-Tech Systems Corp. v. United States, 6 Cl. Ct. 26 (1984), Mil-Tech, the low bidder, and all its assets, was sold by a stock transfer to ATACS Corp., and became a wholly-owned subsidiary of that corporation. ATACS also agreed to pay a commission to the former sole shareholder of

---

[8] In contrast, in a negotiated procurement, a proposal may normally be withdraw at any time prior to award of the contract. The C-5 AMP procurement was a negotiated procurement.

[9] This regulation was part of the original FAR. See Establishing the Federal Acquisition Regulation, 48 Fed. Reg. 42102, 42180 (September 19, 1983).

Mil-Tech upon the award of the Government contract to Mil-Tech. Id. at 29. This Court sustained the contracting officer's decision that Mil-Tech was ineligible for award of the Government contract based upon procurement policy. Mil-Tech's sale to ATACS transferred ownership of the bid and amounted to "bid brokering," since nothing would have stopped Mil-Tech from "shopping" other companies, including the higher bidders, to see if they would take over Mil-Tech's bid, and Mil-Tech thus gained an unfair advantage over the other bidders. Id. at 32. This decision was not based upon the Anti-Assignment Acts; the Court stated that neither 31 U.S.C. § 3727 nor 41 U.S.C. § 15 prohibits a company from transferring its bid. Id. at 33. The Court's decision rested upon the contracting officer's reasonable application of procurement policy.

FAR 14.404-2(l) was construed by the Court of Federal Claims. In Lyons Security Services, Inc. v. United States, 38 Fed. Cl. 783, 788 (1997), this Court applying its bid protest jurisdiction set forth in 28 U.S.C. § 1491(b)(4), held that the contracting officer's decision to terminate the contract awarded to the low bidder, which had been sold to another company prior to contract award, was an "abuse of discretion." FAR 14.404-2(l) did not bar the Government's award of the contract to Lyons. Id. at 786. In so ruling, the Court refused to follow the Comptroller's decision in Premier Security, B-275908, 97-2 CPD ¶ 15 (1997).

In both Mil-Tech and Lyons, the Court was not presented with the question whether the Assignment of Claims Act, 31 U.S.C. § 3727, bars the transferee of a bid protest claim from suing the Government. In addition, they did not involve a negotiated procurement. Accordingly, those decisions are not relevant to this case.

CONCLUSION

For these reasons, plaintiff's amended complaint should be dismissed.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney
Department of Air Force
Arlington, VA

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor, 1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

April 25, 2008

## Table of Contents of Appendix


**Document** **Page**

Declaration, Plaintiffs Supplemental Certification of Costs (June 23, 2006) .............. A1

Plaintiffs Notice of Errata Regarding First Amended Complaint (March 8, 2007) .......... A3

Asset Purchase Agreement, among Raytheon Company and Raytheon Australia Pty Ltd. and L-3 Communications Corporation (January 11, 2002) ............................ A5

Bill of Sale (March 8, 2002) ................................................ A149

Letter to L-3 Communications Corporation from Raytheon Company (March 8, 2002) ... A152

Excerpt from Disclosure Statement of L-3 Communications Integrated Systems.................A161

**Legislative Materials**

United States Court of Federal Claims materials:

Act of February 24, 1855, An Act to establish a Court for the Investigation of Claims against the United States........................................................................................A162

Act of March 3, 1868, An Act to amend "An Act to establish a Court for the Investigation of Claims against the United States" ................................. A165

Revised Statutes of the United States, 1873-74, Title XIII, Chapter 21, The Court of Claims ................................................................ A169

Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 97th Cong., 96 Stat. 25 (April 2, 1982) ........................................................ A176

S. Rep. No. 97-275 to accompany S. 1700 (Nov. 18, 1981) ........................ A198

Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 104th Cong. 2d Sess., 110 Stat. 3870 (Oct. 19, 1996) ............................................... A231

1996 U.S.C.C.A.N. 4238, summary of legislative history of Pub. L. No. 104-320 ........ A237

H. Conf. Rep. No. 104-81, 104th Cong., 2d Sess. (September 25, 1996) ............... A238

142 Cong. Rec. S6157 (June 12, 1996) ....................................... A248

142 Cong. Rec. S11849 (September 30, 1996) ................................ A255

28 U.S.C. § 1491 (2008) . . . . . . . . A257

Anti-Assignment Acts materials:
31 U.S.C. § 3727 (2008) . . . . . . . . A259

41 U.S.C. § 15 (2008) . . . . . . . . A262

Revised Statutes of the United States, 1873-74, section 3477 and 3727 . . . . . . . . A267

Assignment of Claims Act of 1940, 54 Stat. 1029-30 (October 9, 1940) . . . . . . . . A269

31 U.S.C. § 203 (1940) . . . . . . . . A271

H. Rep. No. 2925 ("Permitting Assignment of Claims Under Public Contracts"), 76th Cong., 3d Sess. (September 6, 1940) . . . . . . . . A272

86 Cong. Rec. 12560 (September 24, 1940) . . . . . . . . A275

31 U.S.C. § 203 (1946) . . . . . . . . A276

An Act to facilitate the financing of defense contracts by banks and other financing institutions, Pub. L. No. 30, 82 Cong., 1st Sess. (May 15, 1951), 1951 U.S.C.C.A.S. 40 . . A277

S. Rep. No. 82-217, 82d Cong., 1st Sess. (April 11, 1951), 1951 U.S.C.C.A.S. 1414 . . . . . A279

GAO materials:
31 U.S.C. § 3551 (2008) . . . . . . . . A290

Deficit Reduction Act of 1984, Pub. L. No. 98-369, Subtitle D-Procurement Protest System, sec. 2741, 98th Cong., 2d Sess. (July 18, 1984) . . . . . . . . A295

Conf. Rep. No. 98-861, to accompany Deficit Reduction Act of 1984, 98th Cong., 2d Sess. (June 23, 1984) . . . . . . . . A300