tain service in a judicial capacity unless the employee is entitled to certain salary or annuity payments. Also the section states how certain pension fund payments are to be handled by the Director of the Administrative Office of the United States Courts and how they are to be treated for tax purposes. It is the clear intention of the Committee that this section make no substantive changes in the Federal Judicial Retirement Program.

Section 207 requires the Administrative Office of the United States Courts to pay a deposit into the civil service retirement fund for article III judges who resign to accept executive branch positions. Such Federal judges give up a lifetime salary mandated by the Constitution, even though they have not been able to accrue pension benefits for their years of Federal service under the civil service retirement program. Under existing law, such judges are credited for their years of service on the Federal bench but receive a sharply reduced retirement annuity since contributions to the fund were not made during those years. The Act requires the Administrative Office to deposit into the fund an amount sufficient to provide a full retirement annuity for former Federal judges who have foregone their lifetime salaries to accept other employment by the Federal Government.

This amendment is designed to prevent injustice and to avoid penalizing judges who leave the bench to accept Executive appointments.

*Temporary assignment of judges to administrative positions*

Part E of title II authorizes an active or retired justice or judge of the United States to be assigned temporarily to the position of Administrative Assistant to the Chief Justice, Director of the Administrative Office of the United States Courts, or Director of the Federal Judicial Center. Such service would be without additional compensation.

This provision makes available to the judiciary the talents of administratively able judges and thereby strengthens the administration of the Federal judiciary. Presently, the Office of the Chief Justice is administratively overloaded; this proposal makes it possible for the Chief Justice to delegate a larger array of his routine administrative duties. This section was first proposed by the Chief Justice of the United States almost a decade ago; the committee is of the opinion that the appropriate appointing bodies should have the flexibility and authority to staff these positions with especially competent and talented members of the Federal judiciary.

The committee is, of course, aware that it may not be necessary to invoke this section in filling the various vacancies. Certainly, the Federal Judicial Center, Administrative Office and Administrative Assistant positions have not suffered in the past from the failure of a sitting judge to be appointed. But the committee is of the view that there should be the option of filling these vacancies with competent appointments from the Federal judiciary. Although the committee considers this Part to be a very useful measure, it is not designed to provide the ultimate solution to the problems of administering a greatly enlarged Federal judiciary. As the Chief Justice has continuously pointed out, those problems require further study and legislative attention.

*Publication of rules*

Part F of title II amends chapter 131 of title 28 of the United States Code by adding a new section 2077.

Paragraph (a) calls for the publication of rules governing conduct of the business of the court.

Paragraph (b) requires each court of appeals to create an advisory committee to make recommendations to the judges in formulating rules of practice and of internal operating procedures. This would provide valuable assistance to the judges in developing sound rules and would provide practitioners with useful information and a better understanding concerning the court's business.

## TITLE III—JURISDICTION AND PROCEDURE

*Transfer of cases*

In recent years much confusion has been engendered by provisions of existing law that leave unclear which of two or more federal courts including courts at both the trial and appellate level—have subject matter jurisdiction over certain categories of civil actions. The problem has been particularly acute in the area of administrative law where misfilings and dual filings have become commonplace. The uncertainty in some statutes regarding which court has review authority creates an unnecessary risk that a litigant may find himself without a remedy because of a lawyer's error or a technicality of procedure.

At present, the litigant's main protective device, absent an adequate transfer statute, is the wasteful and costly one of filing in two or more courts at the same time. This puts increased burdens on the courts as well as on the parties.

Although most problems in this regard relate to controversies involving the district courts and the court of appeals, there also have been cases involving the Court of International Trade, and the Temporary Emergency Court of Appeals. Therefore, the language of Part A of Title III is broadly drafted to permit transfer between any two federal courts.[15]

*Interest*

Under current law, the interest rate on judgments in the Federal courts is based on varying State laws and frequently falls below the contemporary cost of money. Part B of title III sets a realistic and nationally uniform rate of interest on judgments in the Federal courts that would be keyed to the prime interest rate as determined by the Internal Revenue Service. This eliminates an economic incentive which exists today for a losing defendant to appeal a judgment and accumulate interest on the judgment award at the commercial rate during the pendency of the appeal.

There are presently no generally applicable guidelines concerning the award of prejudgment interest in Federal courts. Yet such interest may be essential in order to compensate the plaintiff or to avoid unjust enrichment of the defendant. For instance, a plaintiff who is unlaw-

[15] For further discussion see Hearings on Judicial Housekeeping Before the House Judiciary Subcommittee on Courts, Civil Liberties and the Administration of Justice, 95th Cong., 2d Sess. 372–390 (1978). *See* Appendix B.

fully deprived of the use of $20,000 in 1976 and who does not receive a judgment until 1979, could have obtained $4,500 in those three years by investing the money at seven percent compounded interest. The bill provides that, where a defendant knew of his liability, interest be awarded for the prejudgment period at a rate that is keyed to the prime interest rate, where this is necessary to compensate the plaintiff. The imposition of such interest would be left to the discretion of the district judge in each case.

Finally, the Committee took this opportunity to consolidate into one statute the three provisions of Title 28 of the United States Code dealing with the award of interest on judgments. Consequently the provisions of this bill for prejudgment interest and a new interest rate on judgments will apply uniformly to suits between private litigants and to suits against the government.

### TITLE IV—MISCELLANEOUS PROVISIONS

Title IV contains three sections. The first section amends 28 U.S.C. 753 to allow the use of electronic sound recording, or other methods of recording, in judicial proceedings in addition to those methods which are permitted under existing law, including shorthand or other mechanical means. The second section sets the general effective date of the bill as sixty days after the enactment date. The third provision addresses the issue of the effect of the bill on pending cases.

## SECTION-BY-SECTION ANALYSIS

### TITLE I—U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT AND UNITED STATES CLAIMS COURT

*Organization, structure, and jurisdiction*

*Section 101.*—Section 101(a) amends section 41 of title 28 of the United States Code by creating a thirteenth judicial circuit of the United States, the United States Court of Appeals for the Federal Circuit, to review orders and judgments in selected categories of cases. The Federal Judicial Circuit comprehends all 95 judicial districts, including those of courts in the territories created by Act of Congress which are invested with any jurisdiction of a district court of the United States.

*Section 102.*—Section 102(a) amends section 44(a) of title 28, United States Code, by authorizing the President, with the advice and consent of the Senate, to appoint twelve judges for the United States Court of Appeals for the Federal Circuit. Section 102(b)(1) makes the tenure, residence, and salary provisions of section 44 that apply to Federal courts of appeals judges apply also to the judges of the Federal circuit, except that judges of that court must reside within fifty miles of the District of Columbia while in active service. Section 102(b)(2) clarifies the language setting out where regular sessions of the courts of appeals may be held. Subsection (b)(3) designates the District of Columbia as the statutorily-prescribed place where regular sessions of the court of appeals for the Federal circuit shall be held. Subsection (b)(4) allows a court of appeals to

hold special sessions at any place within its circuit as the nature of the business may require.

*Sections 103–104.*—Sections 103 and 104 are technical amendments providing for the consistent usage of the term "panel" throughout 28 U.S.C. 46. Section 104(a) also allows the United States Court of Appeals for the Federal Circuit to sit in panels of more than three judges if its rules so provide.

*Section 105.*—Under existing law, chapter 7 of title 28, United States Code, pertains to judges of the Court of Claims. Section 105 of the bill amends this chapter to apply instead to the judges of a newly constituted trial court, which will assume the functions of the trial division of the current Court of Claims. The current commissioners are much like magistrates and are appointed by the Court of Claims. The amended chapter is titled "United States Claims Court," and it provides as follows:

Subsection (a) of section 171 of title 28 authorizes the President to appoint, by and with the advice and consent of the Senate, sixteen judges who will constitute a court of record known as the United States Claims Court. The court will be established under article I of the Constitution of the United States. Because 28 U.S.C. 2509 of existing law gives the trial judges of the Court of Claims jurisdiction to hear congressional reference cases, which are not "cases and controversies" in the constitutional sense, and because the cases heard by the Claims Court are in many ways essentially similar to the limited jurisdiction cases considered by the tax court, judges of the Claims Court are made article I judges rather than article III judges.

Subsection (b) of section 171 of title 28 requires the Claims Court, at least biennially, to designate a judge to act as chief judge. This provision parallels procedure in the United States Tax Court. See 26 U.S.C. 7444(b).

Section 172 of title 28 fixes the tenure of the judges of the United States Claims Court at a term of fifteen years. The section also sets the salary at an annual rate determined under the Federal Salary Act of 1967. This bill neither raises nor lowers existing salaries.

Section 173 of title 28 authorizes the Claims Court to hold court anywhere within the jurisdiction of the United States, but it requires the court to establish the times and places of its sessions with a view toward minimizing inconveniences and expense to citizens. This latter provision is similar to the statutory requirement that the United States Tax Court set the times and places of its sessions in such a way as to expedite citizen access. See 26 U.S.C. 7446.

Section 174 of title 28 permits the judicial power of the Claims Court to be exercised by a single judge and requires the decisions of the Claims Court to be preserved and open for inspection. These provisions are identical to requirements governing the Court of International Trade. See 28 U.S.C. 254, 257.

Section 175 of title 28 sets the duty station of a judge of the United States Claims Court as the District of Columbia and provides that while in active service judges shall live within fifty miles of the District of Columbia.

Section 176 provides for removal from office of a judge of the Claims Court by a majority of the judges of the Court of Appeals for the Federal judicial circuit.

[page 14]

Section 177 provides that a judge removed from office in this manner may not later practice law before the Claims Court. This provision parallels a similar section in the statute governing the tax court. See 26 U.S.C. 7443(g).

*Section 106*.—Under existing law, chapter 9 of title 28, United States Code, concerns the Court of Customs and Patent Appeals (CCPA). The provisions of chapter 9 of title 28 will be no longer necessary since similar provisions found in chapter 3 of title 28 are applicable to the new court. Section 106 of the Act therefore repeals chapter 9 of title 28.

*Section 107*.—Under existing law, section 256(b) of title 28, United States Code, permits the chief judge of the Court of International Trade to authorize a judge of the court to preside in an evidentiary hearing in a foreign country. The subsection also permits an interlocutory appeal to be taken from such an order, subject to the discretion of the Court of Customs and Patent Appeals. Section 107 of the Act provides that the United States Court of Appeals for the Federal Circuit may, in its discretion, consider an interlocutory appeal from such an order.

*Section 108*.—Under existing law, section 291(b) of title 28, United States Code, authorizes the Chief Justice of the United States to designate and assign temporarily any circuit judge to serve as a judge of the Court of Claims or the Court of Customs and Patent Appeals, if the need arises. Because the Act transfers the judges and functions of these courts to the U.S. Court of Appeals for the Federal Circuit and the United States Claims Court, section 108 deletes existing subsection (b). Because the Court of Appeals for the Federal Circuit will be in all respects a United States court of appeals, the Chief Justice will be authorized under section 291(a) to designate a judge of that court to sit temporarily as a circuit judge in another circuit, or to assign temporarily a judge of another circuit to the Court of Appeals for the Federal Circuit.

*Section 109*.—Section 292(e) of title 28, United States Code, currently authorizes the Chief Justice of the United States to designate and assign temporarily any district judge to serve as a judge of the Court of Claims, the Court of Customs and Patent Appeals, or the Customs Court. Section 109 of the bill conforms this section to the other changes made by the bill.

*Section 110*.—Section 293 of title 28, United States Code, currently provides for temporary assignment of a judge from the Court of Claims to the Court of Customs and Patent Appeals or vice versa, and from the Court of Customs and Patent Appeals to the Court of International Trade or vice versa. Section 110 amends section 293 of title 28 by deleting subsections (a), (c), and (d) which deal with the interchange of judges between the Court of Claims and the Court of Customs and Patent Appeals and between the Customs Court and the Court of Customs and Patent Appeals. The Act retains the provisions of subsections (b) and (e).

*Section 111*.—Section 111 amends section 331 of title 28, United States Code, which deals with the Judicial Conference of the United States, by deleting references to the Court of Claims and the Court of Customs and Patent Appeals. The Court of Appeals for the Federal

Circuit is structurally similar to the regional courts of appeals, and, as such, becomes part of the Judicial Conference.

*Section 112.*—Section 372 of title 28, United States Code, concerns retirement of judges for disability and appointment of a substitute judge upon failure of a disabled judge to retire. Section 112 amends this section of the Code by deleting all references to the Court of Claims and the Court of Customs and Patent Appeals. The new appellate court is covered by the retained language, which contains a legislative proposal passed by the 96th Congress to provide for the discipline of Federal judges. Pursuant to the terms of that legislation, the Court of Appeals for the Federal Circuit and the Claims Court both will have to prescribe procedures of the handling of complaints against member judges.

*Section 113.*—Section 113 repeals section 415 of title 28, United States Code, which concerns distribution of copies of Court of Claims decisions, and amends the analysis at the beginning of chapter 19 of title 28, United States Code, to conform with the changes made by the previous sections.

*Section 114.*—Section 114 amends section 451 of title 28, United States Code, which defines certain terms used in title 28, by deleting all references to the Court of Claims and the Court of Customs and Patent Appeals. The retained language would cover the Court of Appeals for the Federal Circuit but not the article I Claims Court.

*Section 115.*—Section 115(a)(1) amends section 456 of title 28, United States Code, concerning travel expenses of justices and judges, to clarify the provisions relating to official duty stations and to update references to obsolete laws. The clarification establishes one official duty station for Article III judges and ensures that the official duty station will be that place where the Director provides chambers for the judges.

Section 115(b)(1) of the bill adds a new section 460 that makes sections 452 through 459 and section 462 of title 28, United States Code, applicable to the United States Claims Court and to certain territorial courts. These sections deal with general matters and provide that courts shall be deemed always open for certain procedural purposes; judges must take a prescribed oath before performing the duties of office; judges are prohibited from engaging in the practice of law; judges may be disqualified from participation in a proceeding in certain circumstances; records of the courts must be kept in a prescribed manner; relatives of a judge are ineligible for appointment to any office in the court in which the relative is a judge; and judges may administer oaths. Claims Court judges also will receive the same allowance as article III judges.

Section 115(c) amends chapter 21 of title 28, U.S.C., by adding a new section 462 concerning court accommodations and providing for necessary space for the Claims Court and the Court of Appeals for the Federal Circuit.

*Section 116.*—Section 116 amends chapter 21 of title 28, United States Code, by adding a new section 463 to that chapter. The newly created section 463 would expressly authorize the Director of the Administrative Office to "pay the costs" when a judge or Justice is sued in his official capacity and "the services of an attorney for the govern-

ment are not reasonably available pursuant to chapter 31 (of title 28)." Under chapter 31 generally, and 28 U.S.C. § 516 in particular, the Attorney General is responsible for providing the services of an attorney to a judge sued in his official capacity. Usually services are provided by U.S. Attorneys and their assistants, individuals who routinely represent the government in litigation before judges they are also required to represent. While many instances may arise in which no "conflict of interest" or "appearance of impropriety" exists, or is perceived to exist by the public, only a few such cases will be enough to permanently damage the legal system's reputation. Under section 463 of title 28, as created by section 103 of the bill, the Director of the Administrative Office is required to prescribe regulations governing the payments he is therein authorized to make. Those regulations must be approved by the Judicial Conference of the United States.

*Section 117.*—Under existing law, suits in the Supreme Court and the Court of Claims are conducted and argued by the Attorney General and the Solicitor General, unless in a particular case the Attorney General directs otherwise. See 28 U.S.C. 518(a). Section 117 of the bill amends section 518(a) of title 28, United States Code, by deleting the reference to the Court of Claims and providing for argument by the Attorney General and Solicitor General in suits against the United States in the United States Court of Appeals for the Federal Circuit or in the United States Claims Court, unless the Attorney General directs otherwise.

*Section 118.*—Under current law, section 520 of title 28, United States Code, concerns transmission of copies of petitions in suits against the United States in the Court of Claims to the affected government department or agency by the Attorney General. Section 118(a) of the Act amends this section by deleting references to the Court of Claims and substituting a reference to suits against the United States in the United States Claims Court or in the United States Court of Appeals for the Federal Circuit. Section 118(b) amends the section heading of section 520 of title 28 to reflect this change.

*Section 119.*—Section 119(a) amends section 605 of title 28, United States Code, to require approval of the budget estimate with respect to the United States Court of Appeals for the Federal Circuit by that court. This follows the pattern established for other courts of nationwide jurisdiction.

Section 119(b) is a technical, clarifying amendment adopted by the Committee to authorize that funds appropriated to the existing Court of Customs and Patent Appeals and the Court of Claims for fiscal year 1982 be made available for the new Court of Appeals for the Federal Circuit and the new U.S. Claims Court. These funds are to be apportioned among the new courts as determined by the Director of the Administrative Office of the U.S. Courts in consultation with the Chief Judges of the respective courts in a manner not inconsistent with Congressional intent. The provision is intended to apply to the transition period to insure efficient and orderly implementation of this legislation.

*Section 120.*—Section 120(a) amends section 610 of title 28, United States Code.

Section 120(b) amends 28 U.S.C. 713 to the appointive authority for librarians and their assistants for each court of appeals, including methods of removal.

Section 120(c) amends chapter 47 of title 28 by clarifying the language used to employ criers and messengers. It also provides for the first time for the appointment of staff attorneys and technical assistants in a new section 715. In recent years, many of the regional courts of appeals have found it necessary to utilize central staff attorneys, but they have done so without specific statutory authorization. Similarly, despite a lack of explicit statutory authorizations, the judges of the present Court of Customs and Patent Appeals have found it necessary to hire technical advisers to assist them in resolving cases. These advisers are lawyers who have technical degrees and experience in a scientific or engineering field or in patent law in addition to their legal training. The service of these advisers is identical to that of a law clerk, except that they confer with the judges on technical as well as legal matters. Judges of the United States Court of Appeals for the Federal Circuit need a similar system of technical advisers when they review patent cases, and judges of other United States courts of appeals could frequently benefits from the use of technical advisers. It is anticipated that the judges of the Court of Appeals for the Federal Circuit will receive technical assistance at least as great as the type and quality currently being given to the Court of Customs and Patent Appeals.

For several years, annual appropriation acts have invested the chief judge of each court of appeals with the authority to appoint a senior law clerk. *See*, *e.g.*, Judiciary Appropriation Act, 1979, Public Law No. 95–431, title IV, 92 Stat. 1037. However, Congress has not invested the Courts of Appeals with authority to appoint additional staff attorneys. Unlike the executive branch, there is no general statute granting courts appointive authority. *Cf.* 5 U.S.C. 3101. The Committee notes that the courts continue to make appointments in the absence of a Congressional grant of authority. See 5 U.S.C. 5502(a). While the Committee proposes to invest the officers of the court with the authority to appoint staff attorneys and technical assistants subject to certain restrictions, it is not its intent to ratify the actions of the courts in purporting to appoint employees in the absence of the requisite statutory authority not found in an appropriation act.

*Section 121.*—Under existing law, chapter 51 of title 28, United States Code, concerns Court of Claims staff and reporting procedures. Section 121 of the Bill amends chapter 51 to establish staff and reporting procedures for the United States Claims Court. Chapter 51 of title 28 provides as follows:

Section 791 of title 28 would authorize the Claims Court to appoint a clerk, deputy clerk, and such other employees as may be necessary for the effective conduct of the business of the court. Each of these employees would be subject to removal by the court.

Section 792 of existing 28 U.S.C. relates to the appointment of commissioners by the Court of Claims. As a corollary to the abolishment of the Court of Claims, section 792 is repealed.

Section 794 of title 28 would authorize the judges of the Claims Court to appoint necessary law clerks, subject to any aggregate salary ceilings imposed by law and the regulations of the Judicial Conference of the United States. This provision is similar to esction 752 of title 28 which concerns law clerks and secretaries for district court judges.

Section 795 of title 28 concerns the appointment and duties of bailiffs and messengers for the Claims Court and is similar to existing law concerning the Court of Claims.

Section 796 of title 28 concerns the reporting of Claims Court proceedings and is identical to existing law concerning the reporting of Court of Claims proceedings.

Section 797 of existing 28 U.S.C. relates to the recall of retired commissioners of the Court of Claims. Because the Court of Claims is abolished, section 797 is repealed.

*Section 122.*—Section 122(a) of the Bill repeals chapter 53 of title 28 which, under existing law, concerns appointment and duties of employees of the Court of Customs and Patent Appeals.

Section 957 of title 28, United States Code, provides that certain employees of the district court are not eligible for certain offices in the court's administrative structure. Section 122(b) amends this section by deleting subsection (b), which concerns the clerk or assistant clerks of the Court of Customs and Patent Appeals, and by striking subsection designation "(a)".

*Section 123.*—Section 123 repeals sections 1255 and 1256 of title 28, United States Code, which under existing law provide for Supreme Court review of cases in the Court of Claims and the Court of Customs and Patent Appeals. Review of cases in the new appellate court is covered by 28 U.S.C. 1254, which establishes procedures for Supreme Court review of cases in the circuit courts of appeals.

Section 123 also amends the analysis at the beginning of chapter 81 of title 28, United States Code, to conform with the repeal of sections 1255 and 1256, and conforms 28 U.S.C. section 1336 relating to Interstate Commerce Commission orders.

*Section 124.*—Section 1291 of title 28, United States Code, is amended to make explicit that the jurisdiction of the Court of Appeals for the Federal Circuit is limited to the jurisdiction set forth in sections 1292(c) and 1295(d).

*Section 125.*—Section 1292 of title 28, United States Code, currently gives regional courts of appeals jurisdiction of interlocutory orders of the district courts concerning injunctions and of judgments in civil actions for patent infringement which are final except for an accounting. Section 125 of the Bill amends this section to give the Court of Appeals of the Federal Circuit jurisdiction of interlocutory appeals in cases that will otherwise come to it on appeal.

*Section 126.*—Section 1294 of title 28, United States Code, sets forth the regional courts of appeals to which appeals from reviewable decisions of the district and territorial courts are to be taken. Section 126(b) of the Act amends this section by providing an exception from these provisions for the cases covered by new section 1295; those appeals will be assigned exclusively to the Court of Appeals for the Federal Circuit.

*Section 127.*—Section 127(a) of the Act adds a new section 1295 to chapter 83 of title 28, United States Code.

Before discussing the court's jurisdiction, it needs repetition here that the Federal courts are courts of limited jurisdiction. There is no presumption in favor of jurisdiction, and the basis for jurisdiction always must be affirmatively shown. It is not sufficient that jurisdiction

merely be inferred argumentatively. *See*, *e.g.*, *Hanford* v. *Davies*, 163 U.S. 273[1] (1896). *Thomas* v. *Board of Trustees of Ohio State Univ.*, 195 U.S. 207[2] (1904). This caselaw is incorporated in the Federal Rules of Civil Procedure. Rule 8(a)(1) requires that a pleading setting forth a claim for relief contain a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it.

The defendant in a civil proceeding may, at any time, assert a court's lack of jurisdiction over the subject matter. Furthermore, even though the defendant has not so moved, Rule 12(h)(3), Federal Rules of Civil Procedure, expressly provides that a court "shall dismiss the action" "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." What this all amounts to is that a court's jurisdiction is not something that is easily manipulated.

An analysis of pertinent caselaw reveals that both the Court of Claims and the Court of Customs and Patent Appeals have strictly construed their own jurisdiction. They have not allowed inferential and unwarranted increases to their own respective jurisdictions. *See*, *e.g.*, *Eastport S.S. Corporation* v. *United States*, 178 Ct. Cl. 559, 372 F.2d 1002 (1967); *Somali Development Bank* v. *United States*, 705 Ct. Cl. 741, 508 F.2d 817 (1974); *United States* v. *Boe*, 543 F.2d 151 (C.C.P.A. 1976); and *Godtfredsen* v. *Banner*, 598 F.2d 589 (C.C.P.A. 1979). In the rare instance that one of these courts has mistakenly construed its own jurisdictional grant, the Supreme Court has not hesitated to reverse and remand. *See*, *e.g.*, *United States* v. *Testan*, 424 U.S. 392[3] (1976); *United States* v. *King*, 395 U.S. 1[4] (1969).

Concern has been expressed that the Court of Appeals for the Federal Circuit will appropriate for itself elements of Federal law under its section 1295(1) grant of jurisdiction. It has been argued that a jurisdictional grant to the new court to consider appeals from a district court when jurisdiction was based, "in whole or in part," on section 1338 of title 23 (which confers on the district courts original jurisdiction of any civil action arising under an act of Congress relating to patents, plant variety protection, copyright and trademarks) is too broad and that specious patent claims will be tied, for example, to substantial antitrust claims in order to create jurisdiction in the Court of Appeals for the Federal Circuit. However, the statutory language in question requires that the district court have jurisdiction under 28 U.S.C. § 1338. This is a substantial requirement. Immaterial, inferential, and frivolous allegations of patent questions will not create jurisdiction in the lower court, and therefore there will be no jurisdiction over these questions in the appellate court. As stated above, it is a canon of construction that courts strictly construe their jurisdiction. Therefore, the committee is confident that the present language will not pose undue difficulties.

The Committee is concerned that the exclusive jurisdiction over patent claims of the new Federal Circuit not be manipulated. This measure is intended to alleviate the serious problems of forums shopping among the regional courts of appeals on patent claims by investing exclusive jurisdiction in one court of appeals. It is not intended to

1. 16 S.Ct. 1051, 41 L.Ed. 157
2. 25 S.Ct. 24, 49 L.Ed. 160.
3. 96 S.Ct. 948, 47 L.Ed.2d 114.
4. 89 S.Ct. 1501, 23 L.Ed.2d 52.

create forum shopping opportunities between the Federal Circuit and the regional courts of appeals on other claims.

Thus, for example, mere joinder of a patent claim in a case whose gravamen is antitrust should not be permitted to avail a plaintiff of the jurisdiction of the Federal Circuit in avoidance of the traditional jurisdiction and governing legal interpretations of a regional court of appeals. Federal District judges are encouraged to use their authority under the Federal Rules of Civil Procedure, *see* Rules 13(i), 16, 20(b), 42(b), 54(b), to ensure the integrity of the jurisdiction of the federal court of appeals by separating final decisions on claims involving substantial antitrust issues from trivial patent claims, counterclaims, cross-claims, or third party claims raised to manipulate appellate jurisdiction.

The Committee intends for the jurisdictional language to be construed in accordance with the objectives of the Act and these concerns. If, for example, a patent claim is manipulatively joined to an antitrust action but severed or dismissed before final decision of the antitrust claim, jurisdiction over the appeal of the antitrust claim should not be changed by this Act but should rest with the regional court of appeals.

Further, the jurisdictional section of the CAFC should be read with section 301 of the proposed legislation. This latter section allows any Federal court which lacks jurisdiction over a matter to transfer the complaint or appeal to a proper court, in the same manner as if the complaint or appeal had been filed in that court in the fiirst instance. This provision, therefore, will allow the CAFC to transfer cases to the proper circuit court, or vice versa.

Section 1295 establishes the jurisdiction of the United States Court of Appeals for the Federal Circuit as follows:

Subsection (a)(1) of new section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of any appeal in which district court jurisdiction was based, in whole or in part, on section 1338 of title 28 (which confers on the district court original jurisdiction on any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks), except that appeals of district court decisions in cases involving copyrights or trademarks and none of the other issues will continue to go to the regional appellate courts, pursuant to section 1294 of title 28.

Subsection (a)(2) of section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of any appeal from a district court where the jurisdiction of the district court was based, in whole or in part, on section 1346 of title 28, United States Code, except that an appeal in a case brought in a district court under Sections 1346(a), 1346(b), or 1346(e), or 1346(c) when the claim is founded on an act of Congress or a regulation for internal revenue, and an appeal in a case brought under section 1346(c) (Tort Claims Act) will continue to go to the regional courts of appeals. The Bill modifies section 1346 to bring all other civil cases in which the United States is a defendant under centralized appellate review. Because cases brought under the Federal Tort Claims Act frequently involve the application of State law, those appeals will continue to be brought to the regional courts of appeals.

Subsection (a)(3) of section 1295 of title 28 gives the United States Court of Appeals for the Federal Circuit jurisdiction of any appeal from the United States Claims Court. As provided in the Bill, the new Claims Court would succeed to the trial jurisdiction the Court of Claims now has.

Subsection (a)(4) of section 1295 of title 28 gives the United States Court of Appeals for the Federal Circuit jurisdiction of appeals from decisions of the Board of Appeals and the Board of Patent Interferences of the Patent and Trademark Office as to patent applications and interferences; from decisions of the Commissioner of Patents and Trademarks as to trademark applications and proceedings; and of appeals in patent and trademark cases brought in a Federal district court under 35 U.S.C. 145 or 146. Under existing law, jurisdiction of appeals from these decisions is in the Court of Customs and Patent Appeals. See 28 U.S.C. 1542. The purpose of placing jurisdiction of these appeals in the United States Court of Appeals for the Federal Circuit is to centralize patent appeals in a single forum and, as a result, to promote uniformity in the application of the law. The provisions of existing law entitling litigants in trademark and patent matters to de novo review in the district court remain unchanged.

Subsection (a)(5) of section 1295 would transfer jurisdiction of appeals from decisions of the United States Customs Court to the new court. Currently, jurisdiction of such appeals is in the Court of Customs and Patent Appeals, pursuant to section 1541 of title 28, United States Code.

Subsection (a)(6) of section 1295 of title 28, gives the United States Court of Appeals for the Federal Circuit jurisdiction to review, by findings of the United States International Trade Commission as to unfair trade practices in import trade Jurisdiction of these appeals is in the Court of Customs and Patent Appeals under existing law. See 28 U.S.C. 1543.

Subsection (a)(7) of section 1295 of title 28 gives the United States Court of Appeals for the Federal Circuit jurisdiction to review, by appeal on questions of law only, certain findings of the Secretary of Commerce. Currently, jurisdiction of these appeals is in the Court of Customs and Patent Appeals, pursuant to section 1544 of title 28, United States Code.

Subsection (a)(8) of section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of appeals under section 71 of the Plant Variety Protection Act (7 U.S.C. 2461). Under existing law, the Court of Customs and Patent Appeals has jurisdiction of these appeals, pursuant to section 1545 of title 28, United States Code.

Subsection (a)(9) of section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of any appeal from a final order or final decision of the Merit Systems Protection Board. Currently, jurisdiction of these appeals is in the Court of Claims or a United States court of appeals, pursuant to sections 7703(b)(1) and 7703(d) of title 5, United States Code.

Subsection (a)(10) of section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of an appeal from a final decision of an agency board of contract appeals pursuant to section 8(g)(1) of the Contract Disputes Act of 1978. No change is intended

in the exclusive jurisdiction of the federal district courts to hear appeals in government maritime contract disputes, as provided in section 4 of the Act.

Subsection (b) of section 1295 of title 28 allows any agency head, with the approval of the Attorney General, to refer to the Court of Appeals for the Federal Circuit for judicial review any final decision rendered by a board of contract appeals pursuant to any contract awarded by that agency which the agency head has concluded is not subject to the review standards specified in section 10(b) of the Contract Disputes Act of 1978. Subsection (c) of section 1295 of title 28 requires the Court of Appeals for the Federal Circuit to review such matters.

Section 127(a) of the bill also creates section 1296 of title 28, allowing civil actions in the Court of Appeals for the Federal Circuit to be given precedence based on court rule.

Section 127(b) of the bill makes conforming amendments to the section analysis of chapter 83 of title 28, United States Code.

*Sections 128–132.*—Section 128 of the bill amends section 1336(b) of title 28, United States Code, to change the reference to the Court of Claims to a reference to the United States Claims Court. Section 129 amends section 1346(a) of title 28, United States Code, making the same change. Section 130 amends section 1398(b) of title 28, United States Code, making the same change. Section 132 amends section 1406 (c) of title 28, United States Code, making the same change. Section 131 of the bill clarifies section 1402(a) of title 28, United States Code, to include only civil actions in federal district court.

*Section 133.*—Section 133 of the Act amends chapter 91 of title 28, United States Code. Under existing law, this chapter sets forth the jurisdiction of the Court of Claims. With the exception of Federal Tort Claims Act cases noted below, claims court jurisdiction is the same as Court of Claims trial jurisdiction.

One provision of existing law has not been included in amended chapter 91. Under current section 1504 of title 28, United States Code, the Court of Claims has jurisdiction to review Federal Tort Claims Act cases with the consent of both parties. According to the Administrative Office of the United States Courts, the only such appeal ever filed was summarily dismissed because the appellee had not consented to have the appeal heard in the Court of Claims. Section 1504 was therefore omitted.

In addition, section 133 gives the new Claims Court the power to grant declaratory judgments and give equitable relief in controversies within its jurisdiction. This provision will for the first time give the court specializing in certain claims against the Federal Government the ability to grant litigants complete relief. The committee concluded that this provision will avoid the costly duplication in litigation presently required when a citizen seeks both damages and equitable relief against the Government.

Moreover, section 133 gives the new Claims Court the power to grant declaratory judgments and give equitable relief in contract actions prior to award. Since the funds which the Government utilizes to purchase goods and services are derived solely from public sources, the public possesses a strong interest in the ability of the Government

to fulfill its requirements in these areas at the lowest possible cost. Accordingly, in the vast majority of circumstances, the Government must be permitted to exercise its right to conduct business with those suppliers it selects and to do so in an expeditious manner.

The courts ordinarily refrain from interference with the procurement process by declining to enjoin the Government from awarding a contract to a contractor which the Government has selected.

By conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process, the Committee does not intend to alter the current state of the substantive law in this area. Specifically, the Scanwell doctrine as enunciated by the D.C. Circuit Court of Appeals in 1970 is left in tact. *See Scanwell Laboratories, Inc.* v. *Shaffer*, 424 F.2d 859 (D.C. Cir. 1970). Moreover, the Committee expects that the court will utilize the authority conferred upon it by this section only in circumstances where the contract, if awarded, would be the result of arbitrary or capricious action by the contracting officials, to deny qualified firms the opportunity to compete fairly for the procurement award. The Committee intends the court to take care not to delay or prevent the award of contracts for goods or services which relate to the national defense or security.

Since the court is granted jurisdiction in this area, boards of contract appeals would not possess comparable authority pursuant to the last sentence of section 8(d) of the Contract Disputes Act.

*Section 134.*—Under existing law, chapter 93 of title 28, United States Code, establishes the jurisdiction of the Court of Customs and Patent Appeals. Because these functions are being transferred to the United States Court of Appeals for the Federal Circuit, section 134 of the Act repeals chapter 93 of title 28 and amends the analysis at the beginning of Part IV of title 28 so that it is conformed accordingly.

*Section 135.*—Section 135 of the Bill repeals section 1926 of title 28, United States Code, which deals with fees and costs in the Court of Customs and Patent Appeals, and amends the analysis at the beginning of chapter 123 of title 28 so that it is conformed accordingly.

*Section 136.*—Section 136 of the Bill repeals section 2110 of title 28, United States Code, which deals with the time for appeal to the Court of Claims in tort claims cases, because of the omission from amended chapter 91 of current section 1504 of title 28. The analysis at the beginning of chapter 133 of title 28 is amended to reflect this repeal.

*Section 137.*—Section 137 of this bill makes conforming amendments to section 2342 of title 28, United States Code.

*Section 138.*—Section 138 repeals 28 U.S.C. 2353 since jurisdiction over such appeals is vested exclusively in the Court of Appeals for the Federal Circuit.

*Section 139.*—Under existing law, chapter 165 of title 28 establishes procedures for the Court of Claims. Section 139 amends this chapter to make the provisions applicable to the United States Claims Court. Technical changes are made to convert the name of the court from the Court of Claims to the Claims Court and to eliminate references to the trial commissioners of the Court of Claims. In addition, filing fees have been raised from $10 to $60.

*Section 140.*—Section 140 of the bill repeals chapter 167 of title 28, United States Code, which under existing law establishes procedures

for the Court of Customs and Patent Appeals. The repeal of this chapter will require certain changes in the procedure of taking an appeal from decisions of the Court of International Trade. Under current practice, pursuant to section 2601 of chapter 167 of title 28, an appeal is made by filing a notice of appeal in the Court of Customs and Patent Appeals. On the other hand, appeals from a decision of the district courts is made by filing a notice of appeal in the district court. Upon the repeal of chapter 167 of title 28, appeal from a decision of the Court of International Trade will be made by filing a notice of appeal in the Court of International Trade. The clerk of the Court of International Trade will then be required to transmit to the United States Court of Appeals for the Federal Circuit the record of the case and evidence taken, together with either the findings of fact and the conclusions of law or the opinion.

*Section 141.*—Section 141 makes conforming amendments to section 2645(c) of title 28, United States Code.

*Section 142.*—Section 142 conforms the Federal Rules of Evidence to refer to the Claims Court.

*Conforming amendments outside title 28*

*Section 143.*—Section 143 amends section 356(c) of title 2, United States Code, which concerns salaries for judges under the Federal Salary Act of 1967, by including the judges of the United States Claims Courts within the provisions of that subsection.

*Sections 144 through 157 and 159 through 164—Technical Amendments.*—Sections 144 through 157 and 159 through 164 of the Act amend sections of the United States Code outside title 28 by changing references to the Court of Claims, the Court of Customs and Patent Appeals, or the courts of appeals of the United States to references to the United States Claims Court or the United States Court of Appeals for the Federal Circuit, whichever is appropriate in a specific context. The sections also delete references to the Court of Claims, the Court of Customs and Patent Appeals, or the trial commissioners or chief judge of the Court of Claims, wherever that is appropriate. Among other things, these amendments make clear that cases coming previously to the former Indian Claims Commission will be heard by the Claims Court, in accord with recent congressional action.

Section 7456(c) of the Internal Revenue Code of 1954 (26 U.S.C. section 7456(c)) under existing law provides that commissioners of the tax court receive the same compensation and travel and subsistence allowances as that provided by law for commissioners of the court of claims. Because the Bill abolishes the position of commissioner of the Court of Claims, section 154(a) amends this section to provide that each Tax Court commissioner receives pay at an annual rate determined under section 225 of the Federal Salary Act of 1967 (2 U.S.C. sections 351–361), as adjusted, and be reimbursed for all necessary traveling expenses in accordance with chapter 57 of title 5, United States Code. Section 154(b) requires the salary of a commissioner of the Court of Claims to be equal to the salary of the Tax Court commissioner until a change in such salary rate occurs.

*Section 158—Amendment conforming section 713 of title 44.*—Section 713 of title 44, United States Code, concerns the printing and dis-

tribution of Journals of the Senate and House of Representatives. Under present law, 822 copies of the Journals are printed, and two copies of the Journals are distributed to the Court of Claims. Section 158 of the Bill reduces the number of Journals printed to 820 and deletes the reference to the court of claims.

*Miscellaneous provisions*

*Sestion 165.*—Section 165 provides for the continued service of current active and senior judges of the United States Court of Claims and of the United States Court of Customs and Patent Appeals as judges of the United States Court of Appeals for the Federal Circuit on the effective date of this Act.

*Section 166.*—Section 166 provides for the designation of the first and succeeding chief judges of the Court of Appeals for the Federal Circuit.

*Section 167.*—Section 167 provides that the present commissioners of the U.S. Court of Claims become judges of the new U.S. Claims Court. A technical amendment was offered in Committee by the Chairman of the Subcommittee on Courts which provides that the 15-year term of the judges of the new U.S. Claims Court be calculated from the date of their initial employment with the existing U.S. Court of Claims. This means, for example, that a commissioner of the current Court of Claims whose employment began in 1975, will be considered to have been appointed as a judge in the new Claims Court as of that year. Thus, the judge would have approximately eight years to serve to complete the initial 15-year term on the new court.

*Section 168.*—Section 168 makes clear that nothing in this Act affects the authority of the Tennessee Valley Authority to represent itself by attorneys of its choosing.

TITLE II—GOVERNANCE AND ADMINISTRATION OF THE FEDERAL COURTS

*Chief judge tenure*

*Sections 201–203.*—Under current law, the person who serves as chief judge of a Federal court of appeals or a district court is the judge who is most senior in commission. The chief judge may hold office until age 70. As a result, a judge who becomes chief judge of a Federal court at age 50 may serve as chief judge for twenty years, while a judge who becomes chief judge at age 69 will serve for only one year.

A statute that bases the chief judgeship position solely on seniority, without a minimum or maximum term, produces two potential difficulties: it may require the retention for decades of a chief judge who may or may not have the interest or ability to be an enthusiastic administrator; at the same time, it requires rapid rotation among chief judges when the consecutive incumbents take office at an advanced age, thereby creating instability in the chief administrative office of the court. In recent history, this provision has resulted in the anomalous situation that one Federal court had a chief judge who served for seventeen years, while another Federal court had three chief judges within two years.

Sections 201–203 resolve this problem by amending 28 U.S.C. 45 and 136 to set a maximum term of office for chief judges of seven years and

to permit no one to become a chief judge of a district or circuit court after reaching age 65. However, once becoming a chief judge prior to age 65, a chief judge could serve for seven years, or until reaching the age of 70. These provisions insure a constant seven year term for the chief judge unless death, resignation or retirement shortens the term. These amendments also provide for the continuation of a judge's service as chief judge after the expiration of his seven year term until another judge is qualified to serve in that capacity.

The sections also provide for the situation in which no judge meets the statutory requirements for the chief judgeship. In such a case, the most senior active judge would preside until some other judge became eligible.

As a transitional measure, the section also contains a provision that continues the present system for one year after the effective date of the bill. Moreover, the bill would not apply to anyone who was a chief judge on the date it becomes effective.

*Precedence and composition of panel*

*Section 204.*—Under current law the presiding judge of a three-judge panel of a court of appeals is the judge who is senior in commission, unless the chief judge or a circuit justice is a member of the panel. This policy permits senior judges and judges from other circuits to be the presiding judge of a panel and to assign opinions. In order to insure greater stability in the law of the circuit, section 204 amends 28 U.S.C. 45(b) to require that the presiding judge be a judge of that circuit in regular active service.

*Section 205.*—Section 205 amends section 46 of title 28, United States Code, to achieve three basic objectives: (1) the elimination of confusion which has arisen in recent years in relation to the use of the terms "panel" and "division," especially following authorization of "administrative divisions" in section 6 of P.L. No. 95-486 in 1978; (2) clarification of the appropriate role for senior circuit judges in rehearings en banc, a matter which was apparently inadvertently thrown into confusion by provisions in section 5 of P.L. No. 95-486; and (3) an express statutory requirement that, in all but the most unusual circumstances, each three-judge panel of a court of appeals contain two judges who are members of that court.

Subsection (a) of section 205 amends subsection (b) of section 46 of title 28 to substitute the word "panels" for the word "divisions" and to require that two of the three judges serving on each panel "shall be judges of that court" unless the chief judge certifies that "an emergency" requires an exception to that requirement. Under existing provisions in section 46 of title 28 a three-judge appellate court panel may be composed of any combination of active, senior, designated, or district court federal judges. With a substantial number of judges sitting by designation from outside the circuit, and with district judges sitting regularly on the courts of appeals, there is frequently only one circuit judge of the court in active service on a panel. Such a situation may contribute to instability in circuit law, because district court and court of appeals judges from outside the circuit may not know, or may not feel bound by, the law of that circuit. As amended section 46 would provide greater stability and predictability in the law being applied in any given area of the country. However, the bill expressly

provides for an exception from the majority requirement when it is impossible to constitute a panel of a court of appeals composed of a majority of judges of that court. For example, if all the judges of a court of appeals were disqualified under 28 U.S.C. § 455 (1976), it is essential that the Chief Justice retain the authority to designate and assign judges from other circuits to hear the case in accordance with provisions in chapter 13 of title 28.

Existing provisions in section 46 also permit appellate courts to sit in panels of less than three judges. As a result, some federal appellate courts have used panels of two judges for motions and for dispositions in cases in which no oral argument is permitted because the case is classified as insubstantial. Because of apprehensions that decisions at the appellate level by fewer than three judges carry the risk of being less sound or less balanced, there is a widespread belief that every decision of an appeal should be the collective product of at least three minds. Subsection (b) of section 204 also amends 28 U.S.C. § 46(b) to require that all decisions be reached by at least three judges.

Subsection (b) of section 205 amends subsection (c) of section 46 of title 28 to clarify confusion arising from amendments made to subsection (c) by Section 5 of P.L. No. 95-486.[16] Under Section 6 of P.L. No. 95-486 courts of appeals having more than fifteen active judges were authorized to experiment with "administrative units" or "administrative divisions" and to perform en banc functions as they might choose "to prescribe by rule." A direct consequence of concerns that too large a court of appeals would prove administratively cumbersome, that authorization was accompanied by an amendment to subsection (c) of section 46 striking the following sentence: "A circuit judge of the circuit who has retired from regular active service shall also be competent to sit as a judge of the court en banc in the rehearing of a case or controversy if he sat . . . (on the panel . . . at the original hearing thereof".[17] The Conference Report accompanying the final bill [18] does not explain why that sentence was stricken, but the Senate report accompanying the original Senate bill leaves no doubt that the purpose to be served was only that of reducing the size of en banc panels. Since becoming effective that change has had one direct consequence apparently unanticipated in 1978; circuit court judges eligible to elect retirement in "senior status" have refused to make the election rather than abdicate their opportunity to sit in en banc review of panel decisions in which they have participated. Their assertion that the en banc panel should not be denied their participation in reviewing a case with which they are fully familiar has merit. In light of standing authorization for large courts of appeals to fashion "limited en bancs" by rule, the value of a statutory prohibition of en banc participation by senior judges who have been members of an original hearing panel would appear questionable, if not thoroughly nonexistent. Their potential contribution far outweighs the slight possibility that their presence will prove to be an administrative burden. As amended by subsection (b) of section 205, section 46 will again permit a senior judge sitting on an original hearing panel to participate in en banc review of that panel's decision.

[16] 92 Stat. 1633.
[17] *See* section 5 of P.L. No. 95-486.
[18] H. Rep. No. 95-1643 and S. Rep. No. 95-1257.

Subsection (c) of section 205 amends subsection (d) of section 46 to conform language in that subsection to changes made in other provisions in section 46.

Section 205 will achieve the same purposes which would be achieved by section 207, and will also reinstate a senior judge's eligibility to sit at his election in enbanc review of decisions in which he participated as a member of the original three-judge panel.

*Judicial councils of the circuits*

*Section 206.*—Section 206 amends section 3006A(h)(2)(A) of title 18 of the United States Code by providing for the appointment of Federal Public Defenders by the Court of Appeals rather than the judicial council. This is a technical amendment necessitated by the addition of district court judges to the judicial council, thus foreclosing the use of the legal fiction that councils are just the administrative extension of the court of appeals. Clause 2 in section 2 of United States Constitution Article II provides that Congress can vest the power to appoint inferior officers only in the President alone, the heads of (Executive) Departments, and the Courts of Law. Since Federal Public Defenders possess significant authority and exercise that authority generally without review by other officers of the Federal Government, it is essential that each defender be an "inferior officer" as distinguished from an "employee." See 5 U.S.C. sections 2104, 2105 (1976).

*Section 207.*—The Federal Judiciary includes a large number of capable and talented people whose skills, from time to time, may be needed in the executive branch. During recent years, several Federal judges have left the bench to serve in significant positions in the executive branch. Article III judges who resign or retire before the time limitations described in current 28 U.S.C. 371 give up a lifetime salary mandated by the Constitution, even though they had not been able to accrue funded pension benefits for these years of Federal service under the civil service program. As a result, for these former Federal judges, the acceptance of an executive branch position leaves them with potentially serious financial consequences.

Section 207 amends 5 U.S.C. 8332 to restate existing law that permits years of service on the Federal bench to be counted in computing civil service retirement benefits and amends 5 U.S.C. 8334 to allow the Administrative Office of the United States Courts to pay a deposit into the civil service retirement fund for Federal judges who resign to accept executive branch positions. These deposits will insure that these employees receive civil service pensions that take account of the years that such persons had served as Federal judges. The resulting pensions will still be considerably less than the salaries the judges would have received by remaining on the bench; nonetheless, this provision should help alleviate financial distress and would recognize the value of their years of judicial service. Although the annuity the Government will pay to the resigned judge after his executive branch service will constitute taxable income to him, the amendments this section makes ensure that the lump-sum deposit the Administrative Office makes to the Civil Service Retirement and Disability Fund will not constitute income in the year the deposit is paid. Such a consequence would distort the official's income and potentially subject him to unnecessary adverse income tax consequences.

*Temporary assignment of justices and judges*

*Section 208.*—Section 208 authorizes an active or retired justice or judge of the United States to be assigned temporarily to the position of Administrative Assistant to the Chief Justice, Director of the Administrative Office of the United States Courts, or Director of the Federal Judicial Center, such service to be without any additional compensation.

Upon the appointment of an active judge to one of these positions, the President, by and with the advice and consent of the Senate, shall appoint a successor to fill the vacancy created by the temporary assignment. After the appointment of a successor, any further vacancy created by the death, resignation, or retirement of the judge who is temporarily assigned shall not be filled. If the judge temporarily assigned resumes active service, the first vacancy created on such court after his return to active service shall not be filled if a successor had been appointed and confirmed to fill the vacancy created by the temporary assignment.

The official station of any judge assigned a temporary position is the District of Columbia for the duration of his temporary assignment. A judge who was in active service at the time of his temporary assignment may resume his active service upon vacating his temporary assignment. For purposes of seniority and precedence, a judge who resumes active service on the original court shall be considered to have been in continuous active service as a judge of that court.

*Rules of practice*

*Section 209.*—Section 209(a) adds a new section 2077 to title 28 providing that rules for the conduct of business of each court of appeals, including the operating procedures of such court, shall be published.

Subsection (b) also requires that advisory committees be appointed to make recommendations to each court of appeals concerning its rules and internal operating procedures. It also requires the publication of these rules. The composition of these advisory committees is left for each court of appeals to determine. The use of these committees to assist the courts in developing their rules provides a means for the court to take into account the concerns of the bar and the public. Such committees will also provide a useful means of increasing the understanding of the bar and the public concerning the functioning of the courts. Although persons who serve on the advisory committees will receive no compensation for their services, except an individual who is otherwise an employee of the Government of the United States, the Director of the Administrative Office, in accordance with his travel regulations, may pay such persons travel expenses. In accordance with 5 U.S.C. section 5703 (1976), these expenses will include transportation expenses and a per diem in lieu of subsistence, or actual subsistence expenses under 5 U.S.C. section 5702(c) whenever the person is away from his home or regular place of business. Such committees will not require charters inasmuch as the Federal Advisory Committee Act, Pub. L. No. 92-463, 86 Stat. 770 (1972), applies only to the executive branch.

TITLE III—JURISDICTION AND PROCEDURE

*Transfer of cases*

*Section 301.*—Because of the complexity of the Federal court system and of special jurisdictional provisions, a civil case may on occasion be mistakenly filed in a court—either trial or appellate—that does not have jurisdiction. By the time the error is discovered, the statute of limitations or a filing period may have expired. Moreover, additional expense is occasioned by having to file the case anew in the proper court.

Section 301 adds a new chapter to title 28 that would authorize the court in which a case is improperly filed to transfer it to a court where subject matter jurisdiction is proper. The case would be treated by the transferee court as though it had been initially filed there on the date on which it was filed in the transferor court. The plaintiff will not have to pay any additional filing fees. This provision is broadly drafted to allow transfer between any two Federal courts. Although most problems of misfiling have occurred in the district and circuit courts, others have occurred in the Court of International Trade and the Temporary Emergency Court of Appeals. Some others may occur in the Court of Appeals for the Federal Circuit. The broadly drafted provisions of section 301 will help avoid all of these situations.

*Interest*

*Section 302.*—Under current law, the interest rate granted on judgments during appeal is based on varying State laws and frequently falls below the contemporary cost of money. As a consequence, a losing defendant may have an economic incentive to appeal a judgment solely in order to retain his money and accumulate interest on it at the commercial rate during the pendency of the appeal.

Section 302 amends 28 U.S.C. 1961 by setting a realistic and nationally rate of interest on judgments in the Federal courts. The provision would tie the postjudgment interest rate to the rate used by the Internal Revenue Service for delinquent taxes under 26 U.S.C. 6621. That rate is a composite of prime rates from throughout the country that is reviewed and revised periodically. Furthermore, by consolidating all the provisions for interest on judgments of Title 28 into this section, this rate becomes uniformly applicable to all litigation in the Federal courts.

There are presently no generally applicable guidelines concerning the award of prejudgment interest by Federal courts. Yet such interest may be essential in order to compensate the plaintiff or to avoid unjust enrichment of the defendant. For instance, a plaintiff who was unlawfully deprived of the use of $20,000 in 1976, and who did not receive a judgment until 1979, could have obtained $4,500 in the three-year intervening period by investing the money at 7 percent compounded interest.

TITLE IV—MISCELLANEOUS PROVISIONS

*Section 401—Court Reporting.*—Under existing law, one of the official court reporters appointed pursuant to 28 U.S.C. 753(a) must attend each session of the court or any other proceeding designated