wide regulatory review and coordination, in OMB, is better situated to advise agencies on the need for such committees than the GSA. Second, a comparison of the typical advisory committee charter received in the Committee on Energy and Natural Resources with the typical Federal Register notice for a negotiated rulemaking committee over the past year shows that the latter is generally more detailed and informative than the former. Finally, is it really necessary to have two separate legal requirements for notice in the Federal Register of the same event?

In addition to these overlapping requirements and processes, it is a fair question whether other specific requirements of FACA, for example, the automatic 2-year sunset of advisory committees, make sense in the context of negotiated rulemaking. It is envisioned by the Negotiated Rulemaking Act that negotiated rulemaking committees will routinely remain in existence until the publication of a final rule, which may take several years. In this specific context, the one-size-fits-all requirement of FACA for rechartering every 2 years, while sensible for advisory committees that have nonspecific oversight-type responsibilities, would seem somewhat arbitrary.

I am not alone in questioning this apparent duplication. I will ask unanimous consent to have printed at the end of this statement a statement on the reauthorization of the Negotiated Rulemaking Act from the American Bar Association [ABA] and the formal ABA position statement on which it is based. The formal position of the ABA, jointly proposed by the ABA Standing Committee on Environmental Law, the Section of Administrative Law and Regulatory Practice, and the Section of Natural Resources, Energy, and Environmental Law, and passed by the ABA House of Delegates, states that—

> a federal agency should not be required to secure the permission of the Office of Management and Budget or the General Services Administration before it impanels a committee under the Negotiated Rulemaking Act or the Administrative Dispute Resolution Act, and that such agencies must continue to comply with the substantive requirements of the Federal Advisory Committee Act, including openness and balance on committees.

These questions of duplication are important in the real world of how Federal agencies operate because there is already a considerable transaction cost to the formation and running of advisory committees under FACA. The formal chartering process under FACA, in practice, involves numerous levels of review within agencies and is often a time-consuming bureaucratic step. It is perhaps justifiable to impose such transaction costs to prevent the formation of generic advisory committees for which there is not a clear and compelling need. Perhaps, notwithstanding the current interest in having more, rather than less, stakeholder input into Federal agency processes and decisions, it is thought appropriate to view advisory committees generally as a problem to be contained. But the whole point of the Negotiated Rulemaking Act is to promote the use of one specific type of advisory committee. The Negotiated Rulemaking Act creates no new authorities for agencies. If it were to expire on November 29, of this year, as it is currently scheduled to do under current law, agencies could still form such committees and use them in the promulgation of rules. Since, then, the whole point of the act is to underscore Congress' intent that negotiated rulemaking be more widely used, we should look carefully at the question of administrative transaction costs in Federal agencies, to see if we have unwittingly put in place duplicative steps that make forming such committees seem to be more trouble than they are worth.

There is evidence that this is now the case. In the National Marine Fisheries Service of the Department of Commerce, a proposal to form a negotiated rulemaking committee to resolve issues between commercial and sport fishing interests regarding tuna fishing in the mid-Atlantic, published in the Federal Register on February 1, has languished precisely because the Department of Commerce, like other agencies such as the Department of Energy, has a process for reviewing proposals to form advisory committees under FACA that involves sending the proposal to numerous offices dispersed through the agency structure for checkoffs on issues such as—in the case of Commerce—national security concerns. Transiting this sort of administrative gauntlet is a daunting task, even for hardened bureaucrats. Meanwhile, the underlying dispute that prompted the proposal to form this committee has escalated, perhaps to the point where getting to a consensus result has been imperiled by the delay resulting from administrative inefficiency. If the administrative duplication occasioned by the overlaps in these two laws did not exist, the negotiated rulemaking committee could have started to meet in March of this year.

How representative is this case? It is hard to say. The permanent reauthorization of Negotiated Rulemaking Act was not covered in the hearings on this bill, so this problem was not explored on the record. Given this, I appreciate the willingness of the sponsors of this bill to address my concerns that a far greater problem may exist. Subsection (e) of the amendment provides for study, in the Office of Management and Budget, of this question, so that a complete picture of the problem can be obtained, and so that recommendations can be formulated. I would hope that the OMB review, in the spirit of reinventing Government, will take a careful look at such barriers and proposed best practices to agencies to facilitate the expeditious formation of advisory committees generally.

I thank the sponsors of the bill, again, for their assistance and willingness to address this issue. I hope that if, in the course of the OMB study, the administration identifies solutions to some of these issues that require legislative action by Congress, that the sponsors will be willing to act on such suggestions.

I ask unanimous consent that the material I earlier referred to be printed in the RECORD.

There being no objection, the material was ordered to be printed in the RECORD, as follows:

AMERICAN BAR ASSOCIATION,
*Washington, DC, April 16, 1996.*

Hon. CARL LEVIN,
*Governmental Affairs Committee, U.S. Senate, Washington, DC.*

DEAR SENATOR LEVIN: I write on behalf of the American Bar Association to urge that the Administrative Dispute Resolution Act and the Negotiated Rulemaking Act be reauthorized on a permanent basis. We are concerned that the decision regarding reassignment of negotiated rulemaking responsibilities formerly carried out by the Administrative Conference of the United States will prevent the reauthorization of these two important laws.

These two laws form the framework for consensus building in government decisionmaking. The Administrative Dispute Resolution Act authorizes agencies to use a full array of alternative dispute resolution processes, if the parties agree to do so. The Negotiated Rulemaking Act provides a framework for negotiating rules among representatives of the affected interests. We have reviewed the draft amendment on encouraging negotiated rulemaking and offer the following comments.

(1) The ABA endorses the prompt, permanent reauthorization of these two laws.

(2) The Association would be pleased to work with you to determine an appropriate alternative placement of the consultative function under the Negotiated Rulemaking Act.

(3) The ABA recommends an amendment to the draft to direct that federal agencies not be required to secure the permission of the Office of Management and Budget or the General Service Administration before impanelling a committee under the Negotiated Rulemaking Act or the Administrative Dispute Resolution Act. The Association believes the requirement that agencies secure permission to establish committees has inhibited the wider use of these important, consensus based process. However, Congress should continue to require that such agencies must comply with the substantive requirements of the Federal Advisory Committee Act, including openness and balance on committees.

The Negotiated Rulemaking Act and the Administrative Dispute Resolution Act encourage federal agencies to explore the use of mediation and consensus building to reduce costs and increase responsiveness to public concerns. We look forward to working with you to ensure that these laws are reauthorized.

Sincerely,

ROBERT D. EVANS.

AMERICAN BAR ASSOCIATION, STANDING COMMITTEE ON ENVIRONMENTAL LAW; SECTION OF ADMINISTRATIVE LAW & REGULATORY PRACTICE; SECTION OF NATURAL RESOURCES, ENERGY & ENVIRONMENTAL LAW

RECOMMENDATION

*Be it Resolved,* That the public participation provisions of local, state and federal environmental laws and international environmental agreements and treaties should recognize and express the principle that the

public and all affected interests should be provided meaningful and effective involvement and should be expected to participate in consensus building efforts to ensure that government decision-making regarding the administration, regulation, and enforcement of environmental laws is open, fair, efficient and credible; Be it further

*Resolved*, That the public participation provisions of local, state and federal environmental laws should include express authority allowing government agencies to choose innovative public participation, stakeholder-involvement and shared decision-making models, including site-specific, negotiated consensus-building processes and negotiated rulemaking, which involve all affected stakeholders, such as citizens, potentially responsible parties, and affected federal, tribal, state, territorial and local governments; be it further

*Resolved*, That federal agencies should use more fully the Administrative Dispute Resolution Act and the Negotiated Rulemaking Act for making environmental decisions, and state agencies should follow similar procedures permitted under generally applicable provisions of administrative law; be it further

*Resolved*, That Congress should reauthorize the Administrative Dispute Resolution Act and the Negotiated Rulemaking Act on a permanent basis, and, in doing so, Congress should revise provisions that inhibit their wider use to resolve environmental matters by clarifying:

(1) that the Administrative Dispute Resolution Act authorizes the use of the full range of dispute resolution processes for making administrative decisions, including general consensus building and the resolution of issues between private parties that otherwise would be decided by the environmental agency;

(2) that the decision of an arbitrator, where applicable, should be final when issued, without the authority of an agency to unilaterally override such decision;

(3) that communications between a party and the neutral should be protected from disclosure except for the circumstances defined in the Administrative Dispute Resolution Act; to that extent the Administrative Dispute Resolution Act should be regarded as a Section (b)(3) exemption under the Freedom of Information Act; and

(4) that a federal agency should not be required to secure the permission of the Office of Management and Budget or the General Services Administration before it impanels a committee under the Negotiated Rulemaking Act or the Administrative Dispute Resolution Act, and that such agencies must continue to comply with the substantive requirements of the Federal Advisory Committee Act, including openness and balance on committees; be it further

*Resolved*, That the procedures described in the Negotiated Rulemaking Act should be used for making policy decisions under environmental statutes; be it finally

*Resolved*, That the framework established under the Negotiated Rulemaking Act and the Administrative Dispute Resolution Act provide the means by which the U.S. Environmental Protection Agency ("EPA"), community and business interests, state, tribal and local governments, and environmental and other non-governmental organizations can reach agreement on the appropriate issues. For example, in addition to existing alternative dispute resolution provisions in the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), potentially responsible parties are encouraged to use the Administrative Dispute Resolution Act to make allocation decisions, while environmental agencies are encouraged to use the Negotiated Rulemaking Act for making policy decisions. In doing so, EPA should appoint a single, relatively senior official to represent the agency and various components of its staff in such negotiations, and policy negotiations and allocation decisions should be coordinated to the extent appropriate.

AMENDMENT NO. 4045

(Purpose: To reauthorize the Negotiated Rulemaking Act of 1990, and for other purposes)

Mr. LOTT. Mr. President, I understand that there is an amendment at the desk in behalf of Senators LEVIN and GRASSLEY. I ask for its consideration.

The PRESIDING OFFICER. The clerk will report.

The bill clerk read as follows:

The Senator from Mississippi [Mr. LOTT], for Mr. LEVIN, for himself and Mr. GRASSLEY, proposes an amendment numbered 4045.

At the end of the bill, add the following new section:

**SEC. 11. REAUTHORIZATION OF NEGOTIATED RULEMAKING ACT OF 1990.**

(a) PERMANENT REAUTHORIZATION.—Section 5 of the Negotiated Rulemaking Act of 1990 (Public Law 101–648; 5 U.S.C. 561 note) is repealed.

(b) CLOSURE OF ADMINISTRATIVE CONFERENCE.—

(1) IN GENERAL.—Section 569 of title 5, United States Code, is amended—

(A) by amending the section heading to read as follows:

**"§ 569. Encouraging negotiated rulemaking";**

and

(B) by striking out subsections (a) through (g) and inserting in lieu thereof the following:

"(a) The President shall designate an agency or designate or establish an interagency committee to facilitate and encourage agency use of negotiated rulemaking. An agency that is considering, planning or conducting a negotiated rulemaking may consult with such agency or committee for information and assistance.

(b) To carry out the purposes of this subchapter, an agency planning or conducting a negotiated rulemaking may accept, hold, administer, and utilize gifts, devises, and bequests of property, both real and personal, provided that agency acceptance and use of such gifts, devises or bequests do not create a conflict of interest. Gifts and bequests of money and proceeds from sales of other property received as gifts, devises, or bequests shall be deposited in the Treasury and shall be disbursed upon the order of the head of such agency. Property accepted pursuant to this section, and the proceeds, thereof, shall be used as nearly as possible in accordance with the terms of the gifts, devises, or bequests. For purposes of Federal income, estate, or gift taxes, property accepted under this section shall be considered as a gift, devise, or bequest to the United States.".

(2) TECHNICAL AND CONFORMING AMENDMENT.—The table of sections for chapter 5 of title 5, United States Code, is amended by striking out the item relating to section 569 and inserting in lieu thereof the following:

"569. Encouraging negotiated rulemaking."

(c) EXPEDITED HIRING OF CONVENORS AND FACILITATORS.—

(1) DEFENSE AGENCY CONTRACTS.—Section 2304(c)(3)(C) of title 10, United States Code, is amended by inserting "or negotiated rulemaking" after "alternative dispute resolution".

(2) FEDERAL CONTRACTS.—Section 303(c)(3)(C) of the Federal Property and Administrative Services Act of 1949 (41 U.S.C. 253(c)(3)(C)), is amended by inserting "or negotiated rulemaking" after "alternative dispute resolution".

(d) AUTHORIZATION OF APPROPRIATIONS.—

(1) IN GENERAL.—Subchapter III of title 5, United States Code, is amended by adding at the end thereof the following new section:

**"§ 570a. Authorization of appropriations**

"There are authorized to be appropriated such sums as may be necessary to carry out the purposes of this subchapter.".

(2) TECHNICAL AND CONFORMING AMENDMENT.—The table of sections for chapter 5 of title 5, United States Code, is amended by inserting after the item relating to section 570 the following:

"Sec. 570a Authorization of appropriations."

(e) STUDY.—No later than 180 days after the enactment of this Act, the Director of the Office of Management and Budget shall complete a study with recommendations on expediting the establishment of negotiated rulemaking committees, including eliminating any redundant administrative requirements related to filing a committee charter under section 9 of the Federal Advisory Committee Act and providing public notice of such committee under section 564 of title 5, United States Code.

The PRESIDING OFFICER. Without objection, the amendment is agreed to.

The amendment (No. 4045) was agreed to.

AMENDMENT NO. 4046

(Purpose: To provide the United States Court of Federal Claims with exclusive jurisdiction over contract bid protests)

Mr. LOTT. I understand Senator COHEN has an amendment at the desk, and I ask for its immediate consideration.

The PRESIDING OFFICER. The clerk will report.

The bill clerk read as follows:

The Senator from Mississippi [Mr. LOTT], for Mr. COHEN, proposes an amendment numbered 4046.

At the end of the Committee amendment add the following:

**SEC. 11. JURISDICTION OF THE UNITED STATES COURT OF FEDERAL CLAIMS: BID PROTESTS.**

(a) BID PROTESTS.—

(1) TERMINATION OF JURISDICTION OF DISTRICT COURTS.—Section 1491 of title 28, United States Code, is amended—

(A) by redesignating subsection (b) as subsection (d);

(B) in subsection (a)—

(i) by striking out "(a)(1)" and inserting in lieu thereof "(a) CLAIMS AGAINST THE UNITED STATES.—";

(ii) in paragraph (2), by striking out "(2) To" and inserting in lieu thereof "(b) REMEDY AND RELIEF.—To"; and

(iii) by striking out paragraph (3); and

(C) by inserting after subsection (b), as designated by paragraph (1)(B)(ii), the following new subsection (c):

"(c) BID PROTESTS.—(1) The United States Court of Federal Claims has jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract. The court has jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

"(2) To afford relief in such an action, the court may award any relief that the court considers proper, including declaratory and injunctive relief.

Mr. LEVIN. Mr. President, we all want a government that works better and costs less. In the rush of closing business in this Congress, I am pleased that the Senate has made time for legislation authored by myself and Senator CHUCK GRASSLEY to encourage faster, less costly ways to resolve disputes with the Federal Government. This bill, which has gone through several versions, is now before us as H.R. 4194, and has been approved by both sides of the aisle in the Senate and the House. I am hopeful that, by the end of the day, this legislation will be on its way to the President.

It's a fact of life that many people have disputes with the Federal Government. In the late 1980's, of the 220,000 civil cases filed in Federal court, more than 55,000 involved the Federal Government in one way or another. Resolving these disputes costs taxpayers billions of dollars.

Resolving them before they become courtroom dramas is one way to make a dent in this billion-dollar drain on taxpayer funds. Mediation, arbitration, mini trials and other methods offer cheaper, faster alternatives to courtroom battles.

That's why, 6 years ago, Senator GRASSLEY and I cosponsored the Administrative Dispute Resolution Act of 1990. It is why we have teamed up again this year to reauthorize and fine-tune that Act and make it a permanent part of U.S. law. Perhaps the most important improvement we would make is to expand the alternative dispute resolution or ADR tools available to Federal agencies by making binding arbitration a more attractive option. The bill takes two steps to do so. First, it would eliminate a one-way escape clause that allowed Federal agencies, but not private parties, unilaterally to vacate a binding arbitration award that disadvantaged the government. In the 5 years this escape clause has been on the books, no one has ever agreed to an arbitration proceeding with the Government on this basis. Eliminating this unilateral escape clause is expected to encourage more private parties to agree to use binding arbitration as a cost-saving alternative to civil litigation. Second, the bill would put into place several safeguards to protect the United States from improper or unwise use of this ADR technique, including requiring agencies to think through, ahead of time and in writing, when binding arbitration should be used; requiring every agreement to use binding arbitration to be in writing and to specify the maximum dollar award that an arbitrator may award against the United States; and ensuring that agency officials cannot even offer to use binding arbitration unless the official already has authority to settle the matter.

Also, to ensure that binding arbitration remains a voluntary procedure, the bill maintains the provision in the ADR law, 5 U.S.C. 575(a)(3), which prohibits Federal agencies from requiring individuals to agree to use binding arbitration to settle disputes as a condition of entering into a contract or obtaining a benefit. Both the bill sponsors and the authorizing committees intend this provision to include prohibiting an agency from requiring a party to submit to binding arbitration as a condition of Federal employment or to relinquish rights under other laws such as the Civil Rights Act. It is not the intent of the bill to coerce anyone into using binding arbitration.

The bill makes a number of other refinements in the ADR law as well, including clarifying the confidentiality of ADR proceedings; clarifying agency authority to hire mediators and other ADR neutrals on an expedited basis; allowing agencies to accept donated services from State, local and tribal governments to support an ADR proceeding; adding an explicit authorization for appropriations; removing a ban on Federal employees electing to use ADR methods to resolve certain personnel disputes; and eliminating special paperwork burdens on contractors willing to use ADR to resolve small claims against the Government under the Contract Disputes Act. The bill would also reassign the task of encouraging and facilitating agency use of ADR methods from the Administrative Conference of the United States, which has been terminated due to a lack of appropriations, to an agency or interagency committee to be designated by the President.

In addition to reauthorizing the ADR law, the bill also includes the Levin-Grassley amendment to reauthorize the Negotiated Rulemaking Act of 1990. The Negotiated Rulemaking Act is another reform effort that seeks to inject common sense and cost savings into the way the Federal Government does business. In essence, it allows a Federal agency to form an advisory committee with its regulated community, public interest groups and other interested parties to draft regulations that everyone can support and live by.

As its name implies, the point of the law is to get parties to negotiate with each other and the Federal Government to devise sensible, cost effective rules. No one is required to participate in a negotiation, and no one gives up their rights by agreeing to negotiate. It is a voluntary, rather than a mandatory, process.

Agencies and others have discovered that, in many rulemaking situations, negotiation beats confrontation in terms of cost, time, aggravation, and the ability to develop regulations that parties with very different perspectives can accept. One industry participant in a negotiated rulemaking involving the Clean Air Act put it this way: "It's a better situation when people who are adversaries can sit down at the table and talk about it rather than throwing bricks at each other in courtrooms and the press." An environmental journal reached the same conclusion, summing up a negotiated rulemaking involving the Grand Canyon with the headline, "See You Later, Litigator." The Washington Post has called negotiated rulemaking "plainly a good idea," while the New York Times has called it "an immensely valuable procedure that ought to be used far more often."

Like ADR, the bill would make the Negotiated Rulemaking Act a permanent fixture in Federal law, while finetuning some provisions. The improvements include facilitating agency hiring of neutrals, called convenors and facilitators, on an expedited basis; providing an explicit authorization for appropriations; clarifying the authority of agencies to accept gifts to support negotiated rulemaking proceedings; and reassigning the responsibility for facilitating and encouraging agency use of negotiated rulemaking from the Administrative Conference of the United States, which has been terminated, to an agency or interagency committee to be designated by the President.

If enacted during this Congress, the bill would avoid a lapse in the negotiated rulemaking law which is otherwise scheduled to expire in November. That is why it is so important to pass this legislation before Congress closes its doors for the year.

Finally, the bill would address the unrelated issue of judicial jurisdiction over procurement protests. At present, the Court of Federal Claims reviews some procurement protests, while the Federal district courts have responsibility for others. This overlapping authority has led to forum shopping and has resulted in unnecessary and wasteful litigation over jurisdictional issues. For this reason, the January 1993 report of the Acquisition Law Advisory Panel (the so-called section 800 Panel) recommended that:

> There should be only one judicial system for consideration of bid protests and that forum should have jurisdiction to consider all protests which can now be considered by the district courts and by the Court of Federal Claims. * * * The Court of Federal Claims should be the single judicial forum with jurisdiction to consider all protests that can presently be considered by any district court or by the Court of Federal Claims.

The original Senate bill contained a provision that would have implemented this recommendation and consolidated Federal court jurisdiction for procurement protests in the Court of Federal Claims.

The revised bill we are taking up today contains a compromise provision that would consolidate the jurisdiction of the Court of Federal Claims and the district courts. For 4 years, the consolidated jurisdiction would be shared by the Court of Federal Claims and the district courts. Each court system would exercise jurisdiction over the full range of bid protest cases previously subject to review in either system. After 4 years, the jurisdiction of the district courts would terminate, and the Court of Federal Claims would exercise exclusive judicial jurisdiction

17

over procurement protests. These provisions addressing Federal court jurisdiction over procurement protests would not affect in any way the authority of the Comptroller General to review procurement protests pursuant to chapter 35 of title 31, U.S. Code, and they would not affect the jurisdiction or standards applied by either the district courts or the Court of Federal Claims in any area of the law other than the procurement protests to which they are addressed.

Mr. President, I would like to thank Senator GRASSLEY, and in particular his staffer, Kolan Davis, for the hard work and leadership he has shown to renew and strengthen the ADR and negotiated rulemaking laws. I would also like to thank Senator GLENN, Senator COHEN, and Senator STEVENS, from the Governmental Affairs Committee for their continuing support. And this bill would not have had a chance without the hard work, persistence, and creative effort of three House Members and their outstanding staffs, and I would like to thank Congressmen JACK REED, George Gekas, and HENRY HYDE for getting this legislation to the floor despite a crowded calendar. This bill shows that bipartisanship is alive and functioning in this Congress.

Alternative dispute resolution methods and negotiated rulemaking provide new and better ways to conduct government business. They cost less, they're quicker, they're less adversarial, they develop sensible solutions to problems, and they free up courts for other business. They are two success stories in creating a government that works better and costs less.

Mr. GRASSLEY. Mr. President, I ask unanimous consent that the amendment be agreed to, the bill be deemed read for the third time, passed, the motion to reconsider be laid upon the table, and that any statements relating to the bill be placed at the appropriate place in the RECORD.

The amendment (No. 5421) was agreed to.

The bill (H.R. 4194), as amended, read the third time, and passed.

## OMNIBUS CONSOLIDATED APPROPRIATIONS, 1997

The Senate continued with the consideration of the bill.

Mr. GRASSLEY. Mr. President, I want to speak on the bill that is before us and just on a very small portion of it, the immigration bill. Obviously, the immigration bill is not just a small portion of the bill that is before us. It is perhaps one of the most important aspects of the bill before us. But what I meant was, I do not want to speak to the appropriations part of the bill.

I want to voice my strong support for the illegal immigration bill. This has been included, as everyone knows, as part of the continuing resolution. Senator SIMPSON, chairman of the Immigration Subcommittee, has worked diligently to bring this bill forward.

I am very pleased to have worked with him in creating solutions to the immigration problems that our country is facing today and, also, to take time to compliment Senator SIMPSON for the hard work that he has given for the people of his State of Wyoming to the United States as a Member of the U.S. Senate. He is now retiring. Those of us who have served with him on the Judiciary Committee, and a considerable amount of time together with him on the Immigration Subcommittee, are surely going to miss his leadership in this area.

This bill that is before us even under these extraordinary circumstances of its being part of the omnibus bill, even under those circumstances, should not detract from the hard work that has gone on in this Congress on this legislation that Senator SIMPSON has put together. He has produced a very strong bipartisan bill that will help us make a huge impact on the problems of illegal immigration.

In the last 2 years, Senator SIMPSON has made a great effort to deal with illegal immigration. We have done it by providing over $1 billion in new funding. But we all know that comprehensive legislation, like the bill before us, is necessary before we are ever going to be successful, or whether or not even that additional billion dollars in the war on illegal immigrants is going to be successfully spent.

Provisions of the bill provide for more effective deportation measures, increased border and investigative staffing, and stricter employment and welfare standards. It is exactly measures such as these that are necessary to combat the growing problem of illegal immigration.

Illegal immigration is an issue that has been in the forefront of public debate for some time right now. It is a growing problem that affects even the smallest towns in the Midwest.

The problem became graphic to me in January 1995 when an Iowa college student named Justin Younie was murdered by an illegal alien who had been removed from the State of Iowa once before because of his illegal status. Unfortunately, this particular illegal alien came back to the United States and to my State of Iowa without any problems. That is the case with so many illegal aliens returning, only this time, this person, this illegal alien, ended up committing murder. This person has since been convicted of this horrible crime. That does not bring back the life of Mr. Younie. But it does set the stage for a very important provision that I have in this bill allowing local law enforcement people to be involved in the arrest of an illegal alien if the only thing they have done wrong is being in this country illegally. I know it is not understandable to people who for the last 20 years, there has been a regulation saying that local law enforcement people cannot arrest an illegal alien just because they are here illegally. But that is the situation.

We have another example beyond this murder of the reach of illegal immigration, and it was featured in the U.S. News & World Report of September 13, 1996, and on the cover story. It addressed illegal immigration and its effects on the small town of Storm Lake, IA. Specifically, the article focused on the meatpacking industry which, since its opening in 1982, has experienced a large influx of illegal immigrants. The effects on the town of Storm Lake have been very significant. Along with a population increase has come increased crime rates, increased education expenditures, racial problems, and economic concerns causing great resentment within the community.

According to the article, the increase in illegal immigrants to the town can

Effective: January 28, 2008

United States Code Annotated Currentness
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part IV. Jurisdiction and Venue (Refs & Annos)
Chapter 91. United States Court of Federal Claims (Refs & Annos)
→ **§ 1491. Claims against United States generally; actions involving Tennessee Valley Authority**

**(a)(1)** The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

**(2)** To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

**(b)(1)** Both the Unites [FN1] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

**(2)** To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

**(3)** In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.

**(4)** In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

forth in section 706 of title 5.

**(5)**[FN2] If a private sector interested party commences an action described in paragraph (1) in the case of a public-private competition conducted under Office of Management and Budget Circular A-76 regarding performance of an activity or function of a Federal agency, or a decision to convert a function performed by Federal employees to private sector performance without a competition under Office of Management and Budget Circular A-76, then an official or person described in section 3551(2)(B) of title 31 shall be entitled to intervene in that action.

**(5)**[FN2] If an interested party who is a member of the private sector commences an action described in paragraph (1) with respect to a public-private competition conducted under Office of Management and Budget Circular A-76 regarding the performance of an activity or function of a Federal agency, or a decision to convert a function performed by Federal employees to private sector performance without a competition under Office of Management and Budget Circular A-76, then an interested party described in section 3551(2)(B) of title 31 shall be entitled to intervene in that action.

**(c)** Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade, or of any action against, or founded on conduct of, the Tennessee Valley Authority, or to amend or modify the provisions of the Tennessee Valley Authority Act of 1933 with respect to actions by or against the Authority.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 940; July 28, 1953, c. 253, § 7, 67 Stat. 226; Sept. 3, 1954, c. 1263, § 44(a), (b), 68 Stat. 1241; July 23, 1970, Pub.L. 91-350, § 1(b), 84 Stat. 449; Aug. 29, 1972, Pub.L. 92-415, § 1, 86 Stat. 652; Nov. 1, 1978, Pub.L. 95-563, § 14(i), 92 Stat. 2391; Oct. 10, 1980, Pub.L. 96-417, Title V, § 509, 94 Stat. 1743; Apr. 2, 1982, Pub.L. 97-164, Title I, § 133(a), 96 Stat. 39; Oct. 29, 1992, Pub.L. 102-572, Title IX, §§ 902(a), 907(b)(1), 106 Stat. 4516, 4519; Oct. 19, 1996, Pub.L. 104-320, § 12(a), 110 Stat. 3874; Dec. 26, 2007, Pub.L. 110-161, Div. D, Title VII, § 739(c)(2), 121 Stat. 2031; Jan. 28, 2008, Pub.L. 110-181, Div. A, Title III, § 326(c), 122 Stat. 63.)

[FN1] So in original.

[FN2] So in original. Two pars. (5) have been enacted.

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1948 Acts. Based on Title 28, U.S.C., 1940 ed., § 250(1) (Mar. 3, 1911, c. 231, § 145, 36 Stat. 1136 [derived from R.S. § 1059; Mar. 3, 1887, c. 359, § 1, 24 Stat. 505] ).

District courts are given concurrent jurisdiction of certain claims against the United States under section 1346 of this title. (See also reviser's note [now Revision Notes and Legislative Reports] under that section and section 1621 of this title relating to jurisdiction of the Tax Court.)

The proviso in section 250(1) of Title 28, U.S.C., 1940 ed., relating to claims growing out of the Civil War, commonly known as "war claims," and other claims which had been reported adversely before March 3, 1887 by



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
Title 31. Money and Finance (Refs & Annos)
Subtitle III. Financial Management
Chapter 37. Claims (Refs & Annos)
Subchapter III. Claims Against the United States Government (Refs & Annos)
→ **§ 3727. Assignments of claims**

**(a)** In this section, "assignment" means--

**(1)** a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or

**(2)** the authorization to receive payment for any part of the claim.

**(b)** An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

**(c)** Subsection (b) of this section does not apply to an assignment to a financing institution of money due or to become due under a contract providing for payments totaling at least $1,000 when--

**(1)** the contract does not forbid an assignment;

**(2)** unless the contract expressly provides otherwise, the assignment--

**(A)** is for the entire amount not already paid;

**(B)** is made to only one party, except that it may be made to a party as agent or trustee for more than one party participating in the financing; and

**(C)** may not be reassigned; and

**(3)** the assignee files a written notice of the assignment and a copy of the assignment with the contracting official or the head of the agency, the surety on a bond on the contract, and any disbursing official for the contract.

**(d)** During a war or national emergency proclaimed by the President or declared by law and ended by proclamation or law, a contract with the Department of Defense, the General Services Administration, the Department of Energy (when carrying out duties and powers formerly carried out by the Atomic Energy Commission), or other agency the President designates may provide, or may be changed without consideration to provide, that a future payment under the contract to an assignee is not subject to reduction or setoff. A payment subsequently due under the contract (even after the war or emergency is ended) shall be paid to the assignee without a reduction or setoff for liability of the assignor--

**(1)** to the Government independent of the contract; or

**(2)** because of renegotiation, fine, penalty (except an amount that may be collected or withheld under, or because the assignor does not comply with, the contract), taxes, social security contributions, or withholding or failing to withhold taxes or social security contributions, arising from, or independent of, the contract.



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(e)(1)** An assignee under this section does not have to make restitution of, refund, or repay the amount received because of the liability of the assignor to the Government that arises from or is independent of the contract.
**(2)** The Government may not collect or reclaim money paid to a person receiving an amount under an assignment or allotment of pay or allowances authorized by law when liability may exist because of the death of the person making the assignment or allotment.

CREDIT(S)

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 976.)
HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1982 Acts

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 3727(a)................. | 31:203 (1st par. words before 9th comma).................. | R.S. § 3477; May 27, 1908, ch. 206 (last par. on p. 411), 35 Stat. 411; Oct. 9, 1940, ch. 779, § 1 (related to § 3477), 54 Stat. 1029; May 15, 1951, ch. 75, § 1 (related to § 1 related to § 3477), 65 Stat. 41. |
| 3727(b)................. | 31:203 (1st par. words after 9th comma, 3d, last pars.). | |
| 3727(c)................. | 31:203 (2d par.) | |
| 3727(d)................. | 31:203 (5th par.) | |
| 3727(e)(1)................. | 31:203 (4th par.) | |
| 3727(e)(2)................. | 31:239................. | Aug. 10, 1956, ch. 1041, § 45, 70A Stat. 638. |

In subsection (a)(1), the words "or share thereof" and "whether absolute or conditional, and whatever may be the consideration therefor" are omitted as surplus. In clause (2), the word "authorization" is substituted for "powers of attorney, orders, or other authorities" to eliminate unnecessary words.

In subsections (b) and (c), the word "official" is substituted for "officer" for consistency in the revised title and with other titles of the United States Code.

In subsection (b), the words "Except as hereinafter provided" are omitted as unnecessary. The words "read and" are omitted as surplus. The words "to the person acknowledging the same" are omitted as unnecessary. The text of 31:203 [former § 203 of this title] (1st par. last sentence) is omitted as superseded by 39:410 [§ 410 of Title 39, Postal Service]. The words "Notwithstanding any law to the contrary governing the validity of assignments" and the text of 31:203 [former § 203 of this title] (last par.) are omitted as unnecessary.

In subsection (c), before clause (1), the words "bank, trust company, or other . . . including any Federal lending agency" are omitted as surplus. The words "of money due or to become due under a contract providing for payments totaling at least $1,000" are substituted for "in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more" to eliminate unnecessary words. The text of 31:203 [former § 203 of this title] (2d par. pro-



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

viso cl. 1) is omitted as executed. In clause (1), the words "in the case of any contract entered into after October 9, 1940" are omitted as executed. In clause (2)(A), the words "payable under such contract" are omitted as surplus. In clause (3), the words "true" and "instrument of" are omitted as surplus. The words "department or" are omitted because of the restatement. The words "if any" and "to make payment" are omitted as surplus.

In subsection (d), before clause (1), the words "During a war or national emergency proclaimed by the President or declared by law and ended by proclamation or law" are substituted for "in time of war or national emergency proclaimed by the President (including the national emergency proclaimed December 16, 1950) or by Act or joint resolution of the Congress and until such war or national emergency has been terminated in such manner" to eliminate unnecessary words. The words "Department of Energy (when carrying out duties and powers formerly carried out by the Atomic Energy Commission)" are substituted for "Atomic Energy Commission" (which was reconstituted as the Energy Research and Development Administration by 42:5813 and 5814 [§§ 5813 and 5814 of Title 42, The Public Health and Welfare] ) because of 42:7151(a) and 7293 [§§ 7151(a) and 7293 of Title 42].

The words "other department or . . . of the United States . . . except any such contract under which full payment has been made" and "of any moneys due or to become due under such contract" before "shall not be subject" are omitted as surplus. The words "A payment subsequently due under the contract (even after the war or emergency is ended) shall be paid to the assignee without" are substituted for "and if such provision or one to the same general effect has been at any time heretofore or is hereafter included or inserted in any such contract, payments to be made thereafter to an assignee of any moneys due or to become due under such contract, whether during or after such war or emergency . . . hereafter" to eliminate unnecessary words. The words "of any nature" are omitted as surplus. In clause (1), the words "or any department or agency thereof" are omitted as unnecessary. In clause (2), the words "under any renegotiation statute or under any statutory renegotiation article in the contract" are omitted as surplus.

Subsection (e)(1) is substituted for 31:203 [former § 203 of this title] (4th par.) to eliminate unnecessary words.

In subsection (e)(2), the words "person receiving an amount under an assignment or allotment" are substituted for "assignees, transferees, or allotees" for clarity and consistency. The words "or to others for them" and "with respect to such assignments, transfers, or allotments or the use of such moneys" are omitted as surplus. The words "person making the assignment or allotment" are substituted for "assignors, transferors, or alloters" for clarity and consistency.

Moneys Due Under Letters of Commitment Issued in Connection with Disposition of Surplus Agricultural Commodities

Moneys due under letters of commitment issued against funds or guaranties of funds supplied by Commodity Credit Corporation in connection with disposition of surplus agricultural commodities to foreign countries, as assignable under the Assignment of Claims Act of 1940, which amended former § 203 of this title and § 15 of Title 41, Public Contracts. See § 1702 of Title 7, Agriculture.

CROSS REFERENCES

Foreign Service member's retirement benefits as assignable, see22 USCA § 4060.
Loans for housing and buildings on potentially adequate farms, assignments relating to, see42 USCA §



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C

**Effective: February 10, 1996**

United States Code Annotated Currentness
Title 41. Public Contracts
Chapter 1. General Provisions (Refs & Annos)
→ **§ 15. Transfers of contracts; assignments; assignee not subject to reduction or setoff**

(a) Transfer

No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States.

(b) Assignment

The provisions of subsection (a) of this section shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency, provided:

**(1)** That, in the case of any contract entered into after October 9, 1940, no claim shall be assigned if it arises under a contract which forbids such assignment.

**(2)** That, unless otherwise expressly permitted by such contract, any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing.

**(3)** That, in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of the assignment with--

**(A)** the contracting officer or the head of his department or agency;

**(B)** the surety or sureties upon the bond or bonds, if any, in connection with such contract; and

**(C)** the disbursing officer, if any, designated in such contract to make payment.

(c) Validity of assignment

Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to this section shall constitute a valid assignment for all purposes.

(d) Assignee liability



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In any case in which moneys due or to become due under any contract are or have been assigned pursuant to this section, no liability of any nature of the assignor to the United States or any department or agency thereof, whether arising from or independently of such contract, shall create or impose any liability on the part of the assignee to make restitution, refund, or repayment to the United States of any amount heretofore since July 1, 1950, or hereafter received under the assignment.

(e) Amendment of contract

Any contract of the Department of Defense, the General Services Administration, the Department of Energy, or any other department or agency of the United States designated by the President, except any such contract under which full payment has been made, may, upon a determination of need by the President, provide or be amended without consideration to provide that payments to be made to the assignee of any moneys due or to become due under such contract shall not be subject to reduction or setoff. Each such determination of need shall be published in the Federal Register.

(f) Assignor liability arising independent of contract

If a provision described in subsection (e) of this section or a provision to the same general effect has been at any time heretofore or is hereafter included or inserted in any such contract, payments to be made thereafter to an assignee of any moneys due or to become due under such contract shall not be subject to reduction or setoff for any liability of any nature of the assignor to the United States or any department or agency thereof which arises independently of such contract, or hereafter for any liability of the assignor on account of--

**(1)** renegotiation under any renegotiation statute or under any statutory renegotiation article in the contract;

**(2)** fines;

**(3)** penalties (which term does not include amounts which may be collected or withheld from the assignor in accordance with or for failure to comply with the terms of the contract); or

**(4)** taxes, social security contributions, or the withholding or non withholding of taxes or social security contributions, whether arising from or independently of such contract.

(g) Accrued rights and obligations

Except as herein otherwise provided, nothing in this section shall be deemed to affect or impair rights or obligations heretofore accrued.

CREDIT(S)

(R.S. § 3737; Oct. 9, 1940, c. 779, § 1, 54 Stat. 1029; May 15, 1951, c. 75, 65 Stat. 41; Oct. 13, 1994, Pub.L. 103-355, Title II, § 2451, 108 Stat. 3324; Feb. 10, 1996, Pub.L. 104-106, Div. D, Title XLIII, § 4321(i)(9), 110 Stat. 676.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1951 Acts. Senate Report No. 217, see 1951 U.S.Code Cong. and Adm.News, p. 1414.



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 Acts.Senate Reports Nos. 103-258 and 103-259, and House Conference Report No. 103-712, see 1994 U.S. Code Cong. and Adm. News, p. 2561.

1996 Acts. House Conference Report No. 104-450, see 1996 U.S. Code Cong. and Adm. News, p. 238.

Codifications

R.S. § 3737 derived from Act July 17, 1862, c. 200, § 14, 12 Stat. 596.

Amendments

1996 Amendments. Subsec. (g). Pub.L. 104-106, § 4321(i)(9), substituted "rights or obligations" for "rights of obligations".

1994 Amendments. Subsec. (a). Pub.L. 103-355, § 2451, designated the first paragraph as subsec. (a) and substituted "is concerned" for "are concerned".

Subsec. (b). Pub.L. 103-355, § 2451, designated the second paragraph as subsec. (b); substituted in introductory text "provisions of subsection (a) of this section" for "provisions of the preceding paragraph" and "lending agency, provided:" for "lending agency: Provided," and paragraph and subparagraph (1)-(3)(A), (B), and (C) designations for prior numerical and alphabetical designations, "That," for "That" and a period for semicolons in the paragraph designations; and struck out "1. That in the case of any contract entered into prior to October 9, 1940, no claim shall be assigned without the consent of the head of the department or agency concerned;".

Subsec. (c). Pub.L. 103-355, § 2451, designated the third paragraph as subsec. (c) and substituted "this section" for "this section,".

Subsec. (d). Pub.L. 103-355, § 2451, designated the fourth paragraph as subsec. (d).

Subsec. (e). Pub.L. 103-355, § 2451, designated the first part of the fifth paragraph as subsec. (e), substituted "Department of Energy" for "Atomic Energy Commission", "may, upon a determination of need by the President, provide" for "may, in time of war or national emergency proclaimed by the President (including the national emergency proclaimed December 16, 1950) or by Act or joint resolution of the Congress and until such was or national emergency has been terminated in such manner, provide", and "setoff." for "set-off,", and added provision for publication in the Federal Register the President's determination of need.

Subsec. (f). Pub.L. 103-355, § 2451, designated the last part of the fifth paragraph as subsec. (f), substituted "If a provision described in subsection (e) of this section or a provision to the same general effect" for "and if such provision or one to the same general effect", "setoff" for "set-off", "moneys due or to become due under such contract shall not be subject" for "moneys due or to become due under such contract, whether during or after such war or emergency, shall not be subject", "on account of--" for "on account of", paragraph arrangement for items (1) to (4) ending in semicolons instead of commas and "non withholding" for "nonwithholding" in item (4).

Subsec. (g). Pub.L. 103-355, § 2451, designated the sixth paragraph as subsec. (g).

1951 Amendments. Act May 15, 1951, made it clear that a bank or other financing institution taking an assign-



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ment of claims pursuant to this section would not be subject to later recovery by the Government of amounts previously paid to the bank by the assignee except in cases of fraud.

1940 Amendments. Act Oct. 9, 1940, added the second and third paragraphs.

Effective and Applicability Provisions

1996 Acts. Amendment by Pub.L. 104-106 effective Feb. 10, 1996, except as otherwise provided, see section 4401 of Pub.L. 104-106, set out as a note under section 251 of this title.

1994 Acts. Amendment by section 2451 of Pub.L. 103-355 effective Oct. 13, 1994, except as otherwise provided, see section 10001 of Pub.L. 103-355, set out as a note under section 251 of this title.

Transfer of Functions

The Atomic Energy Commission was abolished and all functions were transferred to the Administrator of the Energy Research and Development Administration (unless otherwise specifically provided) by section 5814 of Title 42, The Public Health and Welfare. The Energy Research and Development Administration was terminated and functions vested by law in the Administrator thereof were transferred to the Secretary of Energy (unless otherwise specifically provided) by sections 7151(a) and 7293 of Title 42.

Non-Applicability of National Emergencies Act

The provisions of the National Emergencies Act, Pub.L. 94-412, Sept. 14, 1976, 90 Stat. 1255, not applicable to the powers and authorities conferred by this section and actions taken hereunder, see 50 U.S.C.A. § 1651.

Moneys Due Under Letters of Commitment Issued in Connection With Disposition of Surplus Agricultural Commodities

Moneys due under letters of commitment issued against funds or guaranties of funds supplied by Commodity Credit Corporation in connection with disposition of surplus agricultural commodities to foreign countries, as assignable under the Assignment of Claims Act of 1940, which constitutes this section and former section 203 of Title 31, see 7 U.S.C.A. § 1702.

MEMORANDA OF PRESIDENT

DELEGATION OF AUTHORITY UNDER THE ASSIGNMENT OF CLAIMS ACT

<Oct. 3, 1995, 60 F.R. 52289>

**Memorandum for the Heads of Executive Departments and Agencies**

Section 2451 of the Federal Acquisition Streamlining Act of 1994, Public Law 103-355 (41 U.S.C. 15) ("Act") [this section], provides, in part, that "[a]ny contract of the Department of Defense, the General Services Administration, the Department of Energy or any other department or agency of the United States designated by the



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

President, except [contracts where] ... full payment has been made, may, upon a determination of need by the President, provide or be amended without consideration to provide that payments to be made to the assignee of any moneys due or to become due under [the] contract shall not be subject to reduction or set-off."

By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 301 of title 3, United States Code [section 301 of Title 3, The President], I hereby designate all other departments and agencies of the United States as subject to this provision. Furthermore, I hereby delegate to the Secretaries of Defense and Energy, the Administrator of General Services, and the heads of all other departments and agencies, the authority under section 2451 of the Act [this section] to make determinations of need for their respective agency's contracts, subject to such further guidance as issued by the Office of Federal Procurement Policy.

The authority delegated by this memorandum may be further delegated within the departments and agencies.

This memorandum shall be published in the **Federal Register.**

WILLIAM J. CLINTON

CROSS REFERENCES

Assignment of claims, generally, see 31 USCA § 3727.
National Emergencies Act not applicable to powers and authorities conferred by this section and actions taken hereunder, see 50 USCA § 1651.

LAW REVIEW COMMENTARIES

Federal assignment-backed securities (FAst-BackS): Financing federal accounts receivable through securitization. 27 Loy.L.A.L.Rev. 1195 (1994).

Financing American health care security: The securitization of healthcare receivables. Charles E. Harrell & Mark D. Folk, 50 Bus.Law. 47 (1994).

LIBRARY REFERENCES

American Digest System

United States ⚿ 71, 111, 130(2).

Key Number System Topic No. 393.

Corpus Juris Secundum

CJS United States § 124, Transfer or Assignment.

RESEARCH REFERENCES

ALR Library

44 ALR, Fed. 775, Modern Status and Application of Rule That Only Voluntary Transfer or Assignment of



© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00396-MCW Document 69-7 Filed 05/05/2008 Page 15 of 18



and silver coin, Treasury notes, United States notes, or notes of national banks; and upon every such payment credit shall be given for the amount of principal and interest due on any Treasury note not received in payment on the day when the same are received. [See §§ 254 and 3009.]

23 Dec., 1857, c. 1, s. 6, v. 11, p. 258. 17 July, 1861, c. 5, s. 1, v. 12, p. 259. 5 Aug., 1861, c. 46, s. 5, v. 12, p. 313. 12 Feb., 1862, c. 20, v. 12, p. 338. 25 Feb., 1862, c. 33, ss. 1, 5, v. 12, pp. 345, 346. 11 July, 1862, c. 142, s. 1, v. 12, p. 532. 3 March, 1863, c. 73, ss. 3, 5, v. 12, pp. 710, 711. 3 June, 1864, c. 106, s. 23, v. 13, p. 106. 30 June, 1864, c. 172, s. 2, v. 13, p. 218.

SEC. 3474. No gold or silver other than coin of standard fineness of the United States, shall be receivable in payment of dues to the United States, except as provided in section twenty-three hundred and sixty-six, Title "PUBLIC LANDS," and in section thirty-five hundred and sixty-seven, Title "COINAGE, WEIGHTS, AND MEASURES."

What coin receivable.

31 Aug., 1852, c. 108, s. 2, v. 10, pp. 97, 98. 21 Feb., 1857, c. 56, ss. 2, 3, v. 11, p. 163.

SEC. 3475. The notes of national banks shall be received at par for all debts and demands owing by the United States to any person within the United States, except interest on the public debt, or in redemption of the national currency. [See § 5182.]

National bank notes receivable for debts of United States, except.

3 June, 1864, c. 106, s. 23, v. 13, p. 106.

SEC. 3476. Treasury notes bearing interest may be paid to any creditor of the United States at their face value, excluding interest, or to any creditor willing to receive them at par, including interest.

Treasury notes payable for debts of United States.

3 March, 1863, c. 73, s. 2, v. 12, p. 710. 30 June, 1864, c. 172, s. 2, v. 13, p. 218.

SEC. 3477. All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same.

Assignments of claims void, unless, &c.

26 Feb., 1853, c. 81, s. 1, v. 10, p. 170. 29 July, 1846, c. 66, v. 9, p. 41.

Sines *vs.* U. S., 1 Crt. Clms., 12; Cooper *vs.* U. S., 1 Crt. Clms., 85; Coté *vs.* U. S., 3 Crt. Clms., 64.

SEC. 3478. Any person prosecuting claims, either as attorney or on his own account, before any of the Departments or Bureaus of the United States, shall be required to take the oath of allegiance, and to support the Constitution of the United States, as required of persons in the civil service. [See §§ 1756, 1757.]

Oath by persons prosecuting claims.

17 July, 1862, c. 205, s. 1, v. 12, p. 610.

SEC. 3479. The oath provided for in the preceding section may be taken before any justice of the peace, notary public, or other person who is legally authorized to administer an oath in the State or district where the same may be administered.

Who may administer the oath.

17 July, 1862, c. 205, s. 2, v. 12, p. 610.

SEC. 3480. It shall be unlawful for any officer to pay any account, claim, or demand against the United States which accrued or existed prior to the thirteenth day of April, eighteen hundred and sixty-one, in favor of any person who promoted, encouraged, or in any manner sustained the late rebellion, or in favor of any person who during such rebellion was not known to be opposed thereto, and distinctly in favor of its suppression; and no pardon heretofore granted, or hereafter to be granted, shall authorize the payment of such account, claim, or demand, until this section is modified or repealed. But this section shall not be construed to prohibit the payment of claims founded upon contracts made by any of the Departments, where such claims were assigned or contracted to be assigned prior to the first day of April, eighteen hundred and sixty-one, to the creditors of such contractors, loyal citizens of loyal States, in payment of debts incurred prior to the first day of March, eighteen hundred and sixty-one.

Claims of disloyalists.

2 March, 1867, Res. 46, v. 14, p. 571.

Unauthorized contracts prohibited.

2 March, 1861, c. 84, s. 10, v. 12, p. 220.

SEC. 3732. No contract or purchase on behalf of the United States shall be made, unless the same is authorized by law or is under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current year.

The Floyd Acceptances, 7 Wall., 666.

No contract to exceed appropriation.

25 July, 1868, c. 233, s. 3, v. 15, p. 177.

SEC. 3733. No contract shall be entered into for the erection, repair, or furnishing of any public building, or for any public improvement which shall bind the Government to pay a larger sum of money than the amount in the Treasury appropriated for the specific purpose. [See § 5503.]

Restrictions on commencement of new buildings.

15 July, 1870, c. 292, v. 16, p. 296.

SEC. 3734. Before any new buildings for the use of the United States are commenced, the plans and full estimates therefor shall be prepared and approved by the Secretary of the Treasury, the Postmaster-General, and the Secretary of the Interior; and the cost of each building shall not exceed the amount of such estimate. [See § 3663.]

Contracts limited to one year.

31 Jan., 1868, Res. No. 8, v. 15, p. 246.

SEC. 3735. It shall not be lawful for any of the Executive Departments to make contracts for stationery or other supplies for a longer term than one year from the time the contract is made.

Restriction on purchases of land.

1 May, 1820, c. 52, s. 7, v. 3, p. 568.

SEC. 3736. No land shall be purchased on account of the United States, except under a law authorizing such purchase.

Neilson *vs.* Lagow, 12 How., 98.

No transfer of contract.

17 July, 1862, c. 200, s. 14, v. 12, p. 596.

Wheelan *vs.* U. S., 5 Ct. Clms., 504.

SEC. 3737. No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States.

Eight hours to be a day's work.

28 June, 1868, c. 72, v. 15, p. 77.

SEC. 3738. Eight hours shall constitute a day's work for all laborers, workmen, and mechanics who may be employed by or on behalf of the Government of the United States. [See § 3689.]

Members of Congress not to be interested in contracts.

21 April, 1808, c. 48, s. 1, v. 2, p. 484.

SEC. 3739. No member of or Delegate to Congress shall directly or indirectly, himself, or by any other person in trust for him, or for his use or benefit, or on his account, undertake, execute, hold, or enjoy, in whole or in part, any contract or agreement made or entered into in behalf of the United States, by any officer or person authorized to make contracts on behalf of the United States. Every person who violates this section shall be deemed guilty of a misdemeanor, and shall be fined three thousand dollars. All contracts or agreements made in violation of this section shall be void; and whenever any sum of money is advanced on the part of the United States, in consideration of any such contract or agreement, it shall be forthwith repaid; and in case of refusal or delay to repay the same, when demanded, by the proper officer of the Department under whose authority such contract or agreement shall have been made or entered into, every person so refusing or delaying, together with his surety or sureties, shall be forthwith prosecuted at law for the recovery of any such sum of money so advanced.

What interest members of Congress may have.

Ibid., s. 2.

SEC. 3740. Nothing contained in the preceding section shall extend, or be construed to extend, to any contract or agreement, made or entered into, or accepted, by any incorporated company, where such contract or agreement is made for the general benefit of such incorporation or company; nor to the purchase or sale of bills of exchange or other property by any member of Congress, where the same are ready for delivery, and payment therefor is made, at the time of making or entering into the contract or agreement.

Sec. 9. This Act shall become effective six months after the date of approval, except as to subsection (7) of section 1 hereof, which subsection shall become effective on the date of approval. Such initial regulations as may be necessary to make the Act effective shall be promulgated within ninety days from the date of approval hereof: *Provided, however*, That during any national emergency proclaimed by the President, he may, in his discretion, accelerate any or all provisions of this section.

Effective dates.

Promulgation of initial regulations.

*Proviso.*
Acceleration of provisions during national emergency.

Sec. 10. If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of the Act, and the application of the provisions thereof, shall not be affected thereby.

Separability of provisions.

Approved, October 9, 1940.

[CHAPTER 778]

AN ACT

To authorize the Secretary of the Treasury to order retired commissioned and warrant officers of the Coast Guard to active duty during time of national emergency, and for other purposes.

October 9, 1940
[H. R. 10337]
[Public, No. 810]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That any commissioned or warrant officer of the Coast Guard on the retired list may at any time, with his consent, in the discretion of the Secretary of the Treasury, be ordered to active duty.

Coast Guard.
Active duty of retired officers.

Sec. 2. That all authority or discretion vested in the Secretary of the Navy to order commissioned and warrant officers of the Coast Guard on the retired list to active duty while the Coast Guard is not operating as a part of the Navy, is hereby transferred to and vested in the Secretary of the Treasury.

Transfer of authority.

Approved, October 9, 1940.

[CHAPTER 779]

AN ACT

To assist in the national-defense program by amending sections 3477 and 3737 of the Revised Statutes to permit the assignment of claims under public contracts.

October 9, 1940
[H. R. 10464]
[Public, No. 811]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That sections 3477 and 3737 of the Revised Statutes be amended by adding at the end of each such section the following new paragraph:

Assignment of Claims Act of 1940.
31 U. S. C. § 203; 41 U. S. C. § 15.

"The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency: *Provided*,

Assignment of claims upon U. S. to banks, etc.

"1. That in the case of any contract entered into prior to the date of approval of the Assignment of Claims Act of 1940, no claim shall be assigned without the consent of the head of the department or agency concerned;

*Proviso.*
Prior contracts; consent to assignment.

"2. That in the case of any contract entered into after the date of approval of the Assignment of Claims Act of 1940, no claim shall be assigned if it arises under a contract which forbids such assignment;

Contracts forbidding assignment.

"3. That unless otherwise expressly permitted by such contract any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that

Limitations on assignment.

54 Stat. 1029

Assignment of Claims Act of 1940
54 Stat. 1029-30 (1940)

any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing;

Filing of written notice by assignee.

"4. That in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with—

"(a) the General Accounting Office,

"(b) the contracting officer or the head of his department or agency,

"(c) the surety or sureties upon the bond or bonds, if any, in connection with such contract, and

"(d) the disbursing officer, if any, designated in such contract to make payment.

Validity of assignment.

Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to the Assignment of Claims Act of 1940 shall constitute a valid assignment for all purposes."

War or Navy Department contracts. Set-off, etc., of assignor's indebtedness to U. S.

Any contract entered into by the War Department or the Navy Department may provide that payments to an assignee of any claim arising under such contract shall not be subject to reduction or set-off, and if it is so provided in such contract, such payments shall not be subject to reduction or set-off for any indebtedness of the assignor to the United States arising independently of such contract.

Short title.

SEC. 2. This Act may be cited as the "Assignment of Claims Act of 1940".

Approved, October 9, 1940.

---

[CHAPTER 780]

October 9, 1940
[H. R. 10539]
[Public, No. 812]

## AN ACT

Making supplemental appropriations for the support of the Government for the fiscal year ending June 30, 1941, and for other purposes.

First Supplemental Civil Functions Appropriation Act, 1941.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, for the support of the Government for the fiscal year ending June 30, 1941, and for other purposes, namely:

## TITLE I—GENERAL APPROPRIATIONS

### LEGISLATIVE

#### SENATE

Ernest Lundeen. Payment to widow.

For payment to Norma Ward Lundeen, widow of Ernest Lundeen, late a Senator from the State of Minnesota, $10,000.

Clerical assistance. *Ante*, p. 464.

So much as may be necessary of the appropriation "Clerical Assistance to Senators, 1941" is hereby made available to enable the Secretary of the Senate to pay two additional clerks at $1,500 per annum each, one for each Senator from the State of Wisconsin, from the date the Census Bureau officially announces the population of said State to exceed three million to June 30, 1941.

Compensation of clerk of Finance Committee. *Ante*, p. 463.

For an amount required to increase the compensation of the clerk of the Finance Committee of the Senate at the rate of $1,000 per annum so long as the position is held by the present incumbent, $750.

Assistant superintendents of press gallery.

*Ante*, p. 465.

Beginning with the first day of the month next following the enactment of this Act, the compensation of the assistant superintendents of the Senate press gallery shall be at the respective rates of $3,000 and $1,920 per annum, and the Legislative Branch Appropriation Act for the fiscal year 1941 hereby is amended accordingly.

Miscellaneous items.

For miscellaneous items, exclusive of labor, fiscal year 1940, $40,000.