thority

ecutive agencies to estab-
r sources of supply for a
competitive procedures to
iding the incumbent con-
cies are authorized to use
it would (1) increase or
reduced overall costs, (2)
ise of a national emergen-
the interest of national
essential engineering, re-
ovided by an educational
nded research and devel-

incorporates the provi-

**Competition**

us existing set-aside pro-
to include in its solicita-
designate only specified
ess concerns, as "author-
iess Act (15 U.S.C. § 631,

ition to set-aside
le, ongress has histori-
ral procurement process
policy, the conferees in-
titute which authorizes
iess concerns or socially
ness concerns as long as
llowed to compete. The
ess Innovation Research
219, as an example of a
ide program that would

be made in accordance
y the conference substi-
of the Small Business
ler Section 8(a) of the
rocurement procedures



### (4) Exceptions to Competition Requirement

*Senate amendment*

The Senate amendment provides six exceptions to competitive procedures which parallel the conditions which the Comptroller General has historically recognized as legitimate conditions for awarding contracts on a sole-source basis. The Senate amendment shifts the emphasis from having to justify the use of negotiation, which can be either competitive or noncompetitive, to concentrate on those contract which are negotiated noncompetitively, thereby restricting sole-source contracting to when it is truly necessary. The award of a contract on a sole-source basis would for the first time constitute a clear violation of statute and would therefore not be authorized unless permitted by one of these exceptions.

These exceptions are considerably more restrictive than the present exceptions to formal advertising which are used inappropriately, in many cases, to justify going sole source. By using the broad exceptions to formal advertising, such as the "impracticable to obtain competition" exception, as a means to negotiate noncompetitive, agencies have avoided stating the actual justification for awarding a sole-source contract. While sole-source contracting may be necessary in certain situations, tighter control and greater visibility are needed to ensure its proper use.

*Conference substitute*

The conference substitute retains the restrictions imposed on sole-source contracts provided in the Senate amendment, but requires agencies to obtain competition under the second and sixth exception to the maximum extend practicable. For this reason, the term "noncompetitive procedures" used in the Senate amendment has been changed to "procedures other than competitive procedures" in the conference substitute. Agencies are not precluded from awarding a contract noncompetitively under the second or sixth exceptions (which concern urgent and national security situations) when conditions dictate that only one source is available.

In addition, the conference substitute includes a seventh exception which allows the head of an agency, on a non-delegable basis, to determine when it is necessary in the public interest to use procedures other than competitive procedures for a particular procurement. This waiver is to be exercised, if at all, on a case-by-case basis, rather than for a class of procurements. The head of an agency is required to notify both Houses of Congress in writing of his or her intention to use this exception thirty days before the contract is awarded.

The conference agreement also clarifies that sole-source awards resulting from certain unsolicited proposals or "follow-on" contracts fall under the first exception, which permits a sole-source award when the property or services needed by the agency are available from only one responsible source and no other type of property or services will satisfy the agency's needs. In neither case, however, is this exception to be used as a "carte blanche" justification for going sole source.

The use of the first exception for unsolicited proposals and follow-on contracts is limited in both cases to certain specific condi-

tions. In the case of unsolicited proposals. the conference substitute authorizes sole-source awards based on unsolicited research proposals when the agency can determine that the substance of the proposal is not otherwise available to the government, and the proposal does not resemble the substance of a pending competitive procurement.

The conferees do not intend, however, that this provision be used as a loophole by which agencies and contractors can circumvent the competition requirements contained in the substitute. This authorization is strictly limited to state-of-the-art proposals which represent advanced scientific knowledge. Even under these conditions, agencies should seek proposals wherever possible from competing researchers to ensure that the best proposal available is selected. The substitute, like the Senate amendment, therefore, requires that unsolicited proposals be publicized in the *Commerce Business Daily* unless such publication would result in the disclosure of the originality of thought or innovativeness of the proposed research contained in the proposal.

In the case of follow-on contracts, a sole-source award under the first exception may be made for the continued development or production of a major system or highly specialized equipment if award to other than the original source would result in substantial duplication of cost that could not be recovered through the use of competition, or unacceptable delays in fulfilling the agency's needs.

The conferees intend that follow-on contracts be awarded only to incumbent vendors who receive the original contracts following some form of price or technical competition. The conference substitute recognizes that in major systems and highly specialized equipment acquisitions, there are situations where the initial capital investment could cause substantial duplication of cost if the contract were awarded to other than the original source. However, the substitute requires the agency to determine and document that such cost cannot be offset by savings that would result from openly competing the requirement. The conferees believe that a cost/benefit analysis is necessary to make a precise determination.

The conferees further note that follow-on contracts sometimes result when an agency fails to determine its original requirements accurately. The conferees emphasize that better planning should eliminate this problem and the resultant need for a sole-source contract to the incumbent contractor. The language in the conference substitute should not be construed as legitimizing sole-source contracts that are caused by poor planning.

The conferees also do not intend this provision to be used to perpetuate any contract which involves obsolete or outmoded facilities, systems or processes, including computer systems and software.

**(5) Justification and Approval Procedures**

*Senate amendment*

The Senate amendment safeguards against unnecessary sole-source contracting by prohibiting agencies from using noncompetitive procedures unless (1) the use of such procedures has been justified in writing, and (2) the agency has provided advance notice of intent to award a sole-source contract in the *Commerce Business*



*Daily,* inviting bids or proposals f
has considered all bids or proposa
notice.

*Conference substitute*

The conference substitute retair
quirements from the Senate amen
meet before a sole-source award ca
In retaining the Senate provisio
agencies should, at a minimum, gi
in response to the *Commerce Bus*
sideration so as to be able to make
responsibility of the bidder and the
Agencies are not explicitly requi
to all contractors who respond to a
be interpreted to mean that ager
distribution of such packages arb
award notice is to open competiti
the agency's needs. To serve thi
should be available upon request.
is not anticipated and solicitatio
pared, agencies shall provide pote
with solicitation packages or comp
The conference substitute also
cedures in the Senate amendme
ments for approvals of sole-source
The justification statement requ
curement must be certified as ac
tracting officer responsible for aw
cation statement must then be re
the procuring activity's advocate f
tracts over $100,000; (2) the head
case of contracts over $1,000,000;
ment executive in the case of cor
ing officer certification and review
ed by this substitute cannot be de
thorized under this substitute.
All determinations and decisio
tions to competitive procedures p
made on a case-by-case basis. Br
ucts and services cannot be exem
In the event of an unusual and
justification and approvals may
been awarded. Similarly, such ju
required when the head of an a
Congress that it is in the public
tive procurement, or a procure
with the Wagner-O'Day Act (41 U
The justifications and related
made available to the public. V
made consistent with the provisi
Act (5 U.S.C. § 552), the conferee
for internal memoranda not be
from public disclosure. The use c

the conference substitute
sc l research propos-
th stance of the pro-
ernment, and the propos-
pending competitive pro-

iat this provision be used
itractors can circumvent
i the substitute. This au-
-the-art proposals which
Even under these condi-
rever possible from com-
proposal available is se-
nendment, therefore, re-
licized in the *Commerce*
ould result in the disclo-
ativeness of the proposed

-source award under the
ued development or pro-
lized equipment if award
sult in substantial dupli-
through the use of com-
g the agency's needs.
racts be awarded only to
inal contracts following
1. The conference substi-
highly specialized equip-
re the initial capital in-
on of cost if the contract
urce. However, the sub-
nd document that such
r from openly com-
i at a cost/benefit
rmation.
on contracts sometimes
s original requirements
better planning should
ed for a sole-source con-
guage in the conference
imizing sole-source con-

vision to be used to per-
e or outmoded facilities,
stems and software.

**Procedures**

inst unnecessary sole-
from using noncompeti-
ocedures has been justi-
vided advance notice of
the *Commerce Business*

*Daily*, inviting bids or proposals from potential competitors, and has considered all bids or proposals received in response to such notice.

*Conference substitute*

The conference substitute retains the pre-award notification requirements from the Senate amendment which agencies must first meet before a sole-source award can be made.

In retaining the Senate provisions, the conferees emphasize that agencies should, at a minimum, give each bid or proposal received in response to the *Commerce Business Daily* notice sufficient consideration so as to be able to make an informed judgment about the responsibility of the bidder and the responsiveness of the bid.

Agencies are not explicitly required to issue solicitation packages to all contractors who respond to a pre-award notice. This is not to be interpreted to mean that agencies are authorized to deny the distribution of such packages arbitrarily. The purpose of the pre-award notice is to open competition to all offerors who can meet the agency's needs. To serve this purpose, solicitation packages should be available upon request. In situations where competition is not anticipated and solicitation packages have not been prepared, agencies shall provide potential competitors who do respond with solicitation packages or comparable information.

The conference substitute also strengthens the justification procedures in the Senate amendment and establishes new requirements for approvals of sole-source contracts.

The justification statement required for each noncompetitive procurement must be certified as accurate and complete by the contracting officer responsible for awarding the contracts. The justification statement must then be reviewed and approved by either (1) the procuring activity's advocate for competition in the case of contracts over $100,000; (2) the head of the procuring activity in the case of contracts over $1,000,000; or (3) the agency's senior procurement executive in the case of contracts over $10,000,000. Contracting officer certification and review and approval authorities provided by this substitute cannot be delegated, except as specifically authorized under this substitute.

All determinations and decisions required for use of the exceptions to competitive procedures provided in this substitute are to be made on a case-by-case basis. Broad categories or classes of products and services cannot be exempt from competitive procedures.

In the event of an unusual and compelling urgency, the required justification and approvals may be made after the contract has been awarded. Similarly, such justifications and approvals are not required when the head of an agency determines and reports to Congress that it is in the public interest to conduct a noncompetitive procurement, or a procurement is conducted in accordance with the Wagner-O'Day Act (41 U.S.C. § 46 *et seq.*).

The justifications and related documentation are required to be made available to the public. While these disclosures should be made consistent with the provisions of the Freedom of Information Act (5 U.S.C. § 552), the conferees intend that the Act's exemption for internal memoranda not be used to shield these documents from public disclosure. The use of the term "consistent with" is de-

signed merely to ensure that national security, law enforcement, and other sensitive information is not publicly disclosed.

The conference sustitute places additional prohibitions and restrictions on the use of procedures other than competitive procedures. Noncompetitive procurements may not be justified on the basis of concerns regarding the future availability of funding. This prohibition is designed to prevent the year-end spending abuses that occur when agencies are faced with large amounts of unexpended appropriations at the end of the fiscal year. Under this situation, agencies rush to sign a contract with a vendor on a sole-source basis in order to avoid having to turn money back to the Treasury. The conferees find this practice to be unconscionable. Similarly, the substitute prohibits the use of the lack of advance planning as a justification for using noncompetitive practices. The conferees reject the assertions made by some agency procurement officials that this is a legitimate reason to curtail competition. A contrary conclusion would legitimize unacceptable management practices.

The substitute also prohibits an agency from procuring its goods and services from another agency unless that agency has complied with the requirements of the substitute. The substitute includes this prohibition to prevent one agency from acquiring its goods and services from another agency's sole-source contract without having to justify a noncompetitive procurement itself. This restriction is in addition to, not in lieu of, any other restriction provided by law, including the Economy Act of 1932 (31 U.S.C. § 686(a)).

**(6) Small Purchase Procedures**

*Senate amendment*

The Senate amendment recognizes that the competitive procedures required of large pruchases may not be appropriate for small purchases. The Senate amendment therefore provides a basis in statute for regulations to establish separate small purchase procedures, allowing agencies to scale down their efforts as long as they obtain reasonable competition.

*Conference substitute*

The small purchase provisions of the Senate amendment are retained under the conference substitute in a separate subsection. Within this new subsection, agencies are required to promote competition to the maximum extent practicable when using small purchase procedures. The regulations issued pursuant to this subsection are to be incorporated into the government-wide Federal Acquisition Regulation consistent with current statute.

**(7) Planning and Solicitation Procedures**

*Senate amendment*

The Senate amendment requires agencies, as part of the affirmative effort to obtain competition, to use advance procurement planning, conduct market research, and develop nonrestrictive specifications.



*Conference substitute*

The conference substitute retai
in the Senate amendment, but a
ments for all procurements—comp
The substitute also retains the
solicitation section of the Senate
in defining their needs in order
competition. The substitute auth
needs in either functional, perfor
whichever will ensure timely pe
use of full and open competition.
Wherever practical, the confer
tors should be told what the
terms. This approach allows the
the innovative ideas of the privat

**(8) Evaluation and**

*Senate amendment*

The evaluation and award pro
petitive proposals set forth in th
the same as those currently req
curement Act and the Federal P
ices Act for formal advertising
clarifies that agencies shall eva
proposals based solely on the fact

*Conference substitute*

The conference substitute reta
cedures under the Senate amen
to reflect the requirement for ful

**Section 2712—Tr**

*Senate amendment*

The Senate amendment exten
Armed Services Procurement A
pricing data to cover civilian
Property and Administrative S
form threshold in both statutes
Contractors are presently rec
pricing data and certify that th
current" prior to the award of a
$500,000 and are required by
any negotiated civilian contract
"truth-in-negotiations" provisio
tive price adjustment in the eve
award of a contract were not ac
out resorting to costly and tim
tification, agencies lack the le
pricing.

ıritv. law enforcement,
ly 'osed.
al ibitions and re-
han competitive proce-
not be justified on the
ability of funding. This
r-end spending abuses
arge amounts of unex-
l year. Under this situ-
h a vendor on a sole-
rn money back to the
to be unconscionable.
of the lack of advance
petitive practices. The
e agency procurement
curtail competition. A
ceptable management

m procuring its goods
t agency has complied
ne substitute includes
acquiring its goods and
ntract without having
f. This restriction is in
tion provided by law,
§ 686(a)).

**ures**

he competitive proce-
appropriate for small
e des a basis in
sn purchase proce-
fforts as long as they

e amendment are re-
separate subsection.
ired to promote com-
hen using small pur-
suant to this subsec-
ent-wide Federal Ac-
atute.

**cedures**

s part of the affirma-
e procurement plan-
nonrestrictive specifi-

*Conference substitute*

The conference substitute retains these requirements contained in the Senate amendment, but applies them as planning requirements for all procurements—competitive and noncompetitive.

The substitute also retains the broad guidelines set forth in the solicitation section of the Senate amendment for agencies to follow in defining their needs in order to maximize, rather than limit, competition. The substitute authorizes agencies to specify their needs in either functional, performance, or detailed design terms, whichever will ensure timely performance and will promote the use of full and open competition.

Wherever practical, the conferees strongly believe that contractors should be told what the Government needs in functional terms. This approach allows the Government to take advantage of the innovative ideas of the private sector.

### (8) Evaluation and Award Procedures

*Senate amendment*

The evaluation and award procedures for sealed bids and competitive proposals set forth in the Senate amendment are largely the same as those currently required in the Armed Services Procurement Act and the Federal Property and Administrative Services Act for formal advertising and negotiation. The amendment clarifies that agencies shall evaluate sealed bids and competitive proposals based solely on the factors specified in the solicitation.

*Conference substitute*

The conference substitute retains the evaluation and award procedures under the Senate amendment, and modifies the language to reflect the requirement for full and open competition.

### Section 2712—Truth in Negotiations

*Senate amendment*

The Senate amendment extends the statutory requirement in the Armed Services Procurement Act for submitting certified cost or pricing data to cover civilian procurements under the Federal Property and Administrative Services Act, and establishes a uniform threshold in both statutes at $100,000.

Contractors are presently required by statute to submit cost or pricing data and certify that the data are "accurate, complete, and current" prior to the award of any negotiated defense contract over $500,000 and are required by regulation to submit such data for any negotiated civilian contract over $100,000. The purpose of this "truth-in-negotiations" provision is to provide the basis for retroactive price adjustment in the event that data submitted prior to the award of a contract were not accurate, complete, and current, without resorting to costly and time-consuming litigation. Without certification, agencies lack the legal ammunition to deter defective pricing.

*Conference substitute*

The conference substitute retains the Senate provisions and, in addition, authorizes contracting officers to request cost or pricing data for defense and civilian procurements under $100,000. Obtaining such data for small dollar contracts has proven to be a problem in purchasing spare parts, where excessive over-charges have become legendary.

**Section 2713—Automated Data Processing Dispute Resolution**

*Senate amendment*

The Senate amendment contains no provision on automated data processing dispute resolution.

*Conference substitute*

The conference substitute amends Section 111 of the Federal Property and Administrative Services Act of 1949 to provide an alternate forum for resolving contractual disputes involving procurements of automated data processing (ADP) equipment and services conducted under Public Law 89–306 (the Brooks Act). This provision applies only to those automated data processing procurements conducted under the Brooks Act, and it does not apply to those ADP procurements exempted under the 1982 Department of Defense Authorization Act. ADP procurements conducted by DOD are exempt from the Brooks Act only if the equipment and services are primarily for functions involving intelligence, cryptology, command and control, weapon systems, or similar type systems. Protests over ADP procurements in those areas not covered by the Brooks Act will continue to be heard by the GAO or the courts, as under current practice.

The Brooks Act, enacted in 1965, provides the General Services Administration (GSA) with the sole authority to procure ADP equipment and services for federal agencies either by conducting the procurement on behalf of the agency, or by granting a delegation of procurement authority to the agency to conduct its own procurements. The Brooks Act has opened the federal marketplace to all responsible computer companies. However, due to the increasing number of computer procurements conducted every year, coupled with the complexity of the technology, the current informal process of resolving conflicts between the buying agency and the suppliers has become cumbersome and prolonged. Further, charges have been made by both the agencies and the contractors that GSA's current process does not provide an objective forum for dispute resolution. The conferees believe that it has become increasingly apparent that a new forum is needed to provide a fair, equitable and timely remedy in this area.

The conference substitute provides that remedy by authorizing the GSA Board of Contract Appeals to consider protest cases involving ADP procurements conducted under P.L. 89–306. The Board is well suited to hear protests of this nature. First, the Board can use already established procedures to hold hearings, compel production of documents, obtain testimony of witnesses, and conduct cross-examination under oath. Second, the Board can use the

authority which GSA curr
revoke, suspend or modify a
Further, the Board is autho
was awarded pursuant to P.L
The conference substitute
held by the Board within ten
Board then issue its final dec
date of the protest unless its
unique circumstances requi
Based upon the results of th
pend the delegation of procu
pending. The suspension of
shall not be ordered if the ag
pelling circumstances exist.
authorizes the Board to awa
such protest action is sustain
The conferees recognize th
and innovative method of h
and complex nature. The co
equipped to provide timely r
curing agencies and the sup
ices. To avoid disrupting legi
prevent protest actions take
tract performance, the Board
in the process any protest ac
or which, on its face, does n
The conference substitute
sion which should allow Cong
uation of the Board's operat
putes prior to the considerati

**Subtitle B—Amend**

**Pro**

**Section 2721—De**

*Senate amendment*

The Senate amendment co
the existing policy section in

*Conference substitute*

The conference substitute
the Armed Services Procure
procurement policy which, f
ment of Defense, the milita
National Aeronautics and S
open competitive procedure
The other policy statements
are intended to conform with
Office of Federal Procuremen

e sions and, in
juc ost or pricing
ler $100,000. Obtain-
oven to be a problem
over-charges have

ispute Resolution

n on automated data

111 of the Federal
949 to provide an al-
s involving procure-
ipment and services
ks Act). This provi-
essing procurements
not apply to those
Department of De-
nducted by DOD are
ent and services are
ryptology, command
stems. Protests over
l by the Brooks Act
ourts, as under cur-

he General Services
ty procure ADP
it y conducting
y cing a delega-
conduct its own pro-
eral marketplace to
due to the increas-
ted every year, cou-
he current informal
ing agency and the
ed. Further, charges
he contractors that
ective forum for dis-
has become increas-
rovide a fair, equita-

nedy by authorizing
er protest cases in-
P.L. 89–306. The
ure. First, the Board
ld hearings, compel
witnesses, and con-
e Board can use the

authority which GSA currently has under the Brooks Act to revoke, suspend or modify a delegation of procurement authority. Further, the Board is authorized to suspend any contract which was awarded pursuant to P.L. 89–306.

The conference substitute requires that an initial hearing be held by the Board within ten days of the filed protest, and that the Board then issue its final decision within 45 working days from the date of the protest unless its chairman determines that specific and unique circumstances require a longer period for consideration. Based upon the results of the initial hearing, the Board can suspend the delegation of procurement authority while the protest is pending. The suspension of a solicitation or contract performance shall not be ordered if the agency establishes that urgent and compelling circumstances exist. In addition, the conference substitute authorizes the Board to award the costs of pursuing a protest if such protest action is sustained by the Board.

The conferees recognize that these provisions provide a unique and innovative method of handling protests of a highly technical and complex nature. The conferees believe that the Board is well equipped to provide timely resolution of conflicts between the procuring agencies and the suppliers of computer products and services. To avoid disrupting legitimate procurements, and especially to prevent protest actions taken in bad faith from interrupting contract performance, the Board is authorized to dismiss at any point in the process any protest action that it determines to be frivolous or which, on its face, does not state a valid basis for the protest.

The conference substitute establishes a three-year sunset provision which should allow Congress to make a full and objective evaluation of the Board's operations in resolving ADP contractual disputes prior to the consideration of reauthorization.

## Subtitle B—Amendments to the Armed Services Procurement Act

### Section 2721—Defense Procurement Policy

*Senate amendment*

The Senate amendment contains no provisions directly amending the existing policy section in the Armed Services Procurement Act.

*Conference substitute*

The conference substitute amends the existing policy section in the Armed Services Procurement Act to set forth broad defense procurement policy which, first and foremost, directs the Department of Defense, the military services, the Coast Guard, and the National Aeronautics and Space Administration to use full and open competitive procedures in acquiring property and services. The other policy statements included in the conference substitute are intended to conform with the policies set out in section 2 of the Office of Federal Procurement Policy Act.

### Sections 2722 and 2723

*Senate amendment and conference substitute*

The remaining sections under Subtitle B of the conference substitute parallel sections 2711 and 2712 of Subtitle A and the explanations of the provisions are the same and the conferees' intentions with respect to these provisions are the same.

## Subtitle C—Amendments to the Office of Federal Procurement Policy Act

### Section 2731—Definitions

*Senate amendment*

The Senate amendment did not amend the OFPP Act.

*Conference substitute*

The conference substitute defines the terms "full and open competition" to mean that all responsible sources are permitted to submit sealed bids or competitive proposals; "competitive procedures" to mean the procedures under which an agency enters into a contract pursuant to full and open competition; and "responsible source" to mean a prospective contractor who is capable of satisfying the agency's needs, considering resources, delivery or performance schedule, performance record, integrity and business ethics, organization and experience, equipment and facilities, and any other qualifications. These terms are used throughout the conference substitute.

### Section 2732—Procurement Notice and Records; Advocate for Competition

#### (1) Procurement Notice Requirements

*Senate amendment*

The Senate amendment establishes notice provisions in the Armed Services Procurement Act and the Federal Property and Administrative Services Act which require a notice to be published in the Commerce Business Daily for (1) prospective competitive and noncompetitive contracts over $10,000, and (2) contract awards over $10,000 for those contracts which are likely to result in the award of subcontracts. The burden is placed on the procuring agency, under this provision, to furnish the information for publication to the Secretary of Commerce, who is responsible for publishing the notice promptly in the Commerce Business Daily.

The Senate amendment establishes time periods for publication, specifies the information which a proper notice should include, and provides exceptions to the notice requirement which are separate but identical in almost all cases to the exceptions for noncompetitive procedures.

*Conference substitute*

The conference substitute retains, with minor modifications, the notice requirements set forth in the Senate amendment, but con-

solidates the dual-conform
ian procurement statutes
in the Office of Federal P

(2) F

*Senate amendment*

The Senate amendmen
tracting activities by req
a record, by fiscal year, o
chases) in which noncom
tion to be included in th
quarterly basis to the F
nates the contractor wh
ices which were obtaine
noncompetitive procedur
the procuring agency w
award.

*Conference substitute*

The conference substit
Senate amendment, agai
fense and civilian procu
the OFPP Act, but expa
all procurements—comp
ized file. This shoul
access to such informa
public.

(3) A

*Senate amendment*

The Senate amendme
position of advocate fo
moting competition in
agency competition adv
level to directly influen
within the agency, whil
vidual procurements. T
assigning duties to the
with the advocate's res
the position of competi
individual who is resp
specific agency procure

*Conference substitute*

The conferees recogn
tition advocate and th
all levels are made
become firmly commit
ference substitute exp
and requires the estal
petition in each procu

solidates the dual-conforming amendments to the defense and civilian procurement statutes by placing a uniform notice requirement in the Office of Federal Procurement Policy Act.

### (2) Record Requirements

*Senate amendment*

The Senate amendment facilitates congressional oversight of contracting activities by requiring agencies to establish and maintain a record, by fiscal year, of the procurements (other than small purchases) in which noncompetitive procedures are used. The information to be included in the record, which would be transmitted on a quarterly basis to the Federal Procurement Data System, designates the contractor who received the award, the property or services which were obtained, the dollar value, the reason for using noncompetitive procedures, and the positions of the individuals in the procuring agency who required and approved the sole-source award.

*Conference substitute*

The conference substitute retains the record requirements of the Senate amendment, again consolidating the amendments to the defense and civilian procurement statutes into a uniform provision in the OFPP Act, but expands application of this provision to include all procurements—competitive and noncompetitive—in a computerized file. This file should be indexed in a manner to provide ready access to such information by other agencies, Congress, and the public.

### (3) Advocate for Competition

*Senate amendment*

The Senate amendment establishes in each executive agency the position of advocate for competition with responsibilities for promoting competition in the agency's procurement process. The agency competition advocate is designed to be at a sufficiently high level to directly influence the procurement poilicies and procedures within the agency, while not being directly responsible for the individual procurements. The head of each agency is prohibited from assigning duties to the competition advocate which are inconsistent with the advocate's responsibility to promote competition. As such, the position of competition advocate should not be assigned to any individual who is responsible for the initiation or conduct of any specific agency procurement.

*Conference substitute*

The conferees recognize the importance of the position of competition advocate and the need to ensure that key Federal officials at all levels are made aware of the benefits of competition and become firmly committed to its use. To further these goals, the conference substitute expands the agency advocate's responsibilities and requires the establishment of an additional advocate for competition in each procuring activity.

The substitute requires the competition advocates to challenge barriers to, and promote full and open competition in, the procurement of property and services. Under the review and approval procedures established by the conference substitute, the procuring activities' competition advocates are responsible for approving all noncompetitive contract awards which involve expenditures exceeding $100,000 but less than $1,000,000. Further, the agency advocate is given the additional responsibilities of recommending to the agency's senior procurement executive (1) goals and plans for increasing competition on a fiscal-year basis, and (2) a system of personal and organizational accountability designed to encourage the procurement workforce to emphasize competition.

The conferees recommend that the performance ratings of procurement personnel include an appraisal of their efforts to promote competition in agency procurements.

### (4) Annual Report on Competition

*Senate amendment*

The Senate amendment requires the head of each executive agency to issue an annual report to Congress on the agency's use of competition in contracting. Specifically, the report should provide an overview of the actions taken by the agency to increase competitive contracting and reduce the number and dollar value of noncompetitive contracts, and the activities and accomplishments of the agency's advocate for competition.

*Conference substitute*

The conference substitute incorporates the annual report requirement from the Senate amendment and establishes January 31 as the deadline for submission to Congress for fiscal years 1986 through 1990.

### (5) Competition Requirement

*Senate amendment*

The Senate amendment has no comparable provision.

*Conference substitute*

The conference substitute amends Section 16(1) of the OFPP Act (executive agency responsibilities) to require the use of full and open competition in executive agency procurements of property and services. Language contained in this substitute requires agencies, when using competitive procedures, to establish policies, procedures, and practices necessary to ensure that a sufficient number of sealed bids or competitive proposals are received from responsible sources to fulfill the government's requirements (including performance and delivery schedules) at the lowest reasonable cost considering the nature of the property or services procured. This requirement applies to all agency procurements, including those made under set-aside programs.

**Subtitle D—Amendments**

**Section 2751—P**

*Senate amendment*

The Senate amendment
General Accounting Office b

*Conference substitute*

The conferees believe tha
necessary to insure that th
and that vendors wrongly e
contracts receive equitable
ence substitute adds a new
United States Code, which
function currently in opera
(GAO). The provisions of th
15, 1985.

The conference substitute
keyed to the procedures co
licitation, notice, evaluatio
system further relies on re
ment, as expanded in the c
ability of information need
to make determinations in
ested parties to identify,
and awards which they bel

The Comptroller Genera
protests. The conferees do
decide matters dealing wi
responsibilities under the
size standards or to issue
nesses. Finally, intereste
Services Administration
computer procurements n
the GAO and the GSA boa

Any actual or prospecti
interest would be affecte
procurement contract by
agency's solicitation, awa
with the Comptroller Ge
section 307 of the Feder
Act and section 2310 of
subjects of protests to GA
GSA board.

Once a protest has bee
al shall notify the execu
ceipt of the protest. The
(10 if the Comptroller G
spond. the Comptroller
working days (45 calen
Comptroller General ma
for specific protests, on

### Subtitle D—Amendments to the Budget and Accounting Act

### Section 2751—Procurement Protest System

*Senate amendment*

The Senate amendment contains no provisions regarding the General Accounting Office bid protest system.

*Conference substitute*

The conferees believe that a strong enforcement mechanism is necessary to insure that the mandate for competition is enforced and that vendors wrongly excluded from competing for government contracts receive equitable relief. To accomplish this, the conference substitute adds a new subchapter to Chapter 35 of Title 31, United States Code, which codifies and strengthens the bid protest function currently in operation at the General Accounting Office (GAO). The provisions of this section become effective on Janaury 15, 1985.

The conference substitute establishes an enforcement mechanism keyed to the procedures contained in the Senate amendment for solicitation, notice, evaluation, and award. The procurement protest system further relies on record requirements in the Senate amendment, as expanded in the conference substitute, to insure the availability of information needed not only by the Comptroller General to make determinations in procurement protests, but also by interested parties to identify, and initiate action against, solicitations and awards which they believe are unlawful.

The Comptroller General is not given exclusive authority to hear protests. The conferees do not intend, for example, that the GAO decide matters dealing with the Small Business Administration's responsibilities under the Small Business Act to establish industry size standards or to issue Certificates of Competency to small businesses. Finally, interested parties with recourse to the General Services Administration Board of Contract Appeals in disputed computer procurements may not protest the same action to both the GAO and the GSA board.

Any actual or prospective bidder of offeror whose direct economic interest would be affected by the award of or failure to award a procurement contract by an executive agency may challenge the agency's solicitation, award or proposed award by filing a protest with the Comptroller General. Final agency determinations under section 307 of the Federal Property and Administrative Services Act and section 2310 of title 10, United States Code, may be the subjects of protests to GAO, the courts, and where appropriate, the GSA board.

Once a protest has been filed with GAO, the Comptroller General shall notify the executive agency involved within one day of receipt of the protest. The executive agency then has 25 working days (10 if the Comptroller General selects the "express option") to respond. the Comptroller General must issue his opinion within 90 working days (45 calendar days under the express option). The Comptroller General may extend the deadlines when appropriate for specific protests, on a case-by-case basis; the conferees regard

such extensions as exceptional, however, and to be used in unique circumstances only.

If, when a protest is filed, the contract in question has not yet been awarded, an award may not be made unless the head of procuring activity responsible finds and reports to the Comptroller General that urgent and compelling circumstances which significantly affect the interests of the United States will not permit awaiting the Comptroller General decision. (This finding may be made only if the award is likely to occur within 30 calendar days.) If a protest is filed within 10 days after award of the contract, performance shall cease and all related activities which may result in additional obligations being incurred by the United States must be suspended, unless the head of the procuring activity informs the Comptroller General that urgent and compelling circumstances which significantly affect interests of the United States will not permit waiting for the Comptroller General's decision, or that performance of the contract is in the best interest of the United States.

Before notifying the Comptroller General that continued performance of a disputed contract is in the government's best interest, however, the head of the procuring activity should consider potential costs to the government from carrying out relief measures as may be recommended by the Comptroller General if the protest is subsequently sustained. This is to insure that if the Comptroller General sustains a protest, such forms of relief as termination, re-competition, or re-award of the contract will be fully considered for recommendation. Agencies in the past have resisted such recommendations on the grounds that the government's best interest would not be served by relief measures of this sort because of the added expenses involved. This provision is designed to preclude that argument in the future, and thus to avoid prejudicing those relief measures in the Comptroller General's review.

If the Comptroller General determines that a protested procurement action has involved government non-compliance with statutes or regulations, the Comptroller General is required to recommend corrective action to the executive agency responsible, and the head of the procuring activity involved must notify the Comptroller General if the agency has not implemented the recommendations within 60 calender days. This provision does not preclude the Comptroller General from requesting the agencies to notify the GAO of the status of any other recommendation. An annual report of all notifications received by the Comptroller General, describing each instance of non-implementation, must be submitted to Congress.

The Comptroller General may grant to a successful protesting party reimbursement for expenses of preparing bids or proposals related to the disputed contracting action and for costs incurred in making the protest. These costs shall be paid from the procurement funds (not necessarily funds for the specified procurement which was challenged) of the executive agency involved.

The conference substitute provides that the Comptroller General may dismiss at any point in the process a filing determined to be frivolous or to lack a valid basis for protest. This provision reflects the intent of the conferees to keep proper contract awards or due

performance of contract
which interested parties
exploit. Finally, the conf
will declare monetary
have unfairly excluded
cases involving minor te

The Comptroller Gen
agencies requests conce
conferees intend that th
to continue to process t
the one used for bid prot

The conference substit
native remedies. The s
alter the current rights
dicial review of any all
regulation. Further, doc
decision on a procureme
sion must be made a pa
able to the courts in th
involving the procureme

**Subtitle E—E**

**Secti**

*Senate amendment*

The Senate amendme
proposals issued on or a

*Conference substitute*

The conference substi
proximately 270 days f
the effective date. The
which allows approxima
fective date for the bid

**Section 2752—Modifica**

*Senate amendment*

The Senate amendme

*Conference substitute*

The conference subst
Regulation (FAR) shall
to the requirements se
also be made to the F
directives issued by the

The conferees note w
tablished to maintain
maintenance is jointly
cils, the Defense Acqui
by the Secretary of D
Council (CAAC), establ
tenance procedures pre

ɔd in unique

ıestıon has not yet ɛss the head of pro- to the Comptroller ınces which signifi- es will not permit ıis finding may be ı 30 calendar days.) ɪf the contract, per- which may result in ited States must be ctivity informs the ling circumstances ɔed States will not ɛcision, or that per- ɛest of the United

ıat continued per- nment's best inter- should consider po- ɔut relief measures neral if the protest if the Comptroller as termination, re- fully considered for sisted such recom- ent's best interest sort because of the signed to preclude l prejudicing those ie

ɪ ed procure- ia with statutes red to recommend sible, and the head ɛ Comptroller Gen- recommendations not preclude the cies to notify the An annual report General, describing submitted to Con-

ccessful protesting bids or proposals r costs incurred in n the procurement rocurement which

mptroller General determined to be ; provision reflects act awards or due

performance of contracts from being interrupted by technicalities which interested parties in bad faith might otherwise attempt to exploit. Finally, the conferees expect that the Comptroller General will declare monetary awards only in cases where the agencies have unfairly excluded vendors from procurements, and not in cases involving minor technicalities.

The Comptroller General currently receives from courts and agencies requests concerning the propriety of procurements. The conferees intend that the Comptroller General have the discretion to continue to process these requests in a manner consistent with the one used for bid protests.

The conference substitute also includes a section regarding alternative remedies. The subchapter regarding bid protests does not alter the current rights of any person to seek administrative or judicial review of any alleged violation of a procurement statute or regulation. Further, documents related to a Comptroller General's decision on a procurement and the agency's response to such decision must be made a part of the agency record and be made available to the courts in the event a suit is filed against the agency involving the procurement.

**Subtitle E—Effective Date: Regulations; Study**

**Section 2751—Effective Date**

*Senate amendment*

The Senate amendment applies to any solicitations for bids or proposals issued on or after the date 270 days after enactment.

*Conference substitute*

The conference substitute establishes April 1, 1985, which is approximately 270 days from the anticipated date of enactment, as the effective date. The substitute also establishes January 15, 1985, which allows approximately 180 days for implementation, as the effective date for the bid protest provision.

**Section 2752—Modification of the Federal Acquisition Regulation**

*Senate amendment*

The Senate amendment has no comparable provision.

*Conference substitute*

The conference substitute requires that the Federal Acquisition Regulation (FAR) shall be modified by March 31, 1985, to conform to the requirements set forth in this substitute. Modification shall also be made to the FAR within this time period to reflect policy directives issued by the Office of Federal Procurement Policy.

The conferees note with considerable concern that the system established to maintain the FAR is not working. Presently, FAR maintenance is jointly vested in two procurement regulatory councils, the Defense Acquisition Regulatory (DAR) Council, established by the Secretary of Defense, and the Civilian Agency Acquisition Council (CAAC), established pursuant to the FAR. Under the maintenance procedures prescribed by the FAR, both councils must con-

sider and approve each proposed modification or addition to the FAR.

Given this cumbersome maintenance system, the conferees note that, to date, the regulatory councils have failed to implement both statutory changes and OFPP policy directives. Given the currently limited role accorded to OFPP in the FAR maintenance system, the conferees are concerned that the continuing lack of leadership for the FAR maintenance system will perpetuate the untimely implementation of FAR changes required by statute or OFPP policy directives.

By statute, the OFPP Administrator is empowered to issue procurement regulations, procedures or forms when the two regulatory councils are unable to agree or fail to take action. In the event that conflict or inaction precludes the two councils from meeting the April 1, 1985, deadline for implementing the modifications to the FAR pursuant to this substitute, the OFPP Administrator must intervene to issue the regulations by this deadline. Further, the conferees believe that the OFPP Administrator should be accorded a greater role in managing the FAR maintenance process on a continuing basis.

### Section 2753—Study

*Senate amendment*

The Senate amendment has no comparable provision.

*Conference substitute*

The conference substitute requires the Office of Federal Procurement Policy to recommend to Congress a plan for increasing the use of full and open competition in the procurement of professional, technical and managerial services. This category of procurements often involves the use of evaluation criteria, other than price, in the selection of the winning vendor.

The Office of Federal Procurement Policy is directed to recommend competitive selection procedures for procurements where price is not a significant factor and the agency has determined a legitimate need for the best or highest quality proposal. Such a plan should include requirements for the agencies to follow to ensure that all responsible vendors are allowed to compete for the above procurements and that fair and reasonable prices are paid for the service. OFPP should consider, as a possible alternative prior to designing a plan, a system in which all qualified persons capable of providing specified services are placed on a list maintained by the government, in which each of those persons is encouraged to submit a competitive proposal in response to each solicitation for such services, and in which the award is made to the bidder on the list who can perform the service for the lowest overall cost.

The Office of Federal Procurement Policy should also, in conducting the study, consult with experts in such fields as soil engineering, real estate appraising, surveying and mapping, and other professional services which do not fit within the traditional concept of Federal procurement procedures.



## TITLE VIII—FEDERAL CRE

### Recapitalization of the Natio

### Share Insurance Fu

Sections 2801–2812 authorizes
istration (NCUA) to impose a ca
unions equal to 1 percent of the
raising the capital of the fund to
The recapitalization of NCUA
of the three federal deposit
manner. The conferees agree tha
gressional review of deposit insu
surance reports submitted by th
ant to the Garn-St Germain Ac
proposals urged by various depo
al insuring agencies. However,
sections 2801–2812 and the need
nibus Reduction Act Conference

### Tax Exempti

### Central Liquidity F

Established in 1978 by Public
tions and Interest Rate Control
for credit unions. The CLF is a
owned by credit unions), is on-
manged by the NCUA. Section 2
actment of P.L. 95–630 which p
Federal Reserve Banks and Fed
explicitly exempt the CLF from
oversight and explicitly exempts
tive date of this provision would
Therefore, the House receded to

### Elimination of Treasury Fees o

Section 2814 eliminates the fe
institutions for depositing payro
ployees. The House passed a sim
H.R. 3879, was approved by the
1984. The House receded to the S

## TITLE IX—MISCELL

### Section 2901. Cost Savin

*House amendment*

The House amendment conta
tion of obligations for various ty

*Senate amendment*

Section 1603 of the Senate a
amount which may be obligate

35-426 O - 84 - 91