# In The United States Court of Federal Claims

BID PROTEST

| | | |
|---|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P., | § | |
| Plaintiff, | § | |
| v. | § | No. 06-396C |
| | § | (Judge Williams) |
| THE UNITED STATES, | § | |
| Defendant, | § | |
| and | § | |
| LOCKHEED MARTIN AERONAUTICS CO., | § | |
| Intervenor. | § | |

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

L-3 Communications Integrated Systems L.P. ("L-3") files this Response to Defendant's Motion to Dismiss, asking the Court to deny the Motion for the following reasons.

**INTRODUCTION**

Neither the Tucker Act nor the Anti-Assignment Act deprives this Court of jurisdiction over L-3's claims. In fact, the Court has already determined that it has jurisdiction over L-3's implied contract claim under the Tucker Act. The Anti-Assignment Act does not bar L-3's claims because the assignment the Government challenges does not implicate the purposes of the Act, the Act does not apply to claims that have not accrued, the Act does not apply to the sale of a business unit, and the Government has recognized the assignment and therefore waived any right to object to it. For these reasons, the Government's Motion to Dismiss should be denied.

## ARGUMENT AND AUTHORITIES

### I. This Court has jurisdiction over L-3's implied contract claim.

The Government argues that this Court has no jurisdiction over L-3's implied contract claim, quoting *Block v. United States*, 66 Fed. Cl. 68, 76 (2005), for the proposition that the implied in fact contract to fairly consider bids no longer survives as a basis for recovery in bid protests. In response, L-3 quotes this Court's recent decision in this case, which did not follow the holding in *Block*:

> Before enactment of the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870 (1996) (ADRA), the Court of Federal Claims' jurisdiction over a bid protest was predicated on the implied contract between the Government and prospective bidders to treat the bidder's proposal fairly, equally, and consistently with the agency's solicitation of bids. *Keco Indus., Inc. v. United States*, 192 Ct. Cl. 773, 780, 428 F.2d 1233 (1970); *Heyer Prods. Co. v. United States*, 147 Ct. Cl. 256, 177 F. Supp. 251, 252 (1959) ("If in the instant case the [agency], in rejecting plaintiff's bid, did not act in good faith, but arbitrarily and capriciously, it breached its implied promise when it solicited bids, for the breach of which plaintiff may recover the expenses it had incurred in submitting its bid.") Although ADRA obviated the need to base the COFC's protest *jurisdiction* on a breach of this implied-in-fact contract to consider bids fairly, the statute in no way eliminated a protestor's ability to challenge arbitrary and capricious conduct, such as bias or an unfair evaluation, which would also constitute a breach of the implied contract of fair dealing. *See, e.g., Hunt Bldg. Co. v. United States*, 61 Fed. Cl. 243, 273 (2004); *Unified Architecture & Eng'g, Inc.*, 46 Fed. Cl. 56, 60-61, *aff'd*, 251 F.3d 170 (Fed. Cir. 2000).[1] (footnote omitted) Section 1491(b) expressly provides that this Court has jurisdiction over "an action by an interested party objecting . . . to the award of a contract." 28 U.S.C.§ 1491(b) (2000). The statute does not limit the legal theories on which such an "objection" to a contract award might be based. Whether conduct be characterized as an arbitrary and capricious agency action or a breach of the implied duty to consider proposals fairly, such conduct is actionable in a bid protest.
>
> Plaintiff's claim of a breach of the implied duty to consider its proposal fairly and honestly is quintessentially a challenge to the procurement process.

---

[1] L-3 points out that the Court in *Unified Architecture* observed: "[T]he amendments [in ADRA] do not supersede the implied contract theory of good faith and honest consideration as defendant contends. The court finds that the ADRA makes no mention of the breach of implied contract theory, nor does it alter § 1491(a) of the Tucker Act, which authorizes this court to hear claims against the United States that are founded upon implied contracts with the United States." *Id*. at 60.

*L-3 Communications Integrated Systems, L.P. v. United States*, 79 Fed. Cl. 453, 461-62 (2007)(emphasis in original). Thus, this Court has determined that it has jurisdiction over L-3's implied contract claim.[2] There is no basis for its dismissal.

**II. Raytheon's transfer of rights to L-3 did not violate the Anti-Assignment Act.**

The two anti-assignment statutes upon which Defendant relies, the Assignment of Contracts Act and the Assignment of Claims Act (together "the Act"), do not bar L-3's claims in this suit. First, the Assignment of Contracts Act involves executory contracts, *see Tuftco Corp. v. United States*, 222 Ct. Cl. 277, 613 F.2d 740, 744 n. 4 (1980), and L-3's claim in this case does not involve an executory contract. The Assignment of Claims Act pertains to claims for work already done. *Id*. L-3's claim does not involve work already done for the Government.

Further, the strictures of the Act do not apply because (1) the transfer at issue does not implicate the purposes of the Act, (2) the Act does not apply to claims that have not accrued, (3) the Act does not apply to the sale of a business unit, and (4) Defendant has recognized the assignment and therefore waived any right to object to it.

**A. Raytheon's transfer to L-3 does not implicate the purposes of the Act.**

The United States Supreme Court has admonished that the plain language of the Act is not controlling because courts should consider whether the assignment in question implicates the purposes of the Act. *Goodman v. Niblack*, 102 U.S. 556, 560-61 (1880); *see also United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373 (1949)("The rigor of this rule was very early relaxed in cases which were thought not to be productive of the evils which the statute was designed to obviate."). The primary purpose of the Act was preventing "persons of influence from buying up

[2] The Government provides no authority for its claim that any implied contract theory would be restricted to pre-award protests. The clear language of the statute provides otherwise: "Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded." 28 U.S.C. § 1491(b)(1).

claims against the United States, which might then be improperly urged upon officers of the Government." *Aetna*, 338 U.S. at 373. The prohibition against assignment of claims was designed to protect the Government from "frauds and mischiefs." *Spofford v. Kirk*, 97 U.S. 484, 489 (1878). It also enables the Government to deal with the original claimant so the Government does not have to examine the validity of specific assignments, thereby eliminating the confusion of conflicting demands for payment and the risk of double payment or multiple liability. *American Nat'l Bank & Trust Co. v. United States*, 23 Cl. Ct. 542, 546 (1991)(purpose of Act is "to protect the Government from secret assignment arrangements, to prevent possible multiple claims and to make unnecessary the investigation of alleged assignments.").[3] When the purposes of the Act are not implicated, its prohibition against the assignment of claims does not apply.

In this case, the Government will not be subject to multiple claimants on the same claim. L-3 claims the right to protest the award of the C-5 AMP contract as a successor-in-interest to Raytheon as a result of L-3's purchase of Raytheon's Aircraft Integrations Systems ("AIS") Business Unit. *See* Appendix A-5 through A-148. It was that unit that submitted the proposal on the C-5 AMP contract. Previously, L-3, acting as a successor-in-interest based upon the same Asset Purchase Agreement, protested the 2001 award of the C-130 AMP contract to The Boeing Company in an action before the GAO. *Lockheed Martin Aeronautics Co. et al*., Comp. Gen. Dec. B-295401 *et al*., 2005 CPD ¶ 41, at 5 n. 8. The Government made no objection to L-3's relying upon the transfer pursuant the Asset Purchase Agreement,[4] the protest was successful, and L-3 became entitled to reimbursement of its bid and protest costs. *Id*. at 15. Raytheon did

[3] A further purpose, to preserve the Government's defenses against an assignor that it would not have against the assignee, has not been adopted by the Supreme Court but has been attributed to "[o]ther courts." *United States v. Shannon*, 342 U.S. 288, 291-92 (1952). Here, the Government has asserted multiple defenses to L-3's claims, some it would not have had against the assignor.

[4] The Government has thus waived any objection based on the Act. *See* Part D *infra.*

not join the suit to assert a claim. Nor has Raytheon joined this suit. As demonstrated not once, but twice, the Government has no exposure to multiple claims.

**B. The Act does not apply to claims that have not accrued**.

There is good reason that the Government has no exposure to multiple claims. Raytheon has no claim. When Raytheon owned the AIS Business Unit, it had no right to protest either the C-130 AMP award or the C-5 AMP award because the claims had not accrued. *See id*. at 2 and Court's Order of November 16, 2007. This Court has determined that the claim regarding the C-5 AMP accrued in February 2006. Court's Order of November 16, 2007 at 16. When it accrued, L-3 owned the AIS Business Unit. L-3, as the rightful transferee of all claims related to the AIS Business Unit arising after the closing of the Asset Purchase Agreement,[5] has the right to pursue the claim. The Act does not bar the claim because it had not accrued when the transfer occurred, and the Act does not apply to unaccrued claims. *See Bailey v. United States*, 78 Fed. Cl. 239, 267 (2007) ("transfer of a property interest based on an agreement predating the accrual of a claim does not violate the Anti-Assignment Act, even if claim is thereby assigned."); *Mitchell v. Mitchell*, 41 Fed. Cl. 617, 625 (1998) (Act does not apply to unaccrued claim); *Poorvu v. United States*, 190 Ct. Cl. 640, 657 (1970) (Act applies only to claims existing at the time of transfer); *Rocky River Co. v. United States*, 169 Ct. Cl. 203, 206-07 (1965) (same).

The decision in *Bailey* postdates the decision in *Fireman's Fund Insurance Co. v. England*, 313 F.3d 1344, 1349 (Fed. Cir. 2002), where the court mentioned in dicta that default claims had not yet arisen when the assignment at issue was made. In *Fireman's Fund*, however, the only claims asserted were the claims related to delays in performance that the government had allegedly caused, not the claimed default by the contractor. *Id*. at 1347. The delay claims that the court found barred by the Anti-Assignment Act (and the Contract Disputes Act) had

[5] *See* Part C *infra*.

accrued before any assignment of claims. The case thus involves accrued, not unaccrued claims. In *Fireman's Fund*, the contractor on a government construction contract entered into a General Indemnity Agreement with a surety, Fireman's Fund. The Agreement provided that the contractor's assignment of claims to the surety relating to the bond or the contract covered by the bond was made only if and when the contract at issue was breached ("in case of a breach of construction contract"). *Id*. at 1346-47. That condition occurred upon the Government's termination of the contractor for default in January 1990 when the assignment then became effective. In April 1990, the surety and the Government entered into a takeover agreement under which the surety agreed to complete the contract. Subsequently, the surety submitted to the Board of Contract Appeals claims for delay by the Government, delay that occurred both pre-takeover and post-takeover. The Board dismissed the claims that arose pre-takover based on the Contract Disputes Act and the Anti-Assignment Act. These were claims that had accrued before the assignment became effective. The Board dismissed without prejudice and the appellate court did not consider the post-takeover delay claims that had not accrued when the assignment became effective. The appellate decision in *Fireman's Fund* therefore did not involve unaccrued claims. This case does.

### C. The transfer was part of the sale of a business unit, which is not subject to the Act.

The Asset Purchase Agreement dated January 11, 2002, provides that Raytheon ("Seller"):

> Shall sell, convey, assign and transfer to the Buyer, and the Buyer shall purchase and acquire from such Seller, all of such Seller's right, title and interest in and to the assets, properties and rights of such Seller, of every kind, nature, character and description (accrued, contingent or otherwise), tangible and intangible, real, personal or mixed, wherever located, existing as of the Closing which are utilized exclusively or primarily in the AIS Business (the "Acquired Assets"), including, without limitation, the following assets, properties and rights . . . .

> . . .
>
> (xiv) all actions, claims, causes of action, rights of recovery, choses in action, rights of setoff of any kind, and all rights under and pursuant to all indemnities, warranties, representations and guarantees arising before, on or after the Closing relating exclusively or primarily to the AIS Business, any Acquired Assets or any Assumed Liabilities . . . .

Appendix 5, A-17, A-20. L-3 Communications Integrated Systems L.P. was Buyer of all United States AIS assets. *See* Appendix 5, A-16; Appendix 152, A-152-53. The sale thus involved an entire business unit.

This Court has recognized that a transfer incident to the sale of an entire business is considered to have occurred by operation of law, and the assignment is exempted from the anti-assignment statute.[6] *See Lyons Security Servs., Inc. v. United States*, 38 Fed. Cl. 783 (1997)[7] (citing *J.I. Case Co*., Comp. Gen. Dec. B-239178, 90-2 CPD ¶ 108, at 3) ("The transfer or assignment of rights and obligations arising out of a bid or proposal is permissible only where the transfer is to a legal entity which is the complete successor-in-interest to the bidder or offeror by virtue of merger, corporate reorganization, the sale of an entire business or the sale of an entire portion of a business embraced by the bid or proposal.") *See also McNeil Technologies, Inc*., Comp. Gen. Dec. B-254909, 94-1 CPD ¶ 40, at 7-8 (1994).

---

[6] The Government relies upon *Westinghouse Electric Co. v. United States*, 56 Fed. Cl. 564 (2003), *aff'd*, 97 Fed. Appdx. 931 (Fed. Cir. 2004), to argue that a sale of assets involves a voluntary transaction that falls within the scope of the Act. Motion to Dismiss at 21. But the court in *Westinghouse* emphasized that the sale at issue did not involve the transfer of the entire business unit that would have been responsible for the contract. *Id*. at 570.

[7] The Government maintains that *Lyons* does not involve the Act but rather involves FAR 14.404-2. But in determining that FAR 14.404-2 did not bar the contract award to Lyons, the court first specifically determined that the Act was not violated. *Lyons* at 786. The Court determined, "FAR 14.404-2 does not bar the bid transfer or the award to Lyons, because neither violates the anti-assignment statutes." *Id.* Further, although the Government argues that Delaware law applies, federal law determines whether the Act has been violated.

**D. When L-3 first asserted its rights under the Asset Purchase Agreement, the Government did not object and has therefore waived any objection based on the Act.**

After L-3 purchased the AIS Business Unit and was assigned its rights under the Asset Purchase Agreement, L-3 filed a protest before the GAO, protesting the award of the C-130 AMP contract to The Boeing Company because of the bias of the Source Selection Authority in the procurement process. *Lockheed Martin Aeronautics Co. et al*., Comp. Gen. Dec. B-295401 *et al*., 2005 CPD ¶ 41. As in this case, L-3 sought reimbursement of bid and proposal costs of Raytheon's AIS Business Unit as its successor-in-interest. *Id*. In its decision granting the protest, the GAO noted that the proposal for the C-130 AMP contract had been submitted by AIS. *Id.* at 5 n. 8. The GAO further noted, "L-3 Communications has submitted *uncontested* documentation indicating that it is the complete successor-in-interest to this business entity," citing to the Asset Purchase Agreement. *Id.* (emphasis added) The Government, fully aware of the Asset Purchase Agreement, did not object to the assignment of AIS's claims to L-3. Further, the GAO recommended that the Government pay L-3's bid and proposal costs as the successor-in-interest to Raytheon's AIS Business Unit. *Id*. at 15. In compliance, the Government necessarily recognized the assignment of the claim to L-3.

In this case, L-3 relies upon the same Asset Purchase Agreement and the same assignment, which the Government has previously recognized with no objection, to claim bid and proposal costs as successor-in-interest to Raytheon's AIS business unit. In February 2008, while this case was pending, counsel for the Government sought a copy of the Asset Purchase Agreement, the Bill of Sale and Letter Agreement, Appendix, A-322, 325, attached hereto, and, after review, stated, "The information you provided resolved our concerns." Appendix, A-328, attached hereto. The Government has therefore recognized the assignment under the

Agreement and waived any objection. This Court has determined, and the Government has acknowledged,[8] that the Government can waive the requirements of the Act if the Government recognizes the assignment. *See Tufto Corp. v. United States*, 222 Ct. Cl. 277, 285-86 (1980)(Where Government's dealings with the assignee indicate it acknowledges the assignee as the contractor, the Government has recognized the assignment.). *See also Norwest Bank Arizona v. United States*, 37 Fed. Cl. 605, 610 (1997); *American National Bank and Trust Co. v. United States,* 23 Cl. Ct. 542, 546 (1991); *United Pacific Ins. Co. v. United States,* 358 F.2d 966, 970 (1966). The Government recognized Raytheon's assignment of the AIS Business Unit to L-3, and its objection based on the Act must be rejected.

**III. L-3 is an interested party.**

L-3 is an interested party and has standing to bring this protest. As successor-in-interest to Raytheon's AIS business unit, L-3 has a claim as an actual offeror whose direct economic interest was affected by the Air Force's decision to award the C-5 AMP contract to Lockheed. At the time it submitted its proposal, the AIS Business Unit was a part of Raytheon. But, by virtue of the Asset Purchase Agreement, *see supra* Part C, L-3 became the successor-in-interest to Raytheon's participation in the C-5 AMP competition. As the only bidder other than Lockheed, L-3 had a substantial chance of securing the award in a fairly conducted procurement. L-3 is thus an interested party for purposes of this protest. *See Jensco Marine, Inc.*, Comp. Gen. Dec. B-278929.2 *et al.*, 98-2 CPD ¶ 92 at 8743 (finding agency properly awarded a contract to successor-in-interest to offeror where successor-in-interest acquired offeror's entire business, including that portion embraced by the proposal); *Keco Indus., Inc.*, Comp. Gen. Dec. B-207224, 82-2 CPD ¶ 165 (upholding award to successor-in-interest where transfer of a division

[8] Defendant's Motion to Dismiss at 13.

of one company to another included all rights, properties and assets that would have been employed to perform the contract).

## CONCLUSION

This Court has jurisdiction to proceed. Defendant's Motion to Dismiss should be denied.

Dated: May 16, 2008

s/ Paul W. Searles
Paul W. Searles
HAYNES AND BOONE, LLP
901 Main Street
3100 Bank of America Plaza
Dallas, Texas 75202
Telephone: (214) 651-5197
Telecopier: (214) 200-0705

**ATTORNEYS FOR L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P.**

Of Counsel:

Sharon N. Freytag
HAYNES AND BOONE, LLP
901 Main Street
3100 Bank of America Plaza
Dallas, Texas 75202
Telephone: (214) 651-5000
Telecopier: (214) 200-5940