AGREED-UPON COPY
FOR RELEASE
MAY BE MADE PUBLIC

No. 06-396C
(Judge Williams)
(Bid Protest)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

LOCKHEED MARTIN AERONAUTICS COMPANY,

Intervenor.

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor, 1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney
Department of Air Force
Arlington, VA

June 9, 2008

## TABLE OF CONTENTS


I. The Assignment of Claims Act Applies To The Transfer Of Claims For Which The Applicable Statute Of Limitations Has Not Yet Begun To Run ......... 1

II. Raytheon's Assignment Of Claims Implicates The Purposes Of The Assignment of Claims Act ........ 10

III. The Assignment Of Claims Act Applies To The Assignment Of Claims As Part Of A Sale Of A Business Unit ........ 12

IV. The Assignment of Claims Act Is Not Restricted To Claims For Completed Work ........ 15

V. The Government Has Not Waived The Assignment Of Claims Act ........ 16

VI. L-3's Other Arguments Are Without Merit ........ 19

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

### CASES

Bailey v. United States,
78 Fed. Cl. 239 (2007) .......... 5, 6

Burroughs Corp. v. United States,
223 Ct. Cl. 53,
617 F.2d 590 (1980) .......... 14

Cadwalder v. United States,
45 F.3d 297 (9th Cir. 1995) .......... 12

California-American Water Co. v. Dept. of Air Force,
2006 WL 1686139 (E.D. Ca. 2006) .......... 12

Centers v. United States,
71 Fed. Cl. 529 (2006) .......... 15

Diamond v. Federal Emergency Management Agency,
689 F. Supp. 163 (D.D.C. 1988) .......... 16

Lockheed Martin Aeronautics Co. et al.
Comp Gen. Dec. B-295401, 2005 CPD ¶
2005 WL 502840 (February 24, 2005) .......... 16

Curtis v. United States,
63 Fed. Cl. 172 (2004) .......... 15

Eagle Design & Management, Inc. v. United States,
63 Fed. Cl. 106 (2004) .......... 19

Fireman's Fund Insurance Co. v. England,
313 F.3d 1344 (Fed. Cir. 2002) .......... 1, 3, 4, 7

Foster v. United States,
221 Ct. Cl. 412,
607 F.2d 943 (1979) .......... 6, 7

In re Freeman,
489 F.2d 431 (9th Cir. 1973) .......... 12

Hobbs v. McLean,
117 U.S. 567 (1886) .......... 6

Holland v. United States,
62 Fed. Cl. 395 (2004) ........ 15

Jung v. United States,
701 F. Supp. 175 (E.D. Wis. 1988) ........ 15

Kingsbury v. United States,
215 Ct. Cl. 136,
563 F.2d 1019 (1977) ........ 11, 15

Knight v. United States,
596 F. Supp. 540 (M.D. Ga. 1984) ........ 18

L-3 Commnications Sys. L.P. v. United States,
79 Fed. Cl. 453 (2007) ........ 4

Lyons Security Services, Inc. v. United States,
38 Fed. Cl. 783 (1997) ........ 13

MCI Telecomm. Corp. v. United States,
878 F.2d 362 (Fed. Cir. 1989) ........ 19

MMR Holding Corp. v. United States,
2000 WL 1819443 (M.D. La. 2000) ........ 17

Massie v. United States,
166 F.3d 1184 (Fed. Cir. 1999) ........ 16

Mitchell v. United States,
41 Fed. Cl. 617 (1998) ........ 7

Naartex Consulting Corp. v. Watt,
722 F.2d 779 (D.C. Cir. 1983) ........ 11

NGC Investment and Development, Inc. and JDL Constr. v. United States,
33 Fed. Cl. 459 (1995) ........ 11

Poorvu v. United States,
190 Ct. Cl. 640,
420 F.2d 993 (1970) ........ 7, 8

Rex Service Corp. v. United States,
448 F.3d 1305 (Fed. Cir. 2006) ........ 19

Rocky River Co. v. United States,
169 Ct. Cl. 203 (1965) .................... 9

Scott v. United States,
78 Fed. Cl. 151 (2007) .................... 19

Singer v. United States,
126 Ct. Cl. 417,
115 F. Supp. 166 (1953) .................... 10

Spofford v. Kirk,
97 U.S. 484 (1878) .................... 10, 11

Thompson v. Commissioner,
205 F.2d 73 (3d Cir. 1953) .................... 18

Tuftco Corp. v. United States,
222 Ct. Cl. 277,
614 F.2d 740 (1980) .................... 15, 18, 19

United States v. Gillis,
95 U.S. 407 (1877) .................... 10

Westinghouse Electric Co. v. United States,
56 Fed. Cl. 564 (2003), aff'd,
97 Fed. Appdx 931 (Fed. Cir. 2004) .................... 13

## STATUTES

28 U.S.C. § 1491(b)(4) .................... 13, 19

31 U.S.C. § 203 .................... 8, 10, 11, 15

31 U.S.C. § 3727 .................... passim

31 U.S.C. §3727(a)(1)(b) .................... 3

41 U.S.C. § 15(a) .................... 2, 12, 13, 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P., Plaintiff, v. THE UNITED STATES, Defendant, and LOCKHEED MARTIN AERONAUTICS COMPANY, Intervenor. | ) | No. 06-396C (Bid Protest) (Judge Williams) |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

I. The Assignment of Claims Act Applies To The Transfer Of Claims For Which The Applicable Statute Of Limitations Has Not Yet Begun To Run

L-3 asserts that the Assignment of Claims Act, 31 U.S.C. § 3727, does not cover claims that have not yet accrued and for which the applicable statute of limitation has not yet begun to run. Pl. Op. 5-6.[1] There is no merit in this argument.

First, L-3's attempt to distinguish Fireman's Fund Insurance Co. v. England, 313 F.3d 1344 (Fed. Cir. 2002) is not persuasive. Pl. Op. 6. In that case, the Federal Circuit considered the attempt of Fireman's Fund, a surety, to assert claims that it had obtained through a Government contractor's assignment of its contract rights, including the right to assert contract-related claims against the United States. Fireman's Fund brought before the Board of Contract

[1] "Pl. Op." refers to Plaintiff's Response To Defendant's Motion To Dismiss, dated May 16, 2008.

Appeals ("the board") claims for Government delays both before and after the surety's execution of a takeover agreement with the Government. The board held that it lacked jurisdiction to consider the surety's claims for Government delay that occurred prior to the takeover agreement, and dismissed its claims for post-takeover Government delay without prejudice.

In that case, the General Indemnity Agreement between Summit, the contractor, and the surety, stated that in case of breach of the construction contract between Summit and the United States, Summit assigned to Fireman's Fund "all of their rights under the contracts" and "all ... their right, title, and interest in and to ... all ...claims ... which the Principal may have in any way arising out of or relating to" the bonds Firemen's Fund provided. The Federal Circuit held that Summit's transfer of contract rights, including the right to bring a claim against the United States, was void under both the Anti-Assignment Act, 41 U.S.C. § 15(a), and the Assignment of Claims Act, 31 U.S.C. § 3727(a)(1)(b). The Federal Circuit first addressed the Anti-Assignment Act and ruled:

> The assignment by Summit of "all of their rights under the contracts" violated the prohibition in 41 U.S.C. § 15(a) against the transfer of "any interest" in any contract involving the United States.

Id. at 1349.

Second, the Federal Circuit held that Summit's assignment of claims against the Government violated the Assignment of Claims Act, 31 U.S.C. § 3727, by ruling as follows:

> At the time the assignment of claims was made [by Summit], no claims had been allowed. Indeed, any claims against the Untied States arising from a default in the construction had not even arisen. Under Section 3727(a)(1)(b), the assignment of those claims in the General Indemnity Agreement was invalid.

Id. at 1349. The Federal Circuit thus held that it was not required that a specific claim against the

Government have actually arisen in order for the Assignment of Claims Act, 31 U.S.C. § 3727, to be applicable to that particular claim and make the assignment null and void as against the Government.

L-3 misconstrues the Federal Circuit's decision on this point by claiming that the delay claims that the Federal Circuit found barred by the Anti-Assignment Act (and the Contract Disputes Act) had accrued before there was any assignment of claims. Pl. Op. 5-6. That is not correct. In Fireman's Fund Insurance Co., the assignment of claims was part of the "General Indemnity Agreement" that was executed by Summit and Fireman's Fund at the time the surety provided the performance and payment bonds in 1988. Id. at 1346. Thereafter, the Government terminated the contract for default on January 16, 1990, because Summit failed to complete the contract by the scheduled date. Id. The Government and Fireman's Fund then entered into a takeover agreement on April 17, 1990, under which Fireman's Fund agreed to complete the contract. Id.

As the Federal Circuit ruled, the claims for Government-caused delay prior to the January 16, 1990 termination for default had not been allowed at the time that the assignment of claims was made by the parties in 1988, and any claims against the United States arising from the default termination on January 16, 1990 had not arisen in 1988. Under 31 U.S.C. § 3727(a)(1)(b), the assignment of those claims in the General Indemnity Agreement was invalid, the Federal Circuit held, including Summit's claims against the Government arising from the default termination. Thus, the Federal Circuit's decision in Fireman's Fund Insurance Corp. is directly contrary to L-3's argument and not dicta, as asserted by L-3. Pl. Op. 5-6. In short, there is no requirement that a claim have accrued for statute of limitations purposes in order for a party's assignment of that claim to be barred by the Assignment of Claims Act.

L-3 attempts to avoid the Federal Circuit's holding in Fireman's Fund Insurance Co. by claiming that the assignment of claims in the General Indemnity Agreement in that case was not "effective" when the agreement was signed by the parties in 1988, but "became effective" only on January 16, 1990, when Summit was terminated for default. Pl. Op. 6. There is no merit in that argument. The surety and Summit entered into their General Indemnity Agreement in 1988, and the parties' one and only assignment of claims was made at that time. The fact that the General Indemnity Agreement contained a condition precedent, i.e., that there be a breach of the construction contract, did not alter the time that the parties entered into their agreement. The existence of a condition precedent also does not mean that the parties did not agree, in 1988, to an assignment of rights under the contract, including the right to bring claims against the Government. As the Federal Circuit explicitly held: "Under Section 3727(a)(1)(b), the assignment of those claims in the General Indemnity Agreement was invalid." Id. at 1349.

Similarly, in this case, Raytheon and L-3 agreed on January 11, 2002, in their Asset Purchase Agreement, to an assignment of all claims, including the right to bring a bid protest action against the Government. However, that assignment is null and void as against the Government pursuant to 31 U.S.C. § 3727. According to this Court's ruling upon the statute of limitations issue, the right to bring an action did not accrue, and the six-year statute of limitations did not commence to run until February 2006, which was after Raytheon and L-3 made their Asset Purchase Agreement, dated January 11, 2002. L-3 Commnications Sys. L.P. v. United States, 79 Fed. Cl. 453 (2007). However, if that claim against the Government did not accrue until February 2006, as this Court has held, the claim still existed and belonged to Raytheon, the bidder, prior to the time that the statute of limitations began to run. But, the assignment of the claim in the parties' Asset Purchase Agreement is null and void as against the Government.

Many of the other cases cited by L-3 are complicated taking cases wherein the court must determine the nature of the property interest that has been taken, at what time the property interest was taken, and who is the owner of the property interest at the time of the taking. The cases cited by L-3 do not support its argument. Bailey v. United States, 78 Fed. Cl. 239, 267 (2007), involved a regulatory taking, and not the Government's permanent physical displacement of a private property owner from the exercise of a property interest. Id. at. 264. The Court distinguished taking cases involving a permanent physical displacement from regulatory takings which are temporary in nature, and held that "the rule determining which owners are entitled to compensation turns on the permanence of the type of taking in question." Id. at 270. The Court held that the Government's "permanent physical displacement of a private property owner from the exercise of a property interest irrevocably removes that interest, and replaces it with a legal action for compensation, the property interest in question is no longer that individual's to convey." Id. at 264. The Court also held that "whoever happens to own property while the temporary taking continues is entitled to compensation." Id. at 273. Further, the Court held that "Anti-Assignment Act is not implicated, as [the plaintiff] has not been assigned his predecessors' takings claims, but is bringing his own based on the restrictions on use of the lots while he owns them." Id. at 275. Thus, Bailey does not involve the assignment of any claim against the Government, and its holding is of no assistance to L-3.

L-3 appears to rely upon Hobbs v. McLean, 117 U.S. 567 (1886), which is cited in Bailey. Pl. Op. 5. Hobbs was a private action to allocate the proceeds of a partnership, and did not involve the determination of a claim against the Government. The Supreme Court enforced between the private parties a partnership agreement to share the prospective profits from a contract which had not yet been awarded by the Government at the time the partnership

agreement was executed. The Government thereafter paid the proceeds of the Government contract solely to Peck, the partner who had signed the contract with the Government. The case did not involve the application of the Anti-Assignment Act or the Assignment of Claims Act to a claim against the Government.

L-3 apparently relies upon Foster v. United States, 221 Ct. Cl. 412, 607 F.2d 943 (1979), which is cited in Bailey. Pl. Op. 5. In Foster, the Government's taking of mineral rights was held to have occurred on November 18, 1971, when the Government denied permission to remove the dolomite beneath the surface. Id. at 946, 951. At the time of the taking, the mineral rights were leased to the plaintiffs by the McClellans, who owned them through a deed. Id. at 945-46. Thereafter, the plaintiffs purchased all of the mineral rights from the McClellans. Id. at 946. The taking claim arose after the plaintiffs had first acquired their leasehold interest, and therefore the plaintiffs had the right to sue for damages. Id. at 947 n.6. The plaintiffs were the holders of the property interest that was damaged by the Government at the time of the taking, and the Assignment of Claims Act was not applicable. Indeed, the Government admitted that plaintiffs' claim under the lease was valid and not barred by the Assignment of Claims Act. Id. at 947 n.6. The plaintiffs' "subsequent purchase of the entire interest in the mineral reservation was not the acquisition" of rights or claims against the Government, "but, rather, the perfection of the pre-existing interest in the land and claim against the Government." Id. Thus, Foster is not relevant because it does not involve a private party's transfer of its claims against the Government.

L-3 relies upon Mitchell v. United States, 41 Fed. Cl. 617, 625 (1998), and asserts, contrary to Fireman's Fund Insurance Co., 313 F.3d at 1349, that the Assignment of Claims Act, 31 U.S.C. § 3727, does not apply to unaccrued claims. Pl. Op. 5-6. However, in Mitchell, the

Court did not hold that 31 U.S.C. § 3727 applies only to the transfer of claims that have already accrued such that the statute of limitations has commenced to run. There, the Court ruled that the taking of water rights occurred when a boundary fence was completed in spring 1991, and the plaintiffs' cause of action accrued at that time and the statute of limitations began to run. Id. at 625. In Mitchell, the plaintiffs obtained title to the base property and water rights before the Government taking occurred, and there was not an assignment of a takings claim to the plaintiffs; thus, 31 U.S.C. § 3727 was not applicable. Id. at 625 at n.8.

L-3 relies upon Poorvu v. United States, 190 Ct. Cl. 640, 657, 420 F.2d 993 (1970), and asserts that the Assignment of Claims Act applies only to claims that exist at the time of transfer. Pl. Op. 5. First, it should be noted that there is a difference between claims that exist, and claims that both are in existence and have accrued for statute of limitations purposes. The category of claims that are in existence is different from the category of claims that have accrued for statute of limitations purposes. L-3's argument ignores this difference. The distinction is evident by considering the transfer of claims at issue in this case. The parties' Asset Purchase Agreement provided for the sale of all of Raytheon's rights "of every kind, nature, character and description (accrued, contingent or otherwise)." A17-20. In the Asset Purchase Agreement, dated January 11, 2002, Raytheon transferred to L-3 all of these claims, including unaccrued claims. Id. Raytheon's right to bring an action for its bid preparation and protest costs against the Government was in existence as of the time of the Asset Purchase Agreement and the parties attempted to transfer that claim to L-3 through their agreement. A17-20. Thus, the Asset Purchase Agreement attempted to transfer Raytheon's claim against the Government to L-3, before the claim had accrued under the six-year statute of limitations, given this Court's ruling upon that issue. But, the assignment of that claim is null and void as against the Government.

Poorvu also is distinguished based upon its facts. In Poorvu, the Court of Claims held that 31 U.S.C. § 203 was not applicable to the Poorvus' claim against the Government for breach of warranty. There, the claim against the United States came into existence when breaks in the waterline to the building occurred. Id. at 997. Prior to that time, the Formens had conveyed the property and assigned their lease with the Government to plaintiffs, the Poorvus. Id. At the time of the breach of warranty, the Poorvus owned the Post Office building that had been built in accordance with the faulty Government specifications which allowed for breakage of the waterline. The Court of Claims ruled in favor of the Poorvus on two alternative grounds. First, the Court held that the Government acquiesced in the assignment of the lease by paying rent to the Poorvus. Id. at 1002. Second, the Court held that 31 U.S.C. § 203 applies only to the assignment of claims that exist at the time of the party's transfer of claims, and the claim for breach of warranty only came into existence when the waterline broke, which was after transfer of the property and lease to the Poorvus. Id. at 1003. Thus, there was not an assignment of claims prohibited by 31 U.S.C. § 203.

Unlike Poorvu, Raytheon's claim against the Government for bid preparation and proposal costs came into existence at the time that the Government awarded the C-5 AMP contracts to Lockheed Martin, and rejected Raytheon's proposal. The claim against the Government existed prior to its February 2006 accrual date for purpose of the six-year statute of limitations, according to this Court's decision. The parties attempted to transfer the claim to L-3 in the Asset Purchase Agreement, dated January 11, 2002, although the claim had not yet accrued and the statute of limitations had not yet started to run, according to this Court's decision.

L-3 relies also upon Rocky River Co. v. United States, 169 Ct. Cl. 203, 206-07 (1965), and asserts that the Assignment of Claims Act applies only to claims that exist at the time of the

assignment. Pl. Op. 5. In Rocky River, the Court held that plaintiff had an equitable right to be compensated for the diminution in value of their lands as a result of the Government's breach of its obligation to restore the property to its former condition. Id. at 206. There, the Government's breach occurred in November 1956, when the Government failed to restore the entire property to its prior condition, a breach of the restoration provision in the lease agreement. Id. at 206. The leases had been transferred to the plaintiffs prior to the Government's breach and the Government continued to pay rent after their transfer. The leases also stated that they ran in favor of the owners, their heirs, "successors and assigns." Id. at 206. In sum, Rocky River is a case in which the transfer of a Government lease to the plaintiff occurred prior to the Government's breach of the lease.

Rocky River is a congressional reference case with limited precedential value because, in such cases, the Court must determine whether the plaintiff has an equitable claim against the United States, and the Government has no right to appeal. Rocky River also does not support L-3's argument because, in this case, Raytheon's claim for bid preparation and protest costs existed at the time of the Asset Purchase Agreement, dated January 2002, and was transferred via that agreement to L-3. Thus, the claim existed at the time of the Asset Purchase Agreement, and 31 U.S.C. § 3727 bars the assignment of such claims against the Government.

Singer v. United States, 126 Ct. Cl. 417, 115 F. Supp. 166 (1953), also is not applicable in this case. There, plaintiff sued the Government for its failure to make repairs in accordance with its lease of a dwelling. The lease term ran from 1944 to January 19, 1951. Prior to its termination, the owner sold both the fee simple title to the premises involved and all right, title, and interest in the lease to the plaintiff. The Government's breach as to the condition of the dwelling occurred at the time of "the termination of the lease." Id. at. 170. At the time of the

Government's breach, the plaintiff already owned both the premises and the lease, and the Court of Claims held that 31 U.S.C. § 203 was not applicable because the prior owner of the property did not purport to assign a claim against the Government, and there was no breach until after plaintiff already owned the property and the lease. Id. at 170.

## II. Raytheon's Assignment Of Claims Implicates The Purposes Of The Assignment of Claims Act

L-3 asserts that this Court should decline to apply the Assignment of Claims Act, 31 U.S.C. § 3727, and the Anti-Assignment Act, 41 U.S. § 15, because the purposes of the statutes have not been violated in this particular case. However, the Court should reject L-3's argument because the Assignment of Claims Act, 31 U.S.C. § 3727, is applicable here by its terms, because there has been no allowance of the claim. Further, in Spofford v. Kirk, 97 U.S. 484, 489 (1878), the Supreme Court held that the Assignment of Claims Act "embraced every claim against the United States, however arising, of whatever nature," citing United States v. Gillis, 95 U.S. 407 (1877). Further, 41 U.S.C. § 15 provides that "[n]o contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party..." That section also prohibits the transfer of Raytheon's asserted interest in the C-5 AMP contracts to L-3.

As the Supreme Court has enunciated, one of the mischiefs that "led to [the acts] enactment" was "probably ... the possible presentation of a single claim by more than a single claimant, the original and his assignee, thus raising the danger of paying the claim twice, or rendering necessary the investigation of the validity of an alleged assignment." Spofford, 97 U.S. at 489-90. The Court further stated that "[a]nother and greater danger was the possible combination of interests and influences in the prosecution of claims which might have no real

foundation," a scheme that is accomplished by assigning interest in claims "to numerous persons." Id. at 490.

For example, in Naartex Consulting Corp. v. Watt, 722 F.2d 779 (D.C. Cir. 1983), the assignment of a claim of an unsuccessful lease applicant was held to violate 31 U.S.C. § 3727 and 15 U.S.C. § 15. There, the Secretary of Interior held a lottery in 1975 to select a lessee for a parcel of land that was, at the time, outside of any known producing oil and gas field. Id. at 782. In 1977, Naartex challenged the Secretary's issuance of the lease and asserted that it had purchased the rights of an unsuccessful lease applicant. The D.C. Circuit held "such vicarious claims to be 'a classic violation of the federal anti-assignment laws.'" Id. at 793-94. Naartex had argued that the anti-assignment laws did not apply because the polices of such provisions had not been violated in this instance. The D. C. Circuit rejected that argument, and held that "the central purpose" of these statutes was "that the government might not be harassed by multiplying the number of persons with whom it had to deal," and the assignment of the unsuccessful lease applicant's rights "unquestionably violates this clearly articulated policy." Id. at 794 (quoting Hobbs v. McLean, 117 U.S. 567 (1886)).

As in Naartex, the purposes of the Assignment of Claims Act and the Anti-Assignment Act are implicated by assignments of bidder's rights against the Government, including the assignment of Raytheon's rights in this case. In bid protest cases, a legal entity may decide to sell off claims against the Government some of which are of questionable merit or are not worth its interest to pursue. Absent the anti-assignment acts, such claims might be pursued through the transfers of such claims. Further, if a claim could be asserted by an entity that claims to have obtained it from the original party that dealt with the Government and submitted the rejected bid or proposal, both the Government and the Court could be faced with the ancillary issue of

determining the legitimacy of the assignment or chain of assignments, none of which is contemplated in bid protest proceedings, which usually are expedited. The central purpose of both 31 U.S.C. § 3727 and 41 U.S.C. § 15 was "that the Government might not be harassed by multiplying the number of persons with whom it had to deal," and the assignment of Raytheon's rights in the Asset Purchase Agreement "unquestionably violates this clearly articulated policy. Id. at 794. See NGC Investment and Development, Inc. and JDL Constr. v. United States, 33 Fed. Cl. 459, 463 (1995).

A third purpose of the anti-assignment acts also is implicated in that dealing with the original claimant preserves the Government's ability to bring defenses and counterclaims that it has which are particular to the original claimant. Kingsbury v. United States, 215 Ct. Cl. 136, 144, 563 F.2d 1019 (1977) (transfer of clam to plaintiff was void pursuant to then 31 U.S.C. § 203).

III. The Assignment Of Claims Act Applies To The Assignment Of Claims As Part Of A Sale Of A Business Unit

L-3 contends that 31 U.S.C. § 3727 does not apply to an assignment of claims against the Government which are part of or "incident to" a private party's sale of an entire business unit. Pl. Op. 7. L-3 also asserts that the Raytheon proposal at issue in this lawsuit was submitted by "Raytheon's Aircraft Integrations Systems ("AIS") Business Unit." Pl. Op. 4. That assertion is incorrect. The proposal was submitted by Raytheon E-Systems, Inc. A330-32.

Further, there is no such exception for the assignment of claims which are part of or "incident to" a sale of an entire business unit contained in 31 U.S.C. § 3727, or in 41 U.S.C. § 15. For example, in California-American Water Co. v. Dept. of Air Force, 2006 WL 1686139 (E.D. Ca. 2006), the California-American Water Co. (Cal-Am), a utility, purchased a drinking

water supply well from Citizens Utilities Company of California (CUCC) and also received an assignment of CUCC's claims against third parties. Id. at *2. The district court held that Cal-Am's claims against the United States for all costs that CUCC had incurred were barred by the Assignment of Claims Act, 31 U.S.C. § 3727, and dismissed those claims for lack of jurisdiction. Id. at **6, 7. The court held that "failure to comply with the Assignment of Claim Act renders the assignment null and void so far as the United States is concerned." Id. at *8 (quoting In re Freeman, 489 F.2d 431, 433 (9th Cir. 1973). The same is true here and the sale of the business unit together with the assignment of all related claims "(accrued, contingent or otherwise)" to L-3 fails to comply with the Assignment of Claims Act and renders the assignment null and void so far as the United States is concerned.

Similarly, in Cadwalder v. United States, 45 F.3d 297, 300-01 (9th Cir. 1995), the Ninth Circuit held that a Federal Tort Claims Act claim for property damage could not be assigned to the subsequent purchaser of the property. Thus, an assignment of claims incident to the sale of property was not exempt from the Assignment of Claims Act, 31 U.S.C. § 3727.

Westinghouse Electric Co. v. United States, 56 Fed. Cl. 564 (2003) (transfer by prior owner to current owner of contractual right to seek cleanup costs was void under 41 U.S.C. § 15, because the transfer occurred without Government consent), aff'd, 97 Fed. Appdx 931 (Fed. Cir. 2004), involved the transfer of a claim incident to the voluntary transfer of assets. There, the transfer of a contract claim against the Government was void under 41 U.S.C. § 15.

Lyons Security Services, Inc. v. United States, 38 Fed. Cl. 783 (1997), does not hold that the transfer of a claim against the Government together with the sale of an entire business unit is exempt from the Assignment of Claims Act, 31 U.S.C. § 3727. Pl. Op. 7. In Lyons, 38 Fed. Cl. at 788, this Court, applying its bid protest jurisdiction in 28 U.S.C. § 1491(b)(4), held that the

contracting officer's decision to terminate the Government contract he had awarded to the low bidder, which had been sold to another company prior to contract award, was an "abuse of discretion." Lyons did not involve the Assignment of Claims Act, 31 U.S.C. § 3727. Instead, it was a case in which the Government decided to award a contract to the low bidder, although that company had been sold to another company prior to the award. The Government had the authority to make such a contract award to Lyons, the low bidder, and no statute or regulation, including FAR 14.404-2(l), barred the Government from making such an award. Id. at 786. Thereafter, the contracting officer changed course and followed the GAO recommendation that the low bidder not be awarded the contract. As the Court held, there was no legal basis for GAO's recommendation. Id. at 786.

The GAO decisions relied upon by L-3, J.I. Case Co., Comp. Gen. Dec. B-239178, 90-2 CPD ¶ 108 at 3 and McNeil Technologies, Inc., Comp. Gen. Dec. B-254909, 94-1 CPD ¶ 40, at 7-8 (1994), are not controlling and do not assist L-3. Pl. Op. 7. Burroughs Corp. v. United States, 223 Ct. Cl. 53, 63, 617 F.2d 590, 597 (1980) (the "Court of Claims is not bound by the views of the Comptroller General nor do they operate as a legal or judicial determination of the rights of the parties."). In J.I. Case, prior to award, the low bidder merged with Entwistle, which succeeded to all property interests, rights and privileges of the low bidder and assumed all of its liabilities. The GAO upheld the contracting officer's decision to award the contract to Entwistle. There is no law or regulation prohibiting the award of the contract to the successor entity resulting from a merger, which is an assignment by operation of law.

McNeil Technologies also is irrelevant because it involved for "all practical purposes" a merger of Skyline, the Government contractor, into McNeil. Mr. Nelson, the sole shareholder of Skyline, "sold the entire business of Skyline, including its name, all of its assets-except those

retained in order to fulfill the requirements of the purchase agreement ... and future liabilities to McNeil, thus merging it with the firm." "Skyline, if it may be said to have continued any operations at all, did so as an empty shell, without cash, assets, or liabilities, through McNeil and under McNeil's complete management and control." Because McNeil was the successor to Skyline's Government contract, McNeil, as the incumbent contractor, had standing to protest a decision by the Small Business Administration to transfer its contract into the small business program and award it to a different firm.

We acknowledge that the GAO has stated that the Government may make an award of a Government contract to an entity that did not submit the lowest bid, but purchased the entire business embraced by the bid or proposal prior to the Government's award of the contract. However, the issue here is not whether the Government may make an award of a contract to a legal entity that did not make the lowest bid. In this case, the issue is whether the Assignment of Claims Act, 31 U.S.C. § 3727, precludes suit by an assignee who claims to have received an assignment of a claims against the Government as part of a voluntary sale of assets. A voluntary sale of assets plus related claims is encompassed by the Assignment of Claims Act, 31 U.S.C. § 3727.

IV. The Assignment of Claims Act Is Not Restricted To Claims For Completed Work

L-3 asserts that 31 U.S.C. § 3727 pertains only to the assignments of claims for work already done, citing Tuftco Corp. v. United States, 222 Ct. Cl. 277, 614 F.2d 740, 744 n.4 (1980). Pl. Op. 3. Tuftco does not stand for that proposition, and that is not the law. Plaintiff's assertion that the statute applies only to claims for work already performed is contrary to the rulings in numerous cases including Centers v. United States, 71 Fed. Cl. 529 (2006) (mortgage lender's assignment to former president and sole shareholder of claims against Government violated 31

U.S.C. § 3727(a)(1)), aff'd, 224 Fed. Appx. (Fed. Cir. 2007); Curtis v. United States, 63 Fed. Cl. 172, 177-78, 180 (2004) (dissolution of a corporation does not effect a transfer of title to corporate assets; transfer of corporation's assets, including claim against the Government, to its sole shareholder is invalid under 31 U.S.C. § 3727(a)(1)); Holland v. United States, 62 Fed. Cl. 395, 400-01 (2004) (assuming that a Letter Agreement assigned claims against the Government to plaintiffs, such an assignment violated 31 U.S.C. § 3727(a)(1)); Kingsbury v. United States, 215 Ct. Cl. 136, 563 F.2d 1019, 1024 (1977) (transfer of claim to plaintiff was void pursuant to 31 U.S.C. § 203); Diamond v. Federal Emergency Management Agency, 689 F. Supp. 163, 167-68 (D.D.C. 1988) (31 U.S.C. § 3727 applies to claim for property damage under flood insurance policy issued by FEMA); Jung v. United States, 701 F. Supp. 175 (E.D. Wis. 1988) (act applies to claim for income tax refund).

V. The Government Has Not Waived The Assignment Of Claims Act

L-3 asserts that the Government has waived its assertion that the anti-assignment acts bar Raytheon's assignment of a claim for bid preparation and proposal costs arising out of the Government's rejection of Raytheon's proposal for C-5 AMP contracts, and bases its argument upon statements made by the Air Force counsel in a separate proceeding for a different claim, Lockheed Martin Aeronautics Co. et al., Comp Gen. Dec. B-295401, 2005 CPD ¶ 41, 2005 WL 502840 (February 24, 2005). In that GAO matter, L-3 sought reimbursement of bid preparation and proposal costs that had been incurred by Raytheon in submitting a proposal to perform various activities related to the avionics modernization upgrade program (AMP) for the C-130 aircraft, which contract was awarded to The Boeing Company. The Air Force did not raise before the GAO any arguments relating to the anti-assignment acts. In its decision, the GAO recommended that the Air Force pay the bid preparation and proposal costs sought by L-3,

although such costs had been allegedly incurred by Raytheon. The Air Force later agreed with L-3 on the amount of bid preparation and proposal costs, and paid L-3.

Waiver is "an intentional relinquishment or abandonment of a known right." Massie v. United States, 166 F.3d 1184, 1190 note (Fed. Cir. 1999). L-3 has not alleged or demonstrated the prerequisites of waiver in this case. L-3 has not demonstrated that the United States took any actions that demonstrated the knowing and intentional abandonment of its anti-assignment acts arguments in this case. To the contrary, Government counsel Domenique Kirchner alerted the Court to these arguments in two status conferences and to the fact that the Government had issued interrogatories and requests for production of documents in order to obtain the necessary information and documents to frame such a motion. Thereafter, the Government timely filed its motion to dismiss upon these grounds on April 25, 2008. Thus, there has been no waiver of the Government's arguments in this proceeding. See MMR Holding Corp. v. United States, 2000 WL 1819443 at *4 (M.D. La. 2000) (adopting Government's argument that assignment of claims against the Government was barred by 31 U.S.C. § 3727, and rejecting contention that United States attorney waived argument that assignment of claims was barred). As the district court ruled in MMR Holding Corp., we are not aware of "a single case where the actions of an assistant United States attorney, at a hearing, with no specific stipulation, were deemed to waive any of its defenses, much less one which, in effect, waives sovereign immunity." Id. at *5. In this case, there has been no specific stipulation that knowingly and intentionally waives the Government's arguments, and there is no waiver.

Further, Air Force counsel in the GAO matter, Lockheed Martin Aeronautics Co., lacked the authority to waive the Government's arguments in this case. Here, the United States is represented by the Department of Justice. 28 U.S.C. § 516.

L-3 notes that after the GAO decision had been issued on February 24, 2005, and also after the Air Force had signed a settlement agreement with L-3, Air Force attorney Bryan O'Boyle requested a copy of the Asset Purchase Agreement, the Bill of Sale and Letter Agreement, Appendix, A-322, 325. L-3 fails to mention that, at the time of Mr. O'Boyle's request, the GAO proceeding had concluded. As noted, the GAO issued its decision on February 25, 2005, and the Air Force and L-3 later signed a settlement agreement on the amount of bid preparation and proposal costs. L-3's waiver argument thus fails also because the actions of Mr. Boyle relied upon by L-3, not only relate to a different legal proceeding and a different claim, but occurred after that proceeding ended and are of no legal significance.

Further, by its terms, the Assignment of Claims Act, 31 U.S.C. § 3727, bars an assignee's claim against the Government prior to the submission of and allowance of the claim. L-3 is asserting that Air Force counsel waived the protection or applicability of 31 U.S.C. § 3727 in this case. In Knight v. United States, 596 F. Supp. 540, 542 (M.D. Ga. 1984), the district court held that "no such waiver may be asserted against the Government, it being recognized that the Anti-Assignment Act [31 U.S.C. § 3727] may not be waived by agents of the Government in advance of allowance of the claim which is the subject of the assignment." The same is true here. The protections provided the Government by 31 U.S.C. § 3727 may not be waived by a Government official, including Air Force counsel. Id.[2]

Tuftco Corp. v. United States, 222 Ct. Cl. 277, 285-86, 614 F.2d 740 (1980), does not support L-3's waiver argument. Tuftco involved the Anti-Assignment Act, 41 U.S.C. § 15, not

[2] Contrary to L-3's assertion (Pl. Op. 9), the Government has not admitted that the Assignment of Claims Act, 31 U.S.C. § 3727, is subject to waiver. The Government acknowledged that the Anti-Assignment Act, 41 U.S.C. § 15, may be waived in certain circumstances. See Defendant's Motion to Dismiss at 13.

the Assignment of Claims Act, 31 U.S.C. § 3727. Id. at 744 n.4. In Tuftco, the Court of Claims held that the contracting officer had the authority to recognize the contractor's assignment of a Government contract. The Court of Claims also noted that it has been said 41 U.S.C. § 15 does not act as a self-executing nullification in cases where government contracts are assigned, but merely enables the government at its option to annul assigned contracts.'" Id. at 744 n.5 (quoting Thompson v. Commissioner, 205 F.2d 73, 78 (3d Cir. 1953). The Court of Claims identified means by which the Government may waive 41 U.S.C. § 15 and recognize an assignment of a Government contract, including (1) a novation agreement, which it described as "the soundest and most accepted method," and (2) a course of conduct wherein the Government acknowledged and acted consistent with the terms of the contractor's assignment of the Government contract. The Court of Claims held that the Government contracting officer Scroggs acknowledged the assignee of a Government contract as the contractor because prior to each assignment the contractors contacted Scroggs for his advice upon the validity of the proposed assignments, they were assured by Scroggs that despite the Anti-Assignment Act, the assignments were proper and would be recognized by HUD, with payment going to Winchester (the assignee) as contemplated, and, immediately after the assignments, the contractors sent Scroggs written notification of the assignment, and Scroggs wrote "Assignment acknowledged" with his signature and date on the document. Thereafter, HUD acted consistently with Scroggs's signed acknowledgement by making payments to the assignee. In sum, L-3 has not cited any case in which the Government was held to have waived the requirements of the Assignment of Claims Act, 31 U.S.C. 3727, and the Government is not aware of any such case.

## VI. L-3's Other Arguments Are Without Merit

L-3 asserts that it is an "interested party" with standing under 28 U.S.C. § 1491(b). Pl.

Op. 9-10. However, "in order to be eligible to protest, one who has not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." MCI Telecomm. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989). Further, "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends." Id. Accord, Rex Service Corp. v. United States, 448 F.3d 1305, 1307-08 (Fed. Cir. 2006) ("because Rex could have bid, but chose not to, it cannot be considered a prospective bidder"); Scott v. United States, 78 Fed. Cl. 151, 157 (2007) ("Plaintiff, therefore, does not qualify as a prospective bidder, as he did not submit an offer prior to the closing date of the Solicitation."); Eagle Design & Management, Inc. v. United States, 63 Fed. Cl. 106, 108 (2004). L-3 did not exist at the time of the solicitation, although L-3 Communications Corp., the entity to which L-3 ultimately reports, was in existence at that time. L-3 did not submit a bid prior to the closing date, and L-3 Communications Corp. declined to submit a bid. Neither is a bidder or a prospective bidder, and neither is an "interested party."

## CONCLUSION

For the reasons above and those stated in our motion to dismiss, the Court should dismiss the amended complaint of L-3.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

Of Counsel:
BRYAN R. O'BOYLE
Senior Trial Attorney

Department of Air Force
Arlington, VA

s/Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th Floor, 1100 L. St., N.W.
Washington, D.C. 20530
Tele: (202) 307-1111
Attorneys for Defendant

June 9, 2008

# APPENDIX

**SOLICITATION, OFFER AND AWARD**

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) — RATING: DO-A1 — PAGE 1 OF 1 PAGES

2. CONTRACT NO. | SOLICITATION NO. F33657-98-R-0006 | 4. TYPE OF SOLICITATION ☐ SEALED BID (IFB) ☐ NEGOTIATED (RFP) | 5. DATE ISSUED | 6. REQUISITION/PURCHASE NO. See Section G

7. ISSUED BY ASC/GRK CODE FA8625
USAF/AFMC
AERONAUTICAL SYS CENTER (ASC/GRA)
2590 LOOP ROAD W, BLDG 558, RM 210
WRIGHT-PATTERSON AFB OH 45433-7142
CAPT CHRIS M. WEGNER (937) 255-7315

8. ADDRESS OFFER TO *(If other than Item 7)*

NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder".

## SOLICITATION

9.
CAUTION-LATE Submissions, Modifications, and Withdrawals: See Section L, Provision NO. 52.214-7 or 52.215-1. All offers are subject to all terms and conditions contained in this solicitation.

10. FOR INFORMATION CALL: | A. NAME | B. TELEPHONE NO. *(Include area code)* *(NO COLLECT CALLS)*

11. TABLE OF CONTENTS

| (√) | SEC. | DESCRIPTION | PAGE(S) | (√) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| √ | A | SOLICITATION/CONTRACT FORM | | √ | I | CONTRACT CLAUSES | |
| √ | B | SUPPLIES OR SERVICES AND PRICES/COSTS | | | | PART III - LIST OF DOCUMENTS, EXHIBITS, AND OTHER ATTACH. | |
| √ | C | DESCRIPTION/SPECS./WORK STATEMENT | | √ | J | LIST OF ATTACHMENTS | |
| √ | D | PACKAGING AND MARKING | | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| √ | E | INSPECTION AND ACCEPTANCE | | √ | K | REPRESENTATIONS, CERTIFICATIONS, AND OTHER STATEMENTS OF OFFERORS | |
| √ | F | DELIVERIES OR PERFORMANCE | | | | | |
| √ | G | CONTRACT ADMINISTRATION DATA | | √ | L | INSTRS, CONDS, AND NOTICES TO OFFERORS | |
| √ | H | SPECIAL CONTRACT REQUIREMENTS | | √ | M | EVALUATION FACTORS FOR AWARD | |

## OFFER *(Must be fully completed by offeror)*

NOTE: Item 12 does not apply if the solicitation includes the provisions at 52.214-16, Minimum Bid Acceptance Period.

12. In compliance with the above, the undersigned agrees, if this offer is accepted within ______ calendar days *(60 calendar days unless a different period is inserted by the offeror)* from the date of receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule.

13. DISCOUNT FOR PROMPT PAYMENT (See Section I, Clause No. 52.232-8) — 10 CALENDAR DAYS % | 20 CALENDAR DAYS % | 30 CALENDAR DAYS % | CALENDAR DAYS %

14. ACKNOWLEDGEMENTS OF AMENDMENTS *(The offeror acknowledges receipt of amendments to the SOLICITATION for offerors and related documents numbered and dated:)*

| AMENDMENT NO. | DATE | AMENDMENT NO. | DATE |
|---|---|---|---|
| A00001 | 11 JUNE 1998 | A00002 | 08 JULY 1998 |

15A. NAME AND ADDRESS OF OFFEROR — CODE OGCL4 — FACILITY
RAYTHEON E-SYSTEMS, INC. - WACO
7500 Maehr Road
Waco, TX 76705-1647

16. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)*
C. GLENN HOOD
VICE PRESIDENT and GENERAL MANAGER

15B. TELEPHONE NO. *(Include area code)* 254/799-5533

15C. CHECK IF REMITTANCE ADDRESS IS DIFFERENT FROM ABOVE - ENTER SUCH ADDRESS IN SCHEDULE. ☐

17. SIGNATURE: C. Glenn Hood

18. OFFER DATE: 25 Aug 1998

## AWARD *(To be completed by Government)*

19. ACCEPTED AS TO ITEMS NUMBERED | 20. AMOUNT | 21. ACCOUNTING AND APPROPRIATION

22. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
☐ 10 U.S.C. 2304(c) ( ) ☐ 41 U.S.C. 253(c) ( )

23. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* | ITEM

24. ADMINISTERED BY *(If other than Item 7)* CODE

25. PAYMENT WILL BE MADE BY CODE

26. NAME OF CONTRACTING OFFICER *(Type or print)*

27. UNITED STATES OF AMERICA
JOHN G. MEYER
*(Signature of Contracting Officer)*

28. AWARD DATE

IMPORTANT - Award will be made on this Form, or on Standard Form 26, or by other authorized official written notice.

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS UNUSABLE
ConWrite version 1.161

STANDARD FORM 33 (REV. 9-97)
Prescribed by GSA
FAR (48 CFR) 53.21(c)

18-Aug-98

16-00962

A330

**Raytheon**

Raytheon Systems Company
Intelligence, Information and
Aircraft Integration Systems
P.O. Box 154580
Waco, Texas
76715-4580 USA
254.799.5533

25 August 1998
98-RLH-50530

ASC/SYG (C-5 Avionics Modernization Program)
Bldg 125, Room 1446
2335 Seventh St. Suite 2
Wright-Patterson AFB, OH 45433-7805

Attention: John G. Meyer
Contracting Officer

Subject: RFP F33657-98-R-0006, C-5 Avionics Modernization Program, Request for Revised Contractual Documents and Cost Proposal

Reference: a) Letter Dated 17 August 1998; Request for Revised Contractual Documents and Cost Proposal

Dear Mr. Meyer:

Raytheon Systems Company is pleased to provide the C-5 Avionics Modernization Program (AMP) Cost Volumes along with the updated and revised contractual documents for your review and evaluation.

The Raytheon strategy for the C-5 AMP offers the U. S. Air Force a world class experienced industrial team that maximizes the strengths of each team member. Our system architecture is a robust design that blends current and emerging technology into a highly reliable and affordable solution that reduces cost of ownership and increases aircraft availability. Our approach minimizes development costs, takes advantage of commonality and reduces time to prototype thereby mitigating schedule risk. Our support solution (COSS) and our performance guarantees reduce sustainment cost while increasing issue effectiveness well beyond the stated requirement.

The Raytheon Systems Company is pleased to have been a part of the acquisition process for the C-5 AMP. There have been some innovative ideas included in this process that will forge the way for future acquisitions. We look forward to a partnership with the Air Force team and the execution phase of the program. Our combined team experience and commitment to the task coupled with our robust affordable solution assures the success of the C-5 AMP. The successful execution of this program will reassert the ability of the C-5 fleet to remain as a workhorse of the Air Mobility Command well into the 21st century.

ISO 9001 Certified

Should you have any questions or require additional information please contact Jeff Hanchey at 254/867-4143 or the undersigned at 254/867-4127.

Sincerely,

RAYTHEON SYSTEMS COMPANY

C. Glenn Hood

C. Glenn Hood
Vice President and General Manager
Encl.