# In The United States Court of Federal Claims

BID PROTEST
No. 06-396C
(Judge Williams)

**L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**LOCKHEED MARTIN AERONAUTICS COMPANY,**

**Intervenor.**

## REPLY OF L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P. TO DEFENDANT'S RESPONSE TO MOTION TO INVALIDATE DCAA AUDIT REPORT

L-3 Communications Integrated Systems L.P. ("L-3") files this Reply and would show the Court as follows:

### I. This Court has jurisdiction to grant the requested relief.

L-3 asks this Court to invalidate the DCAA Audit Report dated April 8, 2008, and order the agency to perform an audit using the relevant guidance issued by the GAO. The Court has authority to do so under both 28 U.S.C. §§ 1491(a) and (b)(2).

Defendant characterizes L-3's request as one for equitable relief and argues that this Court cannot grant equitable relief. In this action, L-3 seeks monetary damages in the form of bid and proposal costs. By this Motion, L-3 seeks interlocutory relief in aid of its request for

monetary damages. L-3 is not seeking injunctive relief, a declaratory judgment or specific performance. L-3 is not seeking equitable relief. The Federal Circuit in *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1294 (Fed. Cir. 1999), discussed the distinction between granting equitable relief and using equity in aid of monetary relief and concluded that the Court of Federal Claims can "call upon . . . equitable concepts" to reach the right result. The court quoted from the Court of Claims' decision in *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272, 1274 n.1 (Ct. Cl. 1972):

> Defendant repeats the ancient but inaccurate shibboleth that this court has no 'equity jurisdiction,' and then argues that since the class suit was originally a creature of equity we cannot use it. The correct premise is, not that we are without equity jurisdiction, but that we cannot grant nonmonetary equitable relief such as an injunction, a declaratory judgment or specific performance. Where the relief is monetary, we can call upon such equitable concepts as rescission and reformation to help us reach the right result. If procedural techniques which are the children of equity were forbidden to this court, we could not utilize such common and useful practices as intervention, depositions and discovery, all of which have become integral to our practice.

194 F.3d at 1294-95.

Even if the request for a proper audit is characterized as a request for equitable relief, §§ 1491(a) & (b)(2) authorize the Court to grant the request. To support its position that this Court cannot grant equitable relief, Defendant relies upon case law developed under 28 U.S.C. § 1346(a), which applies only to suits in district court. Defendant also cites cases discussing § 1491(a) and has to concede that under § 1491(a) the Court can grant equitable relief that is incidental to monetary relief.[1] *See Taylor v. United States*, 54 Fed. Cl. 423, 427 (2002). The request for a proper audit of L-3's bid and proposal costs is incidental to L-3's claim for bid and proposal costs. Moreover—and significantly, Defendant's Response cites no authority under 28

[1] This Court has determined that it has jurisdiction under 28 U.S.C. § 1491(a). *L-3 Communications Integrated Systems, L.P. v. United States*, 79 Fed. Cl. 453, 461-62 (2007).

U.S.C. § 1491(b), which by its plain terms authorizes this Court to award "any relief the court considers proper," even equitable relief, in a bid protest action.[2]

The decisions of the Court of Federal Claims confirm this Court's authority to order an audit. For example, in *Axiom Resource Management, Inc. v. United States*, 80 Fed. Cl. 530 (2008), the court issued an order for the parties to show cause why it should not order the U.S. Army Audit Agency to submit an annual compliance report to the court regarding implementation of a proposed Organizational Conflict of Interest mitigation plan. The government responded to the show cause order, taking the position that the court did not have authority to require such continuing compliance reports. *Id.* at 534. Relying upon § 1491(b)(2), the court rejected that argument.[3] *Id*. at 532, 539.

Further, in *Burbank College of Court Reporting, Inc. v. United States*, 26 Cl. Ct. 323, 327 (1992), the court ordered the plaintiff to conduct an audit. When plaintiff did not submit a proper audit, the court dismissed its case. *Burbank College of Court Reporting, Inc. v. United States***,** 30 Fed. Cl. 100, 107-08 (1993).

This Court has jurisdiction in this bid protest action to grant "any relief that the court considers proper," whether legal or equitable. 28 U.S.C. § 1491(b)(2). Ordering a new audit that is completed according to the GAO standards is proper relief.

## II. The existing audit was conducted improperly, and a proper audit is vital to the fair resolution of this matter.

On July 28, 2006, the DCAA issued a report of its audit of L-3's bid and proposal costs for the C-5 AMP proposal, concluding that the bid and proposal costs had been recovered

---

[2] As demonstrated in L-3's April 25, 2008 Response to Defendant's Motion to Dismiss and by Plaintiff's Supplementation of the Record filed contemporaneously herewith, L-3 is an interested party entitled to pursue the claim for bid and proposal costs.

[3] Because the government stated that it would prefer that the court set aside the contract award rather than have an independent auditor oversee compliance with the proposed mitigation plan, the court issued an order setting aside the award. *Id*. at 539.

through the use of overhead rates. [Audit attached to Defendant's Response at 1] On July 16, 2007, the GAO issued its decision providing "clarification that protesters be reimbursed bid and proposal costs on fixed price contracts only." [Attachment A to L-3's Motion to Invalidate at 21] After that decision, Defendant asked the DCAA to repeat its audit of L-3's claimed costs "for compliance with . . . the criteria identified in the GAO remedy (i.e. reimbursement of proposal preparation costs on fixed price contracts)." *Id.* at 2. Despite the fact that the DCAA considered the issuance of the GAO decision to be a "significant event," *id*. at 21, it disregarded it. Defendant's affiant, Mr. Faanes, states that "in his opinion" the GAO decision is inapplicable to the bid preparation costs incurred by L-3 for the C-5 AMP proposal.[4] He states no rationale for this opinion. [Declaration attached to Defendant's Response at 2, ¶ 3.]

The fact is the GAO decision should be treated as an expert opinion, not disregarded. *See United Enters. & Assoc. v. United States*, 70 Fed. Cl. 1, 25 n.26 (2006). The GAO decision makes no distinction between the C-130 AMP bid and proposal costs for fixed price contracts and those same costs in the context of other solicitations. Instead, it specifically states, "[T]he Air Force's assertion that protesters/claimants have . . . been 'reimbursed' for the portions of their proposal preparation costs that correspond to their performance of fixed-price contracts is inconsistent with this Office's prior decisions, and fails to reasonably recognize the fundamental differences between cost-reimbursement and fixed-price contracts." [Attachment B to L-3's Motion to Invalidate at 2] That unreasonable position is the same taken by Defendant, its DCAA affiant, and his auditors here. The GAO's decision concerning recovery of costs for fixed price contracts is simply not limited to C-130 AMP costs. The decision informs, "[I]n return for performance of a fixed-price contract, the contractor is paid an agreed price, which

[4] He also states that he asked "Government legal counsel" about the applicability of the GAO decision and was told that the GAO decision was not applicable to costs incurred for the C-5 AMP proposal. [Declaration attached to Defendant's Response at 2, ¶ 4.]

may or may not cover its actual costs---it is not 'reimbursed' for its costs, and to conclude otherwise, *as a matter of law*, does not appear supportable." [Attachment B to L-3's Motion to Invalidate at 4 (emphasis added)] As a matter of law, successful protestors are entitled to recover the portion of bid and proposal costs allocated to the performance of fixed price contracts.[5]

As a result, the April 8, 2008 audit must be vacated or disregarded and a new audit performed using the proper method for evaluating costs incurred by L-3.

Respectfully submitted,

Dated: July 17, 2008

s/ Paul W. Searles

Paul W. Searles
HAYNES AND BOONE, LLP
901 Main Street
3100 Bank of America Plaza
Dallas, Texas 75202
Telephone: (214) 651-5197
Telecopier: (214) 200-0705

**ATTORNEYS FOR L-3 COMMUNICATIONS INTEGRATED SYSTEMS L.P.**

Of Counsel:

Sharon N. Freytag
HAYNES AND BOONE, LLP
901 Main Street
3100 Bank of America Plaza
Dallas, Texas 75202
Telephone: (214) 651-5586
Telecopier: (214) 200-0450

D-1661971_2.DOC

[5] Plaintiff notes that the "generally accepted government auditing standards" ostensibly applied to the audit in question, Attachment A to L-3's Motion to Invalidate at 2, are issued by the GAO.