# In the United States Court of Federal Claims

**No. 06-396C**
**(Filed Under Seal: February 5, 2010)**
**(Reissued: February 16, 2010)[1]**
**(Bid Protest)**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P.,** * | |
| * | **Post Award Bid Protest;** |
| **Plaintiff,** * | **Supplementation of Administrative Record; Allegations of Bias and** |
| **v.** * | **Bad Faith; Applicability of Federal** |
| * | **Rules of Evidence to Extra-Record** |
| **THE UNITED STATES,** * | **Evidence in Bid Protest; Hearsay;** |
| * | **Fed. R. Evid. 801(d)(2)(D); 803(8);** |
| **Defendant,** * | **803(6); 404; 406.** |
| * | |
| **and** * | |
| * | |
| **LOCKHEED MARTIN AERONAUTICS COMPANY,** * | |
| * | |
| **Intervenor.** * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Paul W. Searles, Haynes and Boone, LLP, 901 Main Street, 3100 Bank of America Plaza, Dallas, TX for Plaintiff.

Domenique Kirchner, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, 1100 L Street, NW, 8th Floor, Washington, DC for Defendant.

Marcia G. Madsen and Luke Levasseur, Mayer Brown, LLP, 1909 K Street, NW, Washington, DC for Intervenor.

---

[1] This opinion was issued under seal on February 5, 2010.  The Court invited the parties to submit proposed redactions by February 12, 2010.  No redactions having been received, the court publishes this opinion in toto.

_____

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S RENEWED MOTION TO
SUPPLEMENT THE ADMINISTRATIVE RECORD**

_____

In this post-award bid protest, L-3 Communications Integrated Systems, L.P. ("L-3")
challenges the Air Force's award of two contracts to Lockheed Martin Aeronautics Company
("Lockheed Martin") to modernize the C-5 Galaxy aircraft ("C-5 AMP"), and seeks its bid
preparation and proposal costs.[2]  This protest was filed in the wake of the former Principal Deputy
Secretary of the Air Force's conviction for violating conflict of interest laws.  Specifically, the
former Principal Deputy Secretary, Darleen Druyun, admitted that she allowed her personal interest
to influence her procurement decisions with respect to the Boeing Company -- she, her daughter and
son-in-law negotiated for employment with Boeing while she was a top Air Force procurement
official.[3]

Plaintiff has raised several grounds of protest, claiming that through Druyun's unauthorized
assumption of the SSA duties and her change of evaluation ratings to justify the selection of
Lockheed Martin's higher cost proposal, the Air Force improperly compromised the integrity of the
procurement process, breached its implied contract to treat proposals fairly, honestly, and in good
faith, and violated a panoply of procurement statutes and regulations.[4]  L-3 further claims that
Druyun was biased in favor of Lockheed Martin and acted in bad faith in the C-5 AMP procurement.
Finally, L-3 asserts that the Air Force acted arbitrarily and capriciously in making award to Lockheed
Martin.

This matter comes before the Court on Plaintiff's renewed motion to supplement the
administrative record ("AR").  At issue are 40 documents which Plaintiff asserts are necessary for

_____

[2]  L-3 does not seek injunctive relief.

[3]  Druyun was convicted of conspiracy to commit an act affecting a personal financial interest
while acting as a government official in violation of 18 U.S.C. § 371 (2006) and 18 U.S.C. § 208(a)
(2006).  Druyun's conviction was not related to this procurement or to her interaction with Lockheed
Martin.

[4]  Specifically, L-3 claims the Air Force violated 10 U.S.C. § 2304(a)(1)(A) (2006), requiring
full and open competition, FAR 15.303(b)(6), requiring that the SSA select the best value proposal,
FAR 15.303(a), AFFARS AA-105 and AA-203, governing the appointment of the SSA, and FAR
3.101, Standards of Conduct, requiring avoidance of conflict of interest and prohibiting Government
employees from soliciting gifts, favors, or anything of monetary value from a contractor or vendor.
Am. Compl. ¶¶ 41-47.  L-3 further claims that the Air Force failed to sufficiently document the
source selection process in violation of FAR 15.308, AFFARS AA-107(a)(6) and AA-316(b).  Id.
¶ 46.

the Court to adjudicate claims of bad faith, bias, and regulatory violations in the C-5 AMP procurement.[5]

For the reasons stated below, the Court grants Plaintiff's motion in part.

## Background[6]

On August 18, 1998, the United States Air Force issued solicitation number F33657-98-R-0006, requesting proposals to assist with a program to modernize the C-5 Galaxy aircraft.  Am. Compl. ¶ 2.  More specifically, the solicitation sought proposals for the Engineering and Manufacturing Development ("EMD") and Contractor Operated Supply Support ("COSS") phases of the C-5 Avionics Modernization Program ("C-5 AMP").  Id.  The C-5 AMP had two components: the All-Weather Flight Control System and Global Air Traffic Management compliance.  L-3's predecessor- in-interest, Raytheon E-Systems Inc. ("Raytheon"), and Lockheed Martin were the only contractors that submitted proposals.  Am. Compl. ¶ 3.

On January 22, 1999, the Air Force informed Raytheon that the C-5 AMP contracts had been awarded to Lockheed Martin.  On January 28, 1999, the Air Force provided a debriefing to Raytheon

---

[5] Plaintiff seeks to supplement the AR with the following document numbers: AS.6.a, A.3.1, B.3.PS.doc, C.4.1, C.4.2, C.4.5, D.2.13, D.3.PS.doc, E.2.1, F.1.24, F.1.29, F.1.4, F.1.PS.doc, G.1.22, G.1.23, G.1.PS.doc, G.2.PS.doc, G.3.11, G.3.23, G.3.PS.doc, February 2006 IG Report, DCMA 1-3, DCMA 158-242, DCMA 244-258, DCMA 625-629, DCMA 630-634, DCMA 1343-1360, DCMA 1361-1378, DCMA 1396-1411, DCMA 2226-2256, DCMA 2257-2294, February 2005 Druyun Study, DoD 016-030, DoD 041-042, DoD 049, DoD 061-091, DoD 092-095, DoD 098-127, DoD 135-137, DoD 162-168.  Pl.'s Reply to Renewed Mot. to Supplement the Admin. R. ("Pl.'s Reply"), Ex. A.  These document numbers are drawn from the parties' briefs, as designated by the agencies submitting them.

[6] This background is derived from the complaint and this Court's earlier decisions resolving two jurisdictional motions.  L-3 Commc'ns Integrated Sys. v. United States, 79 Fed Cl. 453 (2007); L-3 Commc'ns Integrated Sys. v. United States, 84 Fed. Cl. 768 (2008).  Due to the nature of those motions, the Court examined documents outside of the AR to determine whether Plaintiff's action was time-barred, whether Plaintiff had standing and whether the actions were barred by the Anti-Assignment Act.  Defendant contends that some of the documents on which the Court relied to resolve those motions -- the Druyun Study and the Inspector General's Report -- should not be admitted as supplements to the AR.  This background also includes materials from Druyun's criminal case -- the Assistant United States Attorney's Offer of Proof presented to the United States District Court for the Eastern District of Virginia in conjunction with Druyun's guilty plea and sentencing, as well as the proceedings before the Eastern District of Virginia in United States v. Druyun, No. 1:04-Crim-150 (E.D. Va. April 20, 1994), reproduced at Joint Appendix for Mot. to Dismiss ("J.A.") at 28-108.  The Court takes judicial notice of the District Court proceedings as they are recounted in the public docket.  Fed. R. Evid. 201.

at its plant.  Raytheon was advised at the debriefing that Darleen Druyun, then the Principal Deputy Assistant Secretary of the Air Force Acquisition and Management,[7] acted as the Source Selection Authority ("SSA") for the C-5 AMP acquisition.  Am. Compl. ¶¶ 6-7.  As the SSA, Druyun was responsible for the proper and efficient conduct of the entire source selection process encompassing proposal solicitation, evaluation, selection, and contract award.

During the summer of 2002, Druyun "'reached the decision that she would retire from the Air Force late that year.'"  79 Fed. Cl. at 457 (quoting J.A. at 59).  She did not disclose her decision publicly.  In order to explore employment opportunities, Druyun disqualified herself in writing from all Air Force matters involving Lockheed Martin and Raytheon on August 26, 2002.  Id.  Druyun then entered into discussions with Lockheed Martin, resulting in her verbal agreement to accept a position at Lockheed Martin which would begin after her retirement.  Am. Compl. ¶ 14; J.A. at 60.  Plaintiff alleged that Druyun had a prior history of dealings with Lockheed Martin, citing her involvement in the 1999 $10.1 billion public-private partnership between Lockheed Martin and the Air Force's Oklahoma City depot for engine repair work, her 1999 advocacy of the F/A-22 manufactured by Lockheed, and her 2001 supervision of the award of a $200 billion contract to Lockheed Martin, over its competitor, Boeing, to produce the F-35 Joint Strike Fighter Aircraft.  Am. Compl. ¶¶ 11-13.

Between September and November, 2002, Druyun, unbeknownst to the Air Force, engaged in private discussions with a senior Boeing employee regarding her future employment by that company.  Am. Compl. ¶ 14; J.A. at 60.  While these meetings with Boeing were taking place, Druyun was overseeing Air Force negotiations with Boeing to lease 100 Boeing KC-767A tanker aircraft.  J.A. at 60.  Subsequently, on November 5, 2002, Druyun disqualified herself from any matters involving Boeing and advised the Air Force that she intended to enter into employment negotiations with Boeing.  J.A. at 67.  Druyun retired from the Air Force in November, 2002, and began working for Boeing on January 2, 2003.  J.A. at 68.

On April 20, 2004, Druyun pled guilty to conspiring to violate 18 U.S.C. § 208(a).  Am. Compl. ¶ 16.  At the sentencing hearing on October 1, 2004, the judge found that Druyun breached her original plea agreement "by not providing full, complete and truthful cooperation as required by that plea agreement," and said that Druyun was "less than candid" and "that came out, in part, because she was polygraphed."  J.A. at 85, 92.  The Court sentenced Druyun to nine months in prison, followed by seven months of community confinement, and imposed a $5,000 fine.  J.A. at 104.

Once the Air Force was made aware of Druyun's improper personal negotiations with Boeing, the Acting Under Secretary of Defense for Acquisition, Technology, and Logistics commissioned a study of all acquisitions involving Druyun during her nine years as the Air Force's

---

[7] In this position, Druyun supervised, directed and oversaw the management of the Air Force acquisition program and provided advice on acquisition matters to the Secretary, Assistant Secretary and Chief of Staff of the Air Force.

top civilian acquisition official.  Am. Compl. ¶ 22; 79 Fed. Cl. at 458; A Report to the Under
Secretary of Defense for Acquisition, Technology and Logistics, The Druyun Study, February 2005
("The Druyun Study") at 2.  The purpose of this Druyun Study was to identify all acquisition actions
involving Druyun that might warrant investigation.  The Druyun Study at 9.  The Study, which was
conducted from December 2004 to February 2005, examined 407 acquisitions.  Id. at 1, 13.
Ultimately, the Study concluded that of those 407 acquisitions, eight, including the C-5 AMP
procurement at issue here, were "anomalies" that required further investigation.  Id. at 1.

The Acting Under Secretary of Defense for Acquisition, Technology, and Logistics then
requested that the Department of Defense Inspector General review these eight actions for further
investigation.  Under Secretary of Defense, Memorandum for Inspector General of the Department
of Defense, Referral of Contracts for Review, Feb. 11, 2005 at 1.  On February 28, 2006, the IG
published his report on the source selection procedures for the C-5 AMP.  Dep't of Def., Office of
Inspector General, Acquisition Management: Source Selection Procedures for the C-5 Avionics
Modernization Program, (February 28, 2006) ("The Inspector General's Report").  The Inspector
General's Report "identified two actions that 'appeared irregular and may not have been conducted
in the best interest of the Government'" -- 1) the reassignment of the SSA responsibilities, and 2)
the proposal rating changes made by Druyun in support of her source selection decision.  Id.  The
Inspector General's Report indicated the following:

- Air Force personnel did not adequately document the decision process
  in accordance with the FAR Part 15 and Air Force FARS Appendix
  AA.

- There was inadequate support for the management, technical, and
  cost data evaluation ratings presented by the Air Force Advisory
  Council in its Proposal Analysis Report, such that the ratings could
  not be traced back to detailed analysis, reports, or meeting minutes,
  and the IG was unable to validate the contract awards to Lockheed
  Martin.

- There was no support for delegation of source selection duties to
  Druyun.

- A proposal for a training system upgrade by Lockheed Martin was
  noted by Druyun in her source selection decision as a "significant
  modification," but this modification was not previously identified by
  the program office as an objective of the C-5 AMP.

- Druyun ignored performance/capability and risk proposal ratings
  presented by the Air Force Advisory Council without sufficient
  justification for her decision, changed ratings in the area of avionics
  quality/integration, software development, and system management

5

to favor Lockheed Martin without justification in her source selection decision, introduced new strengths for Lockheed Martin, and cited Raytheon for a weakness while other documents showed that Lockheed Martin had this same weakness.

- The Air Force failed to provide adequate oversight of the source selection process.

Id. at 4-9.

Further, the Inspector General's Report identified "material management control weaknesses" in the source selection process as defined by DoD Instruction 5010.40, i.e., that the Air Force did not have controls in place to ensure that source selection decisions were adequately documented and justified.  J.A. 121.

Plaintiff alleges that the Druyun Study and the Inspector General's Report revealed irregularities in the C-5 AMP source selection process, and that the documents underlying these investigations were not included in the administrative record filed by the Government on January 4, 2008.

On November 27, 2007, the Court ordered Defendant to "file and serve a Table of Contents of the Administrative Record with a certification from the appropriate Air Force personnel that the Table of Contents reflects the complete administrative record for the C-5 AMP procurement." L-3 Commc'ns Integrated Sys. v. United States, No. 06-396 (Fed. Cl. November 27, 2007) (Scheduling Order).   In addition, the Court directed Defendant to "file and serve a declaration from the appropriate Air Force personnel describing those additional documents pertaining to the C-5 AMP procurement which [would] not be included in the Administrative Record, including but not limited to, documents described in the Druyun Study and Department of Defense Inspector General investigation and Report."  Id.

On January 4, 2008, Defendant filed a Table of Contents for the administrative record, along with declarations by Contracting Officer Vicki A. Fry and Chief of Contracting Edward C. Martin, certifying that the documents referenced in the Table of Contents comprised the complete administrative record for the C-5 AMP procurement.  This AR included those documents prepared or reviewed during the source selection process for the C-5 AMP acquisition.

On February 20, 2008, Defendant filed a second declaration by Ms. Fry along with an index of documents that would not be included in the administrative record, including a lengthy list of workpapers, memos, circulars, and regulations.

On February 27, 2008, Plaintiff filed a Motion to Supplement the administrative record with all of the documents not included in the AR according to Ms. Fry's February 20, 2008 declaration, as well as with additional documents prepared during the Druyun Study.  The Court subsequently

issued a discovery order directing Defendant to produce the requested documents to Plaintiff and directing Plaintiff to file a renewed motion to supplement the administrative record, if appropriate, after reviewing these documents.  This matter is now before the Court on Plaintiff's Renewed Motion to Supplement the Administrative Record.[8]

## Discussion

Plaintiff seeks to supplement the administrative record with documents that fall into three categories: 1) documents pertaining to the Druyun Study, 2) documents pertaining to the Inspector General's Report, and 3) miscellaneous Department of Defense communications regarding Ms. Druyun.

Supplementation of the administrative record "should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'"  Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000), aff'd 398 F.3d 1342 (Fed. Cir. 2005)).  Faced with a request to supplement the administrative record, the Court must "make the required threshold determination of whether additional evidence [is] necessary."  Id.

In Citizens to Preserve Overton Park, Inc. v. Volpe, the Supreme Court recognized that a trial court hearing a challenge to an agency action under the Administrative Procedure Act ("APA") may supplement the administrative record where there is "a strong showing of bad faith or improper behavior" by agency officials, noting that in such instances, "the only way there can be effective judicial review is by examining the decisionmakers themselves."  401 U.S. 402, 420 (1971), overruled on other grounds by, Califano v. Sanders, 430 U.S. 99 (1977).

Consistent with this longstanding precedent, the Court of Federal Claims has recognized that the administrative record "may be supplemented with . . . relevant information that by its very nature would not be found in an agency record -- such as evidence of bad faith."  Orion Int'l Techs. v. United States, 60 Fed. Cl. 338, 343 (2004).  Because "[a]llegations of bias, prejudice and bad faith . . . which depend upon a Government official's past conduct toward a bidder necessarily cannot be subsumed within the record of a challenged award decision," courts resolving bid protests raising such allegations "have traditionally considered extra-record evidence in assessing alleged bias or bad faith."  Int'l Res. Recovery, Inc. v. United States, 61 Fed. Cl. 38, 41-42 (2004) ("IRRI"); see also Galen Med. Assocs., Inc. v. United States, 56 Fed. Cl. 104, 109 (2003), aff'd, 369 F.3d 1324 (Fed. Cir. 2004) (allowing depositions where plaintiff alleged a pattern of bias); J.C.N. Constr. Co. v.

---

[8]  In its initial brief on its renewed motion to supplement the administrative record, Plaintiff requested that the Court admit a number of documents which Plaintiff later determined were already a part of the administrative record.  Plaintiff therefore withdrew its motion for supplementation with regard to the following documents: C.4.4, F.1.11, F.1.12, F.1.25, G.1.19, G.1.20, G.1.21, G.1.4, G.1.6, G.1.7, G.2.15, G.2.18, G.2.2, G.2.20, G.2.25, G.2.28, G.2.3, G.2.32, G.2.33, G.2.36, G.2.6, G.2.7, G.2.8, G.3.5, and G.3.6.  See Pl.'s Reply at 3-5.

United States, 60 Fed. Cl. 400, 405 n.8 (2004) (allowing depositions regarding asserted bias and de facto debarment); Cybertech Group, Inc. v. United States, 48 Fed. Cl. 638, 651 (2001) (allowing five depositions and an evidentiary hearing on allegations of bad faith).

Because well grounded allegations of bad faith and bias "are serious allegations which cannot be rebutted within the confines of the existing Administrative Record," supplementation is warranted to give Plaintiff an opportunity to prove such allegations. Int'l Res. Recovery, 61 Fed. Cl. at 43-44. Defendant and Intervenor incorrectly argue that Plaintiff must show clear and convincing evidence of bad faith or bias in order to supplement the administrative record. Def.'s Opp'n to Pl.'s Mot. to Supplement the Admin. R. 21; Intervenor's Opp'n to Pl.'s Renewed Mot. to Supplement the Admin. R. 3. Defendant and Intervenor confuse the burden of proof required to demonstrate bad faith or bias on the merits with the lower standard necessary for supplementing the administrative record. Indeed, the case Defendant cites for its proposition that clear and convincing evidence is required, Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234 (Fed. Cir. 2002), did not involve a motion to supplement the administrative record. Rather, Am-Pro -- which was not a bid protest but a contract claim -- held that a contractor had failed to meet the evidentiary burden needed to overcome the presumption that government officials act in good faith. Id. at 1243.

Defendant and Intervenor cite no case in which a court required clear and convincing evidence of bad faith or bias in order to supplement the administrative record. The Court in Overton Park spoke in terms of a "strong showing" of bad faith justifying supplementation of the AR. Further, this Court expressly rejected the need for clear and convincing evidence of bad faith to warrant supplementation, stating:

> The Court is aware that the Federal Circuit has recently articulated that "[i]n order to prevail on an allegation of bad faith, [the protester] must show 'almost irrefragable' proof." Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1337 (Fed. Cir. 2004). The Federal Circuit went on in Galen to clarify that the "clear and convincing standard of proof" was applicable, and in particular "clear and convincing evidence of a specific intent to injure the protester." Id. at 1330. At this juncture, this Court cannot conclude whether Plaintiff can meet that heavy burden here, but concludes the allegations appear to be sufficiently well grounded to warrant supplementation of the Administrative Record.

IRRI, 61 Fed. Cl. at 43  In other words, while a protester must establish clear and convincing evidence of bad faith or bias to prevail on the merits, a lesser showing suffices -- that the allegations "appear to be sufficiently well grounded" -- to warrant supplementation of the administrative record.

In Information Technology & Applications Corp. v. United States, 316 F.3d 1312, 1323 n.2 (Fed. Cir. 2003) ("ITAC"), the United States Court of Appeals for the Federal Circuit addressed the standard for allowing discovery on a bias allegation in a bid protest. The Court explained:

> The appellant also argues that the Court of Federal Claims improperly refused to allow discovery regarding alleged bias of the Air Force in the procurement process.   An agency decision is entitled to a presumption of regularity.   [D]iscovery of the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's [decision]. In this case, ITAC has pointed to no record evidence of bias.   Instead it has merely reiterated its contentions that the Air Force erred in evaluating the proposals.  This is not evidence of bias, and it is insufficient to overcome the presumption that the contracting officer acted in good faith.

316 F.3d at 1323 n.2 (quotations omitted).

Consistent with this standard, before authorizing discovery into alleged bias on the part of agency officials in a bid protest, trial courts have required a plaintiff to assert a reasonable factual predicate for such allegation.  In Beta Analytics International, Inc. v. United States, 61 Fed. Cl. 223, 226 (2004), the Court ruled that in order to obtain discovery on bad faith, a plaintiff must: 1) make a threshold showing of either a motivation for the Government employee to have acted in bad faith or of conduct that is hard to explain absent bad faith, and 2) persuade the Court that discovery could lead to evidence that would provide the level of proof sufficient to overcome the presumption of regularity and good faith.  In Beta, the Court denied discovery on the bad faith allegation finding that a difference in scoring among evaluators was insufficient to establish a predicate for discovery on bias.  "Innuendo or suspicion is not enough to demonstrate bad faith and thus justify discovery." Beta, 61 Fed. Cl. at 226 (citations omitted).

So too, in Four Points by Sheraton v. United States, 63 Fed. Cl. 341 (2005), this Court denied supplementation of the AR where the sole basis for the plaintiff's allegation of bias was its disagreement with the evaluation.  As this Court explained in Four Points:

> Here, there is no alleged conduct which might indicate a motivation for bias on the part of the CO or the evaluators.   Criticism of Plaintiff's performance on the incumbent contract in areas required to be evaluated or erroneous evaluations or inconsistent scoring do not rise to the level of motivation for bias.   Rather, the numerous examples cited by Plaintiff to support its need to probe bias in discovery are judgmental conclusions of the CO or the evaluators which are part and parcel of the evaluation itself and capable of challenge in a bid protest in and of themselves.  Nor was there alleged conduct by these individuals which was difficult to explain, absent bias.  See Beta, 61 Fed. Cl. at 226.

63 Fed. Cl. at 344-45.

In IRRI, this Court again recognized that allegations of bad faith and bias must rest on strong evidentiary footing in order to warrant supplementation of the AR, but found that the allegations of bad faith and bias there were "sufficiently well grounded to warrant supplementation of the Administrative Record," based upon "hard facts" which suggested that the contracting officer had knowingly failed to tell evaluators that IRRI's prior termination for default had been converted into a termination of convenience. IRRI, 61 Fed. Cl. at 43. Further, the record in IRRI was unclear as to whether that change in IRRI's termination status had been taken into account in the evaluation.

Similarly, in the instant case, Plaintiff's allegations that Ms. Druyun may have been biased against Plaintiff in the conduct of this procurement are sufficiently well grounded given that Ms. Druyun rescinded the appointment of the original SSA and appointed herself to that role and then changed Lockheed's ratings -- which bolstered the selection decision.[9] Plaintiff claims that Ms. Druyun changed Lockheed's ratings without sufficient justification, and the AR does not contain an explanation of why this occurred.

Moreover, the documents that Plaintiff seeks to add to the AR are the work product of the Government's own investigations into several issues bearing on the instant protest -- whether Ms. Druyun may have allowed her personal interests to affect her judgment in making acquisition decisions, whether there was sufficient oversight within the Air Force concerning her conduct of procurements, and whether she may have manipulated contract awards. Such evidence may be probative of whether Ms. Druyun engaged in bad faith or was biased in the conduct of the C-5 AMP procurement. Moreover, the existing agency record necessarily would not contain such information. "Allowing a protest to be decided upon an AR which does not reflect what actually transpired would perpetuate error and impede and frustrate effective judicial review." AshBritt, Inc. v. United States, 87 Fed. Cl. 344, 366 (2009).

Defendant and Intervenor further argue that supplementation as to certain documents should be denied because these documents do not meet the requirements of the Federal Rules of Evidence in that they contain hearsay or impermissible character evidence. While it is clear that the agency's compilation of the AR itself need not comport with the Federal Rules of Evidence, it is not settled whether supplementation with extra-record material must or should comply with those rules. As far as the agency's compilation of an AR goes, "it has long been settled that the technical rules for the exclusion of evidence applicable in jury trials do not apply to proceedings before federal administrative agencies in the absence of a statutory requirement that such rules are to be observed." Opp Cotton Mills, Inc. v. Adm'r of Wage & Hour Div. of Dep't of Labor, 312 U.S. 126, 155 (1941). Rather, the APA provides that "[a]ny oral or documentary evidence may be received, but the agency

---

[9] Plaintiff asserts that the requested supplementation will indicate that the C-5 AMP program was originally classified as an Acquisition Category III ("ACAT III") program, requiring that the SSA be a person "at the lowest level appropriate," that there was no justification for the rescission of the appointment of the original SSA, and that the Under Secretary of Defense for Acquisition, Technology, and Logistics was not consulted before increasing the responsibilities of Ms. Druyun. Pl.'s Reply at 16-17.

as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence" and states that any rule or order issued by the agency must be "supported by and in accordance with . . . reliable, probative, and substantial evidence." 5 U.S.C. § 556(d) (2006); see also Veg-Mix, Inc. v. U.S. Dep't of Agric., 832 F.2d 601, 606 (D.C. Cir. 1987) ("Generally, for example, if hearsay evidence meets the standards of the Administrative Procedure Act by being relevant, material, and unrepetitious . . . agencies are entitled to weigh it according to its 'truthfulness, reasonableness, and credibility.'") (internal citation omitted); cf. New Dynamics Found. v. United States, 70 Fed. Cl. 782, 796-98 (2006) (rejecting the notion that hearsay and non-authenticated documents which would otherwise be inadmissible under the Federal Rules of Evidence must be excluded from the administrative record.)

The supplementation sought by Plaintiff in this bid protest encompasses materials that were never considered by the agency in reaching the challenged procurement decision. However, given the unusual circumstances of Ms. Druyun's conduct, these documents may illuminate the propriety of that decision or the procurement process. As such, the requested supplementation constitutes purely extra agency record material to be utilized exclusively in this judicial proceeding -- not material that was generated in furtherance of the procurement decision at issue and which should have been included in the AR in the first place.

Federal Rule of Evidence ("FRE") 101 provides that the FRE "govern proceedings in the courts of the United States . . . to the extent and with the exceptions stated in rule 1101." Fed. R. Evid. 101. Rule 1101(b) provides that the rules apply generally to civil actions and proceedings, but Rule 1101(e) sets forth circumstances in which the FRE are applicable in part. Fed. R. Evid. 1101.

> Rule 1101(e) states:
>
> Rules applicable in part.
>
> In the following proceedings these rules apply to the extent that matters of evidence are not provided for in the statutes which govern procedure therein or in other rules prescribed by the Supreme Court pursuant to statutory authority: . . . review of agency actions when the facts are subject to trial de novo under section 706(2)(F) of title 5, United States Code; . . . .

Fed. R. Evid. 1101(e).[10]  The note to subdivision 1101(e) states:

---

[10]  Section 1101(e) contains a litany of other statutory proceedings including, for example, the trial of misdemeanors before magistrate judges and naturalization and revocation of naturalization under sections 310-318 of the Immigration and Nationality Act.  Fed. R. Evid. 1101(e).

> In a substantial number of special proceedings, ad hoc evaluation has resulted in the promulgation of particularized evidentiary provisions, by Act of Congress or by rule adopted by the Supreme Court. Well adapted to the particular proceedings, though not apt candidates for inclusion in a set of general rules, they are left undisturbed. Otherwise, however, the rules of evidence are applicable to the proceedings in the subdivision.

Fed. R. Evid. 1101. In the context of bid protests no "particularized evidentiary provisions" have been promulgated. The exception in Rule 1101(e) making the FRE applicable to the APA in part relates to the APA section 706(2)(F), which does not address bid protest proceedings. Rather, section 706(2)(F) only addresses situations where a reviewing court sets aside agency action found to be "unwarranted by the facts to the extent that the facts are subject to a trial de novo by the reviewing court." 5 U.S.C. § 706(2)(F). The statute authorizing bid protests at the Court of Federal Claims does not empower this Court to conduct a trial de novo when reviewing a bid protest.[11] As the Federal Circuit in Axiom recently cautioned:

> The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to "convert the 'arbitrary and capricious' standard into effectively de novo review." Murakami v. United States, 46 Fed.Cl. 731, 735 (2000), aff'd, 398 F.3d 1342 (Fed. Cir. 2005).

564 F.3d at 1380.

Applying these standards, the Court concludes that the FRE should be applied to materials that are extra-record supplementation of the agency's AR to insure their reliability. Such materials fall within the general provision in Rule 101 that the FRE "govern proceedings in the courts of the United States . . . to the extent and with the exceptions stated in Rule 1101." Fed. R. Evid.101. None of the exceptions in Rule 1101 applies to a bid protest in the Court of Federal Claims, as no particularized evidentiary provisions govern admission of materials that never were part of the AR of a given procurement in the first place, but instead were either created in the course of the judicial

---

[11] Indeed, the standard of review in bid protests -- the arbitrary and capricious standard -- stands in stark contrast to the de novo standard of review authorized for this Court's and the Boards of Court of Appeals' review of contracting officer final decisions under the Contract Disputes Act ("CDA"). 41 U.S.C. § 609(a)(3)(2006). Interestingly, under the CDA, the Boards of Contract Appeals may admit hearsay evidence in their discretion. See, e.g., A.S.B.C.A. Rule 20(a) ("Appellant and the Government may offer such evidence as they deem appropriate and as would be admissible under the Federal Rules of Evidence or in the sound discretion of the presiding Administrative Judge or examiner."); C.B.C.A. Rule 10 ("Hearsay evidence is admissible unless the Board finds it unreliable or untrustworthy."); P.S.B.C.A. Rule 955.21 ("[E]vidence not ordinarily admissible under the Federal Rules [of Evidence], may be admitted in the discretion of the Board.").

proceedings (such as depositions or other testimony) or were proffered to assist the Court in understanding the agency record already in existence (such as testimony from a litigant's representative on technical requirements or capabilities or expert testimony on a technical matter pertinent to the procurement). While not an exhaustive list, these types of extra-AR materials are illustrative of the type of supplementation which is subject to the FRE. Such materials must be distinguished, however, from documents which the agency omitted from the AR but should have included in the first place or are agency-generated and ought to be included for completeness. Because such documents should have been part of the agency record in the first place, they would not need to conform to the FRE.

Turning to the case at hand, the Court applies these standards and addresses the documents in question.

1.    Documents Pertaining to the Inspector General Report

Plaintiff seeks supplementation with regard to 21 documents created during the preparation of the Inspector General Report. Eight of these documents contain the written findings and workpapers of auditors following their review of procurements conducted by Ms. Druyun, including the C-5 AMP acquisition. AS.6.a, A.3.1, B.3.PS, C.4.5, F.1.PS, G.1.PS, G.2.PS, G.3.PS. In these documents, the auditors cited a "lack of documentation" and concluded that the "contract award may have been and/or were unnecessarily vulnerable to manipulation." B.3.PS at 9.

The remaining 13 documents pertaining to the Inspector General Report include the report itself, as well as a memorandum prepared for Acting Under Secretary of Defense for Acquisition, Technology, and Logistics Michael Wynne identifying the C-5 AMP procurement as one of eight contract awards by Ms. Druyun for which the Under Secretary requested review by the Inspector General: C.4.1; the Review Approach for the Druyun Study, C.4.2; relevant Department of Defense and Air Force regulations that were reviewed for compliance as part of the audit, D.2.13, D.3.PS; the testimony of Daniel I. Gordon, then  GAO's Managing Associate General Counsel for Procurement Law, to the U.S. Senate Subcommittee on Airland, concerning GAO's findings on two procurements conducted by Ms. Druyun, E.2.1; summaries of meetings and teleconferences conducted by Air Force personnel participating in the audit of the C-5 AMP procurement, F.1.24, F.1.29, F.1.4; flowcharts of the general Air Force procurement cycle and the C-5 AMP procurement, G.1.22, G.1.23; a power-point presentation comparing the ratings assigned to Lockheed Martin and Raytheon in the C-5 AMP procurement, G.3.11; and a March 2005 Report of the Defense Science Board Task Force on Management Oversight in Acquisition Organizations, G.3.23.

The Inspector General Report "identifie[d] issues related to the source selection procedures used by the Air Force in the acquisition of the [C-5 AMP program]." The Inspector General Report at I. The report stated that "Air Force personnel did not adequately document the decision process," and that "the [C-5 AMP] solicitation and contract award were unnecessarily vulnerable to manipulation." Id. Additionally, the report found that "Air Force personnel could not provide support for [Ms. Druyun's] decision to rescind the . . . original SSA delegation and instead delegate

the position to herself," that "[Ms. Druyun] disregarded the performance/capability and risk proposal ratings presented by the Advisory Council without documenting why she made the changes, other than to cite her personal experience," and that Ms. Druyun "adjusted the Advisory Council's ratings to better support the higher cost proposal presented by Lockheed Martin Aeronautical Systems." Id. at 6-7, 13.

Though Defendant objects to supplementation of the Inspector General Report documents on the grounds that they contain inadmissible hearsay, any statements made therein by government officials in their review of the Druyun procurements constitute admissions by party-opponent -- not hearsay.  Rule 801(d)(2)(D) provides that "a statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  Fed. R. Evid. 801(d)(2)(D).  In applying the rule, it is "'widely accepted that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility.'"  Globe Sav. Bank, F.S.B. v. United States, 61 Fed. Cl. 91, 96-97 (2004) (quoting Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756, 761 (7th Cir. 2003)); see also Yankee Atomic Elec. Co. v. United States, No. 98-126C, 2004 WL 2450874, at *8 (Fed. Cl. 2004); 2 Charles McCormick, McCormick on Evidence § 254, at 137 (John W. Strong ed., 5th ed. 1999).  Admissions are not considered exceptions to the general rule against hearsay, but are "classed as nonhearsay, and excluded from the hearsay rule." Globe Sav.  Bank, 61 Fed. Cl. at 94 (citations omitted); see also First Annapolis Bancorp, Inc. v. United States, 72 Fed. Cl. 369, 376 (2006).

As the court in United States v. United Shoe Machinery Corp. explained:

> The hearsay rule is a feature of the adversary system of the common law. It allows a party to object to the introduction of a statement not made under oath and not subject to cross-examination. Its purpose is to afford a party the privilege if he desires it of requiring the declarant to be sworn and subjected to questions. That purpose does not apply, and so the hearsay rule does not apply, where the evidence offered against a party are his statements.

89 F. Supp. 349, 352 (D. Mass. 1950).

In order to be admissible under Rule 801(d)(2)(D), the statement must be offered against a party and 1) be the statement of the party's agent or servant, 2) concern a matter within the scope of the agency or employment, and 3) have been made during the existence of the agency or employment relationship.  Long Island Sav. Bank, F.S.B. v. United Sates, 63 Fed. Cl. 157, 163 n.9 (2004). Because these documents were prepared by Government employees or agents acting within the scope of their employment relating to matters in the scope of their employment, they are not hearsay.

14

Even if these documents relating to the Inspector General's Report are deemed to be hearsay, they fall either within the public records exception or the business records exception of the FRE. Rule 803(8) of the Federal Rules of Evidence, excludes from the hearsay rule the following:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8).  This exception applies to the Inspector General's Report itself as well as to the testimony of Mr. Gordon to the Senate Subcommittee.  All other IG-related documents would likely fall within FRE 803(6), the business records exception, assuming proper foundation -- a matter this Court does not require in light of the alterative grounds of admissibility.  Under Rule 803(6) business records are an exception to the hearsay rule if they record an event or transaction made in the regular course of business at or near the time the event occurred.

Defendant further objects that Document E.2.1 (the testimony of Daniel I. Gordon, GAO Managing Associate General Counsel for Procurement Law, to the U.S. Senate Subcommittee on Airland concerning GAO's findings on the C-130 AMP and the small diameter bomb program) and G.3.23 (the Report of the Defense Science Board Task Force on Management Oversight in Acquisition Organizations) constitute inadmissible character evidence under Fed. R. Evid. 404 because they contain information on Druyun not specific to the C-5 AMP procurement.

Rule 404(a) states  that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a).  However, Rule 404(b) establishes that evidence of other wrongs or acts of a person may be admissible for purposes other than showing action in conformity therewith -- for example, to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).  Here, Ms. Druyun's overall conduct in the course of running the Air Force procurement shop may show her own "opportunity," "plan," "motive," "absence of mistake," among other factors listed in Rule 404(b) -- as well as evidence that the reporting structure beneath Ms. Druyun was susceptible to manipulation. Fed. R. Evid. 404(b); see also Fed. R. Evid. 406 ("Evidence of the habit of a person or of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.").  Therefore, Defendant's objections as to impermissible character evidence are without merit.

15

2.      Documents Pertaining to the Druyun Study

Plaintiff seeks supplementation with regard to 11 documents created during the preparation of the Druyun Study, including the final draft of the study itself.  Three of the documents stated findings regarding the ratings changes imposed by Ms. Druyun during the C-5 AMP procurement. DCMA 1-3, DCMA 625-629, DCMA 630-634.  For example DCMA 1-3, entitled "C-5 AMP Source Selection Rating Changes," stated that Ms. Druyun appeared to rely extensively on her own analysis over those of the technical experts on the SSET and the Senior Acquisition Officials of the SSAC." DCMA 2.

The second document, DCMA 625-629, entitled "ACS Anomaly #2: C-5 AMP Source Selection Rating Changes," stated that "Ms. Druyun's rating changes certainly improved the justification of awarding to an offeror who was over 10% higher.  There were several changes in the ratings and all of them either improved the successful offeror's rating or worsened the unsuccessful offeror[']s rating."  DCMA 625.

The third document, DCMA 630-634, entitled "ACS Anomaly #3: C-5 AMP Source Selection Rating Changes," stated that "review of the contract file raised concern due to the level of interest and influence that Ms. Druyun had over the C-5 AMP source selection" and recommended "further review."  DCMA 630.

DCMA 244-258, "Druyun Study - Aeronautical Systems Center (ASC) Contract Reviewing Team Report," discussed several procurements conducted by Ms. Druyun, including the C-5 AMP acquisition.  The document stated that "[t]he review of the contract file raised concern due to the level of interest and influence that Ms. Druyun had over the C-5 AMP source selection," noting that Ms. Druyun redelegated SSA authority to herself "without justification" and "adjusted the SSAC's ratings to better support the higher cost, better technical proposal."  DCMA 250.  The document discussed Ms. Druyun's management style, stating: "[o]n the behavioral side we saw many instances of micro-managing, power grabbing, and over-controlling.  She did not hesitate to take over negotiations, making the contracting officer irrelevant at times. . . . She would not think twice at challenging technical experts. . . . And all this coupled with intolerance for views that differ from her own resulted in an environment of intimidation and fear."  DCMA 258.

DCMA 158-242, entitled "The Druyun Study In-Process Review," is a power-point presentation dated January 27, 2005, concerning the Druyun Study, presented by Sallie Flavin, Deputy Director of the Defense Contract Management Agency (DCMA), to Lt. Gen. John Corley. The document stated that "Ms. Druyun's actions generated an atmosphere of fear and intimidation in the [Air Force] acquisition community," listing "[r]eports of negative career impacts," "[r]eports of highly specific direction without rationale," and "[d]isenfranchised workforce."  DCMA 184.

Though Defendant once again asserts that this evidence of wrongdoing in other procurements represents impermissible character evidence, Defendant's objection is without merit for the same reasons explained above -- FRE 404 permits evidence of other wrongs or acts of a person to show

16

opportunity, preparation, or plan.  Fed. R. Evid. 404(b); see also Fed. R. Evid. 406 ("Evidence of the habit of a person or of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.") (emphasis added).

Finally, five of the documents in this category are draft versions of the Druyun Study. DCMA 1343-1360; DCMA 1361-1378; DCMA 1396-1411; DCMA 2226-2256; DCMA 2257-2294. Plaintiff has offered no justification for admitting draft versions of the Druyun Study in addition to the final report.  The Court finds that these five documents are not necessary for judicial review, and denies supplementation.

The Druyun Study identified eight acquisitions conducted by Mr. Druyun during the period between 1993 and 2002, including the C-5 AMP procurement, "where the acquisition process appeared irregular or abnormal and where the results may not have been in the best interest of the Government."  The Druyun Study at 4.  The Druyun Study recommended that "the Acting Under Secretary of Defense for Acquisition, Technology and Logistics refer the eight anomalies identified in this report to the appropriate Government organizations for further detailed review and analysis." Id. at 5.

Because all documents pertaining to the Druyun Study except the drafts are necessary for judicial review and comport with the FRE, they are admitted as supplementation of the AR.

3.    Department of Defense Communications

The remaining eight documents Plaintiff seeks to add to the record contain various communications by Department of Defense officials concerning Ms. Druyun's activities.[12]  The Court addresses each of these documents in turn.

DoD 016-030: "Mike Wynne, Acting Undersecretary of Defense for Acquisition Technology and Logistics, in Media Roundtable Discussing Air Force Procurement Issues in Light of the Darlene [Druyun] Case," November 9, 2004.

This document is a transcript of Acting Under Secretary of Defense for Acquisition, Technology and Logistics, Mike Wynn's, comments in a media roundtable on the Druyun procurements.  The transcript discusses broad trends with regard to Ms. Druyun's handling of Air Force acquisitions, and expresses that "we were not happy with the concentration of power that had accrued to [Ms. Druyun]."  The Under Secretary's comments are a public record and do not constitute impermissible character evidence under Fed. R. Evid. 404 because they illuminate Druyun's intent, opportunity, plan and management style.

_____

[12]    DoD 098-127, "Report of the Defense Science Board Task Force on Management Oversight in Acquisition Organizations," March 2005, is contained within G.3.23, previously admitted as supplementation.

17

DoD 041-042: "Defense Department Operational Update Briefing," November 23, 2004.

This document is a transcript of comments made by Secretary of Defense Donald Rumsfeld during an operational update briefing. Secretary Rumsfeld refers to Ms. Druyun as a "criminal" who "broke the law . . . [and] over a sustained period . . . succeed[ed] without being noticed," characterizing this as "worrisome." DoD 042. However, Secretary Rumsfeld does not state anything specific with regard to the C-5 AMP procurement, and this document is cumulative of the actual criminal proceedings and unnecessary for judicial review.

DoD 049: "Darleen Druyun's Roles and Responsibilities"[13]

This document details Ms. Druyun's duties in her position as Principal Deputy Assistant Secretary of the Air Force for Acquisition and her position within the Air Force procurement decision structure. This document does not have sufficient reliability or foundation to be admitted to the AR.

DoD 061-091: "The Druyun Study Briefing to Mr. Michael Wynne," February 2, 2005.

This document is a Power Point presentation given by Sallie Flavin, Deputy Director of the DCMA, to Acting Under Secretary of Defense for Acquisition, Technology, and Logistics Michael Wynne concerning the Druyun Study, and contains information regarding an atmosphere of fear and intimidation in the [Air Force] acquisition community under Ms. Druyun. As such, the document contains evidence relevant to Plaintiff's allegations of bad faith and bias which is not otherwise contained in the AR.

DoD 092-095:

This document is a transcript of an interview with an unnamed person whom Plaintiff describes as the leader of the Druyun Study. Pl.'s Reply, Ex. A at 14. Without further identification or authentication of the interviewee or the circumstances under which this document was generated, the Court denies supplementation.

DoD 135-137: E-mail from Nancy Dowling, Senior Procurement Analyst, to the Office of the Under Secretary of Defense for Acquisition, Technology and Logistics, January 23, 2006.

This document is an e-mail chain regarding the C-5 AMP procurement, in which a Senior Procurement Analyst discusses the IG findings. This evidence, otherwise lacking in the AR, is proper supplementation as it is relevant to Plaintiff's allegations of bad faith, bias, and regulatory violations.

---

[13] This document does not contain a date, author, or other identifying or foundational information.

DoD 162-168: E-mail Chain concerning DoD 092-095, February 3, 2005.

This document is an e-mail chain with an attached copy of the interview transcript in DoD 092-095 above -- the transcript of an interview with an unnamed person. The e-mail chain seeks to clarify why the answer to Question #6 in DoD 092-095 was cut off, and presents the answer in full. However, the document does not identify the interviewee or the context in which this document was prepared, and the e-mail chain contains no other evidence which might illuminate Plaintiff's allegations.

### Conclusion

1.  Consistent with the discussion above, Plaintiff's Renewed Motion to Supplement the Administrative Record is **GRANTED IN PART**. The following documents shall be filed as a supplement to the AR: AS.6.a, A.3.1, B.3.PS.doc, C.4.1, C.4.2, C.4.5, D.2.13, D.3.PS.doc, E.2.1, F.1.24, F.1.29, F.1.4, F.1.PS.doc, G.1.22, G.1.23, G.1.PS.doc, G.2.PS.doc, G.3.11, G.3.23, G.3.PS.doc, February 2006 IG Report, DCMA 1-3, DCMA 158-242, DCMA 244-258, DCMA 625-629, DCMA 630-634, February 2005 Druyun Study, DoD 016-030, DoD 061-091, DoD 135-137. Plaintiff shall file this supplementation to the AR by **February 22, 2010.**

2.  The parties shall propose redactions to this opinion by **February 12, 2010.**

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

19