# In the United States Court of Federal Claims

No. 06-396C
(Filed: February 2, 2011)
(Bid Protest)

* * * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P., | |
| Plaintiff, | Post-Award Bid Protest; |
| v. | Reconsideration; Rule 54(b); Rule 59; Supplementing the |
| THE UNITED STATES, | Administrative Record; |
| Defendant, | Allegations of Bad Faith and Bias. |
| and | |
| LOCKHEED MARTIN AERONAUTICS COMPANY, | |
| Intervenor. | |

* * * * * * * * * * * * * * * * * * * * * * * * *

Paul W. Searles, Haynes and Boone, LLP, 901 Main Street, 3100 Bank of America Plaza, Dallas, TX for Plaintiff.

Domenique Kirchner, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, 1100 L Street, NW, 8th Floor, Washington, D.C. for Defendant.

Marcia G. Madsen and Luke Levasseur, Mayer Brown LLP, 1909 K Street, NW, Washington, D.C. for Intervenor.

---

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S AND INTERVENOR'S MOTIONS FOR RECONSIDERATION IN PART**

---

**WILLIAMS**, Judge.

This matter comes before the Court on Defendant's and Intervenor's motions for reconsideration and/or clarification of the Court's Opinion granting Plaintiff's renewed motion to supplement the administrative record ("AR"). In its opinion, the Court ordered Defendant to supplement the record with 30 documents the Court deemed necessary for effective adjudication

of Plaintiff's protest. L-3 Commc'ns Integrated Sys., L.P. v. United States, 91 Fed. Cl. 347 (2010). For the reasons stated herein, the Court grants reconsideration and orders that four documents may not be included in the supplement to the AR.

## Background

### The Instant Bid Protest

In this post-award bid protest, L-3 Communications Integrated Systems, L.P. ("L-3") challenges the Air Force's award of two contracts to Lockheed Martin Aeronautics Company ("Lockheed Martin") to modernize the C-5 Galaxy aircraft ("C-5 AMP"), and seeks its bid preparation and proposal costs.[1] This protest was filed in the wake of former Principal Deputy Secretary of the Air Force Darlene Druyun's conviction for violating conflict of interest laws.

Plaintiff has raised several grounds of protest, claiming that through Ms. Druyun's unauthorized assumption of the Source Selection Authority ("SSA") duties and her change of evaluation ratings to justify the selection of Lockheed Martin's higher cost proposal, the Air Force improperly compromised the integrity of the procurement process, breached its implied contract to treat proposals fairly, honestly, and in good faith, and violated a panoply of procurement statutes and regulations. L-3 further claims that Ms. Druyun was biased in favor of Lockheed Martin and acted in bad faith in the C-5 AMP procurement. Finally, L-3 asserts that the Air Force acted arbitrarily and capriciously in making award to Lockheed Martin.

### The Court's Decision to Supplement the Record

The documents added to the AR were all generated years after the procurement stemming from investigations the Government undertook after Ms. Druyun was convicted of violating conflict of interest laws.[2] Ms. Druyun admitted that she allowed her personal interest to influence her procurement decisions with respect to the Boeing Company – she, her daughter, and her son-in-law negotiated for employment with Boeing while Ms. Druyun was a top Air Force procurement official.

Once the Air Force became aware of Ms. Druyun's improprieties, the Acting Under Secretary of Defense for Acquisition, Technology, and Logistics commissioned the Druyun Study to identify all acquisition actions involving Ms. Druyun that might warrant investigation. It is the supplementation of the AR with this Study, ensuing investigations, underlying documents, and government comments on Ms. Druyun's actions that are challenged in the instant motion.

---

[1] L-3 does not seek injunctive relief.
[2] Approximately five years after the award to Lockheed, Ms. Druyun was convicted of conspiracy to commit an act affecting a personal financial interest while acting as a government official in violation of 18 U.S.C. § 371 and 18 U.S.C. § 208(a). Ms. Druyun's conviction was not related to this procurement or to her interaction with Lockheed Martin.

The Study, which was conducted from December 2004 to February 2005, examined 407 acquisitions. Ultimately, the Study concluded that of those 407 acquisitions, eight, including the C-5 AMP procurement at issue here, were "anomalies" that required further investigation. The Acting Under Secretary of Defense for Acquisition, Technology, and Logistics then requested that the Department of Defense Inspector General review these eight actions. On February 28, 2006, the Inspector General published his report on the source selection procedures for the C-5 AMP. The Inspector General's Report "identified two actions that 'appeared irregular and may not have been conducted in the best interest of the Government'" – 1) the reassignment of the SSA responsibilities, and 2) the proposal rating changes made by Ms. Druyun in support of her source selection decision.

Plaintiff moved to supplement the AR with 40 documents falling into three categories: 1) documents pertaining to the Druyun Study, 2) documents pertaining to the Inspector General's Report, and 3) miscellaneous Department of Defense communications regarding Ms. Druyun.

Of the 40 documents Plaintiff sought to add to the AR, the Court accepted 30. Twenty-one related to the Inspector General's Report, including the report itself, the written findings and workpapers of auditors that reviewed the procurements conducted by Ms. Druyun, and other documents memorializing, summarizing, or reporting the findings of the investigation. Six additional documents pertained to the Druyun Study, including the Study itself, reports memorializing findings made during the investigation of Ms. Druyun regarding the C-5 AMP procurement, and materials used to present the Study's findings to agency officials. The Court ruled that three communications by Department of Defense officials concerning Ms. Druyun should be added to the record, as well as a slide presentation and an email chain, on the ground that these were relevant to Plaintiff's allegations of bad faith and bias. Finally, the Court allowed supplementation with a March 15, 1996 Department of Defense regulation. The Court did not allow supplementation with five draft versions of the Druyun Study or five internal Department of Defense communications.

## Discussion

### The Standard for Reconsideration Under Rule 54(b)

Because Defendant and Intervenor seek reconsideration and/or clarification of an interlocutory decision and the merits of this protest have not yet been addressed, Rule 54(b) of the Rules of the United States Court of Federal Claims ("RCFC") governs instead of Rule 59(e) or 60, which address reconsideration of final judgments. Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 568, 571 (2009); Pinckney v. United States, 85 Fed. Cl. 392, 393 (2009); Wolfchild v. United States, 68 Fed. Cl. 779, 784 (2005) ("This case remains in an interlocutory posture, and consequently the government's motion for reconsideration falls under RCFC 54(b) and RCFC 59(a), rather than under the more rigorous standards of RCFC 59(e).").

Rule 54(b) provides, in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the

action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

RCFC 54(b).

Rule 59(a) provides that rehearing or reconsideration may be granted as follows:

A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1). "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." Alpha I, 86 Fed. Cl. at 571 (quoting Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990)).

As the District Court for the District of Columbia recognized in Potts v. Howard University Hospital, reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure differs from reconsideration under Rules 59 and 60, and "is available 'as justice requires.'" 623 F. Supp. 2d 68, 71 (D.D.C. 2009) (quoting Childers v. Slater, 197 F.R.D. 185, 109 (D.D.C. 2000)); see also Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)). The Potts court continued:

"as justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court."

623 F. Supp. 2d at 71 (quoting Cobell, 224 F.R.D. at 272) (internal citation omitted). "[T]he 'as justice requires' standard amounts to determining 'whether reconsideration is necessary under the relevant circumstances.'" Id. (quoting Cobell, 224 F.R.D. at 272).

"A motion for reconsideration is not intended, however, to give an 'unhappy litigant an additional chance to sway' the court." Alpha I, 86 Fed. Cl. at 572 (quoting Matthews v. United States, 73 Fed. Cl. 524, 525 (2006)). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Potts, 623 F. Supp. 2d at 71 (quoting Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)) (internal citations omitted).

4

## **Supplementation Of The AR Is Appropriate If Necessary for Effective Judicial Review**

Defendant and Intervenor contend that all 30 documents, except a Department of Defense regulation, should be removed from the AR on reconsideration because the Court failed to adhere to the standard for supplementing the record set forth in Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1380-81 (Fed. Cir. 2009). Def.'s Mot. for Reconsideration and/or Clarification at 5-6 ("Def.'s Mot."); Int.'s Mot. In Axiom, the Federal Circuit held that the administrative record in a bid protest could be supplemented if necessary for effective judicial review. 564 F.3d at 1380.

Here, the AR does not contain sufficient information to permit effective judicial review of L-3's allegations of bad faith and bias because it does not contain the full picture of the Government's own assessment of this procurement. The Government itself was concerned following Ms. Druyun's conviction that her conduct may have impacted other procurements, including this one. The Government identified this procurement as an "anomaly" requiring further investigation, and the Government's investigation "identified two actions that 'appeared irregular and may not have been conducted in the best interest of the Government'" – 1) Ms. Druyun's reassignment of the SSA responsibilities to herself, and 2) the proposal rating changes made by Ms. Druyun in support of her source selection decision. The AR does not provide any explanation of why Ms. Druyun assigned the SSA duties to herself and contains only a cursory explanation of why she changed the proposal ratings, reflecting that she did so based upon her personal experience. Although the record of this procurement award necessarily did not contain the investigations into this procurement – which occurred years later – those investigations are clearly necessary for the Court to conduct effective judicial review.

Plaintiff alleges in its amended complaint that "[t]hrough the failure to sufficiently document the source selection process, the Air Force violated FAR 15.308 and AFFARS AA-107(a)(6) and AA-316(b)." Pl.'s Am. Compl. ¶ 46. In its motion to supplement the administrative record, Plaintiff seeks to supplement the AR to show a lack of documentation. See Pl.'s Mot. to Suppl. at 20-22. The requested supplementation illustrates this fundamental problem with the AR itself – the lack of documentation of the actions taken in the procurement:

> The documentation reviewed was insufficient to provide the audit trail necessary for auditors to recreate the decision making process used in the C-5 AMP source selection.

Tab 1, Audit of the Contract Award Process for the C-5 Avionics Modernization Program ("Audit"), Management Comments to the Draft Report at 1.

> [The Director of the Audit] suggests that the report "focus on the total lack of documentation and the environment in the [Air Force] that perpetuated [this] problem," and that the report be changed to read "'without sufficient documentation to justify decision' to highlight the lack of documentation."

Tab 2, Audit, In-Process Review at 1-2.

> The Program Office did not have adequate management controls in place to support the oversight of the C-5 AMP source selection process. Specifically, the Air Force did not have management controls in place to ensure that source selection decisions were adequately documented and justified.

Tab 3, Audit, Management Control Program at 8-9.

The Federal Acquisition Regulation ("FAR") requires that an agency document its evaluation of proposals as well as its final award decision. FAR 15.305(a) provides that "relative strengths, deficiencies, significant weaknesses, and risks supporting proposal evaluation shall be documented in the contract file." Similarly, an agency's source selection decision "shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the [Source Selection Authority], including benefits associated with additional costs." FAR 15.308; see Femme Comp Inc. v. United States, 83 Fed. Cl. 704, 758-64 (2008) (finding that agency's best value tradeoff was improper where, inter alia, "the Source Selection Authority did not adequately document her best value tradeoffs in the Source Selection Decision Document"); Info. Scis. Corp. v. United States, 73 Fed. Cl. 70, 121 (2006) (finding source selection decision flawed where SSA did not adequately document independent rationale for adopting the reasoning of the Contracting Officer and the minority report of the Source Selection Evaluation Board).

Defendant and Intervenor claim that only the record of the procurement developed by the Air Force at the time of award is necessary for effective judicial review. The problem with this argument is that the Department of Defense itself recognized in these subsequent investigations that the procurement was not properly documented with respect to the two anomalies identified. Succinctly stated, the Government concluded that the contemporaneous record of this procurement (now being touted as a sufficient AR) was incomplete and inadequate – a circumstance clearly warranting supplementation. See Axiom, 564 F.3d at 1380. Effective review requires a record that contains documentation of the agency's decision-making process. Kerr Contractors, Inc. v. United States, 89 Fed. Cl. 312, 335 (2009); see also Acrow Corp. v. United States, No. 10-682C, 2010 WL 5153440, at *6 (Fed. Cl. Dec. 17, 2010) (recognizing that, following Axiom, the administrative record may be supplemented "when the agency action is not adequately explained in the record before the court"); see also Galen Med. Assoc. v. United States, 56 Fed. Cl. 104, 109 (2003) ("In considering plaintiff's bias claim, therefore, we take into account all circumstances surrounding the procurement."). The Government should not be able to hide its conclusions and argue that the Administrative Record surrounding this procurement is adequate, when its own inquiries determined otherwise.

Defendant further contends that the standard applied by the Court in determining that supplementation was necessary – whether Plaintiff's allegations of bias and bad faith were "sufficiently well-grounded" – was too low, and argues that "if not 'clear and convincing' evidence, the proof of bad faith should be at least a preponderance of the evidence." Def.'s Mot. at 15.[3] The crux of Defendant's argument is that clear and convincing or preponderant evidence of bad faith or bias should be required in order to supplement the AR. This is the same argument

---

[3] Intervenor does not ask for reconsideration on the applicable standard.

that Defendant presented in the original briefing, and the Court rejected that argument, finding that "while a protester must establish clear and convincing evidence of bad faith or bias to prevail on the merits, a lesser showing suffices to warrant supplementation of the administrative record – that the allegations 'appear to be sufficiently well grounded.'" L-3, 91 Fed. Cl. at 355. This standard was recently reaffirmed in Pitney Bowes. 93 Fed. Cl. 327, 332 ("The test for supplementation is whether there are sufficient well-grounded allegations of bias to support an inquiry and supplementation; the protesting plaintiff need not make a showing of clear and convincing evidence of bias on the merits.").

Defendant would impose an unrealistic and overly onerous burden on a plaintiff to show evidence of bias and bad faith in order to supplement an administrative record. Satisfying such a burden would be impossible here, where a government official responsible for the source selection decision did not explicate the unusual circumstances of reassigning herself as the SSA or adequately explain her rationale for changing the ratings.

Defendant and Intervenor also challenge the Court's conclusion that L-3's allegations of bad faith on the part of Ms. Druyun were sufficiently well grounded. However, in further examining the C-5 AMP procurement in light of Ms. Druyun's conduct, the Department of Defense itself detected irregularities that caused it to conclude that the C-5 AMP acquisition "may not have been conducted in the best interest of the Government." Id. These Government determinations coupled with the lack of adequate documentation of the evaluation and source selection decision make L-3's allegations of bad faith and bias sufficiently well grounded to permit supplementing the record.

Intervenor contends that the fact that Ms. Druyun reassigned herself to the position of SSA and changed L-3's ratings "would provide no evidence of bias or bad faith whatsoever." Int.'s Mot. at 5-6 (emphasis in original). However, in the context of Ms. Druyun's conviction and modus operandi, her reassignment of the SSA responsibilities to herself without any explanation and her changes to the ratings with only a superficial explanation are sufficiently unusual to raise serious questions about what transpired. In discussing the showing necessary for allowing discovery in a bid protest alleging bias, the Federal Circuit observed: although not to be lightly ordered, discovery in a case alleging bias may be permitted where "record evidence raises serious questions as to the rationality of the contracting officer's [decision]." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1323 n.2 (Fed. Cir. 2003) (quoting Impresa Construzioni Geom. Domenico Garufi, 238 F.3d 1338, 1341 (Fed. Cir. 2001)). Here, the Government recognized that Ms. Druyun's conduct in this procurement raised serious questions and "concern." The supplementation reflects:

> Three of the cases related to competitive source selections where the roles of the source selection evaluation teams, the source selection advisory council, and the source selection authority appeared somewhat confused and/or Ms. Druyun appeared to have exercised an unusual amount of detailed control over the evaluation results (. . .; C-5 Avionics Modernization Program).

Tab 4, Memorandum for the Inspector General of the Department of Defense regarding "Referral of Contracts for Review" at 9.

7

>This review raised concern due to the level of interest and influence she had over this source selection. Specifically, she withdrew SSA delegation provided by her boss to become the SSA herself and during the source selection she adjusted the SSAC's ratings to better support the higher cost, better technical proposal. Actions taken and the selection made were all within the bounds of source selection practices and best value decisions. However, they are not or should not be usual occurrences and the coupling of these two dramatic actions is worthy of further review. The withdrawal of SSA delegation is directed without justification. The change in ratings is justified in the Source Selection Decision document by disagreeing with the SSET's assessment. Therefore it is recommended that this source selection be forwarded for further review (level 2.).

Tab 6, Assessment of a Source Selection (C-5 AMP) at 6.

>Ms. Druyun's actions generated an atmosphere of fear and intimidation in the [Air Force] acquisition community
>
>- Reports of negative career impacts
>- Reports of highly specific direction without rationale
>- Disenfranchised workforce.

Tab 23, The Defense Contract Management Agency's Briefing Slides on a review of contract actions executed during Ms. Druyun's tenure as Principal Deputy Assistant Secretary, at DCMA 240.

In light of the Department of Defense's findings, a record limited to the contemporaneous record of the C-5 AMP procurement formed at a time when Ms. Druyun's behavior was not known does not contain an adequate explanation of what occurred in this procurement. When the Court makes a judgment based upon the administrative record it must assure itself that the record encompasses the totality of the circumstances surrounding the procurement. See Bannum, Inc. v. United States, 89 Fed. Cl. 184, 189 (2009) ("The Court cannot make a reasoned decision without understanding all of the circumstances implicated in the case."); Global Computer Enters. v. United States, 88 Fed. Cl. 52, 62 (2009) ("The Court cannot make a reasoned decision without understanding the totality of the circumstances implicated in the case."). As the Bannum court recognized, Axiom "does not undermine the Court's rules for determining the content of the administrative record." 89 Fed. Cl. at 189.

Defendant and Intervenor further assert that the Court must separately analyze each document proffered for supplementation to assess and identify "evidence that it is more likely than not that Ms. Druyun acted in bad faith in the C-5 AMP procurement." Def.'s Mot. at 19; see also Int.'s Mot. at 7. While that approach may be appropriate in some cases, it is not warranted in this unusual case where Plaintiff claims bias and bad faith on the part of a high level official who had the ability to conceal what transpired, and the record was found by government investigators to lack adequate documentation. In these unusual circumstances, documents may appropriately be viewed collectively to assess whether supplementation is warranted.

The eight documents containing the written findings and workpapers of the auditors' reviews of the C-5 AMP procurement following the release of the Druyun Study and the 13 documents relating to the IG Report, including the IG Report itself indicate, inter alia, that the C-5 AMP procurement: was not adequately documented, was vulnerable to manipulation, and was a concern for the Government and its auditors due to Ms. Druyun's participation and influence. These documents also raised questions about the propriety of Ms. Druyun's appointment of herself as SSA.

So too, the Druyun Study and related documents indicate, inter alia, that the C-5 AMP procurement was heavily influenced by Ms. Druyun and worthy of further review because of her involvement. These documents also provide insight into Ms. Druyun's management style, which allegedly resulted in "an environment of intimidation and fear." DCMA 258; DCMA 184. The Druyun Study briefing to Mr. Wynne, Tab 29, and the Government's email chain regarding the C-5 AMP procurement and the IG's findings, Tab 30, provide insight into the extent to which the Government itself considered Ms. Druyun's influence and conduct to have permeated the Air Force's procurement program.

That said, upon reconsideration, the Court concludes that there are four documents which, while helpful for judicial review in providing the context for what occurred here, are not necessary for effective judicial review. First, Air Force Guidance on the Air Force FAR Supplement relevant to the Audit, Tab 8, is not necessary for effective judicial review as the document merely identifies relevant criteria from the Air Force FAR Supplement related to the audit of the C-5 AMP. Second, the testimony of the Government Accountability Office's Managing Associate General Counsel for Procurement Law before the Senate Subcommittee on Airland, Committee on Armed Services, entitled "Air Force Procurement: Protests Challenging Role of Biased Official Sustained," Tab 9, was confined to the C-130 procurement. Although the "Biased Official" refers to Ms. Druyun, based upon her guilty plea and admission of bias favoring Boeing in a different procurement, it is not necessary to have this testimony in the AR for effective judicial review of the instant procurement. This testimony does not reflect the Government's concerns with the C-5 AMP procurement or highlight problems with the documentation of that source selection. Third, the Report of the Defense Science Board's Task Force on Management Oversight in Acquisition Organizations, March 2005, Tab 19, did not address the procurement at issue. Although the Report detailed factors contributing to Ms. Druyun's favoritism of Boeing, the Report did not review individual acquisition decisions. Fourth, Tab 28, a November 9, 2004 interview with Mike Wynne, Acting Under Secretary of Defense for Acquisition Technology and Logistics, at a Media Round Table appears to reflect Mr. Wynne's personal views of the Darlene Druyun situation and is not necessary for effective judicial review in this protest.

## Conclusion

The Court **GRANTS IN PART** Defendant's motion for reconsideration and/or clarification and Intervenor's motion for reconsideration and correction of the Court's February 5, 2010 Decision. Documents at Tabs 8, 9, 19 and 28 shall not be included as a supplement to the AR.

The Court will conduct a telephonic conference on **February 22, 2011 at 2:00 p.m. EST** to discuss further proceedings and Plaintiff's "Motion for Leave to Conduct Limited Discovery and to Supplement the Administrative Record with the Deposition of Darleen Druyun."

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**JUDGE**